POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movants The Phoenix Insurance
Company, Ltd. and The Phoenix Provident
Pension Fund Ltd. and Proposed Lead
Counsel for the Class*

(*additional counsel on signature page*)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTIAN A. FELIPE, individually as administrator of the CHRISTIAN A. FELIPE CONTRIBUOTRY IRA, and on Behalf of Similarly Situated Persons,<br><br>Plaintiff,<br><br>v.<br><br>PLAYSTUDIOS, INC., a Delaware corporation; ANDREW PASCAL, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:22-cv-02164-VC<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF THE PHOENIX INSURANCE COMPANY, LTD. AND THE PHOENIX PROVIDENT PENSION FUND LTD. FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br>CLASS ACTION<br><br>Date:  July 14, 2022<br>Time:  2:30 p.m.<br>Judge:  Hon. Vince Chhabria<br>Courtroom:  5 – 17th Floor |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................1

II.     ARGUMENT.........................................................................................................5

        A.      THE COURT SHOULD APPOINT PHOENIX AS LEAD PLAINTIFF.............5

                1.      Phoenix Has the Largest Financial Interest of any Movant.......................6

                2.      Phoenix Satisfies the Requirements of Rule 23........................................7

        B.      THE COMPETING MOTIONS OF WIESLER AND FELIPE AND DAHL
                SHOULD BE DENIED ........................................................................................9

                1.      None of the Competing Movants Possesses the Largest Financial Interest
                        in this Action.................................................................................................9

                2.      Felipe and Dahl Are Inadequate Under Rule 23......................................9

III.    CONCLUSION...........................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF,
   2014 U.S. Dist. LEXIS 111869 (N.D. Cal. Aug. 11, 2014).................................................. 6, 7

*Camp v. Qualcomm Inc.*, 18-CV-1208-AJB-BLM,
   2019 U.S. Dist. LEXIS 10269 (S.D. Cal. Jan. 22, 2019)...................................................... 10

*Eichenholtz v. Verifone Holdings, Inc.*,
   2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ..................................................................... 13

*Feyko v. Yuhe Int'l Inc.*, No. CF 11-05511 DDP (PJWx),
   2012 U.S. Dist. LEXIS 28040 (C.D. Cal. Mar. 2, 2012) ........................................................ 8

*Hessefort v. Super Micro Comput., Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018) ............................................................................ 6, 7

*In re AudioEye, Inc.*, CV-15-163-TUC-DCB,
   2015 U.S. Dist. LEXIS 193348 (D. Ariz. July 31, 2015) ........................................................ 8

*In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*,
   2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005)........................................................... 6

*In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394,
   2020 U.S. Dist. LEXIS 15012 (N.D. Ill. Jan. 28, 2020) ..................................................... 4, 10

*In re Microstrategy Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ................................................................................. 13

*In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830,
   2010 U.S. Dist. LEXIS 132902 (W.D. Tenn. Dec. 15, 2010) .................................................. 8

*In re Stitch Fix, Inc. Sec. Litig.*,
   393 F. Supp. 3d 833 (N.D. Cal. 2019) ............................................................................... 5, 13

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999)................................................................................. 12

*In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW),
   2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007) ..................................................... 4, 10

*Knox v. Yingli Green Energy Holding Co.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...................................................................... 1, 2, 6

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS
AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-
cv-02164-VC

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
    2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ...................................................... 1, 6

*Richardson v. TVIA, Inc.*, No. C-06-06304 RMW,
    2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ......................................................7

*Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST,
    2016 U.S. Dist. LEXIS 177714 (N.D. Cal. Dec. 22, 2016) ....................................................8

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................................7

*Sutterfield v. Micromuse, Inc.*, Nos. C 04-8093 SBA,
    2004 U.S. Dist. LEXIS 31618 (N.D. Cal. July 5, 2004)..........................................................6

*Tomaszewski v. Trevena, Inc.*,
    383 F. Supp. 3d 409 (E.D. Pa. 2019) ................................................................................. 10

**Statutes**

15 U.S.C. §78u-4 ...............................................................................................................*passim*

PSLRA .................................................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................................*passim*

Lead Plaintiff Movant Phoenix[1] respectfully submits this memorandum of points and authorities in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Lead Counsel in this Action (Dkt. No. 24); and in opposition to the competing motions of (i) Eric Wiesler ("Wiesler") (Dkt. No. 21) and (ii) Christian A. Felipe ("Felipe") and James Dahl, on behalf of himself and the Dahl Entities (together, "Dahl") (Dkt. No. 28).

