MARC M. SELTZER, SBN 54534
mseltzer@susmangodfrey.com
KRYSTA KAUBLE PACHMAN, SBN 280951
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

ROBERT A. CURTIS, SBN 203870
rcurtis@foleybezek.com
KEVIN D. GAMARNIK, SBN 274335
kgamarnik@foleybezek.com
AARON L. ARNDT, SBN 290748
aarndt@foleybezek.com
JORDAN A. LIEBMAN, SBN 317930
liebman@foleybezek.com
FOLEY BEZEK BEHLE
  & CURTIS, LLP
15 West Carrillo Street
Santa Barbara CA 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722

*Attorneys for Movants Christian A. Felipe and James H. Dahl*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN A. FELIPE, individually as administrator of the CHRISTIAN A. FELIPE CONTRIBUTORY IRA, and on Behalf of Similarly Situated Persons,<br><br>Plaintiff,<br><br>v.<br><br>PLAYSTUDIOS, INC., a Delaware corporation; ANDREW PASCAL, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:22-cv-02164-VC<br><br>RESPONSE IN SUPPORT OF CHRISTIAN A. FELIPE AND JAMES H. DAHL'S AMENDED MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS, APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS<br><br>DATE: July 14, 2022<br>TIME: 2:30 p.m.<br>PLACE: Courtroom 5 – 17th Floor<br>(via Zoom) |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................1

I.     ARGUMENT........................................................................................................2

         A.     Movants have the largest financial interest and are presumptively the most adequate class members to serve as lead plaintiff..........................................2

         B.     Movants are a small, cohesive group of sophisticated investors who will actively represent the class and manage the litigation in the class's interests. ................................................................................................................5

         C.     Mr. Dahl's financial stake—the largest of any movant—further establishes the Movants' fitness to serve as lead plaintiff. ...................................10

         D.     Phoenix would be subject to unique defenses that make it incapable of adequately representing the class...........................................................................11

II.    CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blasco v. Keurig Green Mountain, Inc.*,
No. 15-cv-02766-VC (N.D. Cal. Sept. 28, 2015) .......................................................8

*Bruce v. Suntech Power Holdings Co.*,
No. CV 12-04061 RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012)...............................6, 10

*City of Grand Rapids Gen. Ret. Sys. v. Bayer Aktiengesellschaft*,
No. 20-CV-04737-RS, 2020 WL 6255412 (N.D. Cal. Oct. 21, 2020) .....................................8

*Doherty v. Pivotal Software, Inc.*,
No. 3:19-CV-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019)...........................6, 10

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C07-06140MHP, 2008 WL 3925289....................................................... *passim*

*Ferreira v. Funko, Inc.*,
No. 220CV02319VAPPJWX, 2020 WL 3246328
(C.D. Cal. June 11, 2020) .......................................................................6

*Himmelberg v. Vaxart, Inc.*,
No. 20-cv-06175-VC (N.D. Cal. Dec. 9, 2020)............................................................8

*Hoang v. ContextLogic, Inc.*,
No. 21-CV-03930-BLF, 2022 WL 1539533 (N.D. Cal. May 16, 2022) ...................................3

*In re Aqua Metals Sec. Litig.*,
No. 17-CV-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018)...............................5, 9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .....................................................................3

*In re Netflix, Inc., Sec. Litig.*,
No. 12-0225 SC, 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012)......................................13, 14

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
219 F.R.D. 343 (D. Md. 2003)....................................................................14

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
No. 04-374 (JWB), slip op. (D.N.J. June 30, 2004)................................................15

*In re SanDisk Sec. Litig.*,
No. 3:15-cv-01455-VC (N.D. Cal. Feb. 22, 2016) ...................................................8

*In re Versata, Inc. Sec. Litig.*,
    No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 21, 2001) ...........................................6

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
    No. 13-CV-05368-LHK, 2014 WL 2604991 (N.D. Cal. June 10, 2014) ..............................5, 8

*OCZ Tech. Grp., Inc.*,
    No. 3:12-cv-05265-RS ........................................................................................................6

*Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016 WL 2654351
    (N.D. Cal. May 10, 2016) ................................................................................ *passim*

*Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827
    (N.D. Cal. Aug. 19, 2002).................................................................................................13

*Yousefi v. Lockheed Martin Corp.*,
    70 F. Supp. 2d 1061 (C.D. Cal. 1999) ........................................................................9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb) .....................................................................................4

15 U.S.C. § 78u-49(a)(3)(B)(iii)(II)................................................................................11, 14

Private Securities Litigation Reform Act of 1995 ...............................................................2, 5, 11

**Rules**

Fed. R. Civ. P. 10b-5.............................................................................................................1

Fed. R. Civ. P. 23 .............................................................................................................2, 11

## I.    **INTRODUCTION**

Plaintiff Christian A. Felipe, individually as administrator of the Christian A. Felipe Contributory IRA, and James H. Dahl, on behalf of himself and the Dahl Entities[1] (together with Mr. Felipe, "Movants"), respectfully submit this memorandum of law in further support of their motion for appointment as lead plaintiff and for approval of their selection of lead counsel. For the reasons set forth herein, Movants respectfully request that they be jointly appointed lead plaintiff, that their choice of lead counsel be approved, and that the competing motions be denied.

By June 7, 2022, three sets of movants timely filed motions for appointment as lead plaintiff. The other movants, in addition to Mr. Felipe and Mr. Dahl, are: (i) Eric Wiesler (*see* ECF No. 21) and (ii) The Phoenix Insurance Company Ltd. and The Phoenix Provident Pension Fund Ltd. (together, "Phoenix") (*see* ECF No. 24).[2] Based on the claimed financial interests of the various movants, it is clear that Movants possess "the largest financial interest in the relief sought by the class" by any measure and are therefore presumptively the most adequate plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The below chart shows the movants' losses under Section 10(b) and Rule 10b-5.

**Losses By Movant**

| Movant | Actual Losses (FIFO) | Actual Losses (LIFO) | *Dura* Losses (FIFO/LIFO) |
|---|---|---|---|
| Christian A. Felipe & James H. Dahl | $3,351,545.62 | $3,352,104.88 | $1,014,000.00 |
| Phoenix | $321,004.16 | $331,084.88 | $57,776.40 |

---

[1] The Dahl Entities are the IRA FBO James H. Dahl, Pershing LLC as Custodian ROTH Conversion Account; the Equity Trust Company, Custodian FBO James H. Dahl Roth IRA; and the Dahl Family Foundation.

[2] Mr. Wiesler has since filed a notice of non-opposition to the motions of Movants and Phoenix. ECF No. 29. Accordingly, this brief does not address Mr. Wiesler's motion.

1

As these figures demonstrate, Movants clearly have the greatest stake in the case and therefore are presumptively the most adequate plaintiffs under the PSLRA.

Moreover, Movants are a proper group to serve as lead plaintiff. Courts in this Circuit and District routinely select small, cohesive groups of investors to serve as a lead plaintiff if the group has demonstrated its willingness and ability to actively oversee and direct the action on behalf of the other class members. Movants easily meet this standard. As set forth in their joint declaration, Movants are two sophisticated investors—with decades of experience—who fully appreciate the obligations of a lead plaintiff to participate in and oversee the action. Movants understand these obligations are undertaken in order to represent the interests of absent class members and to seek the best possible result for the class, and they have discussed with one another how they will work together to realize these goals. Their declaration shows that Movants have not simply been cobbled together into a group by would-be class counsel to satisfy the greatest financial interest requirement—which is confirmed by the fact that Mr. Dahl by himself has the largest stake in the relief sought by the class.

In sum, Movants plainly have the largest financial interest in the lawsuit; are a proper group to serve as lead plaintiff; and otherwise satisfy the requirements of Rule 23. Accordingly, the Court should appoint them as lead plaintiff and approve their selection of Susman Godfrey L.L.P. and Foley Bezek Behle & Curtis LLP ("FBBC") as lead counsel.

## I.    ARGUMENT

### A.    Movants have the largest financial interest and are presumptively the most adequate class members to serve as lead plaintiff.

