MARC M. SELTZER, SBN 54534
mseltzer@susmangodfrey.com
KRYSTA KAUBLE PACHMAN, SBN 280951
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150


ROBERT A. CURTIS, SBN 203870
rcurtis@foleybezek.com
KEVIN D. GAMARNIK, SBN 274335
kgamarnik@foleybezek.com
AARON L. ARNDT, SBN 290748
aarndt@foleybezek.com
JORDAN A. LIEBMAN, SBN 317930
liebman@foleybezek.com
FOLEY BEZEK BEHLE
 & CURTIS, LLP
15 West Carrillo Street
Santa Barbara CA 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722

*Attorneys for Movants Christian A. Felipe and James H. Dahl*


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN A. FELIPE, individually as administrator of the CHRISTIAN A. FELIPE CONTRIBUTORY IRA, and on Behalf of Similarly Situated Persons,<br><br>Plaintiff,<br><br>v.<br><br>PLAYSTUDIOS, INC., a Delaware corporation; ANDREW PASCAL, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:22-cv-02164-VC<br><br>REPLY IN SUPPORT OF CHRISTIAN A. FELIPE AND JAMES H. DAHL'S AMENDED MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS, APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS<br><br>DATE: July 14, 2022<br>TIME: 2:30 p.m.<br>PLACE: Courtroom 5 – 17th Floor<br>(via Zoom) |

**TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................................................1

II.  ARGUMENT........................................................................................................................2

     A.   Movants—not Phoenix—have the largest financial interest in the case
          and are presumptively the most adequate plaintiff. ................................................2

     B.   Phoenix points to no facts that undermine Mr. Felipe and Mr. Dahl's
          adequacy or typicality. ............................................................................................4

III. CONCLUSION....................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Camp v. Qualcomm Inc.*,
   18-CV-1208-AJB-BLM, 2019 U.S. Dist. LEXIS 10269 (S.D. Cal. Jan. 22,
   2019) ...................................................................................................................................6

*Coopersmith v. Lehman Bhd., Inc.*,
   344 F. Supp. 2d 783 (D. Mass. 2004) ..................................................................................8

*Eichenholtz v. Verifone Holdings, Inc.*,
   2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ....................................................................10

*Hachem v. Gen. Elec. Inc.*,
   No. 17-CV-8457 (JMF), 2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018) .................................8

*In re Apple Inc. Sec. Litig.*,
   No. 4:19-CV-2033-YGR, 2022 WL 354785 (N.D. Cal. Feb. 4, 2022) ...................................5

*In re Boeing Co. Aircraft Sec. Litig.*,
   No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012 (N.D. Ill. Jan. 28, 2020)............................6

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...............................................................................................2

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).................................................................................................9

*In re Microstrategy Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ...................................................................................9

*In re Solar City Corp. Sec. Litig.*,
   No. 16-cv-4686 (LHK), 2017 WL 363274 (N.D. Cal. Jan. 25, 2017)................................5, 6

*In re Stitch Fix, Inc. Sec. Litig.*,
   393 F. Supp. 3d 833 (N.D. Cal. 2019) ..............................................................................9, 10

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999)...................................................................................8

*In re Vonage Initial Pub. Offering Secs. Litig.*,
   No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007) ..............................6

*Malasky v. IAC/Interactivecorp*,
   Case No. 1:04-cv-7447 (RJH), 2004 WL 2980085 (S.D.N.Y. Dec. 21, 2004) ........................7

*Montesano v. Eros Int'l PLC*,
No. CV1914125JMVJAD, 2020 WL 1873015 (D.N.J. Apr. 14, 2020) ...................................8

*Perrin v. Sw. Water Co.*,
2009 WL 10654690 (C.D. Cal. Feb. 13, 2009)...........................................................................9

*Schulman v. Lumenis, Ltd.*,
No. 02-cv-1989 (DAB), 2003 WL 21415287 (S.D.N.Y. June 18, 2003)....................................7

