POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movants The Phoenix Insurance*
*Company, Ltd. and The Phoenix Provident*
*Pension Fund Ltd. and Proposed Lead*
*Counsel for the Class*

(*additional counsel on signature page*)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTIAN A. FELIPE, individually as administrator of the CHRISTIAN A. FELIPE CONTRIBUTORY IRA, and on Behalf of Similarly Situated Persons,<br><br>Plaintiff,<br><br>v.<br><br>PLAYSTUDIOS, INC., a Delaware corporation; ANDREW PASCAL, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:22-cv-02164-VC<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF THE PHOENIX INSURANCE COMPANY, LTD. AND THE PHOENIX PROVIDENT PENSION FUND LTD. FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br>CLASS ACTION<br><br>Date:  July 14, 2022<br>Time:  2:30 p.m.<br>Judge:  Hon. Vince Chhabria<br>Courtroom:  5 – 17th Floor |

## TABLE OF CONTENTS

I.    ARGUMENT ...........................................................................................................................1

    A.    THE COURT SHOULD APPOINT PHOENIX AS LEAD PLAINTIFF.............1

        1.    Phoenix, Not Felipe and Dahl, Possesses the Largest Financial Interest in the Action...............................................................................................................1

        2.    Phoenix Is Not Subject to Unique Defenses or Otherwise Unfit to Serve as Lead Plaintiff .....................................................................................................4

            a.    Phoenix Has Standing Because It Directly Owns the Shares Listed on Its Certification .......................................................................................4

            b.    Phoenix's Appointment as Lead Plaintiff Raises No *Res Judicata* Concerns .................................................................................................5

    B.    FELIPE AND DAHL ARE INADEQUATE UNDER RULE 23 .........................7

        1.    Felipe and Dahl Are an Improper Movant Group.....................................7

        2.    Felipe and Dahl's Continued Gamesmanship Further Demonstrates Their Inadequacy ..........................................................................................................9

II.    CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293-LJK,
    2020 U.S. Dist. LEXIS 103647 (S.D.N.Y. June 12, 2020) ....................................................... 6

*Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP,
    2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) .................................................... 5, 9

*Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC,
    2020 U.S. Dist. LEXIS 162510 (N.D. Cal. Sept. 4, 2020) ....................................................... 7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ................................................................................................ 1, 3

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428,
    2017 U.S. Dist. LEXIS 91938 (S.D. Tex. June 15, 2017) .......................................................... 5

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ................................................................................................. 2

*In re Mylan N.V. Sec. Litig.*, 16-CV-7926 (JPO),
    2018 U.S. Dist. LEXIS 52084 (S.D.N.Y. Mar. 28, 2018) ........................................................ 7

*In re Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016) .............................................................................................. 6

*In re Stitch Fix, Inc. Sec. Litig.*,
    393 F. Supp. 3d 833 (N.D. Cal. 2019) .................................................................................. 7, 8

*In re Teva Sec. Litig.*,
    512 F. Supp. 3d 321 (D. Conn. 2021) ....................................................................................... 7

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................................................ 5

*Loftus v. Primero Mining Corp.*, CV 16-01034-BRO (RAOx) *et al.*,
    2016 U.S. Dist. LEXIS 204773 (C.D. Cal. May 12, 2016) ...................................................... 2

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010) .................................................................................................................. 6

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
    63 F. Supp. 3d 394 (D. Del. 2014) ........................................................................................... 6

*Roby v. Ocean Power Techs.*, No. 14-cv-3799 (FLW) (LHG),
    2015 U.S. Dist. LEXIS 42388 (D.N.J. Mar. 17, 2015) ..........................................................5, 7

*Takeda v. Turbodyne Techs., Inc.*,
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) ........................................................................................ 6

## **Statutes**

15 U.S.C. § 78u-4 ........................................................................................................................ 6

PSLRA .......................................................................................................................................... 7

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................................................ 7

Lead Plaintiff Movant Phoenix[1] respectfully submits this reply memorandum of points and authorities in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Lead Counsel in this Action (Dkt. No. 24); and in opposition to the competing motion of Felipe and Dahl (Dkt. No. 28).[2]

