ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Ave., Ste. 104
Las Vegas, NV 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
andrew@mlolegal.com

**POMERANTZ LLP**
Omar Jafri (admitted *pro hac vice*)
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
ojafri@pomlaw.com

*Attorneys for Lead Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTIAN A. FELIPE, individually as administrator of the CHRISTIAN A. FELIPE CONTRIBUTORY IRA, and on Behalf of Similarly Situated Persons,<br><br>       Plaintiff,<br><br>  vs.<br><br><br>PLAYSTUDIOS, INC., et al.,<br><br>       Defendants. | CASE NO.: 2:22-cv-01159-RFB-NJK<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................3

    A.  Defendants Form A SPAC To Consummate A Merger With Playstudios .............3

    B.  Acies' Directors Tout Extensive Due Diligence.....................................................4

    C.  Operational Deficiencies of Kingdom Boss Emerge Before the de-SPAC ............5

    D.  Misleading Statements and Omissions Related to the de-SPAC ............................7

    E.  Kingdom Boss's Launch Is Delayed Within Weeks After the IPO but Pascal Continues His Deception ......................................................................................8

    F.  Playstudios Admits the Truth..................................................................................9

III.  ARGUMENT............................................................................................................9

    A.  APPLICABLE LEGAL STANDARDS DISFAVOR DISMISSAL ......................9

        1.  Securities Act Claims Under Section 11 and Rule 8 ...............................9

        2.  Exchange Act Claims Under Rule 14(a)..................................................10

        3.  Exchange Act Claims Under Section 10(b) and SEC Rule 10b-5 ..........11

    B.  LEAD PLAINTIFF ADEQUATELY PLEADS SECTION 11 CLAIMS.............12

        1.  Rule 8's Notice Pleading Standard Applies.............................................12

        2.  Misrepresentations and Omissions in the DP/R  .....................................13

        3.  Defendants Concede Violating Reg S-K's Heightened Standard...........18

        4.  Misrepresentations and Omissions in Forms 425 Are Actionable .........19

        5.  Defendants' Tracing and Statute of Limitations Arguments Fail..........20

C. ACIES' DIRECTORS VIOLATED SECTION 14(a) .........................................21

D. PASCAL AND PLAYSTUDIOS COMMITTED FRAUD IN SEPARATE POST-IPO STATEMENTS ..............................................................................................23

E. CONTROL PERSON CLAIMS ARE SUFFICIENTLY ALLEGED...................28

IV.   CONCLUSION...................................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3226701 Can. v. Qualcomm, Inc.*,
No. 15cv2678-MMA (WVG), 2017 U.S. Dist. LEXIS 174367 (S.D. Cal. Oct. 20, 2017) .....18

*Allison v. Brooktree Corp.*,
999 F. Supp. 1342 (S.D. Cal. 1998) ........................................................................................18

*Azar v. Blount Int'l, Inc.*,
No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493 (D. Or. Mar. 20, 2017) .....................10, 22

*Bhatt v. Tech Data Corp.*,
No. 8:17-cv-02185-T-02AEP, 2018 U.S. Dist. LEXIS 208892 (M.D. Fla. Dec.
11, 2018) .................................................................................................................................25

*Bond v. Clover Health Invs., Corp.*,
587 F. Supp. 3d 641 (M.D. Tenn. 2022) ...............................................................................22

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
No. 19-cv-06361-RS, 2020 U.S. Dist. LEXIS 141724 (N.D. Cal. Aug. 7, 2020) ..................12

*Buttonwood Tree Value Partners, LP v. Sweeney*,
No. SACV1000537CJCMLGX, 2012 U.S. Dist. LEXIS 183438 (C.D. Cal.
Dec. 10, 2012) ........................................................................................................................27

*Camelot Event Driven Fund v. Alta Mesa Res., Inc.*,
No. 4:19-CV-957, 2021 U.S. Dist. LEXIS 71757 (S.D. Tex. Apr. 14, 2021) .........................3

*Chen v. Select Income REIT*,
No. 18-CV-10418 (GBD) (KNF), 2019 U.S. Dist. LEXIS 177687 (S.D.N.Y. Oct. 11,
2019) ......................................................................................................................................19

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) .................................................................................................26

*City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.*,
No. 11 C 8332, 2013 U.S. Dist. LEXIS 19156 (N.D. Ill. Feb. 13, 2013) ........................24, 25

*Costanzo v. DXC Tech. Co.*,
No. 19-cv-05794-BLF, 2020 U.S. Dist. LEXIS 132658 (N.D. Cal. July 27, 2020) ...............15

*Desaigoudar v. Meyercord.*,
223 F.3d 1020 (9th Cir. 2000) .........................................................................................13, 21, 23

*Doubleline Capital LP v. Odebrecht Fin., Ltd.*,
323 F. Supp. 3d 393 (S.D.N.Y. 2018) ...................................................................................21

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)...................................................................................................................11

*Elliot v. China Green Agrics., Inc.*,
    No. 3:10-CV-0648-LRH-WGC, 2012 U.S. Dist. LEXIS 157572 (D. Nev. Nov. 1, 2012).....23

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) .................................................................................................28

*Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*,
    353 F.3d 1125 (9th Cir. 2004) .................................................................................................15

*Fargo v. City of San Juan Bautista*,
    857 F.2d 638 (9th Cir. 1988) ...................................................................................................10

*Fosbre v. Las Vegas Sands Corp.*,
    No. 2:10-CV-00765-KJD-GWF, 2011 U.S. Dist. LEXIS 94919 (D. Nev. Aug. 24,
    2011) .................................................................................................................................14, 28

*Garcia v. J2 Glob.*,
    No. 2:20-cv-06096-FLA (MAAx), 2021 U.S. Dist. LEXIS 78853 (C.D. Cal. Mar.
    5, 2021) .....................................................................................................................................21

*Golub v. Gigamon Inc.*,
    847 F. App'x 368 (9th Cir. 2021) ............................................................................................22

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)..................................................................................................................10

*Hildes v. Arthur Andersen LLP*,
    734 F.3d 854 (9th Cir. 2013) ...................................................................................................10

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) .................................................................................................28

*In re Akorn Sec. Litig.*,
    240 F. Supp. 3d 802 (N.D. Ill. 2017) ......................................................................................16

*In re Alphabet Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) .....................................................................................11, 13, 18, 19 20

*In re Amgen Inc. Sec. Litig.*,
    No. CV 07-2536 PSG (PLAx), 2014 U.S. Dist. LEXIS 183034 (C.D. Cal. Aug. 4, 2014) ....25

*In re AT&T Corp. Sec. Litig.*,
    No. 01-1883 (GEB), 2004 U.S. Dist. LEXIS 29588 (D.N.J. Sept. 2, 2004) ...........................15

*In re Atossa Genetics Inc. Sec. Litig.*,
    868 F.3d 784 (9th Cir. 2017) ...............................................................................................9, 11

*In re BioMarin Pharm., Inc. Sec. Litig.*,
    No. 3:20-cv-06719-WHO, 2022 U.S. Dist. LEXIS 34619 (N.D. Cal. Feb. 28, 2022) ..............3

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020) ...............................................................................................11, 28

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................................12

*In re CV Scis., Inc.*,
    No. 2:18-cv-01602-JAD-BNW, 2019 U.S. Dist. LEXIS 212562 (D. Nev. Dec. 10, 2019) ....23

*In re CytRx Corp. Sec. Litig.*,
    No. CV 14-1956-GHK (PJWx), 2015 U.S. Dist. LEXIS 91447 (C.D. Cal.
    July 13, 2015)........................................................................................................................19

*In re Extreme Networks, Inc.*,
    Case No. 15-cv-04833-BLF, 2018 U.S. Dist. LEXIS 46638 (N.D. Cal. Mar. 21, 2018)........13

*In re Facebook, Inc., IPO & Sec. & Derivative Litig.*,
    986 F. Supp. 2d 428 (S.D.N.Y. 2013)....................................................................................24

*In re Finjan Holdings, Inc. Sec. Litig.*,
    58 F.4th 1048 (9th Cir. 2023) ..........................................................................................10, 22

*In re Honest Co. Sec. Litig.*,
    No. 2:21-cv-07405-MCS-PLA, 2022 U.S. Dist. LEXIS 131000 (C.D. Cal. July 18,
    2022) .....................................................................................................................................13

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
    236 F. Supp. 3d 824 (S.D.N.Y. 2017).............................................................................14, 17

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................................23

*In re MGM Mirage Sec. Litig.*,
    No. 2:09-cv-01558-GMN-VCF, 2013 U.S. Dist. LEXIS 139356 (D. Nev. Sep. 26,
    2013) .........................................................................................................................14, 17, 28

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ................................................................................................28

*In re Paysign, Inc. Sec. Litig.*,
    No. 2:20-cv-00553-GMN-DJA, 2023 U.S. Dist. LEXIS 22055 (D. Nev. Feb. 9, 2023) ........25

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ..........................................................................................16, 25

*In re Rigel Pharm., Inc. Sec. Litig., Inter-Local Pension Fund GCC/IBT v. Deleage*,
    697 F.3d 869 (9th Cir. 2012) ................................................................................................16

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
    266 F. Supp. 2d 1150 (C.D. Cal. 2003) ..................................................................................27

*In re Siebel Sys.*,
    No. C 04-0983 CRB, 2005 U.S. Dist. LEXIS 36347 (N.D. Cal. Dec. 28, 2005) ...................18

*In re Snap Sec. Litig.*,
    No. 2:17-cv-03679-SVW-AGR, 2018 U.S. Dist. LEXIS 97704 (C.D. Cal. June 7, 2018).......6

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
    No. CV 21-5744-JFW (SHKx), 2022 U.S. Dist. LEXIS 127345 (C.D. Cal. July
    13, 2022) ................................................................................................................................22

*In re Talis Biomedical Corp. Sec. Litig.*,
    No. 22-cv-00105-SI, 2022 U.S. Dist. LEXIS 222835 (N.D. Cal. Dec. 9, 2022).....................17

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) ..................................................................................................11

*In re Violin Memory Sec. Litig.*,
    No. 13-CV-5486 YGR, 2014 U.S. Dist. LEXIS 155428 (N.D. Cal. Oct. 31, 2014) ...............13

*Jaeger v. Zillow Grp., Inc.*,
    No. C21-1551 TSZ, 2022 U.S. Dist. LEXIS 220839 (W.D. Wash. Dec. 7, 2022)..................14

