DEAN S. KRISTY *(admitted pro hac vice)*
dkristy@fenwick.com
JENNIFER C. BRETAN *(admitted pro hac vice)*
jbretan@fenwick.com
SOFIA RITALA *(admitted pro hac vice)*
sritala@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1250

PATRICK G. BYRNE (Nevada Bar No. 7636)
pbyrne@swlaw.com
BRADLEY T. AUSTIN (Nevada Bar No. 13064)
baustin@swlaw.com
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone: 702.784.5200
Facsimile: 702.784.5252

*Attorneys for Defendants*
*PLAYSTUDIOS, Inc., Andrew Pascal, Edward King,*
*Daniel Fetters, James Murren, Zach Leonsis, Brisa*
*Carleton, Andrew Zobler, Sam Kennedy, Christopher*
*Grove, William J. Hornbuckle, Joe Horowitz, Jason*
*Krikorian, and Judy K. Mencher*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTIAN A. FELIPE, individually as administrator of the CHRISTIAN A. FELIPE CONTRIBUTORY IRA, and on Behalf of Similarly Situated Persons,<br><br>Plaintiff,<br><br>v.<br><br>PLAYSTUDIOS, INC., *et al.*,<br><br>Defendants. | Case No.: 2:22-cv-01159-RFB-NJK<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   UNABLE TO MEET ITS PLEADING BURDEN, PLAINTIFF TRIES TO AVOID IT ....................................................................................................................1

III.   PLAINTIFF'S ATTEMPT TO SIDESTEP THE SAFE HARBOR FAILS.......................3

IV.   PLAINTIFF DOES NOT STATE A CLAIM UNDER SECTION 10(b) .........................7

     A.    Plaintiff Fails To Plead Any Actionable Statement.................................................7

     B.    Plaintiff Does Not Plead a Strong Inference of Scienter .......................................7

     C.    The Opposition Confirms Plaintiff's Inability To Plead Loss Causation ..............10

V.    THE SECTION 11 CLAIM FAILS FOR ADDITIONAL REASONS............................11

     A.    The Opposition Cannot Point To Any Other Statement That Is Actionable ........11

     B.    The Claims Against Newly Added Defendants Are Time-Barred .......................13

     C.    Plaintiff Cannot Satisfy The Section 11 Tracing Requirement ...........................14

VI.   THE SECTION 14(a) PROXY CLAIM ALSO FAILS ......................................................14

VII.   CONCLUSION........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*3226701 Can. v. Qualcomm, Inc.*,
   2017 WL 4759021 (S.D. Cal. Oct. 20, 2017), *aff'd on other grounds*,
   773 F'App'x 987 (9th Cir. 2019) ..................................................................................6, 12

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) ...............................................................................................12

*In re Amgen Inc. Sec. Litig.*,
   2014 U.S. Dist. LEXIS 183034 (C.D. Cal. Aug. 4, 2014) ...................................................8

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
   757 F. Supp. 2d 260 (S.D.N.Y. 2010) ...............................................................................15

*In re Bemis Co. Sec. Litig.*,
   512 F. Supp. 3d 518 (S.D.N.Y. 2021) ...............................................................................15

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) .............................................................................................11

*Boston Ret. Sys. v. Uber Tech., Inc.*,
   2020 U.S. Dist. LEXIS 141724 (N.D. Cal. Aug. 7, 2020)...................................................2

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014)...............................................................5, 10

*In re CarLotz, Inc. Sec. Litig.*,
   2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) ...............................................................6, 14

*Chen v. Select Income REIT*,
   2019 U.S. Dist. LEXIS 177687 (S.D.N.Y. Oct. 11, 2019) ................................................12

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...............................................................................2

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) .............................................................................................5

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) ..................................................................................2, 14, 15

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005).............................................................................................................11

*In re Eventbrite, Inc. Sec. Litig.*,
   2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ......................................................................2

*Fosbre v. Las Vegas Sands Corp.*,
   2011 U.S. Dist. LEXIS 94919 (D. Nev. Aug. 24, 2011) ...................................................12

*Glazer Capital Mgmt., L.P v. Forescout Techs., Inc.*,
    2023 WL 2532061 (9th Cir. Mar. 16, 2023)......................................................................9

*Hertzberg v. Dignity Partners, Inc.*,
    191 F.3d 1076 (9th Cir. 1999) ......................................................................................14

*In re Honest Co. Sec. Litig.*,
    2022 U.S. Dist. LEXIS 131000 (C.D. Cal. July 18, 2022) ...............................................6

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
    236 F. Supp. 3d 824 (S.D.N.Y. 2017)............................................................................12

*Jaeger v. Zillow Grp., Inc.*,
    2022 U.S. Dist. LEXIS 220839 (W.D. Wash. Dec. 7, 2022).............................................3

*Jedrzejczyk v. Skillz Inc.*,
    2022 WL 2441563 (N.D. Cal. July 5, 2022).....................................................................3

*Knollenberg v. Harmonic, Inc.*,
    152 F. App'x 674 (9th Cir. 2005) ....................................................................................2

*Lane v. Page*,
    649 F. Supp. 2d 1256 (D.N.M. 2009) ............................................................................14

*Lawson v. Klondex Mines Ltd.*,
    450 F. Supp. 3d 1057 (D. Nev. 2020) ............................................................................14

*In re Leapfrog Enter., Inc. Sec. Litig.*,
    200 F. Supp. 3d 987 (N.D. Cal. 2016) .............................................................................3

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014) ........................................................................................11

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ..................................................................................7, 11

*Mineworkers' Pension Scheme v. First Solar, Inc.*,
    881 F.3d 750 (9th Cir. 2018) ....................................................................................7, 10

*Murphy v. Precision Castparts Corp.*,
    2021 WL 2080016 (D. Or. May 24, 2021), *aff'd sub nom. AMF Pensionsforsakring AB
    v. Precision Castparts Corp.*, 2022 WL 2800825 (9th Cir. July 18, 2022)..........................3, 4

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ..........................................................................................9

*No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ..........................................................................................8

*In re Obalon Therapeutics, Inc.*,
    2019 WL 4729461 (S.D. Cal. Sept. 25, 2019).................................................................13

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ........................................................................................11