## I.   PRELIMINARY STATEMENT

The PSLRA requires that the Court appoint as Lead Plaintiff in this Action the "most adequate plaintiff" of the Class within the meaning of the statute.  15 U.S.C. §78u-4(a)(3)(B)(i). Pursuant to the PSLRA, a movant is entitled to a rebuttable presumption that it is the "most adequate plaintiff" if the movant both: (i) has the greatest financial interest in the outcome of the litigation among the eligible movants seeking appointment; and (ii) satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The "most adequate plaintiff" presumption may only be rebutted "upon proof . . . that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Of the three competing movants before the Court, only Phoenix meets the requisite statutory criteria for appointment as Lead Plaintiffs.  First, Phoenix possesses the largest financial interest in this action.  Although the PSLRA does not define "financial interest," courts in the Ninth Circuit generally assess financial interest with reference to the four *Lax* factors: (1) securities purchased; (2) funds expended; (3) net shares purchased (*i.e.*, shares retained); and (4) monetary loss.  *See*, *e.g.*, *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al*., 2013 U.S. Dist. LEXIS 29876, at *18 (N.D. Cal. Mar. 4, 2013) (emphasizing loss in assessing financial interest); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (same).  Among the *Lax* factors, courts generally consider monetary loss to be the most significant

_____

[1] Unless otherwise defined herein, all capitalized terms shall have the same meanings as set forth in Phoenix's moving brief.  *See* Dkt. No. 24.

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

with respect to financial interest. *Id.* The table below sets forth the respective financial interests of the competing movants:

| Movant(s) | Securities Purchased | Funds Expended | Net Securities Purchased (Retained Securities) | Loss |
|---|---|---|---|---|
| Phoenix | 1,074,814 | $8,334,948 | 0 | Section 10(b): $3,327,785 |
| | | | | Section 11: $3,327,785 |
| Wiesler | MYPS: 755 | $5,147 | MYPS: 100 | Section 10(b): $1,783 |
| | Options: 7 | | Options: 0 | Section 11: $1,803 |
| ~~Felipe and Dahl~~ | ~~MYPS/MYPSW: 953,333~~ | ~~$7,881,488~~ | ~~MYPS/MYPW: 879,900~~ | ~~Section 10(b): $3,276,105~~ |
| | ~~Options: 1,000~~ | | ~~Options: 0~~ | ~~Section 11: $3,278,394~~ |

As the table reflects, Phoenix plainly has the largest financial interest. Phoenix incurred the largest loss—the most significant of the *Lax* factors—with respect to both claims arising under Section 10(b) of the Exchange Act *and* claims arising under Section 11 of the Securities Act. Phoenix also purchased more securities than any other movant and expended more on its purchases. On balance, then, Phoenix leads the field of movants with respect to three of the four *Lax* factors, including the most dispositive factor (*i.e.*, monetary loss), and thus clearly has the "largest financial interest" in this litigation under the meaning of the PSLRA.

Second, in addition to its significant financial interest in this litigation, Phoenix strongly satisfies the adequacy and typicality requirements of Rule 23. The Phoenix entities are sophisticated institutional investors with significant assets under management, and as such are paradigmatic lead plaintiffs whose appointment would advance the PSLRA's goal of "increasing the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733. Not only does their significant stake in this litigation guarantee their vigorous advocacy of the Class's claims, the Phoenix entities have further demonstrated their adequacy by vigorously and successfully prosecuting the

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

claims of investors in the *Mylan*, *Ormat*, and *ATI* securities litigations.  *See* Dkt. No. 21 at 12-13. On June 6, 2022—*i.e.*, the date that they filed their Lead Plaintiff motion in this Action—the Phoenix entities were also appointed Co-Lead Plaintiffs in the Action *Plumbers and Steamfitters Local 60 Pension Trust v. Meta Platforms, Inc.*, 4:22-cv-01470 (N.D. Cal.) ("*Meta Platforms*"). *See id.*, Dkt. No. 50.  Accordingly, Phoenix also satisfies the second of the statutory criteria for appointment as Lead Plaintiffs.