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") creates a presumption that the most adequate plaintiff is the person (or "*group of persons*") who has "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of

the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.").

Here, Movants have—by a wide margin—the largest losses out of all of the movants. Under either a first-in, first-out ("FIFO") or last-in, first-out ("LIFO") approach, Movants suffered over $3.35 million in damages. This amount represents more than ***ten times*** the ***combined*** losses of the other movants:

**Losses By Movant**

| Movant | Actual Losses (FIFO) | Actual Losses (LIFO) | *Dura* Losses (FIFO/LIFO) |
|---|---|---|---|
| Christian A. Felipe & James H. Dahl | $3,351,545.62 | $3,352,104.88 | $1,014,000.00 |
| Phoenix | $321,004.16 | $331,084.88 | $57,776.40 |

While a movant's approximate losses are the "most determinative in identifying the plaintiff with the largest financial loss," *Hoang v. ContextLogic, Inc.*, No. 21-CV-03930-BLF, 2022 WL 1539533, at *4 (N.D. Cal. May 16, 2022), the other "*Lax* factors" that courts use to determine which plaintiff has the greatest financial interest also weigh in favor of Movants.[3] By a substantial margin, Movants purchased the most shares during the class period, had the most net shares purchased during the class period, and expended the most in net funds during the class period. *See id.*

---

[3] *See Hoang*, 2022 WL 1539533, at *4 ("District courts within the Ninth Circuit generally consider the four '*Lax*' factors . . . to determine which plaintiff has the greatest financial interest. . . . Those factors are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) total net funds expended during the class period; and (4) the approximate losses suffered during the class period.") (citations and internal quotation marks omitted).

*Lax* **Factors**

| Movant | Shares Purchased During Class Period | Net Shares Purchased During Class Period | Net Funds Expended During Class Period |
|---|---|---|---|
| Christian A. Felipe & James H. Dahl | 677,104 | 651,100 | $6,574,418.66 |
| Phoenix | 273,236 | (801,578) | ($3,405,478.38)[4] |

Based on its motion, Phoenix appears to use a different method for calculating its losses, in which it has counted as "purchases" the Playstudios stock it acquired by exchanging shares of Acies Acquisition Corp.—which it acquired *before* the class period began—for Playstudios shares on June 22, 2021. *See* ECF No. 24-2 (Phoenix "Loss Chart") at 2. But Phoenix cites no authority that a class member may count, as in-class period "purchases," an exchange of shares purchased before the class period.[5]

Regardless, even using Phoenix's method, Movants *still* have the most substantial losses:

**Losses By Movant (Phoenix Method)**

| Movant | Actual Losses (FIFO) | Actual Losses (LIFO) | *Dura* Losses (FIFO/LIFO) |
|---|---|---|---|
| Christian A. Felipe & James H. Dahl | $4,193,411.03 | $4,193,411.03 | $1,393,730.16 / $1,394,633.76 |
| Phoenix | $3,327,776.82 | $3,327,776.82 | $586,817.88 |

As demonstrated by these tables, Movants indisputably have "the largest financial interest in the relief sought by the class"—either considering each movant's losses or the *Lax* factors as a whole—and are therefore presumptively the most adequate plaintiffs to represent the class. 15

---

[4] Parentheses indicate negative numbers, *i.e.*, Phoenix was a net seller during the class period and received more in net funds than it expended during the class period.

[5] For example, pursuant to this method, Phoenix assumes an implied "purchase price" of the share price on the day the shares were exchanged.

U.S.C. § 78u-4(a)(3)(B)(iii)(bb).

**B.      Movants are a small, cohesive group of sophisticated investors who will actively represent the class and manage the litigation in the class's interests.**

Movants are a small, cohesive group of just two investors. Furthermore, they have demonstrated through their joint declaration their ability and willingness to jointly manage the lawsuit effectively in the interests of the entire class.