*Sgarlata v. Paypal Holdings, Inc.*,
No. 3:17-CV-06956, 2018 WL 1569831 (N.D. Cal. Mar. 30, 2018) ........................................7

*Sneed v. AcelRx Pharms., Inc.*,
No. 21-CV-04353-BLF, 2021 WL 5964596 (N.D. Cal. Dec. 16, 2021) ...................................9

*TDH Partners LLP v. Ryland Grp., Inc.*, No. 3:04-CV-0073-B, 2006 WL 8437050
(N.D. Tex. June 2, 2006)............................................................................................................8

*Wayne Cty. Employees' Ret. Sys. v. Mavenir, Inc.*,
No. CV 18-1229-CFC, 2021 WL 311284 (D. Del. Jan. 29, 2021)............................................5

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) ..........................................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .................................................................................................1, 2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .............................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)..............................................................................................4

Private Securities Litigation Reform Act of 1995 .................................................................2, 7, 8, 9

**Rules**

Fed. R. Civ. P. 10(b) ................................................................................................................1, 2, 4

Fed. R. Civ. P. 23.......................................................................................................................2, 4, 5

L.R. 3-7(c).........................................................................................................................................5

## I.     **INTRODUCTION**

Plaintiff Christian A. Felipe, individually as administrator of the Christian A. Felipe Contributory IRA, and James H. Dahl, on behalf of himself and the Dahl Entities[1] (together with Mr. Felipe, "Movants"), respectfully submit this reply memorandum of law in support of their motion for appointment as lead plaintiff and for approval of their selection of lead counsel. For the reasons set forth herein, Movants respectfully request that they be jointly appointed lead plaintiff, that their choice of lead counsel be approved, and that the competing motions be denied.

Phoenix makes two arguments in support of its motion: that it has the largest financial interest and that Mr. Felipe and Mr. Dahl are inadequate to serve as lead plaintiffs. Both are wrong.

*First*, Phoenix does not have the largest financial interest in this matter.  Its math is simply wrong. As explained below, Phoenix claims the largest stake in this matter by miscalculating Movants' Section 10(b) losses. When Phoenix's math is corrected—as it has been by Movants' expert—the numbers clearly show that Movants, not Phoenix, have, by far, the largest financial interest and are therefore presumptively the most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

*Second*, Phoenix's broadsides against Mr. Felipe and Mr. Dahl's adequacy as plaintiffs miss the mark. Having no solid ground to dispute their typicality and adequacy, Phoenix fastens on to minor, good-faith errors—which were corrected—and unfounded invective about "gamesmanship" and "lawyer-driven litigation." Under black-letter law, the fact that Mr. Felipe filed errata to the complaint and class members were advised they had until June 7 to file lead plaintiff motions do not demonstrate that Movants are inadequate—in stark contrast to the

---

[1] The Dahl Entities are the IRA FBO James H. Dahl, Pershing LLC as Custodian ROTH Conversion Account; the Equity Trust Company, Custodian FBO James H. Dahl Roth IRA; and the Dahl Family Foundation.

egregious, uncorrected, bad-faith errors in the cases Phoenix cites. Likewise, Phoenix's charges about "gamesmanship" are baseless; Phoenix has no answer to the fact that Mr. Felipe and Mr. Dahl spoke about addressing the Playstudios' fraud before this lawsuit was even filed. Movants have amply established their adequacy and typicality. As they stated in their joint declaration (ECF No. 31-2), Mr. Felipe and Mr. Dahl are a cohesive pair of sophisticated investors who understand the responsibilities of lead plaintiffs and are prepared to shoulder them on behalf of the class.

Movants have the largest stake in this matter and otherwise satisfy the requirements of Rule 23, and the Court should respectfully appoint them to be lead plaintiffs.

## II.   ARGUMENT

### A.   Movants—not Phoenix—have the largest financial interest in the case and are presumptively the most adequate plaintiff.