## I.   ARGUMENT

### A.   THE COURT SHOULD APPOINT PHOENIX AS LEAD PLAINTIFF

#### 1.   Phoenix, Not Felipe and Dahl, Possesses the Largest Financial Interest in the Action

In their opposition brief, Felipe and Dahl claim that they, not Phoenix, possess the largest financial interest in this litigation.  Although Felipe and Dahl have not provided a damages analysis that would permit Phoenix and the Court to review their calculations and examine their methodology in detail, they argue that Phoenix erred in "count[ing] as 'purchases' the Playstudios stock it acquired by exchanging shares of Acies Acquisition Corp.—which it acquired *before* the class period began—for Playstudios shares on June 22, 2021."  Dkt. No. 31 at 4.  According to Felipe and Dahl, with such shares excluded from Phoenix's financial interest analysis, Felipe and Dahl would possess the largest financial interest in this Action.  *Id.*

Felipe and Dahl are wrong.  Although the Court is not required to adopt any specific methodology in calculating losses for purposes of Lead Plaintiff appointment, the Court must use a method that is "both rational and consistently applied".  *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002).  Here, Phoenix respectfully submits that Felipe and Dahl's methodology, to the extent that it can be discerned, is neither rational ***nor*** consistently applied, and thus cannot pass muster under *Cavanaugh*.

First, Felipe and Dahl have offered no reason why shares acquired via the Merger (that is, when Acies stock and warrants converted to Playstudios stock and warrants) should be excluded

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meanings as set forth in Phoenix's moving and opposition briefs.  *See* Dkt. Nos. 24, 30.

[2] Initially another putative Class member, Wiesler, filed a similar competing motion.  Dkt. No. 21.  On June 21, 2022, Wiesler filed a notice stating his non-opposition to the motions of Phoenix and Felipe and Dahl.  Dkt. No. 29.

from loss calculations, considering that **they are expressly included in the Complaint's Class definition—a Complaint that Felipe himself filed**.  The Class definition in Felipe's Complaint includes investors who:

> (1) purchased, or otherwise acquired the securities of Playstudios between June 22, 2021 and March 1, 2022, both dates inclusive, including, but not limited to, those who purchased or acquired Playstudios securities pursuant to the PIPE offering; (2) held common stock of Acies as of May 25, 2021, and were eligible to vote at Acies' June 16, 2021 special meeting; and/or (3) purchased or otherwise acquired Playstudios common stock pursuant to or traceable to the Acies' Registration Statement and Proxy Statement issued in connection with the June 2021 Merger.

*See* Dkt. No. 13 at 2.  Here, the Playstudios securities that Phoenix acquired when its Acies securities were exchanged for Playstudios securities on or around June 22, 2021 pursuant to the Acies' Registration Statement are thus plainly within the Class definition.  Courts in the Ninth Circuit and elsewhere have found that shares acquired as a result of a corporate merger are no less damaged by securities fraud than shares acquired through open-market purchases.  *See*, *e.g.*, *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 152 n.10 (D. Del. 2005) ("[a] fraud on the market that inflates the price of the offerors [sic] stock is no less injurious to those who receive such stock in a share-exchange than those who purchase the stock on the open market."); *Loftus v. Primero Mining Corp.*, CV 16-01034-BRO (RAOx) *et al.*, 2016 U.S. Dist. LEXIS 204773, at *16 (C.D. Cal. May 12, 2016) ("The Court does not find the fact that [movants] acquired their Primero shares in connection with mergers—rather than purchasing them on the open market—makes Wulff and Cook atypical or subject to unique defenses").

Moreover, not only did Felipe file the Complaint that defined the Class in this Action, but Felipe himself had significant pre-Class Period holdings of Acies securities that converted to Playstudios shares via the Merger.  Both the error-laden Certification that he filed with his Complaint and the Amended Certification he filed with this Lead Plaintiff Motion demonstrate that most of his transactions relevant to this lawsuit were pre-Class Period holdings of Acies common stock and warrants.  *See* Dkt. Nos. 1 at *37-*44, 25-4.  Indeed, Felipe admitted in his Certification that these pre-Class Period transactions were "the subject of th[is] action" (Dkt. No. 25-4 at *2), and hence recoverable.  Accordingly, adopting Felipe's argument "that a class

member may [not] count, as in-class period 'purchases,' an exchange of shares purchased before the class period" would not only reduce Phoenix's financial interest, it would significantly reduce *Felipe's* financial interest as well, given that he acquired hundreds of thousands of Playstudios shares via the Merger. Moreover, as discussed *infra* at Section I.B.2., Felipe and Dahl's willingness to manipulate the Class definition for their own purposes by excluding an entire group of investors—that is, those who acquired Playstudios shares via the Merger rather than via open-market purchases—from the Class at the outset of this litigation bespeaks a troubling readiness to put their own interests ahead of those of absent Class members.