*Jian Zhou v. Faraday Future Intelligent Elec. Inc.*,
    No. 2:21-cv-09914-CAS (JCx), 2022 U.S. Dist. LEXIS 192565 (C.D. Cal. Oct.
    20, 2022) ...........................................................................................................................17, 22

*Johnson v. Knapp*,
    No. CV 02-9262-DSF (PJW), 2008 U.S. Dist. LEXIS 125001 (C.D. Cal. Dec. 17, 2008).......2

*Julianello v. K-V Pharm. Co.*,
    791 F.3d 915 (8th Cir. 2015) ..................................................................................................20

*Kelley v. Rambus, Inc.*,
    No. C 07-1238 JF (HRL), 2008 U.S. Dist. LEXIS 100319 (N.D. Cal. Dec. 9, 2008).............23

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..............................................................................................9, 16

*Knollenberg v. Harmonic, Inc.*,
    152 F. App'x 674 (9th Cir. 2005) ......................................................................................12, 14

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    No. 2:15-cv-04003-ODW(MRWx), 2016 U.S. Dist. LEXIS 182954 (C.D. Cal. May 10,
    2016) ......................................................................................................................................24

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) ..................................................................................................15

*Lopes v. Fitbit, Inc.*,
  No. 18-cv-06665-JST, 2020 U.S. Dist. LEXIS 52187 (N.D. Cal. Mar. 23, 2020)..................24

*Maiman v. Talbott*,
  No. SACV 09-0012 AG (ANx), 2010 U.S. Dist. LEXIS 142712 (C.D. Cal. Aug.
  9, 2010) .......................................................................................................................11, 27

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  437 F.3d 588 (7th Cir. 2006) ...................................................................................................4

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011).................................................................................................................11

*Meysam Moradpour v. Velodyne Lidar, Inc.*,
  No. 21-cv-01486-SI, 2022 U.S. Dist. LEXIS 117273 (N.D. Cal. July 1, 2022).....................15

*Mineworkers' Pension Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018) .................................................................................................28

*Mingbo Cai v. Switch, Inc.*,
  No. 2:18-cv-01471-JCM-VCF, 2019 U.S. Dist. LEXIS 116702 (D. Nev.
  July 12, 2019)..........................................................................................................10, 19, 28

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
  No. 21-2524, 2022 U.S. App. LEXIS 35103 (2d Cir. Dec. 20, 2022)....................................19

*Mulligan v. Impax Labs., Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) ...............................................................................17, 24

*Myers v. United States*,
  673 F. App'x 749 (9th Cir. 2016) ...........................................................................................20

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ...................................................................................................9

*NECA-IBEW Pension Tr. Fund v. Precision Castparts Corp.*,
  No. 3:16-cv-01756-YY, 2017 U.S. Dist. LEXIS 165139 (D. Or. Oct. 3, 2017) .....................10

*No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) .................................................................................................27

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)......................................................................................................4

*N.Y.C. Emples.' Ret. Sys. v. Jobs*,
  593 F.3d 1018 (9th Cir. 2010) ................................................................................................23

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Entm't Corp.*,
  58 F.4th 195 (5th Cir. 2023) .............................................................................................18, 25

*Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*,
   780 F. App'x 480 (9th Cir. 2019) ...................................................................................26

*Paskowitz v. Pac. Capital Bancorp*,
   No. CV 09-6449 ODW (JCx), 2009 U.S. Dist. LEXIS 122365 (C.D. Cal. Nov. 6, 2009) .....23

*Phillips v. Churchill Cap. Corp. IV*,
   No. 1:21-CV-00539-ACA, 2021 U.S. Dist. LEXIS 176423 (N.D. Ala. Sep. 16, 2021) .....3, 15

*Pub. Emples. Ret. Sys. v. Qualcomm, Inc.*,
   773 F. App'x 987 (9th Cir. 2019) ...................................................................................16

*Rabbani v. Enzo Biochem, Inc.*,
   682 F. Supp. 2d 400 (S.D.N.Y. 2010)..............................................................................21

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) ....................................................................................26, 27

*Rubke v. Capitol Bancorp, Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ..................................................................................12, 13

*Schueneman v. Arena Pharm., Inc.*,
   840 F.3d 698 (9th Cir. 2016) .........................................................................................18

*SEC v. Live Ventures Inc.*,
   No. 2:21-CV-1433 JCM (VCF), 2022 U.S. Dist. LEXIS 161134 (D. Nev. Sep. 7, 2022)......10

*SEC v. Nat'l Sec., Inc.*,
   393 U.S. 453 (1969)......................................................................................................21

*SEC v. Todd*,
   642 F.3d 1207 (9th Cir. 2011) ..................................................................................11, 17

*S. Ferry LP v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) .......................................................................................4, 26

*Shankar v. Zymergen Inc.*,
   No. 21-cv-06028-VC, 2022 U.S. Dist. LEXIS 214715 (N.D. Cal. Nov. 29, 2022) ................14

*Steckman v. Hart Brewing*,
   143 F.3d 1293 (9th Cir. 1998) ........................................................................................10

*Sudunagunta v. Nantkwest, Inc.*,
   No. CV 16-01947-MWF (JEMx), 2017 U.S. Dist. LEXIS 228535 (C.D. Cal. May
   16, 2017) .....................................................................................................................12

*Superman Cargo, Inc. v. U.S.*,
   68 F.3d 1204 (9th Cir. 1995) ..........................................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)......................................................................................................4, 11

*Union Asset Mgmt. Holding AG v. Sandisk LLC*,
  227 F. Supp. 3d 1098 (N.D. Cal. 2017) ...................................................................17

*Va. Bankshares v. Sandberg*,
  501 U.S. 1083 (1991)............................................................................................3

*Varjabedian v. Emulex Corp.*,
  No. SACV 15-00554-CJC(JCGx), 2020 U.S. Dist. LEXIS 40037 (C.D. Cal. Feb.
  25, 2020) ...........................................................................................................10

*Veal v. LendingClub Corp.*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019) ...................................................................24

*Veterans Rideshare, Inc. v. Navistar Int'l Corp.*,
  No. 20-cv-01304-BAS-LL, 2021 U.S. Dist. LEXIS 104670 (S.D. Cal. June 1, 2021) ...........24

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
  No. 14 CV 3876-LTS, 2016 U.S. Dist. LEXIS 42542 (S.D.N.Y. Mar. 30, 2016) ..................20

*Weston Family P'ship LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) ...........................................................................17, 26

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ...........................................................15, 16, 18, 20

*Xinguang Tech. Co. v. Hyloft, Inc.*,
  No. 2:08-cv-1492-LDG-GWF, 2009 U.S. Dist. LEXIS 149016 (D. Nev. Aug.
  7, 2009) ............................................................................................................10

**Statutes**

Private Securities Litigation Reform Act............................................................15, 23, 25

Section 10 of the Securities Exchange Act of 1934.................................................... *passim*

Section 11 of the Securities Act of 1933 ............................................................ *passim*

Section 14 of the Securities Exchange Act of 1934.............................................. *passim*

Section 15 of the Securities Act of 1933 ...................................................................28

Section 20(a) of the Securities Exchange Act of 1934 .................................................28

**Rules & Regulations**

17 C.F.R. § 230.425 .................................................................................................7, 19

17 C.F.R. § 240.10b-5(b) ...........................................................................................11

17 C.F.R. § 240.14a-12 ...........................................................................................7, 21

Fed. R. Civ. P. 8.................................................................................................9, 10, 12, 27

Fed. R. Civ. P. 9(b) ...................................................................................................13, 23

Fed. R. Civ. P. 12(b)(6).........................................................................................6, 9, 17

Special Purpose Acquisition Companies, Shell Companies, and Projections, 87 Fed. Reg. 29458 (proposed May 13, 2022) ..................................................................................................15

The Phoenix Insurance Company Ltd. and The Phoenix Provident Pension Fund Ltd. (collectively, the "Lead Plaintiff") respectfully submit this Opposition to the Motion to Dismiss filed by Defendants Playstudios, Inc. ("Playstudios" or the "Company"), Andrew Pascal ("Pascal"), Edward King, Daniel Fetters, James Murren ("Murren"), Zach Leonsis, Brisa Carleton, Andrew Zobler, Sam Kennedy, Christopher Grove ("Grove"),[1] William J. Hornbuckle ("Hornbuckle"), Joe Horowitz, Jason Krikorian, and Judy K. Mencher (collectively the "Defendants").[2]

## I.    INTRODUCTION

The Complaint cogently pleads that Defendants used an inaccurate and negligently prepared DP/R to accomplish the Initial Public Offering ("IPO") of Playstudios.  In June 2021, the DP/R was used to effect a "de-SPAC" transaction with Acies Acquisition Corp. ("Acies"), a self-described "blank check company" with no operations that was created for the sole purpose of taking Playstudios public without the rigor and regulatory scrutiny of a traditional IPO.  The DP/R touted Playstudios' business based on a game called Kingdom Boss, the Company's flagship entry into the lucrative market for Role Playing Games ("RPG").  In the DP/R and incorporated filings, Defendants repeatedly claimed that Kingdom Boss would launch in 2021, and that the path to profitability and margin growth was proven and clear.  Yet, months before the de-SPAC, players with hands on experience confirmed that Kingdom Boss constantly crashed and did not work, facts which were known to Pascal.  Within weeks after the IPO, Playstudios announced that Kingdom

---

[1] The Motion to Dismiss ("MTD") repeatedly assumes that Grove was "mistakenly" named in this Action.  MTD at 3 n.3, 23 n.16.  It is wrong.  As alleged, Grove was identified as a "Director" of Acies in certain versions of the Defective Proxy/Registration Statement ("DP/R"), and made proxy statements incorporated under SEC regulations.  Acies Acquisition Corp. Form S-4 at 201, filed with the SEC on February 16, 2021.  If Defendants now assert that he was not actually a Director even though labeled as such by Acies, that is a factual dispute to be resolved upon a developed record.

[2] Murren, Grove, Hornbuckle, Edward King, Daniel Fetters, Zach Leonsis, Brisa Carleton, Andrew Zobler, Sam Kennedy, Joe Horowitz, Jason Krikorian, and Judy K. Mencher are sometimes referred to herein as the "Director Defendants."  All citations of "¶_" and "¶¶_" refer to the Amended Class Action Complaint for Violations of the Securities Laws filed on October 4, 2022 (ECF No. 73) (hereafter the "Complaint").  Internal quotation marks and citations are omitted, and emphases are added throughout this Opposition unless otherwise noted.