*In re Paysign, Inc. Sec. Litig.*,
  2023 U.S. Dist. LEXIS 22055 (D. Nev. Feb. 9, 2023) ........................................................9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014) ...............9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ........................................................................................4, 7

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ........................................................................................4, 9

*Ret. Sys. v. Bush*,
  2022 WL 1467773 (N.D. Cal. Mar. 1, 2022)........................................................................2

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ........................................................................................2, 12

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001), *abrogated on other grounds as explained in Glazer
  Capital Mgmt., L.P v. Forescout Techs., Inc.*, 2023 WL 2532061 (9th Cir. Mar. 16,
  2023) ........................................................................................................................6, 7

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ............................................................................................2

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ........................................................................................9, 10

*In re Siebel Sys. Inc. Sec. Litig.*,
  2005 WL 3555718 (N.D. Cal. Dec. 28, 2005)....................................................................5, 6

*In re Stable Rd. Acquisition Corp.*,
  2022 U.S. Dist. LEXIS 127345 (C.D. Cal. July 13, 2022)......................................................15

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ..........................................................................................13

*Stocke v. Shuffle Master, Inc.*,
  615 F. Supp. 2d 1180 (D. Nev. 2009)..................................................................................15

*Szymborski v. Ormat Techs. Inc.*,
  776 F. Supp. 2d 1191 (D. Nev. 2011)...................................................................................3

*In re Verisign, Inc. Deriv. Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...............................................................................15

*Wandel v. Gao*,
  590 F. Supp. 3d 630 (S.D.N.Y. 2022)...................................................................................13

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) ...............................................................................................9

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ................................................................................3, 4, 5, 7

*Wong v. Arlo Techs., Inc.*,
  2019 WL 7834762 (N.D. Cal. Dec. 19, 2019)................................................................2

*Yaroni v. Pintec Tech. Hld's Ltd.*,
  600 F. Supp. 3d 385 (S.D.N.Y. 2022).........................................................................13

*Zack v. Allied Waste Indus., Inc.*,
  2005 WL 3501414 (D. Ariz. Dec. 15, 2005) .................................................................8

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
  2022 WL 13800633 (C.D. Cal. Oct. 20, 2022).........................................................3, 7

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ...................................................................................8, 10

**STATUTES, RULES, AND REGULATIONS**

Securities Act of 1933, 15 U.S.C.
  § 77b(a)(8) ....................................................................................................................12
  § 77k..........................................................................................................................*passim*
  § 77k(a) ...................................................................................................................11, 12
  § 77z-2(i)(1)..................................................................................................................3, 4

Securities Exchange Act of 1934, 15 U.S.C.
  § 78j(b)...................................................................................................................1, 7 14
  § 78u-4(b)(2)(A) ............................................................................................................14
  § 78u-5(i)(1)....................................................................................................................3
  § 78u-5(c)(1)(A)...............................................................................................................4

Private Securities Litigation Reform Act of 1995 ...............................................*passim*

Code of Federal Regulations, 17 C.F.R.
  § 229.105(a) ...................................................................................................................12
  § 229.303........................................................................................................................12
  § 230.411(e) ...................................................................................................................12
  § 230.419........................................................................................................................6
  § 240.3a51-1 ..................................................................................................................6

*Special Purpose Acquistion Companies, Shell Companies, and Projections*,
  87 Fed. Reg. 29458 (May 13, 2022) ..............................................................................6

Federal Rules of Civil Procedure
  Rule 9(b) ..........................................................................................................1, 2, 7, 11

## I.    INTRODUCTION

There is no sure thing when it comes to developing a hit game.  Like movies and other forms of entertainment, despite best efforts, even an anticipated "blockbuster" may ultimately fail to engage users.  The Opposition shows that this action is predicated on nothing more than that unremarkable fact.[1]  But that is not securities fraud.  There is no debate that PLAYSTUDIOS, Inc. dedicated vast time and resources to *Kingdom Boss*.  At all times, the risks attendant to the game's development and launch were also fully disclosed.  Despite high hopes and substantial effort, however, the game did not gain traction, and the Company made a business decision to suspend the game and avoid further expense.  It then promptly told the market.  Plaintiff's attempt to manufacture securities fraud out of a common business setback is impermissible fraud by hindsight and should be rejected.  The same fate should meet the other, equally flawed, claims.

As an initial matter, the challenged statements – all of which relate to *Kingdom Boss'* anticipated launch – are forward-looking, accompanied by meaningful cautionary statements, and thus protected by the Private Securities Litigation Reform Act's ("PSLRA") safe harbor.  This alone disposes of all of plaintiff's claims.  The Opposition's response, an attempt to rewrite controlling Ninth Circuit law holding such statements are within the safe harbor, is no answer.

Even if the safe harbor did not apply, the Opposition fails to identify pleaded facts – much less particularized facts satisfying Rule 9(b) and the PSLRA – demonstrating any actionable statement.  To the contrary, all plaintiff offers is lawyer say-so (which is insufficient under the PSLRA) and two confidential witnesses ("CWs") who only undermine the claims.  The Opposition glosses over these defects and asks the Court to simply ignore them.  Because there was never a basis for a securities claim here, the AC should be dismissed with prejudice.

## II.    UNABLE TO MEET ITS PLEADING BURDEN, PLAINTIFF TRIES TO AVOID IT

While conceding that Rule 9(b) applies to the Section 10(b) claim, the Opposition devotes significant effort disclaiming any real pleading burden for the Sections 11 and 14(a) claims.  But as the Ninth Circuit makes clear: (1) Rule 9(b) applies to Sections 11 and 14(a) claims sounding in

---

[1] Citations to "¶" are to paragraphs in the Amended Complaint ("AC").  Citations to "Mot." or "Opp." are to the Motion to Dismiss or Opposition brief, respectively (ECF Nos. 91, 99).  Unless otherwise noted, all emphases are added.

fraud; (2) claims sound in fraud where a "unified course of fraudulent conduct" is pled; and (3) nominal efforts to disclaim fraud are ineffectual. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 885-86 (9th Cir. 2012); *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).