Possessing the largest financial interest of any movant and having established its adequacy and typicality within the meaning of Rule 23, Phoenix is entitled to the statutory presumption that it is the "most adequate plaintiff" of the Class within the meaning of the PSLRA.  Because Phoenix is neither subject to unique defenses nor otherwise unable to fairly and adequately protect the interests of other Class members, there is nothing to rebut the presumption in favor of its appointment as Lead Plaintiff.

By contrast, none of the other competing movants is eligible for appointment as Lead Plaintiff in the Action.  Because Phoenix possesses the largest financial interest in the Action, it is self-evident that none of the competing movants can claim to possess the largest financial interest.  This failure to meet the first of the statutory criteria alone mandates denial of the competing motions.

Even assuming *arguendo* that Felipe and Dahl possessed a larger financial interest in this Action than Phoenix, Felipe and Dahl are ineligible for appointment irrespective of their financial interest because they are inadequate under Rule 23—specifically, because Felipe's conduct in this litigation to date has been characterized by haphazard submissions and blatant gamesmanship. Felipe's Complaint as initially filed contained multiple errors with respect to various dates in its recitation of the relevant facts.  Although Felipe subsequently filed a  Notice of Errata acknowledging and correcting certain of these errors (Dkt. No. 13), he failed to correct a glaring error regarding the relevant record date for the Merger (the "Record Date").  Similarly, as required by the PSLRA, Felipe's counsel published a notice of pendency of this Action, which Notice

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

erroneously advised investors that they had until June 7, 2022 to seek appointment as Lead Plaintiff. *See* Dkt. No. 1. Pursuant to the statute, the correct deadline was actually June *6*, 2022 (*i.e.*, 60 days from the date of publication of the notice). To Phoenix's knowledge, Felipe's counsel never published any corrected notice to alert other Class members to this error. Likewise, Felipe filed a Certification purporting to set forth his relevant transactions in Playstudios securities with his initial Complaint (*see* Dkt. No. 1 at *37-*44), then filed an "Amended Certification" with his individual Lead Plaintiff motion on June 6, 2022, ***two months later*** "provid[ing] a corrected statement of [his] transactions." Dkt. No. 25-4 at *2. Courts routinely deny lead plaintiff motions on the basis of such errors, as they raise questions regarding the movant's fitness to supervise a complex securities class action. *See*, *e.g.*, *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (D.N.J. Sept. 6, 2007); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012, at *16-17 (N.D. Ill. Jan. 28, 2020).

In addition to these multiple errors, Felipe's conduct in this litigation smacks of gamesmanship. There have now been three iterations of Felipe's involvement in this litigation. First, Felipe filed the initial Complaint, along with his original Certification. *See* Dkt. No. 1. Second, Felipe filed his individual motion—on June 6, 2022, despite issuing a press release advising his fellow Class members that the motion deadline was June 7, 2022, even though the PSLRA's 60-day notice period expressly provides that Lead Plaintiff motions were due on June 6. Indeed, Felipe's initial motion acknowledged that June 6 was the correct Lead Plaintiff Motion deadline. Dkt. No. 25 at 4. His motion papers included an "Amended Certification" which attested to additional transactions in Playstudios securities, the inclusion of which increased his financial interest relative to that set forth in his initial Certification. Dkt. No. 25-4. Third, on June 7, 2022, Felipe filed ***another*** motion—styled as an "Amended Motion"—now reversing himself and claiming that the appropriate Lead Plaintiff deadline was June 7, despite the unambiguous statutory language to the contrary, seeking appointment jointly with Dahl as Co-