"The PSLRA itself permits groups of persons to serve as a lead plaintiff." *In re Aqua Metals Sec. Litig.*, No. 17-CV-07142-HSG, 2018 WL 4860188, at \*4 (N.D. Cal. May 23, 2018); *see* 15 U.S.C. § 78u-4(a)(3)(B)(i) ("[T]he court shall appoint as lead plaintiff the member *or members* of the purported class that the court determines to be the most capable of adequately representing the interests of the class members.") (emphasis added). The "principal concern" in assessing an investor group seeking appointment as lead plaintiff "is that the proposed group will actively represent the class." *In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374 at \*18 (N.D. Cal. Aug. 21, 2001) (internal quotation marks omitted). Small, cohesive groups of investors are "routinely appointed as lead plaintiff" as long as they "show[] their ability to manage the litigation effectively in the interests of the class without undue influence of counsel." *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at \*5 (N.D. Cal. June 10, 2014) (appointing group as lead plaintiff based on declarations from group members "claim[ing] they will work cooperatively together to direct and supervise the activities of counsel to best vindicate the interests of all shareholders and to vigorously prosecute the case" and describing the members' discussions about how they would cooperate as lead plaintiff); *see also Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016 WL 2654351, at \*4 (N.D. Cal. May 10, 2016) (approving group of investors where investors submitted a declaration stating that "the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular

5

communication with counsel and with each other, and will make decisions by consensus . . . .").

As discussed in more detail below and in their joint declaration, Movants meet the requirement—

discussed in *Versata*, *Fitbit*, and other cases in the Northern District—to demonstrate their ability

to actively represent the class and vigorously prosecute the case. Pachman Decl., Ex. A ¶¶ 7-15.

At the outset, Movants are a small group—only two individuals—and therefore are small

and cohesive enough to work together effectively. *See Bruce v. Suntech Power Holdings Co.*, No.

CV 12-04061 RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012) ("The Suntech Investor

Group is made up of just three individuals. This is a small and cohesive group, in accordance with

the PSLRA's goal of having an engaged lead plaintiff."); *Ferreira v. Funko, Inc.*, No.

220CV02319VAPPJWX, 2020 WL 3246328, at *6 (C.D. Cal. June 11, 2020) ("Courts in the Ninth

Circuit often appoint lead plaintiffs consisting of three or more individual investors.").[6]

In addition, Movants will be able to manage the litigation effectively in the interests of the

class and diligently prosecute the action on the class's behalf. As reflected in the attached joint

declaration, Movants have discussed with one another how they will discharge their

responsibilities as lead plaintiff and fiduciaries to the class. Pachman Decl., Ex. A at ¶¶ 12-13.

Movants will remain informed about the progress of the lawsuit and the major decisions that will

need to be made as it progresses; regularly communicate with each other and with counsel about

the case and the decisions they need to make; review and approve court filings and other papers

---

[6] *See also, e.g.*, *OCZ Tech. Grp., Inc.*, No. 3:12-cv-05265-RS, 2013 WL 75774, at *3 (N.D. Cal. Jan. 4, 2013) ("Small, cohesive groups similar to the [four member] OCZ Investor Group are routinely appointed as Lead Plaintiff in securities actions when they have shown their ability to manage the litigation effectively in the interests of the class without undue influence of counsel."); *Doherty v. Pivotal Software, Inc.*, No. 3:19-CV-03589-CRB, 2019 WL 5864581, at *6 (N.D. Cal. Nov. 8, 2019) ("Though the Group's members do not appear to have had an extensive pre-existing relationship, the Group only consists of two members and the information provided in its Joint Declaration demonstrates that it would be capable of overseeing the litigation and counsel.").

they receive from counsel; testify and give evidence as needed; and personally attend court proceedings when it is in the interest of the class to do so. *See id.* Movants note that Mr. Felipe has already demonstrated his commitment to zealously represent the class. He filed a detailed complaint in this litigation and, prior to that, spent dozens of hours investigation the allegations that form the basis of the claims against Defendants.[7]

Movants understand these efforts are necessary to effectively monitor the efforts of counsel and ensure that the action is litigated in the interests of the class and toward the end of obtaining the best possible recovery for the class. *Id.* ¶¶ 13-15. Movants further understand their roles in working together to reach consensus with respect to all significant litigation decisions and, based on their communications and interactions to date, do not foresee any difficulties in doing so. *Id.* ¶ 14. Mr. Felipe's and Mr. Dahl's pre-existing acquaintance with each other,[8] their shared backgrounds as investment professionals, and their experiences working with attorneys to oversee litigation will all contribute to their ability to work together. *See id.* ¶¶ 3, 5, 6, 8.