In its opposition brief, Phoenix lays claim to being the presumptive "most adequate plaintiff" under the PSLRA in part because it "incurred the largest loss" and the *Lax* factors otherwise weigh in its favor. ECF No. 30 at 2, 6-7. But Phoenix is wrong. As explained below, when properly calculated, Movants—not Phoenix—have the largest loss and are therefore presumptively the most adequate plaintiff under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set out below, and in greater detail in the attached declaration of Michael A. Marek, Phoenix significantly understates Movants' financial stake in the litigation, including their losses. Applying Phoenix's methods, Movants' Section 10(b) losses in fact *exceed* Phoenix's—by almost a million dollars—and Movants' Section 11 damages, funds expended, and net securities purchased also exceed those of Phoenix. *See* Pachman Decl., Ex. A (Marek Decl.) ¶ 8. Accordingly, using Phoenix's approach, Movants have "the largest financial interest in the relief sought by the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and Felipe and Dahl are the presumptive lead plaintiffs. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

2

In its opposition brief, Phoenix asserts that it has the largest stake and that its monetary losses from the Playstudios fraud exceed Movants', and it sets forth its calculations in a table (the "Phoenix Table"). ECF No. 30 at 2. Because Movants' own calculations differed significantly from Phoenix's, and the various movants are presumably working from the same transaction information that has been publicly filed along with their motions, Movants set out to replicate Phoenix's calculations in the Phoenix Table. *See* Pachman Decl., Ex. A (Marek Decl.) ¶¶ 5-6. As explained in Mr. Marek's declaration, Movants successfully arrived at the same financial stake calculations as Phoenix did for two of the movants, Eric Wiesler[2] and Phoenix. *Id.* ¶ 7. This replication demonstrates that, for purposes of evaluating Phoenix's calculations, Movants are—to the best of their knowledge—using the same calculation methods and assumptions as Phoenix did in calculating each movant's respective financial interests. *See id.*

However, employing the same methods and assumptions used by Phoenix, Movants arrive at higher numbers for their own losses than Phoenix does—so much higher, in fact, that the difference is outcome-determinative. The table below compares (i) Movants' actual financial interest and losses when correctly calculated using Phoenix's method and (ii) Phoenix's erroneous calculation of the same:

---

[2] Mr. Wiesler has filed a notice of non-opposition to Movants' and Phoenix's motions. ECF No. 29. Thus while his financial interests are not relevant to the Court's lead plaintiff assessment, his transaction information is still helpful to Movants in serving as a cross-check of Phoenix's calculations as set forth in its opposition brief.

**Felipe/Dahl Movants vs. Phoenix — Financial Interests**

| Movant | Shares Purchased During Class Period | Net Shares Purchased During Class Period | Funds Expended During Class Period | Section 10(b) Losses | Section 11 Losses |
|---|---|---|---|---|---|
| Phoenix (Phoenix Table) | 1,074,814 | 0 | $8,334,948 | $3,327,785 | $3,327,785 |
| Felipe / Dahl (Erroneous Phoenix Table) | 953,333 | 879,900 | $7,881,488 | $3,276,105 | $3,278,394 |
| **Felipe / Dahl (Corrected Marek Table)** | **1,053,333** | **893,996** | **$9,100,488** | **$4,252,779** | **$4,328,940** |

Pachman Decl., Ex. A (Marek Decl.) ¶¶ 8-9. As this table demonstrates, even using Phoenix's own methods and assumptions, Movants have greater Section 10(b) losses and Section 11 damages; more funds expended during the class period; and more net shares purchased during the class period.

Accordingly, Phoenix does not "lead[] the field of movants with respect to" losses. As explained above, Phoenix's claim to having the largest stake is premised entirely on questionable assumptions and bad math. Because Movants, not Phoenix, have the greatest financial interest in the litigation, they are presumptively the most adequate plaintiff, and should be appointed lead plaintiff if they "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). As set out below, they do.