Second, Felipe and Dahl's methodology is further impermissible because they apply it selectively, at odds with *Cavanaugh's* mandate that any methodology be "consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4. Felipe and Dahl insist on excluding Phoenix's Merger-acquired Playstudios shares from Phoenix's financial interest calculation. At the same time, however, Felipe and Dahl readily include in their own financial interest calculation losses that Dahl incurred as a result of his PIPE investment, which *itself* comprised part of the Merger. *See* Dkt. No. 1 ¶ 5 ("the consideration to Old Playstudios shareholders for the Merger would comprise at least 89.1 million shares of Acies common stock, worth $10 per share, up to $150 million in cash, ***and a $250 million investment PIPE of common stock of Acies***."). While Dahl has failed to provide *any* information regarding his PIPE investment (*see* Dkt. No. 30 at 13), a Form 8-K filed by Acies indicates that it was offered on February 1, 2021, months before the Class Period. *See* Reply Declaration of Jennifer Pafiti ("Pafiti Reply Decl."), Ex. A. Felipe and Dahl have not even attempted to explain why losses on the securities purchased prior to the Merger which were converted pursuant to the Registration Statement should count toward Dahl's financial interest in this litigation, while Phoenix's must be excluded.

Felipe and Dahl also assert that "even using Phoenix's method"—*i.e.*, including losses on Acies securities that converted to Playstudios securities in the Merger—Felipe and Dahl "*still* have the most substantial losses*," claiming to have incurred a LIFO loss of approximately $4.19 million compared to Phoenix's loss of approximately $3.33 million. *See* Dkt. No. 31 at 4. Yet to

arrive at a loss figure of $4.19 million, Felipe and Dahl appear to have used the $10.00 PIPE price when valuing their purchases of the 650,000 shares acquired to the PIPE offering.  Yet the PIPE offering was a *pre*-Class Period acquisition of Acies stock, and those securities only became Playstudios shares when they converted to Playstudios shares post-Merger, on June 22, 2021.  Accordingly, those shares should be valued at the Class Period acquisition price—that is, the closing price on June 22, 2021, or $8.40 per share—rather than the pre-Class Period PIPE acquisition price of $10.00, the application of which improperly inflates Felipe and Dahl's losses.  Valuing the purchases of the PIPE-acquired shares at $8.40 per share rather than $10.00 per share reduces Felipe and Dahl's losses to only approximately $3.28 million—that is, a smaller loss than Phoenix.

Nevertheless, if Dahl wishes to value his pre-Merger purchases of Acies securities at $10.00 per share—that is, the actual pre-Merger purchase price—then the same methodology must be applied to Phoenix's pre-Merger purchases.  Valuing Phoenix's pre-Merger shares at their actual pre-Merger purchase prices consistent with Dahl's methodology yields Phoenix a loss of ***$4.9 million***, larger than the $4.19 million loss claimed by Felipe and Dahl.  *See* Pafiti Reply Decl., Ex. B.

### 2. Phoenix Is Not Subject to Unique Defenses or Otherwise Unfit to Serve as Lead Plaintiff

#### a. Phoenix Has Standing Because It Directly Owns the Shares Listed on Its Certification

In their opposition brief, Felipe and Dahl speculate that the Phoenix entities "do not themselves actually own the shares upon which their purported losses are based" and thus "may be subject to a lack-of standing defense not shared by other class members."  Dkt. No. 31 at 12.  Not so.  Definitively rebutting Felipe and Dahl's speculation, the Phoenix entities have submitted a Declaration, unequivocally attesting, under penalty of perjury, that "[a]ll of the securities referenced in the Shareholder Certifications submitted on behalf of Phoenix in support of its Lead Plaintiff Motion (*see* Dkt. No. 24-4 at *2-*7) were at all relevant times directly owed by Phoenix" and "[a]t all relevant times the Phoenix entities held full title to those securities."  *See* Pafiti Reply

Decl., Ex. C.  There is thus no question that Phoenix has standing to pursue claims in this litigation, and no merit to Felipe and Dahl's speculation to the contrary.