Boss would be substantially delayed and revised full year 2021 revenues downwards by tens of millions of dollars.  While the Complaint pleads much more than this, these specific facts are sufficient to state strict liability claims pursuant to Section 11 of the Securities Act of 1933.  The DP/R also touted extensive due diligence conducted by Acies' Board, including specific due diligence on new games like Kingdom Boss.  This fact is alone sufficient to plead a reasonable inference that Acies' Board acted negligently under Section 14 of the Securities Exchange Act of 1934.

After the IPO, Pascal and Playstudios started to make intentional or reckless misrepresentations.  By this point, Pascal knew that the game was delayed because it did not work, yet he continued to deny that the game had major defects, and instead told investors that there would be a global launch before the end of 2021.  Confidential Witnesses ("CW") confirm both that the game was not ready to launch based on internal testing, and that Pascal had no intention to market the game unless it worked.  Pascal knew about the severe defects of the game and admitted working with the developer to fix them.  Pascal also profited from his fraud.  Starting in February 2022, the Company abandoned the game and began to repeatedly release poor financial results because of Kingdom Boss's failure.  On this news, the Company's stock price declined repeatedly.

The MTD shows no pleading deficiency, and demonstrates only that Defendants have an alternate factual view to be raised (if supported by admissible evidence) at trial.  *See Johnson v. Knapp*, No. CV 02-9262-DSF (PJW), 2008 U.S. Dist. LEXIS 125001, at *10 (C.D. Cal. Dec. 17, 2008) ("[T]he Court ignores Defendants' version of the facts and relies, instead, on Plaintiff's version contained in the Complaint and any inferences that can be drawn from it.").  It fails to apply the minimal pleading standard for the core Section 11 and Section 14 claims, and selectively excerpts quoted statements in a desperate attempt to whitewash clear misrepresentations.  Compounding these errors, the MTD invokes legal doctrines that do not apply, engages in strawman tactics, makes false assumptions, invents "alternative facts," and improperly disputes the Complaint's well-pleaded allegations.  It hides behind boilerplate in the DP/R to claim that nothing was misleading and everything was disclosed, but miserably fails to comply with the

actual standard that applies to this defense. *See, e.g.*, *In re BioMarin Pharm., Inc. Sec. Litig.*, No. 3:20-cv-06719-WHO, 2022 U.S. Dist. LEXIS 34619, at *7-8 (N.D. Cal. Feb. 28, 2022) (persuasively explaining that to win dismissal, a defendant's alleged warnings must be so powerful that the "***risk of real deception drops to nil***") (quoting *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1097 (1991)). Because the MTD utterly fails to identify any ***pleading*** deficiency in the Complaint, it should be denied in full, and the parties directed to proceed to discovery without further delay.

## II.    STATEMENT OF FACTS

### A.    Defendants Form A SPAC To Consummate A Merger With Playstudios

A SPAC is a shell company with no operations that raises funds and places them in a trust for a future acquisition of a private company. ¶35. SPACs generally must find a target within two years or the trust liquidates. *Id.* If a target is identified, the SPAC's investors have a right to vote on the merger and can redeem their shares typically for $10 if they choose not to be part of the new company. Otherwise, their original shares are cancelled in exchange for the right to receive shares in the new company. ¶¶3, 35. The merger vote results in the creation of a new entity that carries on its operations as a public company. ¶35.

As several federal courts have explained, the purpose of the de-SPAC is to raise funds from public investors while avoiding the rigors of a traditional IPO. *See, e.g.*, *Phillips v. Churchill Cap. Corp. IV*, No. 1:21-CV-00539-ACA, 2021 U.S. Dist. LEXIS 176423, at *3-4 (N.D. Ala. Sep. 16, 2021); *Camelot Event Driven Fund v. Alta Mesa Res., Inc.*, No. 4:19-CV-957, 2021 U.S. Dist. LEXIS 71757, at *6 n.1 (S.D. Tex. Apr. 14, 2021). Avoidance of traditional underwriting and regulatory scrutiny significantly increases the risks of inaccurate disclosures and major conflicts of interest. ¶38. SEC officials agree and have expressed concern about "baseless hype" sometimes, as here, included in de-SPAC filings. *Id.*

A de-SPAC is not a "merger" in the traditional sense where two companies with existing operations combine for purposes of vertical integration, revenue synergies or economies of scale. It is illegal for a target company to "be identified before the [SPAC] completes its IPO." *See Alta Mesa Res., Inc.*, 2021 U.S. Dist. LEXIS 71757, at *5. If a target is prematurely identified, that is

a violation of the securities laws, even if the SPAC directors later assert, like here, that they considered "40 merger candidates."  MTD at 7 n.8

Acies is a self-described "blank check company" founded by Pascal and Murren.  ¶¶34, 40.  Murren, Pascal's friend, neighbor and mentor, is the former CEO of MGM Resorts International ("MGM").  ¶40.  In 2011, Murren and Hornbuckle, a former Director of Playstudios and the then-Chief Marketing Officer of MGM and the current CEO of MGM, helped Pascal launch Playstudios, a mobile gaming company that develops and markets casino games for mobile devices and personal computers.  ¶¶4, 41, 51.  MGM is one of Playstudios' largest shareholders and its most significant rewards partner.  ¶41.  J.P. Morgan Chase & Company ("J.P. Morgan") served both as the underwriter of the IPO for Acies as well as an advisor to Playstudios in connection with the de-SPAC.  ¶42.  Within hours after the IPO for Acies closed, conflicted bankers from J.P. Morgan spoke to executives at Acies about a merger with Playstudios.  *Id.*

Defendants do not dispute the alleged cat's cradle of financial entanglements and incestuous relationships, *see* MTD at 7-8, which support a plausible inference that the target was known at the time that Acies was formed, *see* ¶¶39-45.  The Court "need not close [its] eyes" to these allegations, which should instead be "viewed with a practical and common-sense perspective."  *S. Ferry LP v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).[3]

**B.      Acies' Directors Tout Extensive Due Diligence**

On February 1, 2021, Acies announced that it had entered into a merger agreement with Playstudios.  ¶44.  The DP/R filed in connection with the de-SPAC claimed that Acies' Directors conducted extensive due diligence of Playstudios, including whether Playstudios was an entity that: (a) operated in a high growth industry, (b) with a unique and defensible business model, (c)

---

[3] That the inference is pled on information and belief along with factual allegations supporting that inference rather than a smoking gun conclusively demonstrating that Acies prematurely targeted Playstudios shows no pleading defect.  Such allegations need not be conclusive, but rather need only be plausibly supported by facts sufficient to show the belief is reasonable.  *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 595 (7th Cir. 2006), *overruled on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  It is to be proved or disproved at the merits stage of the litigation.  *Id.* At any rate, the inference is to provide context and background; it is not central to any of Lead Plaintiff's claims.

cultivated extraordinary user engagement, (d) employed an experienced and motivated management team, and (e) had significant revenue and earnings growth potential. ¶46.

This extensive due diligence was based on meetings and calls between Acies and Playstudios' management team to discuss operations and projections, and included a review of the Company's financial statements, contracts, key metrics and performance indicators and a host of other factors. ¶47. The DP/R specifically represented that, on December 22, 2020, Acies and Playstudios met to perform diligence on Playstudios' *new game launches*, of which *Kingdom Boss* was by far the most important. ¶46. The MTD disregards all these facts and pretends as if these inculpatory events did not take place.

Based upon their so-called due diligence, Acies' Directors told investors to vote for the merger, and concluded that the business combination with Playstudios was in the best interests of Acies' shareholders. ¶48. Acies' Board further told investors that they "will be relying solely on the judgment of" Acies' Board and management in valuing Playstudios. ¶48. The DP/R discouraged investors from doing their own diligence, and instead directed investors to rely only on the representations made in or incorporated into the DP/R. ¶50.

**C.      Operational Deficiencies of Kingdom Boss Emerge Before the de-SPAC**

Long before the de-SPAC, Playstudios partnered with Boss Fight Entertainment, Inc. ("Boss Fight") to develop Kingdom Boss. ¶53. Playstudios relied upon Boss Fight because it had no internal experience developing, marketing or distributing RPGs, but desired to tap into that market which has generated tens of billions of dollars over the last few years. ¶¶51-53. Boss Fight developed components of the game, but Playstudios was the ultimate publisher and distributor of the game with responsibility to acquire users and generate sales. ¶54. The DP/R claimed that the Company's revenues would skyrocket from $269.8 million in 2020 to $435.2 million in 2022. ¶55. This figure was based on the groundless predicate that Kingdom Boss would launch in 2021, and generate massive revenue. *Id.*

Defendants had no reasonable basis for these assumptions, and knew or should have known that they were undermined because Kingdom Boss was plagued with technical defects that rendered the game inoperable. User complaints about the game emerged more than six months

before the Company went public.  ¶59.  Pascal knew both that the game would be delayed as well as that the unreasonable revenue figures were already at serious risk.  ¶¶102-03.  Because of these delays, the timeline for the game's release date was surreptitiously shifted, without explanation, from the middle of 2021 to the second half of 2021 in a March 2021 draft of the DP/R before the merger was even consummated.  ¶¶100-03.

The MTD does not address this allegation, and instead engages in factual disputes as to whether the damning complaints from gamers who had actual experience playing Kingdom Boss were as serious as their plain words and Defendants' jettison of the game plausibly suggest, or were "routine" imperfections and "kinks," MTD at 14-15.  As alleged, nearly 150 players with direct experience corroborated that Kingdom Boss had serious defects.  ¶¶57-68.  As early as November 6, 2020, nearly a week before the Acies Board endorsed the baseless revenue figures in the DP/R, MTD at 7, gamers began to complain on Kingdom Boss's Facebook page about "so many bug[s] lmao…," ¶61, that caused them to log into their Facebook account "over and over again."  ¶59.  Over the next few months, players complained that the game "always crash[ed]," ¶¶59-60, had to be restarted, *id.*, could not "connect" to the servers, ¶62, and force closed, *id.* During the summer of 2021, while Pascal publicly touted the Company's new games portfolio, players continued to complain about "constant crashes," ¶63, and players reported that "I don't even know if this could be a good game or not it is so laggy!!," *id.*[4]

Weeks after the Company went public, a user succinctly confirmed the problems went well beyond lags: "Regardless of what I did, the game wouldn't run, so I uninstalled and then reinstalled, several restarts later and the game loaded, unfortunately the game started from the beginning, all my progress was lost.  Needless to say I uninstalled the game."  ¶63.  Things only got worse as the Class Period progressed.  *See* ¶64 (On September 13, 2021, a player reported that "Game does not work, heats up phone and crashes within 40 seconds."); ¶67 (On December 11,

---

[4] Defendants' unsupported assumption that such lags are endemic to all RPGs, MTD at 14, disputes the well-pleaded facts alleged and raises a factual issue that is wholly inappropriate for a Rule 12(b)(6) motion.  *See In re Snap Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2018 U.S. Dist. LEXIS 97704, at *15-16 (C.D. Cal. June 7, 2018) (ruling that factual disputes cannot be resolved on the pleadings even in securities cases).