Here, all claims are premised on the same alleged course of conduct: that defendants ***knew*** of supposed problems with *Kingdom Boss* but ***concealed*** them from investors. *See, e.g.*, ¶¶ 33, 91 (alleging defendants "***knew***" of adverse facts and that "***known impediments***" were concealed).[2] Such allegations clearly sound in fraud. *See In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *15 (N.D. Cal. Apr. 28, 2020) (Section 11 claim that defendants concealed "Ticketfly migration was failing" sounds in fraud, and plaintiff could not "scissor out a non-fraud claim from the center of that unified course of conduct . . . to evade . . . Rule 9(b)"); *City of Pontiac Gen. Emps.' Ret. Sys. v. Bush*, 2022 WL 1467773, at *3 n.1 (N.D. Cal. Mar. 1, 2022) (Section 14(a) claim alleging defendants "*[k]new or [r]ecklessly [d]isregarded*" that proxy was misleading sounded in fraud).

Nor does artful pleading dispose of the need to plead Sections 11 and 14(a) claims with particularity. *See* Opp. at 12. A rote disclaimer of fraud, or keeping a 10(b) claim separate from the rest, is not enough to take those claims outside Rule 9(b). *See, e.g.*, *Rigel*, 697 F.3d at 885 ("nominal efforts to disclaim allegations of fraud" insufficient); *Wong v. Arlo Techs., Inc.*, 2019 WL 7834762, at *6 (N.D. Cal. Dec. 19, 2019) (same); *Eventbrite*, 2020 WL 2042078, at *15 (mere act of "clearly delineat[ing]" or physically separating Sections 11 and 10(b) claims insufficient). Plaintiff's effort to avoid the applicable standard shows it cannot meet it.[3] In any event, because there is ***no dispute*** that the PSLRA applies to ***all*** of plaintiff's claims, the Sections 11 and 14(a) claims would fail even without Rule 9(b).

---

[2] *See also* ¶ 7 (defendants were "*[a]ware of* these severe defects before the merger" and did not disclose the "technical defects they ***had known about*** for months"); ¶ 75 (defendants did not disclose "***then-known*** risks to the 'maturity' of Kingdom Boss"); ¶ 88 (defendants did not disclose "***known technical difficulties*** that had already emerged before the Company went public").

[3] Plaintiff's cases do not demand a different result. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1163 (C.D. Cal. 2008) ("Rule 9(b) [] applicable to § 11 claims 'where the gravamen of the Complaint is plainly fraud'"); *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 684 (9th Cir. 2005) ("a disclaimer alone is insufficient to re-characterize a complaint whose gravamen is plainly fraud"); *Boston Ret. Sys. v. Uber Tech., Inc.*, 2020 U.S. Dist. LEXIS 141724, at *12 (N.D. Cal. Aug. 7, 2020) (same).

## III.   PLAINTIFF'S ATTEMPT TO SIDESTEP THE SAFE HARBOR FAILS

*The challenged statements are forward-looking.*  Projections, timelines, and estimates for the future launch of a game *still in development* are classic forward-looking statements for which the Opposition has no answer.  *See* Mot. at 12-13; 15 U.S.C. § 77z-2(i)(1) (protecting, *inter alia*, projections, management plans and objectives, and underlying assumptions); 15 U.S.C. § 78u-5(i)(1) (same); *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *5 (N.D. Cal. July 5, 2022) (gaming company's launch schedule was forward-looking); *In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1010 (N.D. Cal. 2016) (launch date for a new product and related financial expectations are forward-looking); *Szymborski v. Ormat Techs. Inc.*, 776 F. Supp. 2d 1191, 1197-98 (D. Nev. 2011) (projected completion dates of power plant "squarely" forward-looking).  Plaintiff makes no effort to address this authority holding that such statements are protected.[4]

In an effort to sidestep the safe harbor, plaintiff focuses instead on a few statements it contends are actionable as either mixed statements or statements of present fact: assumptions in a February 2, 2021 investor presentation (Opp. at 19; ¶¶ 74, 77); a May 11, 2021 statement that the game was "on track to launch during the second half of 2021" (Opp. at 20; ¶ 81); and an August 11, 2021 statement that the Company had "[a]dvanced the development of *Kingdom Boss* … which is expected to launch later this year" (Opp. at 23; ¶ 96).  But as assumptions underlying or relating to management objectives, these statements are also forward-looking and within the safe harbor.  *See* Mot. at 12-14; 15 U.S.C. § 77z-2(i)(1); 15 U.S.C. § 78u-5(i)(1); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) ("on track" to meet a goal is forward-looking and protected by the safe harbor); *Zhou v. Faraday Future Intelligent Elec. Inc.*, 2022 WL 13800633, at *8 (C.D. Cal. Oct. 20, 2022) (forward-looking "statements may contain assumptions as to [] then-present circumstances" but are still within the safe harbor); *Murphy v. Precision Castparts Corp.*, 2021

---

[4] Plaintiff claims that defendants fixate on "magic words" but "never address the full statements pled in the [AC] or examine them in their full context." Opp. at 14-15, citing *Jaeger v. Zillow Grp., Inc.*, 2022 U.S. Dist. LEXIS 220839, at *10-11 (W.D. Wash. Dec. 7, 2022).  Setting aside that it is impossible to reconcile that argument with plaintiff's simultaneous **objection** to the Court taking judicial notice of the contested statements in context – plaintiff does not identify *any* instance where defendants used "magic words" to defeat otherwise present-tense statements.  *See Jaeger*, 2022 U.S. Dist. LEXIS 220839, at *10-11.  This is unsurprising, as each of the challenged statements plainly concern the *future* launch of *Kingdom Boss* and are protected.  *Id.* (statements that are "forward-looking in substance" are in the safe harbor); Mot. at 12.