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

Lead Plaintiffs, in an effort to increase his likelihood of securing leadership by alleging a larger aggregate financial interest in this Action, after having reviewed the timely-filed competing motions. *See* Dkt. No. 28 at 4. Yet Felipe and Dahl are an improper group under the PSLRA, as they have made no proffer whatsoever explaining the belated addition of Dahl to Felipe's motion. Indeed, the two movants have not attested to any pre-litigation relationship, to any specific steps they would take to coordinate their efforts if appointed as Co-Lead Plaintiffs, nor to any other reason that the Court should appoint a duo of unrelated investors as Co-Lead Plaintiffs. *See*, *e.g.*, *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) (denying motion by artificial grouping of individuals). Finally, despite the fact that Dahl appears to have been added to Felipe's motion purely to manufacture a larger financial interest, Dahl has failed to provide any information whatsoever about the largest of his claimed transactions, a "purchase[] [of] 650,000 shares of the securities at issue—for $6,500,000—through a PIPE investment." Dkt. No. 28 at 5. This is in direct contravention of the PSLRA's requirement that a lead plaintiff movant "provide a sworn certification" that "sets forth ***all*** of the transactions of the plaintiff" in the relevant securities. 15 U.S.C. §78u-4(a)(2)(A)(iv) (emphasis added).

Phoenix respectfully submits that the foregoing conduct evinces a readiness on Felipe's part to seek advantage in this litigation at the expense of other Class members, as well as the clear manipulation of the PSLRA's Notice provision and Lead Plaintiff appointment process. The Class clearly would not be well served by such a representative.

Accordingly, for the reasons set forth herein, Phoenix respectfully submits that the Court should grant its motion in its entirety and deny the competing motions of Wiesler and Felipe and Dahl.

## II.    ARGUMENT

### A.    THE COURT SHOULD APPOINT PHOENIX AS LEAD PLAINTIFF

The PSLRA creates a strong presumption that the Lead Plaintiff is the movant or group of movants that "has the largest financial interest in the relief sought by the class" and "otherwise

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest must make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23. *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014). Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, the most adequate class representative is Phoenix.

### 1.  Phoenix Has the Largest Financial Interest of any Movant

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). For the purposes of PSLRA lead plaintiff appointment, courts in this Judicial District and the Ninth Circuit generally assess financial interest with reference to the four *Lax* factors: (1) securities purchased; (2) funds expended; (3) net shares purchased (*i.e.*, shares retained); and (4) monetary loss. *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *18); *Knox*, 136 F. Supp. 3d at 1163. Among the *Lax* factors, courts generally consider monetary loss to be the most significant. *Id. See also In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at *14-15 (N.D. Ill. Mar. 15, 2005) (finding that "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved, because those statistics do not advance the ball."); *Sutterfield v. Micromuse, Inc.*, Nos. C 04-8093 SBA, 2004 U.S. Dist. LEXIS 31618, at *29 (N.D. Cal. July 5, 2004) ("[H]aving suffered the largest financial loss asserted, [movant] would have a strong incentive to pursue this action vigorously.").

As the chart at p. 2 reflects, Phoenix leads the competing movants across three of the four *Lax* factors. Crucially, Phoenix incurred the largest loss in connection with its Section 10(b) claims **and** in connection with its Section 11 claims ($3,327,785, for both). Phoenix also

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

purchased more securities and expended more funds on its purchases than any other movant. Under the *Lax* factors, then, no movant has a larger financial interest in this litigation than Phoenix.

### 2.      Phoenix Satisfies the Requirements of Rule 23

Phoenix also readily satisfies the typicality and adequacy requirements of Rule 23.  In appointing a lead plaintiff, the Court must determine whether the movant has made a *prima facie* showing of typicality and adequacy.  *Hessefort*, 317 F. Supp. 3d at 1060-01; *Bao*, 2014 U.S. Dist. LEXIS 111869, at *9.

Phoenix easily satisfies the typicality requirement of Rule 23.  Phoenix's claims are typical of those of other Class members because, like other Class members, Phoenix purchased Playstudios during the Class Period and was harmed by the misrepresentations and/or omissions that form the basis of the fraud alleged in the Action.  Phoenix's claims are thus typical of the Class.  *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *16 (N.D. Cal. Apr. 16, 2007).