These facts establish Movants' willingness and ability to effectively supervise class counsel and represent the class as a small, cohesive unit. Indeed, they are similar to facts other courts have found sufficient when appointing lead plaintiff groups. For example, this Court has appointed investor groups to be lead plaintiff which have established their cohesiveness and ability

---

[7] Specifically, Mr. Felipe spent dozens of hours reviewing and analyzing Playstudios' financial statements and marketing materials, third-party equity research on Playstudios, and news articles concerning Playstudios, as well as listening in on several Playstudios earnings calls. Pachman Decl., Ex. A at ¶ 7.

[8] As noted in the joint declaration, Mr. Dahl and Mr. Felipe were acquainted before the filing of this lawsuit. *See* Pachman Decl., Ex. A at ¶ 9. For that reason, this is different from cases where members of an investor group seeking appointment as lead plaintiff lacked a pre-existing relationship. And even if they did lack such a relationship, that fact would not be disqualifying. *See, e.g.*, *Robb*, 2016 WL 2654351, at *4 (appointing investor group notwithstanding the lack of pre-existing relationships among its members).

7

to monitor a lawsuit through similar joint declarations. *See, e.g.*, Order Granting Motion to Consolidate; Motion to Appoint Lead Plaintiff; Motion to Appoint Lead Counsel, *Himmelberg v. Vaxart, Inc.*, No. 20-cv-06175-VC (N.D. Cal. Dec. 9, 2020), ECF No. 77 (appointing group of two individual investors as lead plaintiff who submitted a similar joint declaration, over competing motions by individual investors who argued that the group was not cohesive or appropriate to serve as lead plaintiff) (Pachman Decl., Ex. B), ECF No. 47-5 (joint declaration) (Pachman Decl., Ex. C); Order Granting Motions to Consolidate, Appointing Lead Plaintiffs, and Approving Lead Counsel, *Blasco v. Keurig Green Mountain, Inc.*, No. 15-cv-02766-VC (N.D. Cal. Sept. 28, 2015), ECF No. 62 (same, with respect to group of three individuals who submitted a joint declaration and whom the Court appointed as lead plaintiff) (Pachman Decl., Ex. D).[9]

Other courts in this District and in the Ninth Circuit are in agreement. *See, e.g.*, *City of Grand Rapids Gen. Ret. Sys. v. Bayer Aktiengesellschaft*, No. 20-CV-04737-RS, 2020 WL 6255412, at *1 (N.D. Cal. Oct. 21, 2020) (appointing as lead plaintiff "two separate, sophisticated investors" who "declared that they intend to work collaboratively as a cohesive unit to achieve the best results for the class . . . in order to 'gain the advantages of joint decision-making, collective resources, and to provide the Class with broad representation'"); *Robb*, 2016 WL 2654351, at *4 (appointing group of investors where investors submitted a declaration stating that "the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus"); *see also Miami Police Relief & Pension Fund*, 2014 WL 2604991, at *5 ("Courts have found that such

---

[9] *See also* Order Granting Motion to Reconsider and Appointing Lead Plaintiff, *In re SanDisk Sec. Litig.*, No. 3:15-cv-01455-VC (N.D. Cal. Feb. 22, 2016), ECF No. 119 (appointing investor group lead plaintiff on motion for reconsideration) (Pachman Decl., Ex. E).

joint declarations are demonstrative of a movant group's adequacy as lead plaintiff.").[10]