B. <u>Phoenix points to no facts that undermine Mr. Felipe and Mr. Dahl's adequacy or typicality.</u>

Phoenix's scattershot attacks on Felipe and Dahl's adequacy should be rejected. First, Phoenix contends Felipe has established a "pattern of erroneous submissions." But all the examples cited by Phoenix show that Mr. Felipe has timely corrected any inaccurate information. There is nothing inappropriate about filing an amended certification or a notice of errata to correct

4

minor errors in a complaint. *See In re Apple Inc. Sec. Litig.*, No. 4:19-CV-2033-YGR, 2022 WL 354785, at \*5 (N.D. Cal. Feb. 4, 2022) (holding that inadvertent errors in certification do not preclude a finding of adequacy, even where it took plaintiff two years to correct the error); *In re Solar City Corp. Sec. Litig.*, No. 16-cv-4686 (LHK), 2017 WL 363274, at \*6 (N.D. Cal. Jan. 25, 2017) ("Multiple district courts have held that minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement.") (quotation marks omitted) (collecting cases). Neither the errata nor corrected certification were made in bad faith. *Apple*, 2022 WL 354785, at \*5.[3]

Nor is there any basis for Phoenix's claim that Mr. Felipe erroneously stated the record date in the complaint was May 25, 2021. Mr. Felipe never stated in the complaint that the record date was May 25. What Phoenix appears to be referring to is the portion of the class definition referring to class members who "held common stock of Acies as of May 25, 2021, and were eligible to vote at Acies' June 16, 2021 special meeting." ECF No. 13 at 2. Of course, a class member would not have been eligible to vote at Acies' June 16, 2021 special meeting if he or she did not hold common stock on the record date—May 14, 2021—so Phoenix's claimed "error" is simply not present. The class definition merely reflects that any investor who held common stock as of the record date, but did not hold through the date of the issuance of the misleading proxy statement (May 25, 2021), would have no claim. *See Wayne Cty. Employees' Ret. Sys. v. Mavenir, Inc.*, No. CV 18-1229-CFC, 2021 WL 311284, at \*4 (D. Del. Jan. 29, 2021), *report and recommendation adopted*, No. CV 18-1229-CFC, 2021 WL 1147042 (D. Del. Mar. 25, 2021) (granting motion to dismiss without prejudice where plaintiff alleged it owned shares on the record

---

[3] To the extent Phoenix contends that mistakes render Mr. Felipe inadequate to serve as lead plaintiff, it should be noted that Phoenix has failed to comply with L.R. 3-7(c), and, as discussed above, has submitted unsupported and incorrect calculations.

date but not through consummation of the merger).[4]

The cases cited by Phoenix are all inapposite. In *Camp*, the movant declared under oath that he had filed a complaint, though he had not done so, and did not correct his transaction records and loss calculations. *Camp v. Qualcomm Inc.*, 18-CV-1208-AJB-BLM, 2019 U.S. Dist. LEXIS 10269, at *8-10 (S.D. Cal. Jan. 22, 2019). Here, neither Mr. Felipe nor Mr. Dahl made inaccurate representations about filing a complaint, and Mr. Felipe corrected his transaction history in a subsequent filing. The nature of the error in *Camp* was also much more egregious; the movant listed the wrong trading price and wrong gross calculation. *Id.* Here, by contrast, Mr. Felipe inadvertently failed to include certain shares (which had the effect of increasing his claimed losses).[5] *Vonage* similarly involved a movant who incorrectly claimed he had authorized the filing of a complaint under oath and filed certifications with incorrect trading data and loss calculations that were not corrected. *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (D.N.J. Sept. 6, 2007). In *Tomaszewski*, like in *Camp* and *Vonage*, the movant did not correct his certification, which did not accurately reflect the number of trades and the price per share. 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019). And in *Boeing*, the movant misrepresented whether it had sold $7.5 million of stock without correction. *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012, at *16-*17 (N.D. Ill. Jan. 28, 2020).

---

[4] To the extent Phoenix is suggesting a class definition that encompasses investors holding Acies shares as of May 14, 2021 rather than May 25, 2021, that suggestion is problematic because the class definition may include individuals who held shares as of May 14, but not as of May 25, and thus did not rely on the proxy statement issued on May 25, 2021.