### b.   Phoenix's Appointment as Lead Plaintiff Raises No *Res Judicata* Concerns

Felipe and Dahl also incorrectly assert that "'it is unclear if this litigation would be given res judicata effect in Israel,' where Phoenix is based" (Dkt. No. 31 at 14 (quoting *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 U.S. Dist. LEXIS 64633, at *33 n.8 (N.D. Cal. Aug. 22, 2008)), and that this "weighs against Phoenix's fitness as a lead plaintiff."  Dkt. No. 31 at 15.

This argument fails for multiple reasons.  First, to the extent that *res judicata* concerns have arisen in federal securities class actions, it has only been "in cases involving 'foreign cubed' plaintiffs—foreign investors who purchased shares of a foreign company on a foreign securities exchange."  *Roby v. Ocean Power Techs.*, No. 14-cv-3799 (FLW) (LHG), 2015 U.S. Dist. LEXIS 42388, at *35-38 (D.N.J. Mar. 17, 2015).  *See also In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 95 (S.D.N.Y. 2007).  Indeed, in *Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374 (JWB), (D.N.J. June 30, 2004), cited by Felipe and Dahl ostensibly in support of their position, the court acknowledged that it "clearly ha[d] jurisdiction . . . over the claims of the foreign investors that purchased [their] shares on a domestic exchange", but that "the claims of the foreign purchasers that purchased shares [of a foreign company] on a foreign exchange" were a different matter.  *See* Dkt. No. 31-7 at *36.  *See also In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428, 2017 U.S. Dist. LEXIS 91938, at *22-23 (S.D. Tex. June 15, 2017) ("Potential *res judicata* issues do not preclude class certification or require that all foreign purchasers be excluded from the class particularly where, as here, Defendants engaged in significant business operations in the United States, Cobalt's common stock is traded on the New York Stock Exchange, the stock purchases in this case were executed on that exchange, and Defendants are alleged to have made the misrepresentations in the United States.").  Here, no such "foreign cubed" concerns are not implicated, because the Playstudios securities at issue were traded on the NASDAQ, while Playstudios itself is headquartered in Nevada and incorporated in Delaware.

Second, since the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), which limited application of the federal securities laws "only [to] transactions in securities listed on *domestic* [*i.e.*, U.S.] exchanges, and *domestic* transactions in other securities," (*Id.* at 267 (emphases added)), purchases on foreign exchanges are no longer subject to the federal securities laws and such concerns previously raised by foreign-cubed claims are thus simply longer relevant in federal securities class actions. *See*, *e.g.*, *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 363-64 (S.D.N.Y. 2016) (noting that *Morrison* "materially lessens the foreign res judicata concerns" in the context of federal securities class actions).

Third, even assuming *arguendo* that such *res judicata* concerns were nonetheless somehow still relevant here, Felipe and Dahl have not explained why Phoenix's appointment as Lead Plaintiff in this Action would implicate any such concerns, considering that Phoenix has already submitted to this Court's jurisdiction by seeking appointment as Lead Plaintiff. *See*, *e.g.*, *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) ("Concerns respecting the res judicata impact of any judgment . . . are not an issue with respect to the selection of Lead Plaintiffs, since those persons will clearly be bound by the judgment of the court."); *Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293-LJK, 2020 U.S. Dist. LEXIS 103647, at *16-17 (S.D.N.Y. June 12, 2020) (same); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 406-07 (D. Del. 2014) ("[W]hether French courts would recognize a judgment against OFI from this Court is not at issue in this case, because this case involves securities purchased on a domestic exchange and OFI has submitted to this Court's jurisdiction by filing the complaint.").

Fourth, still assuming *arguendo* that *res judicata* concerns were relevant to assessing Phoenix's suitability as a lead plaintiff, Felipe and Dahl have failed to demonstrate that the courts of Israel would *not* give *res judicata* effect to a judgment in this Action. The presumption in favor of Phoenix's appointment as Lead Plaintiff can *only* be rebutted by *proof* that Phoenix somehow "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Felipe and Dahl's unsupported speculation that there may be "uncertainty about whether an Israeli court would give *res judicata* effect to a judgment of this Court" (Dkt.