2021, a player reported that "the game is not loading" and, on December 25, 2021, another reported that "[y]our update didn't fix anything I'm done good bye."). A month after Pascal inaccurately stated that the problems associated with Kingdom Boss did not concern the game's "development," but instead related to "perfecting it" because "the game from a future perspective is complete," ¶¶100-101, a player with experience observed that "this game constantly crashes. It doesn't deserve even 1 star," ¶67.

These complaints are corroborated by inside accounts from the CWs. CW2, a quality assurance lead at Playstudios from October 2016 to February 2022, played Kingdom Boss for four weeks in November 2021, and was responsible for identifying problems to be resolved before the game could be marketed. ¶68. CW2 states that Kingdom Boss was *not ready to launch* at that time because of *significant glitches and bugs*. *Id.* CW1, the Chief Creative Officer of Boss Fight from June 2013 through the spring of 2022, confirmed that the game was only "soft launched" in December 2021, not a full commercial launch. ¶66. In February 2021, months before the de-SPAC, Pascal represented that Playstudios would "invest aggressively" to "scal[e] and grow[]" Kingdom Boss, ¶76, but CW1 states that the Company had an inadequate marketing budget and failed to properly invest in user acquisition growth, both of which impaired momentum, ¶56. Pascal himself conceded later that he did not intend to invest the necessary resources to "scale" and "grow" Kingdom Boss without first seeing how it "performs." ¶¶56, 105. The DP/R did not disclose this contingency. ¶¶71-72

**D.    Misleading Statements and Omissions Related to the de-SPAC**

Starting on February 2, 2021, Defendants made a series of misleading statements in connection with the de-SPAC on Form 425 filed with the SEC. These filings were made "pursuant to Rule 425 under the Securities Act of 1933 And deemed filed pursuant to Rule 14a-12 of the Securities Exchange Act of 1934." *See, e.g.*, Defs.' Exs. 14, 15 and 16. Written communications filed pursuant to Rule 425 of the Securities Act are considered prospectuses, *see* 17 C.F.R. § 230.425, and written communications filed pursuant to Rule 14a-12 are solicitations or the furnishing of a form of proxy, 17 C.F.R. § 240.14a-12. On February 2, 2021, Pascal participated in a conference call to discuss the merger. ¶73. During this conference call, with the help of

misleading slides, Pascal told investors that the Company expected $435 million in revenues in the year 2022, based on a "clear and actionable plan to achieve business results" and "proven profitability with clear path to margin growth." ¶74. Pascal also stated that the Company then had a "very clear path" to high margin growth through 2021 and 2022 based upon the maturity of new games. ¶73; *see also* ¶¶76-77. (touting "sustained and projected top and bottom-line growth.").

On April 7, 2021, Pascal participated in a video interview later posted on YouTube where he asserted that "we'll be launching [Kingdom Boss] at some point later on this summer." ¶79. On May 11, 2021, Playstudios issued a press release that affirmatively represented that the Company "remain[ed] on schedule to launch Kingdom Boss" in 2021, and Pascal was quoted as stating that "[w]e are also on track to launch Kingdom Boss" in the second half of 2021. ¶81. Similarly, the DP/R itself repeatedly claimed that Kingdom Boss "*will* launch as expected in the second half of 2021." ¶71.

**E.      Kingdom Boss's Launch Is Delayed Within Weeks After the IPO but Pascal Continues His Deception**

The Company went public on June 22, 2021, at a time when over 90% of the second quarter was already complete. ¶2. Barely over a week later, the second quarter of 2021 closed. ¶104. On August 11, 2021, the Company announced that its full year 2021 revenues would be tens of millions of dollars below the baseless figures touted in the DP/R, and Pascal admitted that a "majority of the adjustment" was caused by the delayed launch of Kingdom Boss. ¶¶91, 104. The August 11, 2021 press release stated that the Company had then "[a]dvanced the development of Kingdom Boss, which is expected to launch later this year." ¶96. On a conference call held the same day, Pascal misleadingly stated that the launch was delayed because the Company needed additional time to "optimize the experience," and assess "retention," "engagement" and "monetization" metrics, but "we're going to get it launched before year['s] out." ¶98.

On November 11, 2021, an analyst directly asked Pascal whether the delay in the timeline for Kingdom Boss's launch was related to "development" or "just kind of perfecting it." ¶100. Pascal lied in response and stated "*More the latter. The game from a future perspective is*

*complete.*" *Id.* Pascal also continued to misstate that Kingdom Boss "will be ready to launch by the end of the year." *Id.*

### F.      Playstudios Admits the Truth

On February 24, 2022, Playstudios announced that its full fiscal year revenues for 2021 were $40 million less than the baseless figure presented in the DP/R.  ¶¶55, 108.  The Company also announced that it now expected full year 2022 revenues to be $110 million below the figures published in the DP/R on the high end of the new range.  ¶108.  On the same day, the Company held a conference call, in which Pascal announced the abandonment of Kingdom Boss, and the Company's CFO disclosed that Playstudios would take an $8 million write off in connection with the failed game.  *Id.*  A presentation used by Pascal and other executives during the conference call directly attributed a decline in earnings to a negative impact from "***New Game Development***." *Id.*  On this news, the Company's stock price declined significantly for the next three trading days. ¶109.  On May 5, 2022, the Company again announced poor financial results for the first quarter of 2022, missing analyst estimates, a further result of the concealed defects with Kingdom Boss. ¶110.  On this news, the price of the Company's common stock again declined significantly for the next three trading days.  ¶111.

## III.     ARGUMENT

### A.      APPLICABLE LEGAL STANDARDS DISFAVOR DISMISSAL

On a 12(b)(6) motion, the court "accept[s] the Plaintiffs' allegations as true and construe[s] them in the light most favorable to Plaintiffs." *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017).  The purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide its merits.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The Court's analysis is confined to the Complaint and materials that are the proper subject of judicial notice or incorporation by reference.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998, 1003 (9th Cir. 2018).  These doctrines, however, do not extend to assuming the truth of disputed facts in documents authored or created by Defendants.  *Id.* at 999, 1005.

####         1.      Securities Act Claims Under Section 11 and Rule 8

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, Lead Plaintiff is required only to provide a short and plain statement of the claim and entitlement to relief. *See Xinguang Tech. Co. v. Hyloft, Inc.*, No. 2:08-cv-1492-LDG-GWF, 2009 U.S. Dist. LEXIS 149016, at *4-5 (D. Nev. Aug. 7, 2009). Section 11 of the Securities Act imposes liability for any untrue statement of fact or omission of a material fact contained in the DP/R. *Mingbo Cai v. Switch, Inc.*, No. 2:18-cv-01471-JCM-VCF, 2019 U.S. Dist. LEXIS 116702, at *13-14 (D. Nev. July 12, 2019). "*Liability against the issuer of a security is virtually absolute, even for innocent misstatements.*" *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). Reliance, scienter and loss causation are not elements of a Section 11 claim. *See Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859-60 (9th Cir. 2013). A violation of SEC Regulation S-K also sufficiently states a claim under Section 11. *See Steckman v. Hart Brewing*, 143 F.3d 1293, 1296 (9th Cir. 1998).

### 2.     Exchange Act Claims Under Rule 14(a)

Section 14(a) of the Exchange Act imposes liability on a defendant for a negligent misrepresentation or omission in a proxy statement. *See SEC v. Live Ventures Inc.*, No. 2:21-CV-1433 JCM (VCF), 2022 U.S. Dist. LEXIS 161134, at *14-15 (D. Nev. Sep. 7, 2022). A complaint sufficiently pleads a claim under Section 14(a) if a plaintiff alleges that a defendant (1) made a material misrepresentation or omission in a proxy statement, (b) with negligence, and (c) that the proxy statement was the transactional cause of the plaintiff's harm. *See Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493, at *37 (D. Or. Mar. 20, 2017). Negligence is not a "state of mind," but a "standard of care" that is applied to the defendant's conduct. *See Fargo v. City of San Juan Bautista*, 857 F.2d 638, 642 (9th Cir. 1988); *Varjabedian v. Emulex Corp.*, No. SACV 15-00554-CJC(JCGx), 2020 U.S. Dist. LEXIS 40037, at *27-29 (C.D. Cal. Feb. 25, 2020) (applying *Fargo* to Section 14 claims). The Ninth Circuit has recently clarified that a plaintiff is required to plead only a "*reasonable inference*" of negligence to plausibly state Section 14 claims. *See In re Finjan Holdings, Inc. Sec. Litig.*, 58 F.4th 1048, 1052 (9th Cir. 2023). Negligence is sufficient to state Section 14(a) claims for both forward-looking and non-forward-looking statements. *See NECA-IBEW Pension Tr. Fund v. Precision Castparts Corp.*, No. 3:16-cv-01756-YY, 2017 U.S. Dist. LEXIS 165139, at *37-38 (D. Or. Oct. 3, 2017).

### 3.    Exchange Act Claims Under Section 10(b) and SEC Rule 10b-5

Section 10(b) of the Exchange Act makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b-5(b)). The elements of a claim are: (1) a misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d at 793. A complaint adequately pleads falsity if it specifies each misleading statement and explains the reason why the statement is misleading. *See In re Alphabet Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021). Nothing more is required. In addition, whether a statement is misleading is a mixed question of fact and law to be decided by the jury ***unless the disclosures are so obvious that reasonable minds could not differ about their meaning***. *See SEC v. Todd*, 642 F.3d 1207, 1220-21 (9th Cir. 2011).

Recklessness is sufficient to plead scienter. *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 702 (9th Cir. 2012). "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun genre,' or even the 'most plausible of competing inferences.'" *Tellabs*, 551 U.S. at 324. A complaint survives a motion to dismiss if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* A defendant must present facts showing that a non-culpable inference is ***more compelling*** to win dismissal. *See, e.g.*, *Maiman v. Talbott*, No. SACV 09-0012 AG (ANx), 2010 U.S. Dist. LEXIS 142712, at *14-15 (C.D. Cal. Aug. 9, 2010).