WL 2080016, at *3 (D. Or. May 24, 2021) (reversing pre-*Wochos* order and finding present-tense statements protected because they merely conveyed progress towards earnings goals).[5]

In a failed effort to avoid the Ninth Circuit's holding in *Wochos*, the Opposition cites to a few *pre-Wochos* cases (while ignoring contrary cases) finding "on track" statements to be of current fact (Opp. at 14, 16) and, from there, leaps to a conclusion that *Wochos* is somehow limited by those *prior* decisions to "unadorned" "on track" statements. *Id.* at 16 (asserting that *Quality Systems* somehow serves to limit the Ninth Circuit's "on track" holding in *Wochos* despite the decision's unequivocal language to the contrary). Putting aside the irony of plaintiff inserting the term "unadorned" to qualify a decision that admonishes plaintiffs for adding words that alter what was actually said, none of the statements at issue are actionable under plaintiff's strained rewrite of *Wochos* either. *Wochos*, 985 F.3d at 1192 (only statements that contain "concrete assertion[s] concerning a specific current or past fact" fall outside the safe harbor).[6]

***The risk disclosures were meaningful.***  The Company provided extensive and detailed risk factors and spoke in cautionary terms. Among other things, it warned that new game development was subject to multiple risks and uncertainties, including the ability to "maintain a quality gaming experience," that financial performance could suffer "if new games are not brought to market in a timely and effective manner;" and that there is less control when a third-party development company is involved, increasing the risk that a game's launch might be delayed. Mot. at 13-14. Because the forward-looking statements were "accompanied by meaningful cautionary language," they are protected. *See id.*; 15 U.S.C. § 77z-2(i)(1); 15 U.S.C. § 78u-5(c)(1)(A).

The Opposition disregards these warnings and does not address governing case law finding similar statements sufficient to invoke the safe harbor. *See, e.g.*, *Police Ret. Sys. of St. Louis v.*

---

[5] Plaintiff's reliance on *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017) (Opp. at 16) is misplaced. That decision concerned statements with mixed present and forward-looking aspects but does not apply to assumptions underlying future projections and objectives, like those here. The Ninth Circuit distinguished *Quality Systems* on that precise basis in *Wochos*. 985 F.3d at 1191-92 ("statutory safe harbor would cease to exist if it could be defeated" as plaintiff suggests).

[6] Plaintiff does not identify a single post-*Wochos* decision holding that "on track" statements are not forward-looking and protected. *See also Precision Castparts*, 2021 WL 2080016, at *3 (after *Wochos*, reversing prior decision that "on track" statements were not forward-looking). Faced with many such post-*Wochos* decisions (Mot. at 24), plaintiff claims the decisions must be "based on a misconstruction of *Wochos*." Opp. at 17 n.6. Far from it. The courts got it exactly right.

*Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (statement protected where cautionary language "identif[ied] important factors that could cause actual results to differ materially from those in the forward-looking statement[s]").  Instead, based on mere say-so, plaintiff claims the disclosures were meaningless because "the risk that Kingdom Boss would be delayed or abandoned had already increased significantly before the company went public." Opp. at 16. Plaintiff reaches this "conclusion" based on a handful of anecdotal accounts by players **beta testing** the game and because a draft February 16, 2021 registration statement said *Kingdom Boss* would launch "mid-2021" but was "changed" weeks later to read "second half of 2021." *Id.* at 20 (citing ¶¶ 102-03).  As a matter of law, neither is sufficient to defeat the safe harbor. *See Wochos*, 985 F.3d at 1190 (safe harbor is not avoided "merely by alleging, for example, that the company knew that the announced forward-looking objective was unlikely to be achieved"); *In re Siebel Sys. Inc. Sec. Litig.*, 2005 WL 3555718, at \*5 (N.D. Cal. Dec. 28, 2005) (that bugs may affect new software does not undermine application of safe harbor).[7]  In any event, plaintiff concedes that the Company disclosed delays in the launch schedule – not merely the risk of such delays. *See* ¶¶ 7, 91, 104.[8]

　　　　***There was no actual knowledge of a false or misleading statement.*** Even ignoring the meaningful cautionary language, the challenged statements are still within the safe harbor because no facts show actual knowledge of falsity. Mot. at 14-15; *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  *Kingdom Boss* did indeed launch in the "second half of 2021" (December 2021), which is fatal to the claim that defendants misstated anything. *See* Ex. 11 at 186.[9]  And while the Opposition insists that defendants must have known the game would ultimately fail

---

[7] Nor are plaintiff's conclusions well-taken as a matter of fact.  There is nothing unusual in beta testers identifying bugs during game development, if anything that is the purpose and norm.  As for the language change, had plaintiff bothered to read the draft February 16 filing, it would know that it **also** said *Kingdom Boss* was expected to launch "in the second half of 2021" at page 126.  If anything, plaintiff spots a conforming edit of information **already disclosed**, not a "change."

[8] Also ineffective is the effort to cast aside as "boilerplate" (Opp. at 16) risk factors that disclosed the very risks that allegedly came to pass. *See Browning v. Amyris, Inc.*, 2014 WL 1285175, at \*14 (N.D. Cal. Mar. 24, 2014) (risk disclosures addressing "exact problems" were meaningful).

[9] The Opposition pivots to a new, unpleaded theory when it cites CW1 to claim that the December 2021 launch does not count because it was a "soft launch" and not full "commercialization." Opp. at 17.  But the AC's central claim is that defendants knew *launching* the game in the second half of 2021 was not achievable, not that full "commercialization" would be achieved by then. The Court should not countenance a rewrite at this late stage.

because players testing beta versions of *Kingdom Boss* complained of bugs and glitches (Opp. at 6-7, 13), that claim ignores: (i) well-established case law holding that bugs are to be expected in new product development and do not render forward-looking statements false; and (ii) the absence of any facts showing defendants knew of bugs, much less believed they were so significant as to doom the game. *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) ("That [problems] exist does not make a lie out of any of the alleged false statements"). Plaintiff's cursory attempt to avoid this authority only highlights why no claim is stated. *See* Opp. at 18, citing *Allison v. Brooktree Corp.,* 999 F. Supp. 1342, 1348 (S.D. Cal. 1998) (only "*insurmountable* problems, or [] problems [] of such magnitude that Defendants knew the projected release dates to be unrealistic" were sufficient to plead knowledge); *Siebel*, 2005 WL 3555718, at *5 (knowledge established where bugs were *so bad* that major customers refused to pay and threatened suit); *3226701 Can. v. Qualcomm, Inc*., 2017 WL 4759021, at *18 (S.D. Cal. Oct. 20, 2017) (plaintiff "must allege that Defendants knew the difficulties . . . were insurmountable . . . [k]nowledge that there were some obstacles to development . . . is not sufficient"). The AC pleads no such similar facts.[10]

**The Registration Statement is within the safe harbor.** Recognizing that the safe harbor is fatal to its Section 11 claim, plaintiff relies on proposed SEC rules to argue that forward-looking statements in connection with de-SPAC transactions are within "blank check" and IPO exclusions from the safe harbor. Opp. at 15.[11] This effort fails. If *proposed amendments* are needed to fold in SPACs, that only proves *existing* safe harbor exclusions ***do not apply*** to de-SPAC transactions. *See* 87 Fed. Reg. 29458, 29482; *In re CarLotz, Inc. Sec. Litig.*, 2023 WL 2744064, at *8 (S.D.N.Y. Mar. 31, 2023) (rejecting identical argument). Even absent the safe harbor, the bespeaks caution doctrine would still render the forward-looking statements here inactionable. *See* Mot. at 15-16.