Phoenix has also demonstrated its adequacy to serve as Lead Plaintiff in this Action.  First, as set forth *supra*, Phoenix has a significant financial interest in the outcome of this litigation that will ensure its vigorous and adequate prosecution of the Class's claims.  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Second, Phoenix has no conflicts with other Class members. To the contrary, Phoenix's interests are perfectly aligned with the Class's interest in maximizing a recovery for the Class due to the alleged fraud in this Action.  *Id.*

Third, the Phoenix entities are sophisticated institutional investors with significant assets under management and as such are paradigmatic Lead Plaintiffs as envisioned by Congress when it enacted the PSLRA.  Accordingly, Phoenix's service as Lead Plaintiff would be consistent with the PSLRA's preference for appointment of institutional investors as class representatives in securities class actions.  See H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

improving the quality of representation in securities class actions"). Indeed, courts in this Circuit strongly prefer appointment of institutional investors to lead complex securities class actions such as this one. *See*, *e.g.*, *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714, at *7 (N.D. Cal. Dec. 22, 2016) ("as an institutional investor, [movant] is likely to be an effective lead plaintiff"); *Feyko v. Yuhe Int'l Inc.*, No. CF 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040, at *8 (C.D. Cal. Mar. 2, 2012) (appointing institutional investor as lead plaintiff, finding it to be "'exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the PSLRA's reforms.'") (quoting *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 U.S. Dist. LEXIS 132902, at *8 (W.D. Tenn. Dec. 15, 2010)); *In re AudioEye, Inc.*, CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348, at *13 (D. Ariz. July 31, 2015) (appointing as lead plaintiff "an institutional investor, which is precisely the kind of investor that Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions").

Fourth, the Phoenix entities have already demonstrated their adequacy by serving as Lead Plaintiffs in other securities class actions. They have previously served or are currently serving as lead plaintiffs (with Pomerantz as lead counsel) in a number of other PSLRA actions, namely *Mylan*, *Ormat*, *ATI*, and *Meta Platforms*. By virtue of these prior experiences, the Phoenix entities are experienced litigants—significantly, with respect to serving as class representatives in other PSLRA actions—and their adequacy in this regard cannot reasonably be questioned.

Fifth, Phoenix has further demonstrated its adequacy by selecting qualified counsel, Pomerantz, with substantial experience litigating securities class actions. *See* Dkt. No. 24-5. Since 2018 alone, Pomerantz has secured a $3 billion recovery on behalf of investors in Petróleo Brasileiro S.A. - Petrobras securities, the largest settlement ever in a class action involving a foreign issuer; an $80 million settlement on behalf of Yahoo! Inc. investors; and a $110 million settlement on behalf of investors in Fiat Chrysler Automobiles N.V. *See id.*

8

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

For all of the foregoing reasons, Phoenix strongly satisfies the typicality and adequacy requirements of Rule 23 and is entitled to the PSLRA's strong presumption of being the Lead Plaintiff.

\* \* \* \* \*

To overcome the strong presumption entitling Phoenix to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is subject to unique defenses or otherwise inadequate to represent the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists with respect to Phoenix and any suggestions to the contrary should be rejected as mere speculation.

### B. THE COMPETING MOTIONS OF WIESLER AND FELIPE AND DAHL SHOULD BE DENIED

#### 1. None of the Competing Movants Possesses the Largest Financial Interest in this Action

Neither Wiesler nor Felipe and Dahl may be appointed as Lead Plaintiff(s) in the Action because none of these movants possesses the largest financial interest in the Action, and thus none of these movants satisfies the first of the statutory criteria to be entitled for the "most adequate plaintiff" presumption.  Here, as discussed above, Phoenix clearly possesses the largest financial interest in this Action.  It is thus self-evident that the other movants do not possess the largest financial interest.  This fact alone suffices to mandate denial of their motions.

#### 2. Felipe and Dahl Are Inadequate Under Rule 23

Even assuming *arguendo* that Felipe and Dahl did possess a larger financial interest in the Action than Phoenix, the PSLRA would still mandate denial of their motion irrespective of their financial interest because Felipe and Dahl are inadequate within the meaning of Rule 23. Specifically, they are inadequate because Felipe's conduct throughout this litigation has been characterized by haphazard, error-ridden submissions and flagrant gamesmanship, none of which speaks well of his capacity to serve as Lead Plaintiff.