Finally, Movants are the best potential representatives of the proposed class as a whole. The proposed class consists of all persons or entities who (1) purchased or acquired Playstudios stock during the class period, including through a private investment in public equity ("PIPE" offering); (2) held Acies Acquisition Corp. stock as of May 25, 2021 and were eligible to vote at the June 2021 special meeting; or (3) purchased or otherwise acquired Playstudios stock pursuant or traceable to the Acies Registration Statement and Proxy Statement. *See* ECF No. 1 at ¶ 3. Together, Movants have transactions in all of the categories above, including through  Mr. Dahl's PIPE investment. *See* Pachman Decl., Ex. 1 at ¶ 9. Based on Phoenix's motion, it does not appear it has the same breadth of transactions—including, specifically, that it does not appear to have acquired Playstudios securities through the PIPE offering. Accordingly, the class would benefit from having as lead plaintiff a group of investors—like Movants—whose interests in pursuing the action broadly match their own. *See, e.g.*, *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999)  (noting that group of "lead plaintiffs will represent a broader range of shareholder interests than if the Court appointed an individual or an institutional investor alone").

Movants are a group of two experienced investors who understand the responsibilities of a lead plaintiff and—as evidenced by their joint declaration—are willing to undertake those responsibilities on behalf of the class. In line with the weight of authority in this District and Circuit, they are an appropriate group to serve as lead plaintiff.

---

[10] *See also, e.g.*, *In re Aqua Metals Sec. Litig.*, 2018 WL 4860188, at *4 (relying on joint declaration stating that, among other things, the two group members had committed to maximizing the recovery for the class and vigorously prosecuting the litigation; pledged to jointly communicate with counsel about the progress and prosecution of the action; expected to reach consensus regarding litigation decisions; and understood their obligations to direct lead counsel's efforts and participate actively in the litigation).

**C.      Mr. Dahl's financial stake—the largest of any movant—further establishes the Movants' fitness to serve as lead plaintiff.**

Additionally, Movants may proceed as a group because one of them—Mr. Dahl—has the largest financial interest, by himself, in the relief sought by the class.

Courts in the Ninth Circuit and this District have routinely rejected challenges to groups seeking appointment as lead plaintiff where one member of the group has the largest financial interest because that fact—standing alone—demonstrates those are not cases "in which lawyers aggregated plaintiffs in order to overcome the largest stake requirement." *Bruce*, 2012 WL 5927985, at *2 (finding that investor group consisting of three individuals was appropriate group where one member met "the largest stake requirement . . . on his own"). *See also Robb*, 2016 WL 2654351, at *5 ("In any event, Timothy Flynn of the Fitbit Investor Group claims the largest loss of any individual member. Therefore, this is not a case in which lawyers aggregated plaintiffs in order to overcome the largest stake requirement. Rather, Flynn meets that requirement on his own.") (internal quotation marks and alterations omitted); *Doherty v. Pivotal Software, Inc.*, No. 3:19-CV-03589-CRB, 2019 WL 5864581, at *6 (N.D. Cal. Nov. 8, 2019) ("Furthermore, one of the Group's members—Tech Trader—meets the largest financial stake requirement on its own. Courts in the Ninth Circuit have held that it is not necessary for members of a group to aggregate themselves in order to overcome the largest financial interest requirement if one of the group's members could meet that requirement by itself.").

Here, Mr. Dahl has the largest loss of any individual class member who has come forward. Mr. Dahl and the Dahl Entities suffered $3,352,478,96 in losses under either a FIFO or LIFO approach and $1,014,000 in *Dura* losses—more than Phoenix.[11] Regarding the other *Lax* factors,

---

[11] Mr. Dahl's losses are the same under either the method Movants used to calculate losses or the method Phoenix used. Additionally, his losses are greater than Phoenix's ($3,352,478,96 vs.

Mr. Dahl and the Dahl Entities purchased 675,000 shares during the class period; had 650,000 in net shares purchased during the class period, and expended $6,569,256.74 in net funds during the class period—again, more than any other movant for each factor. In sum, along all relevant metrics, Mr. Dahl has the largest financial interest stake in the action by himself. This is therefore not a case in which class members have been aggregated by prospective class counsel merely for the purpose of meeting the PSLRA requirements, *see Robb*, 2016 WL 2654351, at *5. Rather, as explained above, Movants are two experienced investors who suffered substantial losses from the alleged fraud committed by Playstudios, who have the sophistication and motivation to zealously represent the class, and who are committed to participating in and overseeing counsel in this case.