[5] *See In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017) ("In fact, because Fish is seeking to become lead plaintiff—presumptively, the plaintiff with the largest financial interest in the litigation—Fish would have benefited from increasing the claimed amount rather than decreasing it, as occurred here. Thus, the Court finds it unlikely that bad faith motivated Fish's error.").

Second, Phoenix also makes much of the fact that the PSLRA notice listed June 7 as the filing date and suggests that Mr. Felipe was acting in bad faith. Not so. By the time counsel for Mr. Felipe realized the error, the Court had already entered an order stipulating that lead counsel briefing was due June 7. ECF No. 19 at 1. Thus, there was no need for corrective notice because any motions filed as of June 7 were timely. Phoenix claims, without citation, that the PSLRA's statutory instructions may not be circumvented by stipulation. The law says otherwise. For example, in *Chill v. Green Tree Fin. Corp.*, the court refused to strictly apply the 60-day requirement where there were several different deadlines referenced in connection with the notice. 181 F.R.D. 398, 404, n.7 (D. Minn. 1998) ("We are satisfied that the drafters of the PSLRA did not contemplate such a race to the courthouse, which would deprive potentially injured plaintiffs of the right [t]o serve in the prosecution of the litigation. The overriding purpose of the Private Securities Litigation Reform Act of 1995 ('PSLRA' was to replace so-called figurehead or professional plaintiffs, with real investors, in part, by slowing that chase.").[6]

Even assuming *arguendo* that the Court's order did not modify the deadline, the 60-day requirement is not jurisdictional, and courts have discretion to excuse it. In *Malasky*, the court appointed a co-lead plaintiff who filed an amended motion three weeks later that stated greater financial losses. *Malasky v. IAC/Interactivecorp*, Case No. 1:04-cv-7447 (RJH), 2004 WL 2980085, at *4 n.2 (S.D.N.Y. Dec. 21, 2004). The reason for the amended motion was that one of the movants did not have access to his full trading data at the time of the original motion. Here, Movants' amended motion was filed the next day. *See also Schulman v. Lumenis, Ltd.*, No. 02-cv-

---

[6] Indeed, in *Sgarlata*, counsel for Phoenix acknowledged that the court has the authority to modify the PSLRA deadline. *Sgarlata v. Paypal Holdings, Inc.*, No. 3:17-CV-06956, 2018 WL 1569831, at *2 (N.D. Cal. Mar. 30, 2018) ("[T]he Court has authority to order a shorter period within which to move the Court for appointment as lead plaintiff than the sixty (60) days provided in the PSLRA").

1989 (DAB), 2003 WL 21415287 (S.D.N.Y. June 18, 2003) (permitting amended motion as timely).

Phoenix's citation to *Telxon* is not to the contrary. In that case, three movants timely moved to be appointed lead plaintiff, and the court would not allow a party to base the amount of its loss on a figure contained in an amended complaint filed after the sixty-day deadline. *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999). But even in *Telxon*, the court noted that if the largest loss suffered among the potential lead plaintiffs was only "nominal," the court may have been forced to "reopen applications for lead plaintiff to others," even though the deadline had passed. *Id.* at 823-24 & n.37. "Thus, the *Telxon* court recognized that circumstances might necessitate adjustments to the PSLRA's schedule." *Coopersmith v. Lehman Bhd., Inc.*, 344 F. Supp. 2d 783, 792 (D. Mass. 2004) (recognizing that the 60-day limit in the PSLRA is "not sacrosanct" and holding that a person who files a complaint after the sixty-day period expires may nonetheless move to be named lead plaintiff where that complaint is eventually consolidated with the other actions and this new plaintiff unquestionably has the largest stake in the litigation). *See also TDH Partners LLP v. Ryland Grp., Inc.*, No. 3:04-CV-0073-B, 2006 WL 8437050, at *4 (N.D. Tex. June 2, 2006) ("[T]he *Telxon* Court implicitly suggested that the PSLRA's deadlines are not entirely inflexible."); *Hachem v. Gen. Elec. Inc.*, No. 17-CV-8457 (JMF), 2018 WL 1779345, at *2 (S.D.N.Y. Apr. 12, 2018) (finding that "the deadline [to file lead plaintiff applications] should be extended in the interests of justice" because of "uncertainty" about the deadline); *Montesano v. Eros Int'l PLC*, No. CV1914125JMVJAD, 2020 WL 1873015, at *8 (D.N.J. Apr. 14, 2020) (noting that concerns with motions filed after 60 days have less force where there is no evidence that the movant "manipulate[d] their financial loss calculation after reviewing timely-filed motions" and where the filing would "not cause significant delays in the litigation").