No. 31 at 15) clearly falls well short of the high standard of "proof" required by the PSLRA. *See*, *e.g.*, *Roby*, 2015 U.S. Dist. LEXIS 42388, at *36-38 ("[W]here movants have provided only 'conjecture' or 'speculation' regarding the preclusive effect of a judgment in a foreign nation, courts have declined to exclude a presumptive lead plaintiff.").

Moreover, not only have Felipe and Dahl failed to carry their burden in this respect, the reality is that the courts of Israel are virtually certain to give binding effect to this Court's judgment in the Action. As U.S. courts have recently acknowledged, "Israel has . . . as a matter of governmental policy and judicial authority, linked its securities laws to ours." *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 360 (D. Conn. 2021). *See also In re Mylan N.V. Sec. Litig.*, 16-CV-7926 (JPO), 2018 U.S. Dist. LEXIS 52084, at *56 (S.D.N.Y. Mar. 28, 2018) (observing that "Israel has chosen, as a matter of Israeli law, to apply U.S. securities law."). As this litigation alleges violations of the federal securities laws, there is thus no reason to credit Felipe and Dahl's suggestion that Israeli courts would not give *res judicata* effect to a judgment in this Action.

Nor has any other court found that Phoenix being based outside of the United States raises *res judicata* concerns or otherwise affect its fitness to serve as a Lead Plaintiff. As previously stated, the Phoenix entities have previously been appointed as lead plaintiffs in the *Ormat*, *ATI*, and *Meta Platforms* litigations, and Phoenix Insurance has been certified as a class representative in the *Mylan* litigation. *See* Dkt. No. 24 at 12-13.

### B.   FELIPE AND DAHL ARE INADEQUATE UNDER RULE 23

#### 1.   Felipe and Dahl Are an Improper Movant Group

As discussed at length in Phoenix's opposition brief, Felipe and Dahl are an improper movant group of the type that courts in the Ninth Circuit routinely decline to appoint as Lead Plaintiffs. *See*, *e.g.*, *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019); *Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC, 2020 U.S. Dist. LEXIS 162510, at *13 (N.D. Cal. Sept. 4, 2020). With their opposition papers, Felipe and Dahl submitted a Joint Declaration that purportedly demonstrates the adequacy of their group, yet the Joint Declaration only underscores the group's inadequacy, raising far more questions than it provides answers.

First, the Joint Declaration only confirms that Felipe and Dahl had no organic relationship that predated the investigation of securities fraud claims against the Defendants. The Joint Declaration states that "[b]efore filing our joint motion, and before Mr. Felipe even filed this Complaint, we were aware of each other's interest in pursuing claims against Defendants and had been in contact since as early as January 4, 2022 (when we spoke on the phone for the first time)[.]" Dkt. No. 31-2 ¶ 6. Yet the Joint Declaration conspicuously omits to mention why or how Felipe and Dahl became "aware of each other[]" and what prompted their January 4 telephone call. If Felipe and Dahl were, for instance, social or professional acquaintances, presumably the Joint Declaration would have said so. In the absence of any such attestation, the only reasonable inference is that they were introduced by counsel, and only in connection with this litigation. As such, they are precisely the type of attorney-created group that courts in the Ninth Circuit generally decline to appoint as Lead Plaintiff. *See*, *e.g.*, *Stitch Fix*, 393 F. Supp. 3d at 835 ("[T]he clear consensus in our district is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses.").

Second, although the Joint Declaration purports to demonstrate Felipe and Dahl's cohesiveness and readiness to "work together" on behalf of the Class (Dkt. No. 31-2 ¶ 14), the Joint Declaration actually demonstrates the opposite. Felipe and Dahl attest to having "been in contact since as early as January 4, 2022" and to forming a view that the Class in this Action would benefit from their joint involvement. *Id.* ¶ 6. Yet following that first telephone conversation, Felipe *alone* then filed the initial Complaint this Action on April 5, 2022. *See* Dkt. No. 1. Then, on June 6, 2022, Felipe filed a motion seeking only his appointment as *sole* lead plaintiff. *See* Dkt. No. 25. Only on June 7, 2022—one day after the statutory motion deadline, more than 60 days after the filing of the Complaint, and more than five months after his January 4 phone call with Felipe—did Dahl first appear in this litigation, belatedly joining Felipe's "Amended Motion". *See* Dkt. No. 28. This course of events plainly raises many questions: Where has Dahl been since January 4? If, after their January 4 phone call, Felipe and Dahl "felt that the