The liberal notice pleading standard applies to the element of loss causation. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (holding that only notice of the loss causation theory needs to be pled). A complaint satisfies this requirement if it provides a defendant with "some indication of the loss and the causal connection that the plaintiff has in mind." *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

**B.      LEAD PLAINTIFF ADEQUATELY PLEADS SECTION 11 CLAIMS**

**1.      Rule 8's Notice Pleading Standard Applies**

Lead Plaintiff's Section 11 claim sounds in negligence and does not in any way allege "a unified course of fraudulent conduct," as Defendants erroneously assert. MTD at 12. To determine whether a Section 11 or Section 14 claim sounds in fraud, courts consider whether the complaint (1) expressly disclaims reliance on fraud for claims based on strict liability or negligence, (2) contains separate sections explaining the basis for each claim and segregates the counts for the claims where the nature of the allegations in each is different, and (3) does not allege the same exact claims against the same defendants. *See*, *e.g.*, *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 684 (9th Cir. 2005) (holding that claim did not sound in fraud because plaintiffs alleged omissions in the registration statement, disclaimed reliance on fraud for those allegations, and made an effort to plead a non-fraudulent basis for liability); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1163 (C.D. Cal. 2008) (applying Rule 8 to the Section 11 claims when the plaintiffs took care to delineate the negligence claims as distinct from the fraud claims); *see also Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-06361-RS, 2020 U.S. Dist. LEXIS 141724, at *12 (N.D. Cal. Aug. 7, 2020) (applying Rule 8 to the Section 11 claims because plaintiffs made an effort to plead strict liability and negligence claims separately).

The Complaint here definitively segregates the various claims, *compare* ¶¶71-93 *with* ¶¶94-111, disclaims fraud for the Section 11 and Section 14 claims, ¶¶1, 121, 134, and brings a claim for fraud based upon separate statements against only the Company and Pascal, not the Director Defendants, ¶94. This is enough to delineate the claims and apply Rule 8's minimal pleading burden to the claims brought under Section 11 and Section 14. *See Sudunagunta v. Nantkwest, Inc.*, No. CV 16-01947-MWF (JEMx), 2017 U.S. Dist. LEXIS 228535, at *17-19 (C.D. Cal. May 16, 2017). Far from a "unified course of fraudulent conduct," the very limited fraud claims against only a couple defendants relate to a different period of time and entirely different statements. ¶¶1(c), 94-101.

None of Defendants' cited cases even remotely support elevating the pleading standard here. MTD at 12. In *Rubke v. Capitol Bancorp, Ltd.*, the claims relied on the same exact facts and

statements for both the Section 11 and Section 10 claims.  551 F.3d 1156, 1161 (9th Cir. 2009).  *In re Violin Memory Sec. Litig.* declined to heighten the pleading standards.  No. 13-CV-5486 YGR, 2014 U.S. Dist. LEXIS 155428, at \*25-28 (N.D. Cal. Oct. 31, 2014).  And in *Desaigoudar v. Meyercord*, there was no dispute that the complaint explicitly alleged that defendants intentionally violated the law, which is not alleged here.  223 F.3d 1020, 1022 (9th Cir. 2000).  Regardless, if Rule 9(b) did apply, it would be satisfied, because the Complaint specifies each misleading statement, identifies the speaker and explains with detail why the statement is misleading.  ¶¶71-82.  That is all the law requires.  *See In re Alphabet Sec. Litig.*, 1 F.4th at 699.

### 2.  Misrepresentations and Omissions in the DP/R

The Complaint unquestionably identifies false and misleading statements made in the DP/R, which was filed as and functioned as a registration statement enabling post de-SPAC shares of Playstudios to trade on public markets.  Specifically, the DP/R contained material misrepresentations and omissions regarding the Company's most important game launch, Kingdom Boss.

The DP/R repeatedly misled investors to believe that Kingdom Boss "***will*** launch as expected in the second half of 2021."  ¶71.  These statements were misleading because, many months before Playstudios went public, gamers with actual experience had already confirmed that Kingdom Boss simply did not work and constantly ***crashed***.  ¶¶57-68.  *See, e.g.*, *In re Honest Co. Sec. Litig.*, No. 2:21-cv-07405-MCS-PLA, 2022 U.S. Dist. LEXIS 131000, at \*7 (C.D. Cal. July 18, 2022) (crediting customer complaints about the company's product to sustain allegation that the registration statement omitted material information).  Customer complaints were constant from 2020 until the beginning of 2022 when Playstudios abandoned the game with no intervening positive development whatsoever. ¶¶57-68.  They are also corroborated by CW2, a Playstudios Quality Assurance lead, who confirms that Kingdom Boss was not ready to launch even as late as November 2021 because of significant ***glitches*** and ***bugs***.  ¶68.  *See, e.g.*, *In re Extreme Networks, Inc.*, Case No. 15-cv-04833-BLF, 2018 U.S. Dist. LEXIS 46638, at \*57-59 (N.D. Cal. Mar. 21, 2018) (finding that defendants' statements that integration was "on track" were false when CWs were told that "the dust had not yet settled on the integration.").  That Defendants immediately

announced another delay in the release date within weeks after the Company went public further supports falsity. *See, e.g.*, *Harmonic, Inc.*, 152 F. App'x at 684 (omission of declining orders that ultimately caused a revenue miss was sufficient to state Section 11 claims); *Shankar v. Zymergen Inc.*, No. 21-cv-06028-VC, 2022 U.S. Dist. LEXIS 214715, at *5 (N.D. Cal. Nov. 29, 2022) (statement that **"we expect to begin generating revenue in the second half of 2021"** found misleading, in part, because of the temporal proximity between the date the registration statement was filed and the adverse disclosures).

Decisions from other courts in this District as well as on point persuasive authority from the Southern District of New York demonstrate that the Complaint sufficiently pleads Section 11 claims. Two specific decisions are instructive. In *In re MGM Mirage Sec. Litig.*, a case where Murren was named as an individual defendant, Judge Navarro concluded that statements about a project being "on-track," "on-budget" and "on schedule" were misrepresentations of current fact unprotected by the safe harbor. No. 2:09-cv-01558-GMN-VCF, 2013 U.S. Dist. LEXIS 139356, at *25-26 (D. Nev. Sep. 26, 2013). Judge Navarro upheld a fraud claim against Murren and MGM because they knew or recklessly disregarded "constant modification" and "pervasive flaws" "in both the design and construction of the project." *Id.* at *22-24.

Similarly, in *In re iDreamSky Tech. Ltd. Sec. Litig.*, a district court allowed Section 11 claims to proceed because Defendants misled investors about the "target date for the game's launch," and omitted to disclose that the delay was caused by technical issues with the platform and "rifts" with the game developer. 236 F. Supp. 3d 824, 830-31 (S.D.N.Y. 2017). That is precisely what the Complaint alleges here. *See also Fosbre v. Las Vegas Sands Corp.*, No. 2:10-CV-00765-KJD-GWF, 2011 U.S. Dist. LEXIS 94919, at *8, *18 (D. Nev. Aug. 24, 2011) (ruling that claims about an "on track" budget and "development" "moving forward" were materially misleading when made).

Defendants fixate on certain words and phrases but never address the full statements pled in the Complaint or examine them in their full context. This is improper. *Compare* MTD at 12 *with Jaeger v. Zillow Grp., Inc.*, No. C21-1551 TSZ, 2022 U.S. Dist. LEXIS 220839, at *10-11 (W.D. Wash. Dec. 7, 2022) (refusing to invoke safe harbor and criticizing this tactic because

appending "magic words" such as "we expect" "does not itself obviate any potential to mislead investors.").

Defendants' reliance on *Wochos v. Tesla, Inc.* to claim broad immunity under the PSLRA's safe harbor is utterly misplaced. 985 F.3d 1180, 1192 (9th Cir. 2021). The safe harbor does not apply to blank check companies. ¶93. Defendants rely on an outdated SEC regulation to claim that Acies was not a blank check company, MTD at 15 n.11, but the DP/R repeatedly described Acies as a blank check company. *See In re AT&T Corp. Sec. Litig.*, No. 01-1883 (GEB), 2004 U.S. Dist. LEXIS 29588, *36 n.6 (D.N.J. Sept. 2, 2004) (rejecting similar attempt to retract previous representations and refusing to apply the safe harbor because defendants' prospectus itself described the offering as an IPO). The SEC has also recently spoken and stated that a de-SPAC is no different from an IPO. *See* 87 Fed. Reg. 29458, 29482 (observing that there is no reason to treat a de-SPAC differently than IPOs for the purposes of the PSLRA's safe harbor, and noting that SPACs should also be treated as "blank check companies" unprotected by the safe harbor).[5]

Defendants cannot evade these exceptions with the bespeaks caution doctrine. MTD at 16. The PSLRA is merely a codification of that doctrine. *See Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004) (observing that the safe harbor is merely a statutory version of the bespeaks caution doctrine). The bespeaks caution doctrine also does not apply to misrepresentations of past or current fact or omissions of existing fact. *See, e.g.*, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947-48 (9th Cir. 2005) (holding that the bespeaks caution doctrine only applies to forward-looking statements). As such, Defendants cannot take shelter under any of these doctrines to escape liability.

---

[5] Nothing Defendants cite in opposition to this point is persuasive. *Costanzo v. DXC Tech. Co.* did not concern a de-SPAC, and it said nothing about blank check companies. No. 19-cv-05794-BLF, 2020 U.S. Dist. LEXIS 132658, at *23-24 (N.D. Cal. July 27, 2020). A conclusory footnote in *Meysam Moradpour v. Velodyne Lidar, Inc.* appears to state that a de-SPAC is not an IPO, but it does not contain any analysis. No. 21-cv-01486-SI, 2022 U.S. Dist. LEXIS 117273, at *46 n.5 (N.D. Cal. July 1, 2022). Several courts have correctly accepted that the whole point of a de-SPAC is to take the acquired company public. *See, e.g.*, *Phillips*, No. 1:21-CV-00539-ACA, 2021 U.S. Dist. LEXIS 176423, at *3.