---

[10] *In re Honest Co. Sec. Litig.*, 2022 U.S. Dist. LEXIS 131000, at *7 (C.D. Cal. July 18, 2022) (Opp. at 13), is inapposite. *Honest* dealt with internally acknowledged consumer complaints about defective products that were already on the market – not a game still under development.

[11] That Acies may have called itself as a "blank check company" is not, as plaintiff claims (Opp. at 15), proof that it met the technical requirements of one under the PSLRA. *See* 87 Fed. Reg. 29458, 29482 (noting most SPACs fall outside the definition of "blank check company" because they do not issue "penny stock"). As noted, Acies was not a "blank check company" as defined by applicable regulations. Mot. at 15 n.11 (citing 17 C.F.R. §§ 230.419 and 240.3a51-1). Plaintiff's only rejoinder is that those SEC regulations are "outdated." Opp. at 15. Not so. The regulations are current and have not been amended since adoption in 1992. *See* 87 Fed. Reg. 29458, 29482.

## IV.   PLAINTIFF DOES NOT STATE A CLAIM UNDER SECTION 10(b)

While the Opposition nods to the stringent pleading standards imposed by the PSLRA and Rule 9(b) (Opp. at 23), it cannot identify facts that come close to stating a 10(b) claim. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008) (plaintiff must plead particularized facts satisfying Rule 9(b) and the "formidable" standards of the PSLRA).

### A.   Plaintiff Fails To Plead Any Actionable Statement

The Opposition has nothing to say about the vast majority of the challenged class period statements. That is not surprising; they are forward-looking and protected by the safe harbor. *See* Mot. at 17. As for the three statements the Opposition does address, not one is actionable, either.

Plaintiff assails as false the Company's August 11 statement that it had "[a]dvanced the development of Kingdom Boss" because beta testers complained of bugs and CW2 said the game had glitches in November 2021. Opp. at 23; ¶ 96. But anecdotal reports of performance issues *while the game was still in development* do nothing to establish that progress had not been made. *See Ronconi*, 253 F.3d at 434. And CW2 *first* saw the game in November 2021, so was not in a position to know whether development had advanced as of the time of the challenged statement *months earlier*. *See Wochos*, 985 F.3d at 1196 (comment that "'great progress' was being made on battery production" only actionable if there had been "no progress at all"). Also ineffective is plaintiff's claim that Pascal "affirmatively misrepresented that '[t]he game from a *future* perspective is complete" on November 11. Opp. at 24; ¶ 100. *That is not what Pascal said*. He said, "the game from a *feature* perspective is complete." *See* Ex. 7 at 144. The AC does not allege that additional features needed to be developed in November 2021. Finally, nothing Pascal said about "[o]ptimizing" *Kingdom Boss* was false. Opp. at 24, citing ¶ 100. Not only does that argument flow from the same mistaken premise that Pascal said the game was complete from a *future* perspective (a construction that makes no sense), rather than a *feature* perspective (which makes perfect sense), as discussed in the Motion, the "optimization" statements are puffery. *See* Mot. at 17; *Intuitive*, 759 F.3d at 1060.

### B.   Plaintiff Does Not Plead a Strong Inference of Scienter

Plaintiff had to allege "compelling," "persuasive," and "powerful" contemporaneous facts

reflecting an intent to defraud or recklessness so egregious as to be tantamount to actual intent. *Tellabs, Inc. v. Makor Issues & Rts.,* Ltd., 551 U.S. 308 (2007).  The Opposition does not come close to meeting this exacting standard.  Instead, it ignores confounding facts, and rests entirely on lawyer argument and two CWs who undermine, rather than support, plaintiff's theory of fraud.

> **Pascal's class period stock purchases negate scienter**.  Plaintiff does not dispute that Pascal purchased $1.5 million in stock during the class period – a fact that negates any inference of scienter.  *See* Mot. at 18-19; *Zack v. Allied Waste Indus., Inc.*, 2005 WL 3501414, at *14 (D. Ariz. Dec. 15, 2005).  The same is true of Pascal's decision to forfeit his interest in Acies for no consideration in the merger.  *See* Mot. at 19.  Unable to refute those devastating facts, plaintiff attempts to undercut them, suggesting the Court should weigh Pascal's *class period purchases* against any theoretical profit he made in exchanging some Old Playstudios stock for cash in the merger *before the class period*.  Opp. at 27.  Plaintiff provides no authority or explanation of how that chronologically inapt comparison somehow "enhances an inference of scienter" here.[12]  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009) (only suspicious *class period sales* raise an inference of scienter).

> **The CW accounts undermine any scienter claim**.  As explained in the Motion, if anyone would know of "intractable technical defects" plaguing *Kingdom Boss*, it would have been CW1 – the Chief Creative Officer of Boss Fight (*Kingdom Boss'* third-party developer).  But, tellingly, CW1 says *nothing* about bugs, lags, or any technical defects in *Kingdom Boss*.  Mot. at 19.  Plaintiff blithely invites the Court to ignore the obvious adverse inference raised by CW1's silence on this key point (Opp. at 23), even though the Supreme Court requires this Court to weigh such competing inferences.  *Tellabs*, 551 U.S. at 314 ("inference of scienter must be . . . at least as compelling as any opposing inference of nonfraudulent intent").[13]

---

[12] Plaintiff's reliance on *No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) is misguided.  That case concerned whether **class period sales** support an inference of fraud (*id*. at 938-39), and none are alleged here.

[13] Contrary to plaintiff's characterization (Opp. at 25), *In re Amgen Inc. Sec. Litig*., 2014 U.S. Dist. LEXIS 183034 (C.D. Cal. Aug. 4, 2014) does not stand for the proposition that the Court must ignore competing inferences raised by plaintiff's allegations.  In fact, *Amgen* cites *Tellabs'* requirement that courts **must** consider opposing inferences in determining scienter. *Id*. at *26.