9

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

Courts routinely disqualify lead plaintiff movants for errors in their submissions, as such errors raise questions regarding the movant's fitness to supervise a complex securities class action.  *See*, *e.g.*, *See, e.g.*, *Camp v. Qualcomm Inc.*, 18-CV-1208-AJB-BLM, 2019 U.S. Dist. LEXIS 10269, at *8-10 (S.D. Cal. Jan. 22, 2019) (significant errors in transactions records and loss calculations prohibit a movant from satisfying the adequacy and typicality requirements of Rule 23); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"); *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (D.N.J. Sept. 6, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012, at *16-*17 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing).

Less than three months into this litigation, Felipe has already established a pattern of erroneous submissions.  Felipe's initial Complaint contained a number of errors in its recitation of the relevant facts, specifically with respect to dates relevant to the Class Period and Merger at issue in this litigation.  Although Felipe subsequently filed a Notice of Errata which corrected certain of these errors, that Notice still did not correct the date of the Record Date—originally stated as May 25, 2021 in the Complaint, when it was actually May *14*, 2021, per the Proxy Statement for the special meeting, SEC on May 25, 2021.[2]  The Certification filed with Felipe's Complaint also contained errors, as Felipe subsequently acknowledged by filing an "Amended Certification" with his motion papers on June 6, 2022, in order "to provide a corrected statement

---

[2] *See* https://content.edgar-online.com/ExternalLink/EDGAR/0001104659-21-071823.html?hash=422badc65bdc7db28f9ed5db154895aca1b6c162c9b12d125afa36ae2b738e03&dest=TM216054-21_424B3_HTM#TM216054-21_424B3_HTM.

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

of the transactions made during the class period that are the subject of the action." Dkt. No. 25-4 at *2. Specifically, Felipe's original Certification omitted certain transactions, the inclusion of which increased his alleged loss in this litigation by $70,000.

Felipe erred again when he published the statutorily required Notice of Pendency of this Action, which, per the statute, must "advis[e] members of the purported plaintiff class" of their right to seek appointment as lead plaintiff "not later than 60 days after the date on which the notice is published." 15 U.S.C § 78u–4(a)(3)(A)(i)(I)-(II). Felipe's counsel published the Notice on April 7, 2022, meaning that the correct lead plaintiff motion deadline was June 6, 2022 (*i.e.*, 60 days after the date of publication). However, Felipe's Notice erroneously stated that the motion deadline was in fact June *7*, 2022. *See* Dkt. No. 24-3 at *3. To Phoenix's knowledge, Felipe's counsel never published any corrected Notice to alert other Class members to the correct deadline. However, as discussed below, Felipe himself appears to have become aware of the correct deadline at some point, given that he filed his individual Lead Plaintiff motion on June 6, 2022, at which point he expressly acknowledged that the PSLRA mandated a 60-day notice period calculated from the April 7, 2022 publication date. *See* Dkt. No. 25 at 4 ("Here, notice was published on April 7, 2022. Movant is filing this motion on June 6, 2022, so this motion is timely[.]") (internal citations omitted).

Even if the foregoing errors were made in good faith, the fact remains that Felipe has displayed a willingness to capitalize on any confusion created by those errors, potentially at the expense of fellow Class members. Felipe has now made three separate submissions to the Court in the capacity of a would-be representative party. Felipe filed the initial Complaint in this motion, accompanied by a Certification that omitted certain transactions in Playstudios securities. *See* Dkt. No. 1 at *37-*44. Felipe did not correct the record until June 6, 2022, when he filed his individual Lead Plaintiff motion with an "Amended Certification" that disclosed additional transactions, the inclusion of which increased his financial interest in this litigation. *See* Dkt. No. 25-4. Moreover, as discussed above, Felipe filed his motion on June 6, 2022—despite the fact

that the Notice that Felipe's counsel published erroneously adverted to a June 7, 2022 motion deadline—and acknowledged in this motion brief that June 6, 2002 was indeed the proper Lead Plaintiff Motion deadline.  Taking advantage of the discrepancy between the correct deadline and the published deadline—again, evidently without attempting to alert other Class members to his error by issuing a corrected Notice—Felipe reviewed the motion papers filed on June 6 by other Class members and then, after noting Phoenix's larger losses, filed his "Amended Motion" on June 7, adding Dahl as a Co-Lead Plaintiff Movant for the first time, for no apparent reason other than to increase his financial interest.  In his supporting brief, Felipe *now* reversed course yet again and claimed that the Lead Plaintiff motion deadline was, in fact, June 7—not June 6—citing a Stipulation filed by Felipe and the Defendants.  *See* Dkt. No. 28 at 4; Dkt. No. 19.  Yet the PSLRA's statutory instructions may not be circumvented by stipulation, particularly considering that the stipulation was presumably informed by Felipe's initial error regarding the motion deadline.