For those reasons, the Court should respectfully find that Movants have the largest financial stake in the relief sought by the class and are a proper group to serve as lead plaintiff.

### D.    <u>Phoenix would be subject to unique defenses that make it incapable of adequately representing the class.</u>

Because Movants have the largest financial stake and otherwise satisfy the requirements of Rule 23, the Court may appoint them as lead plaintiff without needing to consider whether Phoenix is a suitable lead plaintiff. However, if the Court determines either that Phoenix has the largest financial interest or that it is presumptively the most adequate plaintiff, it should not proceed to appoint Phoenix as lead plaintiff. As explained below, Phoenix should not be appointed lead plaintiff because it may be subject to unique defenses that "render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-49(a)(3)(B)(iii)(II).

In *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, this Court, by the Hon. Marilyn Hall Patel, denied the motion of an investor group (the "Israeli Group")

---

$3,327,776.82) even under Phoenix's method for calculating losses. *See supra* at 4.

for appointment as lead plaintiff. In its opinion, the court further noted that each individual member of the group—including Phoenix Insurance Company, the same movant in this case—would "likely not have been appointed" as lead plaintiff had it sought appointment as lead plaintiff on its own. *Id.* at \*10 n.8. The Court provided several independent reasons that "form[ed] a solid, persuasive basis to rebut the lead plaintiff status." *Id.* (noting that its reasoning applied to "the other individual members of the Israel Group," to include the Phoenix Insurance Company). Those reasons apply with equal force today.

*First*, Phoenix may be subject to a lack-of-standing defense not shared by other class members. While it is not entirely clear from its submissions, it appears that Phoenix Insurance Company and the Phoenix Provident Pension Fund do not themselves actually own the shares upon which their purported losses are based. Instead, it appears that the Phoenix entities are fund or asset managers, and the Playstudios shares at issue in fact belonged to fund participants:

> Phoenix is, in every respect, exactly the sort of well-managed, sophisticated institutional investor that Congress intended to fulfill the lead plaintiff role created by the PSLRA. Phoenix Insurance, the principal branch of Phoenix Holdings, is a leading Israeli insurance company, and ***provides insurance products and services*** including life insurance, long-term savings, pension, and provident funds, general insurance, and healthcare insurance. Phoenix Insurance has over $10 billion in ***assets under management***. Phoenix Pension, which is also wholly owned by Phoenix Holdings, has extensive experience in ***pension and provident fund management and manages over $16 billion in assets for more than 800,000 customers***.

ECF No 24 at 8 (emphasis added). That is, Phoenix appears to manage funds or assets owned by others.

That conclusion is consistent with a declaration filed by Phoenix Insurance Company in *Eichenholtz*, which explained that the shares at issue in that case were held in part "by funds or accounts," which were the "owner[s] — the actual holder[s]" of the shares upon which Phoenix was claiming its losses were based. For its part, Phoenix managed the funds which owned the

12

shares. *See* Pachman Decl., Ex. G at ¶¶ 4-17. Nor has Phoenix pointed to any evidence that it has the right to sue on shares it did not own—for example, a power of attorney or assignment of rights from fund participants.

If it is correct that Phoenix did not own the Playstudios shares upon which its purported losses are based—rather, the funds did—this raises a serious prospect that Phoenix will be forced to litigate, to the detriment of the class it represents, a standing defense. *See In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) ("The Comstock Trust . . . did not assign its claims to Comstock. Arkansas Teacher-Boston argues persuasively that this may raise a colorable issue of whether Comstock herself, as a legal entity distinct from the Comstock Trust, has standing to bring a claim.") (citation omitted); *Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *6 (N.D. Cal. Aug. 19, 2002) (finding that asset manager would not be an adequate plaintiff because it failed to "provide evidence that it acts as an attorney-in-fact for its clients and is authorized to seek recovery for investment losses").[12]