Third, Phoenix claims Mr. Felipe and Mr. Dahl cannot jointly serve as lead plaintiffs. The PSLRA defines the "most adequate plaintiff" as "the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). Courts have held that "small and manageable groups serving as lead plaintiffs do not frustrate Congress' desire to ensure that investors, rather than lawyers, control securities litigation." *Perrin v. Sw. Water Co.*, 2009 WL 10654690, at *3 (C.D. Cal. Feb. 13, 2009) (citing *In re Cavanaugh*, 306 F.3d at 726) (appointing group of three lead plaintiffs); *accord In re Cendant Corp. Litig.*, 264 F.3d 201, 266-67 (3d Cir. 2001) (recognizing the PSLRA specifically provides for "groups of persons" to serve as lead plaintiff). Both Felipe and Dahl "are sophisticated investors who understand the responsibilities of being a lead plaintiff under the PSLRA and have indicated that they will cooperate in the prosecution of this litigation on behalf of the class." *Sneed v. AcelRx Pharms., Inc.*, No. 21-CV-04353-BLF, 2021 WL 5964596, at *5 (N.D. Cal. Dec. 16, 2021) (granting movants' motion for appointment of lead plaintiff). Also, as both common stock and PIPE investors, they have the ability to represent the diversity of the class.

Phoenix's cases misunderstand the relationship between Mr. Felipe and Dahl, suggesting their relationship was formed by counsel. In fact, as their joint declaration explains, they were in contact as early as January 2022 to discuss pursuing claims against Playstudios. ECF No. 31-2 at ¶ 6. This joint declaration also describes how Mr. Felipe and Mr. Dahl plan to work together. *Id.* ¶¶ 12-13. *Cf. In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000). This is not like *Stitch Fix*, where the lawyer attested that he had introduced the movants to one another: "In terms of how they came together, they contacted — each of them contacted my firm individually. We made them aware of each other ... and gave them the information to contact each

9

other." *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019). Nor is this "lawyer-driven litigation" the court warned of in *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *8 (N.D. Cal. Aug. 22, 2008).

Finally, Phoenix claims—again, without citation—that Mr. Dahl did not provide "support" for his largest transaction, his PIPE investment. Of course, Mr. Dahl attested to his investment in his certification and there is no requirement that he provide any more. In any event, Mr. Dahl has filed his Subscription Agreement concurrently with this motion. *See* ECF No. 28-5 (Dahl Certification); *see also* Pachman Decl., Ex. B (Subscription Agreement between Mr. Dahl relating to his PIPE investment).

## III.   CONCLUSION

For the foregoing reasons, Movants—who not only have the greatest losses, but can represent the broadest group of investors—respectfully request that the Court appoint them lead plaintiff and approve their selection of Susman Godfrey L.L.P. and FBBC as lead counsel.

Dated:  June 28, 2022

MARC M. SELTZER
KRYSTA KAUBLE PACHMAN
SUSMAN GODFREY L.L.P.

ROBERT A. CURTIS
KEVIN D. GAMARNIK
AARON L. ARNDT
JORDAN A. LIEBMAN
FOLEY BEZEK BEHLE
 & CURTIS, LLP

By:   */s/ Krysta Kauble Pachman*
            Krysta Kauble Pachman
*Attorneys for Plaintiff and Movant James H. Dahl*

10