class will benefit greatly if we both serve as lead plaintiffs" (Dkt. No. 31-2 ¶ 6), why did they not timely file a joint motion in the first instance?  Was there some disagreement between Felipe and Dahl that was only resolved after the June 6 motion deadline?  Was Dahl somehow otherwise unprepared to move on the statutory deadline?  The Joint Declaration's failure to explain Dahl's complete absence from this litigation until the second and belated iteration of Felipe's motion significantly undercuts any attestations regarding Felipe and Dahl's readiness to coordinate their efforts and work cohesively and efficiently on behalf of the Class in this Action.

### 2. Felipe and Dahl's Continued Gamesmanship Further Demonstrates Their Inadequacy

As discussed at length in Phoenix's opposition brief, Felipe and Dahl are further inadequate to serve as Lead Plaintiffs because their conduct in this litigation to date smacks of gamesmanship and evinces a readiness to seek individual advantage in this motion practice at the expense of the Class they seek to represent.  Their opposition papers only reinforce these concerns.

First, as discussed *supra* at Section I.A.1., Felipe and Dahl's opposition brief evinces a readiness to game the Class definition for their own advantage.  Felipe and Dahl have attempted to maximize their financial interest in this litigation relative to Phoenix by arguing, in effect, that Acies investors who acquired Playstudios shares via the Merger may not recover their investment losses in this litigation—despite the fact that the Class definition *in the Complaint that Felipe filed* expressly includes such investors.  *See* Dkt. No. 13.  Felipe and Dahl's position would thus impermissibly exclude from the Class, at the very outset of this litigation, a large number of investors, as well as significantly reduce Felipe's own financial interest, by excluding from it the hundreds of thousands of Playstudios shares that he acquired via the Merger.  *See* Dkt. No. 13. That Felipe and Dahl would take such a position at the expense of other Class members merely to secure leadership roles for themselves plainly does not speak well of their fitness to serve as Class fiduciaries.  Indeed, it is "unclear why a plaintiff would argue for" a more restricted class definition "unless it was in the best interest of that particular plaintiff only" because "no benefits accrue" by restricting the class definition.  *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *2.

Second, as discussed above, Felipe and Dahl's Joint Declaration conspicuously fails to explain why Dahl was only added to Felipe's "Amended Motion" on the day after the statutory deadline. Absent any such explanation, the most reasonable—and troubling—inference is that Dahl initially did *not* intend to submit a Motion for Lead Plaintiff with Felipe and was only persuaded to do so after reviewing Phoenix's Lead Plaintiff motion alleging significantly larger losses. Nor does the Joint Declaration explain the inconsistent positions that Felipe has taken regarding the motion deadline in this Action—first publishing a notice incorrectly advising Class members of a June 7 deadline, then filing a motion on June 6 while acknowledging that was in fact the correct deadline (*see* Dkt. No. 25 at 4), and then changing tack *yet again* and claiming that the Amended Motion, filed on June 7, was timely. In sum, then, Felipe and Dahl have not explained why Felipe sowed confusion regarding the correct motion deadline, nor Felipe and Dahl's apparent willingness to capitalize on that confusion by filing their belated "Amended Motion" after the statutory deadline.

## II.    CONCLUSION

For the foregoing reasons, and the reasons set forth in its moving and opposition briefs (Dkt. Nos. 24, 30) Phoenix respectfully requests that the Court issue an Order granting its motion in full and denying the competing motion of Felipe and Dahl.

Dated:  June 28, 2022                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice application pending*)
J. Alexander Hood II

(*pro hac vice application pending*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Orly Guy
Eitan Lavie
HaShahar Tower
Ariel Sharon 4, 34th Floor
Givatayim, Israel 5320047
Telephone: +972 (0) 3 624 0240
Facsimile: +972 (0) 3 624 0111
oguy@pomlaw.com
eitan@pomlaw.com

*Counsel for Movants The Phoenix Insurance Company, Ltd. and The Phoenix Provident Pension Fund Ltd. and Proposed Lead Counsel for the Class*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES - 3:22-cv-02164-VC

PROOF OF SERVICE

I hereby certify that on June 28, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Jennifer Pafiti*
Jennifer Pafiti