Regardless, controlling Circuit precedent requires courts to carefully examine non-forward-looking statements that are severable from the forward-looking ones. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141-42 (9th Cir. 2017). A defendant cannot transform non-forward-looking statements into forward-looking ones by fixating on certain words or phrases in a vacuum or combining statements about past or current facts with statements about projected revenues or future earnings. *Id.* Bound by *Quality Sys.*, the panel in *Wochos* could hold only that an "***unadorned***" statement that a plan is "on track" was not actionable under the facts of that case. That is as far as *Wochos* can go. It could not hold that a case should be dismissed if this phrase appears in a complaint without violating the law of the Circuit. 985 F.3d at 1192; *In re Quality Sys.*, 865 F.3d at 1142 (agreeing with the Seventh Circuit that a statement such as sales are "still going strong" suggests both that current sales were strong and would continue to be so); *In re Akorn Sec. Litig.*, 240 F. Supp. 3d 802, 817 (N.D. Ill. 2017) (applying the same precedent from the Seventh Circuit to find that "on track" is an actionable misrepresentation that refers to ***both*** the past and the future). *See also In re Rigel Pharm., Inc. Sec. Litig*, 697 F.3d 869, 882 (9th Cir. 2012) (suggesting that "on track" representation would be false if the company was not "really moving towards" its goal); *Pub. Emples. Ret. Sys. v. Qualcomm, Inc.*, 773 F. App'x 987, 988 (9th Cir. 2019) (affirming dismissal but analyzing "on track" representations as non-forward-looking statements).

Because the Complaint contains several, non-forward-looking, materially misleading statements, "no cautionary language—short of an outright admission of the false or misleading nature of the non-forward-looking statements—would be sufficiently meaningful to qualify the statement for the safe harbor." *In re Quality Sys.*, 865 F.3d at 1148. As such, Defendants' extensive discussion of the boilerplate in the DP/R is irrelevant because Defendants did not admit to making false statements. MTD at 6-7, 13-14. Even if the safe harbor applied, the boilerplate is not meaningful because the risk that Kingdom Boss would be delayed or abandoned had already increased significantly before the Company went public given that Defendants themselves changed the timeline in drafts of the DP/R and the game constantly crashed and never worked. *See Khoja*, 899 F.3d at 1010 (telling investors that data "***might change***" is misleading when the

defendant knows or recklessly disregards that the data was "*likely to change*"); *but see* MTD at 13 (misstating that investors were warned of a risk that the launch *would* be delayed when that is *not* what the DP/R stated). Indeed, in *In re iDreamSky Tech. Ltd. Sec. Litig.*, the district court refused to allow defendants to hide behind virtually identical language because they did not specifically disclose any information about the delayed launch concerning the specific game at issue. 236 F. Supp. 3d 831-33. The safe harbor also cannot apply because Defendants' decision to change the release date in the DP/R without explanation demonstrates knowledge of the delay, and the DP/R claimed that due diligence was done on Kingdom Boss. ¶¶46, 102-03.[6]

Defendants' remaining arguments are easily dispatched. The Court should reject Defendants' repeated attempt to introduce self-serving facts from outside the Complaint to preposterously assert that Kingdom Boss "*did in fact* launch globally in December 2021." MTD at 14 (emphasis added). This naked assertion is unsupported by any evidence and contradicts CW1's testimony that Kingdom Boss had only a soft launch, which is *not* equivalent to commercialization of the game. ¶66; *see also Union Asset Mgmt. Holding AG v. Sandisk LLC*, 227 F. Supp. 3d 1098, 1100 (N.D. Cal. 2017) (pleading standards in a securities case do not allow defendants to "finess[e] the evidentiary limits of a 12(b)(6) motion."). It also contradicts Defendants' own representations. MTD at 1 (liberally quoting press release that claimed the game was launched only in North America). It is also a hopelessly weak defense. Nothing Defendants

---

[6] Unlike Defendants, who failed to disclose adverse authority to the Court, Lead Plaintiff acknowledges that some lower courts, based on a misconstruction of *Wochos*, have recently dismissed statements as forward-looking that contain phrases such as "on track." *See, e.g.*, *Jian Zhou v. Faraday Future Intelligent Elec. Inc.*, No. 2:21-cv-09914-CAS (JCx), 2022 U.S. Dist. LEXIS 192565, at *19-21 (C.D. Cal. Oct. 20, 2022); *In re Talis Biomedical Corp. Sec. Litig.*, No. 22-cv-00105-SI, 2022 U.S. Dist. LEXIS 222835, at *71-76 (N.D. Cal. Dec. 9, 2022). Yet, Defendants cite authorities that eviscerate their own arguments. *See, e.g.*, *Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620-21 (9th Cir. 2022) (panel that included author of *Wochos* explains at great length why the statements could not be interpreted to mean the company was "on track," but does not, and cannot, hold they are inactionable as a matter of law); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 964 (N.D. Cal. 2014) (relying on *Mirage* to rule that "on track" assertions are not forward-looking). It is hard to see how a court can dismiss statements based on the standard that reasonable minds could not disagree about whether they are misleading, *Todd*, 642 F.3d at 1220-21, when federal judges, including different panels of the Ninth Circuit, cannot reach agreement.

cite even states that the game launched commercially, and the Company admitted that it failed to hit revenues targets by over a $100 million in 2022 because Defendants failed to launch new games, including Kingdom Boss.  ¶108.

Nor can user complaints about Kingdom Boss be assumed as a matter of law, contrary to well-pleaded allegations and common sense, as mere "kinks" or imperfections.  MTD at 15, 18. Defendants' own authorities show that the Complaint pleads actionable misstatements.  *See, e.g.*, *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1348 (S.D. Cal. 1998) (acknowledging that a claim would be cognizable if the problems were of such magnitude that defendants would know the release date would be delayed); *In re Siebel Sys.*, No. C 04-0983 CRB, 2005 U.S. Dist. LEXIS 36347, at *10-14 (N.D. Cal. Dec. 28, 2005) (explicitly stating that software "laced with abnormally large number of bugs," including complaints from customers and employees, would be sufficient to state securities fraud claims); *3226701 Can. v. Qualcomm, Inc.*, No. 15cv2678-MMA (WVG), 2017 U.S. Dist. LEXIS 174367, at *60-62 (S.D. Cal. Oct. 20, 2017) (similar).

The Court should also reject Defendants' attempt to concoct a requirement that Lead Plaintiff plead that the release of Kingdom Boss was "impossible" or unachievable.  MTD at 15, 18, 25.  In *Wochos*, the panel rejected ***complaint allegations*** that the goal was impossible.  985 F.3d at 1193-94.  It did not hold that a plaintiff must plead impossibility to state claims, *id.,* and the Ninth Circuit has held securities fraud claims to be actionable where ***risks*** were misrepresented, even if the ultimate outcome was ***achievable***.  *See Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 703, 707-10 (9th Cir. 2016) (holding that defendants misled investors about the prospects of drug approval even though the drug was ultimately approved).  A federal appellate court has recently rejected Defendants' argument as an improper attempt to unreasonably elevate plaintiff's pleading burden beyond the requirements of the securities statutes.  *See Okla. Firefighters Pension & Ret. Sys. v. Six Flags Entm't Corp.*, 58 F.4th 195, 214 (5th Cir. 2023).

### 3. Defendants Concede Violating Reg S-K's Heightened Standard

A conclusory footnote in the MTD contends that the boilerplate "risk factors" contained in the DP/R render the Complaint's Reg S-K claims "equally fruitless."  MTD at 25 n.18.  Not so. *See* Section III.B(2).  Further, this undeveloped argument constitutes a waiver, *see Alphabet*, 1

-18-

F.4th at 709, and is wrong as a matter of law.  Under Item 303 of Regulation S-K, even if a defendant *cannot* determine whether an uncertainty is likely to occur, disclosure is still *required* unless the defendant affirmatively determines that *no effect whatsoever* on the company is reasonably likely to occur.  *See Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, No. 21-2524, 2022 U.S. App. LEXIS 35103, at *7 (2d Cir. Dec. 20, 2022).  Defendants make no attempt to meet this rigorous disclosure standard, and they could not satisfy it even if they tried.  Their own conduct shows that a delay in the game's release was reasonably likely to occur since the timing was shifted by several months in between drafts of the DP/R.  ¶¶102-03.  The DP/R failed to disclose that Kingdom Boss, as opposed to some unspecified, unidentified game, would be further delayed or abandoned all-together.  Once the game was abandoned, the Company's stock price repeatedly declined.  "This is precisely the type of risk that [I]tem 503 requires issuers to disclose." *Switch, Inc.*, 2019 U.S. Dist. LEXIS 116702, at *16-17.

### 4.    Misrepresentations and Omissions in Forms 425 Are Actionable

All of the misleading statements made on Form 425 between February 2, 2021 and May 11, 2021 are actionable written communications filed pursuant to Rule 425 under the Securities Act.  *See Chen v. Select Income REIT*, No. 18-CV-10418 (GBD) (KNF), 2019 U.S. Dist. LEXIS 177687, at *41-43 (S.D.N.Y. Oct. 11, 2019) (ruling that disclosures contained on Forms 425 filed within months of the proxy statement constituted material information necessary for shareholders to cast an informed vote on the merger).[7]

On February 2, 2021, Pascal attended a conference call to discuss how new game development would cause the Company's revenues to skyrocket after the de-SPAC.  ¶¶73-78.  To support these assertions, Pascal presented misleading slides and falsely claimed that there was a "clear and actionable plan to achieve business results" and a "very clear path" to margin growth. *Id.*  The Court should sustain these misleading statements because the MTD fails to even mention

---

[7] Defendants misstate the ruling in *In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK (PJWx), 2015 U.S. Dist. LEXIS 91447, at *55-56 (C.D. Cal. July 13, 2015).  There, most of the documents were expressly incorporated into the Registration Statement, but one was not.  *Id.*  The district court never stated that "Section 11 has no application to statements outside a registration statement."  MTD at 24.

them.  *See Alphabet*, 1 F.4th at 709 (holding that *sua sponte* dismissal of claims was erroneous because the defendants failed to address them in their motion to dismiss); *Myers v. United States*, 673 F. App'x 749, 752 (9th Cir. 2016) (holding that a failure to address damaging facts related to an opposing party's arguments constitutes a waiver).[8]  On April 7, 2021, Pascal stated that "we'll be launching [Kingdom Boss] at some point later on this summer" even though weeks before this statement was made, Defendants surreptitiously delayed Kingdom Boss's release date from mid-2021 to the second half of 2021 as reflected in a draft of the DP/R.  ¶¶79-80, 102-03.  On May 11, 2021, the Company released a press release falsely stating that Kingdom Boss "remain[ed] on schedule to launch" and Pascal was quoted in the same document saying that "we are also on track to launch Kingdom Boss" during the second half of 2021.  ¶¶81-82.