The Opposition also cannot get around the fact that CW2 had ***no contact*** with Pascal, and so offers nothing creditable about Pascal's state of mind at any time (and does not even purport to do so). *See* Mot. at 20; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *20 (N.D. Cal. May 22, 2012). While plaintiff asks the Court to ignore this common-sense principle, the case law plaintiff relies on only serves to reinforce it. *See, e.g.*, *Quality Sys.*, 865 F.3d at 1145 (crediting corporate insiders who directly interacted with defendants); *In re Paysign, Inc. Sec. Litig.*, 2023 U.S. Dist. LEXIS 22055, at *12-13 (D. Nev. Feb. 9, 2023) (same). Also lacking is any cogent response to CW2's glaring omission of anything to suggest that technical issues with *Kingdom Boss* could not be overcome prior to launch, much less that Pascal adopted such a view, as is necessary to plead scienter. *See Tellabs*, 551 U.S. at 314.

***Plaintiff's temporal proximity argument fails.*** The temporal proximity between the merger and the August 11, 2021 disclosure that the launch would shift later in 2021 suggests changing circumstances, not fraud. Mot. at 20-21. Indeed, the Ninth Circuit has held that temporal proximity arguments (just like plaintiff's) are implausible. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (rejecting "supposition" that defendants would briefly inflate stock price only to reveal the truth and "then face the inevitable fallout"); *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 622 (9th Cir. 2022) (rejecting argument that software bugs disclosed in August materialized earlier); *Glazer Capital Mgmt., L.P v. Forescout Techs., Inc.*, 2023 WL 2532061, at *20-21 (9th Cir. Mar. 16, 2023) (rejecting similar temporal proximity arguments). Trying to run from these authorities, plaintiff asserts "Pascal knew about further delays no later than June 30, 2021" (Opp. at 26) – but that conclusory allegation is simply pulled from thin air, with no factual support at all. *See* ¶ 104.

***Core operations does not apply.*** Core operations requires particularized facts showing Pascal had actual access to information that would have put him on notice that his statements about *Kingdom Boss* were false or misleading. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). Because there are no such facts, the Opposition makes them up – asserting that "Pascal knew contrary information since he was working with Boss Fight to 'optimize' the game." Opp. at 26. This misstates Pascal's statements on optimization. *See* Ex. 4 at 112 ("it's critical that we take

the time needed to optimize the experience"); Ex. 7 at 144 ("this is about finding its market and optimizing the metrics"). The AC provides no facts about Pascal working with Boss Fight on *Kingdom Boss* optimization, but even if so, there is nothing to suggest that anyone at Boss Fight ever told him facts that contradicted his public statements. Indeed, where a third-party developer is involved, the Company disclosed that it had "limited control" giving rise to "additional risks," including possible delay. Mot. at 6. Without no response, plaintiff falls back on the adage that it would be "absurd to suggest" that Pascal lacked scienter given the "importance of the game to the Company's bottom line." Opp. at 26. This argument not only ignores that *Kingdom Boss* was one of many games in the Company's portfolio, core operations does not apply simply because ***plaintiff*** alleges a product is important. *See* Mot. at 21; *Amyris*, 2014 WL 1285175, at *15 (rejecting core operations inference even where "signature product" involved). It also tells us nothing about what details Pascal, or anyone else, knew at any point in time. In short, a mere delay in launching *Kingdom Boss*s does not somehow transform ordinary course game development into the "exceedingly rare" case where the core operations theory applies. *S. Ferry*, 542 F.3d at 784.

***The inference of good faith is far more compelling.*** Far from a cogent and compelling, theory of fraud, the Opposition offers nothing to displace the much more powerful, competing inference of good faith. *Tellabs*, 551 U.S. at 326. Developing and launching a hit game is inherently uncertain. Here, the risks were disclosed, and despite high hopes and substantial effort, the Company made a business decision to suspend *Kingdom Boss* and avoid further expense. It then promptly told the market. Along the way, far from taking advantage of any supposed "fraud," Pascal ***bought*** hundreds of thousands of shares at prices that (in plaintiff's view) he ***knew*** were artificially high. These are the facts and the inference of good faith to be drawn is far more cogent and compelling than the story of intentional fraud plaintiff tries to tell. *Zucco*, 552 F.3d at 1007.

**C.    The Opposition Confirms Plaintiff's Inability To Plead Loss Causation**

Because nothing in the Company's February 24, 2022 announcement suspending the game (and lowering forward-looking outlook) or May 5, 2022 earnings announcement (which does not mention the game at all) suggested that *Kingdom Boss* was discontinued ***due to*** bugs or defects, plaintiff cannot show loss causation. *See Mineworkers' Pension Scheme v. First Solar, Inc.*, 881

F.3d 750, 753 (9th Cir. 2018) (plaintiff must trace a loss back to "the very facts about which the defendant [allegedly] lied"); *Metzler*, 540 F.3d at 1063 (loss causation requires that the market must have "learned of and reacted to this fraud."); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (the securities laws are intended to "protect [investors] against those economic losses that misrepresentations actually cause."); *Loos v. Immersion Corp.*, 762 F.3d 880, 887-88 (9th Cir. 2014) (absent the correction of a misstatement, there is no way to distinguish losses related to alleged fraud from disappointing financial results or news).[14]

Notwithstanding, plaintiff insists it is enough just to point to stock price declines following those disclosures to satisfy its burden. *See* Opp. at 27-28.  That plainly does not suffice, as every securities case follows a stock price drop and so would render loss causation meaningless. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (loss causation requires "more" than missed earnings or disappointing financial news).[15]

Plaintiff's remaining arguments (Opp. at 28) are also unavailing.  An acknowledgment that the February 24 financial results were "impacted by New Game Development" – not only states the obvious (for a game development company) – it discloses nothing at all to suggest a fraud.  So too, the Opposition cannot sidestep the fact that the May 5 earnings (a period post-dating the announcement of the game's suspension and related financial impact) revealed no new information and cannot be deemed "corrective" in any way.  *See Bofl*, 977 F.3d at 794.