"The PSLRA is unequivocal and allows for no exceptions.  All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action. The plain language of the statute precludes consideration of a financial loss asserted for the first time . . . *after* the sixty (60) day window has closed."  *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) (emphasis in original).  Accordingly, Phoenix respectfully submits that the Court should not reward Felipe's transparent gamesmanship and should strike his "Amended Motion".

Even if the Court were to consider Felipe's procedurally improper "Amended Motion" and consider his request for appointment as a Co-Lead Plaintiff jointly with Dahl, Felipe and Dahl are an improper group, the appointment of which is impermissible under the PSLRA.  Although Felipe and Dahl vaguely claim in their motion brief to "know one another and intend to work together", they have in fact made no showing as to any meaningful pre-litigation relationship.  Their non-specific and non-sworn representation that they "know one another" leaves open the

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

possibility that they only "know one another" because they were introduced by counsel, purely for the purposes of aggregating their losses in the instant motion practice. Indeed, no other explanation is given for the last-minute addition of Dahl to Felipe's motion. Courts in the Ninth Circuit generally decline to appoint as co-lead plaintiffs investor groups consisting of individuals "who had no pre-existing relationship with one another, and whose relationship and group status were forged only by [its] lawyer[s]." *Stitch Fix*, 393 F. Supp. 3d at 835 (denying motion by artificial grouping of individuals). Indeed, "ignoring the basis of the group formation and appointing a group of unrelated investors," like Dahl and Felipe here, "undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation." *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at \*8 (N.D. Cal. Aug. 22, 2008). Nor have Dahl and Felipe provided any support for their assertion that they "intend to work together", having attested to no communications whatsoever or any specific steps that they would take to fulfill their responsibilities. *See, e.g.*, *Stitch Fix*, 393 F. Supp. 3d at 836 (denying group's motion where its members only "exchanged a few calls and emails with each other"); *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (noting group's motion was denied because it failed to show its members "had ever communicated with one another about their roles").

Finally, although Dahl was transparently added to Felipe's motion for the sole purpose of aggregating his losses with Felipe's to defeat Phoenix's motion, Dahl has in fact provided no support for the largest of his claimed transactions, a "purchase[] [of] 650,000 shares of the securities at issue—for $6,500,000—through a PIPE investment." Dkt. No. 28 at 5. The PSLRA requires that a lead plaintiff movant "provide a sworn certification" that "sets forth *all* of the transactions of the plaintiff" in the relevant securities. 15 U.S.C. §78u-4(a)(2)(A)(iv) (emphasis added). Yet Dahl's Certification fails to provide the most basic information regarding this purported transaction, such as the date of the PIPE offering, the date of the acquisition, which of the several Dahl entities purchased these shares, or any sales of the shares purchased from this offering. Dahl's mere reference to these shares which constitute the overwhelming majority of

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

his and Felipe's purported transactions in Playstudios securities falls well short of the showing required by the PSLRA.

## III.    CONCLUSION

For the foregoing reasons, Phoenix respectfully requests that the Court issue an Order granting their motion in full and denying the competing motions.

Dated:  June 21, 2022                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice application forthcoming*)
J. Alexander Hood II
(*pro hac vice application forthcoming*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Orly Guy
Eitan Lavie
HaShahar Tower
Ariel Sharon 4, 34th Floor
Givatayim, Israel 5320047
Telephone: +972 (0) 3 624 0240
Facsimile: +972 (0) 3 624 0111
oguy@pomlaw.com
eitan@pomlaw.com

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

*Counsel for Movants The Phoenix Insurance Company, Ltd. and The Phoenix Provident Pension Fund Ltd. and Proposed Lead Counsel for the Class*

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC

PROOF OF SERVICE

I hereby certify that on June 21, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


/s/ *Jennifer Pafiti*
Jennifer Pafiti

16
MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:22-cv-02164-VC