In fact, this Court in *Eichenholtz* found against Phoenix on this exact same issue despite the fact that Phoenix had submitted a declaration stating that it had sole authority to buy, sell, and vote the shares, and the fund participants themselves had no such rights. The Court wrote: "Prisma Provident"—which "manage[d] provident funds, training funds, compensation funds, and funds for sickness remunerations"—"could be subject to unique defenses. First, its opponents can argue that ***it did not suffer the investment losses itself since it is an asset manager, mutual fund or insurance company.***" 2008 WL 3925289, at *10 n.8 (emphasis added). The Court expressly noted that its reasoning "applie[d] to the other individual members of the" group, including Phoenix

---

[12] Additionally, if Phoenix in fact has no qualifying purchases during the class period, then Mr. Felipe and Mr. Dahl have—both collectively and individually—a greater financial interest than any other movant.

Insurance Company. *Id.* Notably, the Court found that this potential defense subjected the provident fund to a possible lack-of-standing defense even though it had submitted a declaration (as did Phoenix) "aver[ring] that it has full and complete discretion to buy and sell securities for its accounts as well as to institute legal action on their behalf." *See id.*; Pachman Decl., Ex. G at ¶ 5 (averring that Phoenix had sole right to buy, sell, and vote the securities and to bring legal action).

Accordingly, Phoenix appears very likely to be subject to a unique lack-of-standing defense that renders it incapable of adequately representing other class members. *See* 15 U.S.C. § 78u-49(a)(3)(B)(iii)(II).[13]

*Second*, "it is unclear if this litigation would be given res judicata effect in Israel," where Phoenix is based. *Eichenholtz* 2008 WL 3925289, at *10 n.8. Courts have found that questions about the enforceability and scope of preclusion of judgements in a prospective lead plaintiff's home forum may rebut the presumption of adequacy. *See id.* (finding that uncertainty as to preclusive effect of a potential judgment in Israel, including *by movant Phoenix Insurance Company*, made the prospective lead plaintiffs subject to "unique defenses" and counseled against their appointment); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 352 (D. Md. 2003) (holding that "the possibility that foreign courts will not enforce a decision in favor of [would-be lead plaintiff] against foreign plaintiffs in the class" rebutted the presumption that movant was an adequate lead plaintiff).[14] Judge Patel's finding with respect to Phoenix Insurance

---

[13] To be clear, the Court need not find at this stage that the lack-of-standing defense is likely to prevail or even that it is valid. *See In re Netflix, Inc., Securities Litig.*, 2012 WL 1496171, at *5 ("There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial. The point of this requirement is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.") (internal citation omitted).

[14] *See also In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374 (JWB), slip op., at *36-37 (D.N.J. June 30, 2004) (attached as Pachman Decl., Ex. F) (holding that foreign entity was not

Company in *Eichenholtz* remains true here: the uncertainty about whether an Israeli court would give *res judicata* effect to a judgment of this Court weighs against Phoenix's fitness as a lead plaintiff. 2008 WL 3925289, at *10 n.8.

As demonstrated above, even if Phoenix were presumptively the most adequate plaintiff, it would be subject to unique defenses.

## II.    CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court appoint them lead plaintiff and approve their selection of Susman Godfrey L.L.P. and FBBC as lead counsel.

Dated:  June 21, 2022

MARC M. SELTZER
KRYSTA KAUBLE PACHMAN
SUSMAN GODFREY L.L.P.

ROBERT A. CURTIS
EVIN D. GAMARNIK
AARON L. ARNDT
JORDAN A. LIEBMAN
FOLEY BEZEK BEHLE
 & CURTIS, LLP


By:    */s/ Krysta Kauble Pachman*
              Krysta Kauble Pachman
*Attorneys for Plaintiff and Movant James H. Dahl*

---

adequate to serve as lead plaintiff in part due to possibility that the fund (and other foreign purchasers) might have to relitigate their claims in foreign jurisdiction due to lack of preclusive effect of U.S. judgment and might be eliminated from class certification because a judgment in the U.S. forum would be "incapable of serving their interests" for the same reason).