Pascal's representation that Kingdom Boss was "on track to launch" in the second half of 2021 was not a **"*simple*"** and **"*unadorned*"** statement.  *Wochos*, 985 F.3d at 1192.  It was made in the same breath as the false claim that Defendants "remain[ed] on schedule to launch Kingdom Boss."  ¶81.  Nothing is forward-looking about this misrepresentation.  It was either on schedule then or it was not.  *See Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 921 (8th Cir. 2015) ("In determining whether a statement is truly forward-looking . . . the key is whether its truth or falsity is discernible only after it is made.").  Defendants also concede that the misrepresentations of current fact contained in Pascal's slides are not protected by the safe harbor because the MTD does not address them.  ¶¶74, 77.

### 5.    Defendants' Tracing and Statute of Limitations Arguments Fail

Defendants' arguments about tracing and the statute of limitations are wholly without merit, and contrary to controlling authority.  Defendants assume that Lead Plaintiff cannot trace its shares to the IPO because an exchange is not a "purchase."  MTD at 26.  The Supreme Court

---

[8] Grove is also liable for the misleading statements made in February 2021 because they are a "part" of the DP/R, and Grove was identified as a Director in a draft of the DP/R after the Form 425s were filed earlier in that same month.  *See Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, No. 14 CV 3876-LTS, 2016 U.S. Dist. LEXIS 42542, at *26 (S.D.N.Y. Mar. 30, 2016) (liability exists for executives and directors who consent to be named in any report used in connection with the registration statement).

disagrees. *See SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 467-68 (1969) (holding that an exchange of shares in a merger qualifies as a purchase or sale under the securities laws). Similarly, the Complaint pleads facts demonstrating that the Section 11 and Section 14 claims were brought within one year of discovery (*see, e.g.*, ¶¶96-101). That is all the law requires. Arguments about statute of limitations are fact intensive and rarely entertained at the pleading stage. *See, e.g.*, *Garcia v. J2 Glob.*, No. 2:20-cv-06096-FLA (MAAx), 2021 U.S. Dist. LEXIS 78853, at *59 n.5 (C.D. Cal. Mar. 5, 2021) (citing *Superman Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th Cir. 1995)). Moreover, when properly considered at the merits stage, the arguments will fail. While a small delay was announced in August 2021, *see* MTD at 25-26, Playstudios and Pascal did not then accurately disclose the defects with the game and repeatedly misrepresented then and for months later that the game would "launch globally" before the end of 2021. ¶¶96-101. Where a disclosure is tempered by a defendant's positive statements, the time by which the statute begins to run is a factual issue and cannot be decided on a motion to dismiss. *See, e.g.*, *Doubleline Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 438 (S.D.N.Y. 2018) (collecting cases). That is especially true here, where the referenced "disclosure" was itself incomplete and misleading.

For all of these reasons, the Complaint adequately pleads a Section 11 claim for materially misleading statements and omissions made in the DP/R.

### C.    ACIES' DIRECTORS VIOLATED SECTION 14(a)

In addition to serving as a registration statement to register all post de-SPAC Playstudios securities, the DP/R also was filed as and served as a proxy, and the Form 425s referenced above were also designated as part of the proxy per proxy rules. Thus, the misrepresentations and omissions therein give rise to liability under Section 14(a) of the Exchange Act as well. *See Desaigoudar*, 223 F.3d at 1022 n.3 (agreeing that the press release was a proxy because it was part of a continuous plan to encourage shareholders to vote).[9] These claims too require no allegation

_____

[9] *See also Rabbani v. Enzo Biochem, Inc.*, 682 F. Supp. 2d 400, 415-16 (S.D.N.Y. 2010) (Cote, J.) (observing that written communications filed pursuant to Rule 14a-12 are solicitations or the furnishing of a form of proxy under Section 14). Defendants' reliance on irrelevant SEC regulations that do not address proxies notwithstanding, MTD at 24, even their own authority states that a defendant is liable for omitting material information when representations are made in other

of scienter, and the Complaint also easily pleads a reasonable inference that Acies' Directors acted negligently. *See In re Finjan Holdings, Inc. Sec. Litig.*, 58 F.4th at 1058. Acies' Directors claim to have conducted due diligence, and prepared, reviewed and disseminated the DP/R, yet shirked in their duty to ensure that it contained accurate information. These facts are more than enough to plead a reasonable inference of negligence. *See Azar*, 2017 U.S. Dist. LEXIS 39493, at \*26-28 (collecting cases to conclude that this is all the law requires). In fact, the allegations to support negligence are even stronger here. The DP/R emphasized that due diligence was conducted on Playstudios' portfolio of new game launches, ¶46, a very specific claim far surpassing more generalized claims of due diligence in connection with a de-SPAC that have been found sufficient to contribute to an inference of negligence or even scienter. *See, e.g.*, *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 676 (M.D. Tenn. 2022); *In re Stable Rd. Acquisition Corp. Sec. Litig.*, No. CV 21-5744-JFW (SHKx), 2022 U.S. Dist. LEXIS 127345, at \*36 (C.D. Cal. July 13, 2022). The MTD is silent about these devastating facts.

The Section 14(a) claims are brought on behalf of investors who were solicited to approve the merger as well as those who exchanged their shares for Playstudios' Class A Ordinary shares. ¶¶112(b), 138, 140. Defendants do not contest that Class members who voted to approve the merger were harmed. MTD at 27-28. The MTD attempts to break new ground with the spurious reasoning that shareholders deprived of their right to redeem shares cannot assert Section 14(a) claims, but this is rejected by the very authority Defendants cite. *See Zhou*, 2022 U.S. Dist. LEXIS 192565, at \*38-39 (concluding that shareholders who did not redeem were deprived of their right to an informed vote because the proxy omitted material information, and therefore could assert claims under Section 14(a)).

Nothing cited in the MTD is of any help to Defendants. *Golub v. Gigamon Inc.* does not apply because the challenged statements in the DP/R are not forward-looking. 847 F. App'x 368, 373 (9th Cir. 2021). Even if the safe harbor applied, the Complaint easily shows that the forward-

---

documents filed at or around the same time that drafts of a proxy are circulated. *See Zhou*, 2022 U.S. Dist. LEXIS 192565, at \*45-46 (finding that a press release was not incorporated by reference but was still in the "total mix" of information available to investors for the defendants to be liable).

looking statements were not accompanied by meaningful cautionary language, and were made with negligence.  *See* Section III.A.2 and III.B.2.  The claims are also not barred by the statute of limitations, *see* Section III.B.5 and Lead Plaintiff is not required to plead a "a strong inference" of any "state of mind," *see* Section III.A.2.  Nor does the Complaint plead an "intentional" violation of Section 14(a) despite Defendants' constant misrepresentation of *Desaigoudar*, 223 F.3d at 1022.[10]  MTD at 27.

For all of these reasons, the Complaint sufficiently pleads that Acies' Directors violated Section 14(a) of the Exchange Act.

### D. PASCAL AND PLAYSTUDIOS COMMITTED FRAUD IN SEPARATE POST- IPO STATEMENTS

In addition to the core claims arising from the DP/R and statements incorporated therein under Form 425, the Complaint alleges claims under Section 10(b) against Pascal and Playstudios for separate misrepresentations they made following the IPO.  ¶¶96-101.  Those allegations comply with the PSLRA's and Rule 9(b)'s requirement to specify each misleading statement, identify its speaker, and explain why the statement is misleading.  *Id*.  Nothing more is required. *See, e.g.*, *Elliot v. China Green Agrics., Inc.*, No. 3:10-CV-0648-LRH-WGC, 2012 U.S. Dist. LEXIS 157572, at *19 (D. Nev. Nov. 1, 2012) (applying the standard correctly to sustain securities fraud claims when these simple requirements were mechanically met); *In re CV Scis., Inc.*, No. 2:18-cv-01602-JAD-BNW, 2019 U.S. Dist. LEXIS 212562, at *11-12 (D. Nev. Dec. 10, 2019) (same).  On August 11, 2021, the Company stated in a press release that it had "[a]dvanced the development of Kingdom Boss." ¶96.  This representation of current fact was materially false when made since more than a hundred players had already confirmed that the game constantly

---

[10] The remaining citations are also inapt.  *See N.Y.C. Emples.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1024 (9th Cir. 2010) (holding that dilution is not an economic loss, but saying nothing about redemption); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) (finding inference of negligence negated because directors relied on accountants); *Paskowitz v. Pac. Capital Bancorp*, No. CV 09-6449 ODW (JCx), 2009 U.S. Dist. LEXIS 122365, at *12-17 (C.D. Cal. Nov. 6, 2009) (proxy found not to be misleading because the alleged omission involved obscure studies that could not be commonly known to defendants unlike the failed game here); *Kelley v. Rambus, Inc.*, No. C 07-1238 JF (HRL), 2008 U.S. Dist. LEXIS 100319, at *25-30 (N.D. Cal. Dec. 9, 2008) (proxies could not be an essential link to harm that was caused years before their release unlike here where the harm occurred after the IPO).

crashed and did not work despite repeated attempts to update the software and fix defects.  ¶¶57-68.  In November 2021, CW2 played Kingdom Boss for four weeks to identify issues that needed to be addressed before the game was marketed.  ¶68.  CW2 confirms that Kingdom Boss was not ready to launch even then because of significant glitches and bugs.  ¶68.  Yet, on November 11, 2021, when Pascal was asked if the delay was related to the game's "development," he affirmatively misrepresented that "[t]he game from a future perspective is complete."  ¶100.  The MTD fails to challenge the falsity of this specific misrepresentation and cannot raise a challenge as a new argument on reply.