## V.   THE SECTION 11 CLAIM FAILS FOR ADDITIONAL REASONS[16]

### A.   The Opposition Cannot Point To Any Other Statement That Is Actionable

***The Forms 425 are not actionable under Section 11.***  Plaintiff's half-hearted effort to expand the scope of Section 11 liability to encompass Form 425 filings, that are not part of and

---

[14] Despite conclusory arguments to the contrary (Opp. at 27-28), even the cases plaintiff cites make clear that loss causation requires particularity under Rule 9(b). *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020).

[15] Plaintiff's cases change nothing. In *Bofl,* the Ninth Circuit **reaffirmed** the basic principle that, to be "corrective," a disclosure still must reveal a prior misstatement.  977 F.3d at 791-93.  So, too, in *In re MGM Mirage Sec. Litig.*, the Court noted allegations tying the relevant announcements to the "alleged misrepresentations." 2013 U.S. Dist. LEXIS 139356, at *30 (D. Nev. Sept. 26, 2013).

[16] There can be no Section 11 claim against Grove who did ***not*** sign the Registration Statement, was not an Acies director, and was not identified as a prospective Company director. Mot. at 23 n.16; 15 U.S.C. § 77k(a).  The Section 14(a) claim against him fails for the same reason.

were never incorporated by reference into the registration statement (Opp. at 19), fails. Section 11 liability is limited to statements made in a registration statement or in documents incorporated by reference therein. *See* Mot. at 23-24; 15 U.S.C. § 77k(a); 15 U.S.C. § 77b(a)(8); 17 C.F.R § 230.411(e). Plaintiff does not (and cannot) dispute that the challenged Forms 425 do not meet those requirements. Reliance on *Chen v. Select Income REIT*, 2019 U.S. Dist. LEXIS 177687 (S.D.N.Y. Oct. 11, 2019) does not change the result. *Chen* does not deal with a Section 11 claim, nor does it suggest that Forms 425 are part of, or incorporated into, registration statements. *See id.* at *41-43 (discussing Form 425 proxy disclosures in the context of a mootness fee).

***None of the challenged statements are actionable.*** In any event, the challenged statements – all of which relate to the projected launch of *Kingdom Boss* – (whether in the Registration Statement or the Forms 425) are forward-looking and protected by the PSLRA safe harbor. *See* Mot. at 24; *supra,* Sec. III. Even if the challenged statements were not within the safe harbor, the Opposition identifies no facts showing that in early 2021, at the time of the challenged statements, there was no way the Company could meet its goal to launch the game in the second half of 2021. *Rigel*, 697 F.3d at 881; *Qualcomm*, 2017 WL 4759021, at *18. Indeed, it ***met*** that goal – *Kingdom Boss* launched worldwide in December 2021. Ex. 11 at 186. *See supra*, at Sec. III.[17]

***Plaintiff does not allege a violation of Reg. S-K.***[18] The Opposition's arguments under Items 105 or 303 of Reg. S-K are meritless. *See* 17 C.F.R. § 229.303 (requiring disclosure of "known trends or uncertainties" that a company "reasonably expects" will have a material impact); 17 C.F.R. § 229.105(a) (requiring "discussion of the material factors that make an investment in the registrant or offering speculative or risky"). The entire argument hinges on a claimed "change"

---

[17] Plaintiff's cases only highlight the lack of any particularized facts establishing falsity here. *Fosbre v. Las Vegas Sands Corp.*, 2011 U.S. Dist. LEXIS 94919, at *8-10 (D. Nev. Aug. 24, 2011) (falsity adequately alleged where specific internal documents and reports contradicted public statements); *In re iDreamSky Tech. Ltd. Sec. Litig.*, 236 F. Supp. 3d 824, 830-31 (S.D.N.Y. 2017) (game launch statements adequately alleged to be false where witnesses detailed that defendants knew rift with third-party developer would delay receipt of source code needed for launch).

[18] Plaintiff cites *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021) to claim defendants waived certain arguments because they were "underdeveloped" (Opp. at 18-19) or because defendants' motion did not separately address every statement (*id.* at 19-20). That assertion is frivolous. *Alphabet* holds only that ***plaintiff*** does not waive claims on appeal when the motion to dismiss from which the appeal was taken did not address those claims at all. 1 F.4th at 709. That is not the circumstance here.

---

in an amended registration statement (that *Kingdom Boss* was expected to launch in the "second half of 2021" when an earlier draft said it would launch "in mid-2021").  Opp. at 19.  As noted, *supra* n.7, this was just a conforming edit of information **already disclosed**, not a "change" (as elsewhere in the same draft registration statement (page 126) it **also** stated *Kingdom Boss* was anticipated to launch in the "second half of 2021").  Even if there had been a change, there is nothing at all unusual in that (nor does plaintiff so allege), and to the extent the difference between a launch in "mid" 2021 and one in the "second half of 2021" is meaningful, there can be no dispute that this was disclosed.  What plaintiff needed to show was that that the Company **knew at the time** that the launch would not occur in the "second half of 2021."  Not only are there no such facts, but the Company provided extensive warnings about the risks and uncertainties in the development and launch of *Kingdom Boss*, **and ultimately the game did launch before year end**.  Mot. at 6-7, 13-14, 25; *see Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998) (Item 303 "mandates ... knowledge of an adverse trend"); *Wandel v. Gao*, 590 F. Supp. 3d 630, 646 (S.D.N.Y. 2022) (Item 105 requires actual knowledge of material risk). The effort to invoke Reg S-K thus fails altogether.