The MTD's repetitive Section 10(b) arguments show no pleading deficiency.  Misleading statements about the game's launch date are actionable, *see* Section III.B.2, and Pascal did not discuss "optimiz[ation]" in a vacuum.  MTD at 17.  Instead, Pascal created the misleading impression that additional time was needed to retain, engage and monetize players, but the game would launch before the end of 2021 because its development was "complete."  ¶¶98, 100.  As such, Defendants' attempt to mischaracterize Pascal's misrepresentations as "puffery" fails.  Courts have repeatedly found that references to "optimization" and "launch" timelines are affirmative misrepresentations when, like here, they are misleading in context.  *See, e.g.*, *In re Facebook, Inc., IPO & Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 465 (S.D.N.Y. 2013) (claim regarding "ready to launch technology" was not puffery); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 805 (N.D. Cal. 2019) (touting tests put in place to "optimize" conversion was actionable); *Veterans Rideshare, Inc. v. Navistar Int'l Corp.*, No. 20-cv-01304-BAS-LL, 2021 U.S. Dist. LEXIS 104670, at *24-25 (S.D. Cal. June 1, 2021) (ruling that claims about "optimized" engine performance were not puffery but verifiable assertions of fact).[11]

---

[11] Defendants' cited authorities do not support dismissal.  MTD at 17.  *Lopes v. Fitbit, Inc.* never evaluated any statement about a launch timeline. No. 18-cv-06665-JST, 2020 U.S. Dist. LEXIS 52187, at *18 (N.D. Cal. Mar. 23, 2020).  *Mulligan* rejected a similar attempt to minimize misrepresentations as puffery.  36 F. Supp. 3d at 968.  *Knox v. Yingli Green Energy Holding Co. Ltd.* does not help because the statement there was generic and untethered to any specifics.  No. 2:15-cv-04003-ODW(MRWx), 2016 U.S. Dist. LEXIS 182954, at *40-42 (C.D. Cal. May 10, 2016).  In *City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.*, unlike here, references to "optimization" were "devoid of substantive factual material."  No. 11 C 8332, 2013 U.S. Dist.

The Complaint also pleads a strong inference of scienter with respect to the Section 10(b) statements. Boss Fight knew about Kingdom Boss's severe defects months before the IPO, and Pascal admitted that he was working with Boss Fight to "optimize" the game. ¶103. The MTD ignores this fact, but it is alone sufficient to demonstrate Pascal's actual knowledge. *See, e.g.*, *In re Quality Sys.*, 865 F.3d at 1145 (holding that scienter was adequately pled where "executives themselves told investors they had real-time access to, and knowledge of, sales information").

CW1 and CW2 also support a powerful inference of scienter. A CW's account is sufficient to establish scienter if the CW is reliable and has personal knowledge, and the account itself is indicative of scienter. *In re Quality Sys.*, 865 F.3d at 1144-45. These are the only two factors, and are satisfied here. Defendants' "presumptions" based on what the CW could have said or did not say, or futile attempts to point to the absence of an imagined fact or allegation, have no bearing and cannot warrant dismissal. *See, e.g.*, *In re Amgen Inc. Sec. Litig.*, No. CV 07-2536 PSG (PLAx), 2014 U.S. Dist. LEXIS 183034, at *32-42 (C.D. Cal. Aug. 4, 2014) (rejecting the same inappropriate tactic). At most, Defendants raise questions of fact for trial. MTD at 19-20.

CW2 corroborates customer complaints and confirms that the game was not ready to launch in November 2021, internally known information contradicting Pascal's public statements to investors. ¶¶66, 100. Whether CW2 directly spoke to or heard from Pascal is not dispositive. *In re Quality Sys.*, 865 F.3d at 1144-45 (crediting numerous accounts of many CWs who did not interact with any defendant); *In re Paysign, Inc. Sec. Litig.*, No. 2:20-cv-00553-GMN-DJA, 2023 U.S. Dist. LEXIS 22055, at *12-13 (D. Nev. Feb. 9, 2023) (same over similar quibbling by defendants); *see also Six Flags Entm't Corp.*, 58 F.4th at 216 n.18 (discrediting the same argument as inconsistent with the PSLRA).

As for CW1, that witness confirms that Pascal refused to commit an adequate marketing budget, impairing momentum, a fact Pascal later publicly admitted himself, corroborating his account. ¶105. Defendants fixate on wild assumptions about CW1's beliefs, but these arguments

---

LEXIS 19156, at *75-77 (N.D. Ill. Feb. 13, 2013). And *Bhatt v. Tech Data Corp.* did not allege any fact to suggest performance problems. No. 8:17-cv-02185-T-02AEP, 2018 U.S. Dist. LEXIS 208892, at *8-9, *11-12 (M.D. Fla. Dec. 11, 2018).

have no place in a motion to dismiss. MTD at 19-20. Defendants also turn the pleading standard on its head by stating the Court should assume that the so-called "global" launch was meaningful despite extensive well-pleaded allegations showing the exact opposite. *Compare* MTD at 19 n.14 *with* ¶¶66, 108-11. At trial, Defendants' reimagining will be wholly unsupported by admissible evidence. Even they cannot deny that the game was a failure that generated no revenue and negatively impacted the Company's financial results.

Furthermore, Defendants' generalized grievances concerning temporal proximity are without force. The MTD does not deny that Pascal knew about further delays no later than June 30, 2021 or before the Section 10(b) Class Period began. ¶104. Nor could it. Regardless, the proximity at issue here is sufficient and has been upheld by the Ninth Circuit. *See Reese v. Malone*, 747 F.3d 557, 574-75 (9th Cir. 2014) (holding that a temporal proximity of six months between the false statement and a subsequent admission contributed to an inference of scienter), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017). Defendants' own authority further undermines their argument. *See Twitter, Inc.*, 29 F.4th at 622 (conceding that outcome would be different if, like here, the software bugs delayed the product's launch).

Scienter is also properly alleged under the core operations theory. ¶106; MTD at 21. A defendant need not receive specific contrary information if the "nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Killinger*, 542 F.3d at 785-86. In any event, Pascal knew contrary information since he was working with Boss Fight to "optimize" the game, ¶103, and the importance of the game to the Company's bottom line supports, or at least bolsters, an inference of scienter. *See Reese*, 747 F.3d at 575-77 (holding that it would be "absurd to think" that the defendant would be unaware of information that is "fundamental to operations of her business"); *Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 485 (9th Cir. 2019) (holding that, in combination with other facts, the "overall importance" of the product to the company's business strengthened an inference of scienter).

Motive, though not required, is also alleged.  *See No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003).  Defendants assert that Pascal bought shares of Playstudios worth $1.5 million, but they admit that he exchanged the maximum amount of his shares in old Playstudios for cash before the de-SPAC.[12]  ¶107, MTD at 19.  Defendants do not argue that Pascal made less than $1.5 million from this exchange.  Using Defendants' own logic, MTD at 19-20, the Court should assume that Pascal's profits from cashing out pre de-SPAC shares vastly exceeded his share purchases.  That only enhances an inference of scienter.  *See Am. W. Holding Corp.*, 320 F.3d at 938 (observing that, in evaluating profit motives, the most important factor is whether the insider's gains were disproportionate at times calculated to maximize benefits).

Defendants offer no plausible competing inference.  They claim that delays and the game's abandonment were ultimately disclosed, but this does not explain why Pascal made false statements before those events.  In addition, Defendants' attempt to use the alleged disclosure of "risks" as a shield only shows that he was aware of the importance of these risks to investors, and should have portrayed them accurately.  MTD at 22; *but see Reese*, 747 F.3d at 579-80 (holding that similar warnings about potential adversity used as a shield evinced an intent to downplay known, material risks).  For all of these reasons, the Complaint pleads a cogent and compelling inference of scienter.

Finally, the Complaint adequately pleads loss causation under Rule 8's liberal standard.  When the Company announced the abandonment of Kingdom Boss coupled with a $110 million downward adjustment to 2022 revenues as a result, its stock price declined significantly for the next three trading days.  ¶¶108-09.  When the Company again announced related poor financial results on May 5, 2022, its stock price again declined significantly for the next three trading days.

---

[12] Many courts in this Circuit have also ruled that arguments about stock purchases are irrelevant at this stage.  *See In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1168–69 (C.D. Cal. 2003) (rejecting argument that stock purchases during the class period negated scienter); *Talbott*, U.S. Dist. LEXIS 142712, at *18-19 (same); *Buttonwood Tree Value Partners, LP v. Sweeney*, No. SACV1000537CJCMLGX, 2012 U.S. Dist. LEXIS 183438, at *5 (C.D. Cal. Dec. 10, 2012) (same).

¶¶110-11. This is all the law requires to put Defendants on notice of Lead Plaintiff's loss causation theory. *See In re MGM Mirage Sec. Litig.*, 2013 U.S. Dist. LEXIS 139356, at *29-30. Defendants' loss causation arguments are nonsensical. Defendants' attempt to divorce the disclosures from their prior misrepresentations ignores their own admission that the dramatic decline in earnings was **"*impacted by New Game Development*."** *See Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753-54 (9th Cir. 2018) (holding that an earnings miss is alone sufficient to plead loss causation even if no fraud is revealed). Defendants' reliance on *In re Oracle Corp. Sec. Litig.* is misplaced. 627 F.3d 376, 393 (9th Cir. 2010). There, evidence ***after discovery*** showed that the declines occurred because of concerns about the declining economy as opposed to company specific news. *Id.* Defendants present no evidence of an economic decline much less a correlation with the Company's stock price decline. Regardless, alternative causes are not assumed on the pleadings, and Lead Plaintiff does not need to show a mirror disclosure about specific defects when the stock price declined. *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d at 790. A conclusory claim that any information was already disclosed is also insufficient to win dismissal. MTD at 23; *but see Fosbre*, 2011 U.S. Dist. LEXIS 94919, at *15-16 (concluding that whether information was previously disclosed is a question of fact that cannot be decided on a motion to dismiss).

For all of these reasons, fraud claims against Playstudios and Pascal are adequately pled.

### E.      CONTROL PERSON CLAIMS ARE SUFFICIENTLY ALLEGED

Having sufficiently pled primary violations of Sections 11 and 10(b), and because Defendants do not dispute "control," the Sections 15 and 20(a) control person claims should also be sustained. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000); *Switch, Inc.*, 2019 U.S. Dist. LEXIS 116702, at *20.

### IV.      <u>CONCLUSION</u>

Lead Plaintiff respectfully requests the Court to deny the MTD in its entirety. Should the Court find any part of the Complaint wanting in any respect, Lead Plaintiff respectfully requests leave to replead. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (leave to amend should be granted "with extreme liberality," especially in securities cases).

Dated:  February 21, 2023

Respectfully submitted,

**MUEHLBAUER LAW OFFICE, LTD.**

*/s/ Andrew R. Muehlbauer*
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702-330-4505
Fax: 702-825-0141
Email: andrew@mlolegal.com

*Local Counsel for Lead Plaintiff*

-and-

**POMERANTZ LLP**[13]

*/s/ Omar Jafri*

Joshua B. Silverman (admitted *pro hac vice*)
Omar Jafri (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: jbsilverman@pomlaw.com
         ojafri@pomlaw.com

-and-

Jeremy A. Lieberman (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com

*Lead Counsel for Lead Plaintiff and the Class*

---

[13] Orly Guy and Eitan Lavie, who are Of Counsel to Pomerantz and admitted to practice in Israel, also provide advice to Lead Plaintiff in connection with this matter.

-29-