### B.    The Claims Against Newly Added Defendants Are Time-Barred

The Opposition barely addresses, and cannot justify, the addition of twelve new defendants in the face of the one-year statute of limitations applicable to its Sections 11 and 14(a) claims.  The statute began running on August 11, 2021 – when the Company announced the initial delay in the release of *Kingdom Boss*.  That is the **same date** plaintiff has repeatedly touted as the first "corrective" disclosure showing a material misstatement in the Proxy/Registration Statement.  *See* ECF No. 24 at 3, 6, 9; Mot. at 25-26; *In re Obalon Therapeutics, Inc.*, 2019 WL 4729461, at *12 (S.D. Cal. Sept. 25, 2019) (alleged corrective disclosure sufficient to allow reasonably diligent plaintiff to discover claim); *Yaroni v. Pintec Tech. Hld's Ltd.*, 600 F. Supp. 3d 385, 399 (S.D.N.Y. 2022) (same).  Endeavoring to walk back that position, plaintiff now contradicts itself, claiming that the Company announced only a "small delay" on August 11 (Opp. at 21) while simultaneously continuing to assert that the "temporal proximity" of that announcement to the merger shows both a material misstatement in the Proxy/Registration Statement and fraud.  Plaintiff cannot have it

both ways, nor can it abandon earlier positions *in this case* that the August 11 disclosure revealed an alleged misstatement. The law is clear that the one-year statute began to run August 11, 2021. At that time, based on plaintiff's own allegations, it became "aware of warnings" that "there were either misleading statements or significant omissions involved." *Lane v. Page*, 649 F. Supp. 2d 1256, 1298 (D.N.M. 2009); *see* Mot. at 25-26. Yet, plaintiff did not assert claims against the newly added defendants until October 4, 2022. Those claims are untimely and should be dismissed.

### C.    Plaintiff Cannot Satisfy The Section 11 Tracing Requirement

To have standing under Section 11, plaintiff must have purchased shares *pursuant to the registration statement that it claims was false and misleading*. *See Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 (9th Cir. 1999). Here, plaintiff does not dispute that: (i) it was an Acies shareholder prior to the merger, (ii) its shares of Acies stock automatically converted to Company stock, and (iii) the merger consideration, including newly issued and registered shares, went to Old PlayStudios shareholders and PIPE investors (none of whom are in the alleged class), and not to the Acies shareholders like plaintiff. Mot. at 26. As such, plaintiff's shares originated from Acies' IPO in 2020, not from the Registration Statement at issue here. *See CarLotz*, 2023 WL 2744064, at *7-8 (shares in SPAC acquired *prior* to merger do not trace to merger registration statement). Trying to deflect from that obvious defect, plaintiff points to an inapposite case interpreting the "purchase or sale" requirement of Section 10(b). *See* Opp. at 20-21 (citing *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453 (1969)). That case says nothing of Section 11 tracing, nor does it magically render the Registration Statement here the origin of plaintiff's shares (when it is not).

## VI.    THE SECTION 14(a) PROXY CLAIM ALSO FAILS

Asserted only against the Company and seven of the newly added defendants (those allegedly serving on Acies' board at the time of the merger), the Section 14(a) claim is not only time-barred, but is unsupported by specific facts showing the Proxy was false or misleading. *See* Mot. at 27. The claim is subject to dismissal on both bases. Nor do any well-pleaded facts give rise to a "strong inference" that each defendant "acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *Desaigoudar*, 223 F.3d at 1022-23; *Lawson v. Klondex Mines Ltd.*, 450 F. Supp. 3d 1057, 1083-84 (D. Nev. 2020) (dismissing 14(a) claim for failure to satisfy "the rigorous

pleading standards of the PSLRA" as to scienter). The mere fact that due diligence on new games was conducted prior to the merger (Opp. at 22) is not enough. That claim is quickly dispatched by plaintiff's own authority, which makes clear that bare bones due diligence allegations do not suffice. *See In re Stable Rd. Acquisition Corp.*, 2022 U.S. Dist. LEXIS 127345, at *36 (C.D. Cal. July 13, 2022) (due diligence even fails to establish negligence where "there are no specific allegations that [defendants] were aware of any red flags to which they turned a blind eye").[19]

Nor can the Opposition successfully dodge the "essential link" requirement of Section 14(a). *See Desaigoudar*, 223 F.3d at 1022; Mot. at 28. Here, the purpose of the Proxy was to ask Acies' shareholders to approve the merger. It did not address (or purport to advise on) the ***separate and independent decision*** about whether to redeem their shares. Put simply, Acies shareholders could vote to approve the merger (the directly authorized transaction), and still decide to redeem their shares (as many did) rather than accept the merger consideration. The Opposition, like the AC, tries to brush off this critical distinction, yet purports to assert the Section 14(a) claim on behalf of a separately identified class who chose to hold their shares rather than redeem (in other words, it hinges on the redemption decision and not on approval of the merger). ¶¶ 1a, 138. Because there is no dispute that the redemption decision was not "directly authorized" or voted on in the Proxy, plaintiff has no claim under this particular statute. *See In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007) ("only when the votes for a specific corporate transaction requiring shareholder authorization … are obtained by a false proxy statement" is recovery under 14(a) available).

**VII.    CONCLUSION**

Because nothing about the development of *Kingdom Boss* could conceivably support the claims alleged here, defendants' motion to dismiss should be granted with prejudice.

---

[19] *See Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1187-88 (D. Nev. 2009) (fact of diligence did not establish that defendants knew that statements were false); *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 757 F. Supp. 2d 260, 323 (S.D.N.Y. 2010) (due diligence allegations "too thin to ascribe even negligence to" defendants under Section 14(a)); *In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 535, 543 (S.D.N.Y. 2021) ("extensive due diligence" not sufficient to raise "a strong inference of the requisite state of mind" under Section 14(a)).

Dated:  April 7, 2023

FENWICK & WEST LLP

By:  /s/  Dean S. Kristy
　　　　　Dean S. Kristy

Dean S. Kristy (admitted *pro hac vice*)
Jennifer C. Bretan (admitted *pro hac vice*)
Sofia Ritala (admitted *pro hac vice*)
FENWICK & WEST, LLP
555 California Street, 12th Floor
San Francisco, CA 94104

Patrick G. Byrne (Nevada Bar No. 7636)
Bradley T. Austin (Nevada Bar No. 13064)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169

*Attorneys for Defendants PLAYSTUDIOS, Inc.,*
*Andrew Pascal, Edward King, Daniel Fetters,*
*James Murren, Zach Leonsis, Brisa Carleton,*
*Andrew Zobler, Sam Kennedy, Christopher Grove,*
*William J. Hornbuckle, Joe Horowitz,*
*Jason Krikorian, and Judy K. Mencher*

**CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on April 7, 2023, a true and correct copy of **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** was transmitted electronically through the Court's CM/ECF e-filing electronic notice system to all attorneys associated with the above-captioned case.

*/s/ Dean S. Kristy*
Dean S. Kristy
Fenwick & West LLP