1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330.4505
Facsimile: (702) 825.0141
Email: andrew@mlolegal.com

*Liaison Counsel for Lead Plaintiffs*

**POMERANTZ LLP**
Omar Jafri
(admitted *pro hac vice*)
Diego Martinez-Krippner
(admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:   ojafri@pomlaw.com
         dmartinezk@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTIAN A. FELIPE,<br><br>             *Plaintiff*,<br><br>v.<br><br>PLAYSTUDIOS, INC., et al.,<br><br>             *Defendants*. | Case No. 2:22-cv-01159-RFB-NJK<br><br>Hon. Richard F. Boulware, II<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** |

## LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

Lead Plaintiffs The Phoenix Insurance Company Ltd. and The Phoenix Provident Pension Fund Ltd. (collectively, the "Plaintiffs"), on behalf of themselves and all members of the proposed Settlement Class, hereby respectfully move this Court for an Order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (1) preliminarily approving the proposed settlement set forth in the Stipulation and Agreement of Settlement dated March 5, 2025 (the "Stipulation"); (2) preliminarily certifying the Settlement Class; (3) appointing A.B. Data, Ltd. as the Claims Administrator; (4) appointing Plaintiffs as Class Representatives and Lead Counsel, Pomerantz LLP ("Pomerantz"), as Class Counsel; (5) approving the proposed form and manner of disseminating notice to the Settlement Class; (6) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement, Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' service award request; (7) setting a date for the Final Approval Hearing at which the Court will consider the final approval of the settlement and entry of the proposed Final Judgment, the Plan of Allocation, Lead Counsel's application for an award of attorneys' fees and expenses, and Plaintiffs' service award request; and (8) granting such other and further relief as may be required.

This Motion is based on the following points and authorities and accompanying declaration of Andrew R. Muehlbauer (the "Declaration") and the exhibits attached thereto, including the Stipulation and its accompanying exhibits (filed herewith as Ex. 1) and the Court's file in this action, and any additional evidence or argument that the Court may request.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT .................................................................. i

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... iii

I.     INTRODUCTION ............................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND .........................................3

III.   PRELIMINARY APPROVAL IS WARRANTED .............................................6

       A. Both Public Policy and Judicial Policy Strongly Favor Settlement.......................6

       B. The Proposed Settlement is Fair, Adequate, and Reasonable ................................7

              1.   The Settlement was the Result of Serious, Informed, Noncollusive
                   Negotiations ...............................................................................7

              2.   The Settlement Does Not Grant Preferential Treatment to Any
                   Settlement Class Member ................................................................9

              3.   The Settlement Has No "Obvious Deficiencies" and Falls Within the
                   Range for Approval .........................................................................11

IV.    THIS COURT SHOULD CERTIFY THE SETTLEMENT CLASS ...............12

       A. The Settlement Class Satisfies Rules 23(a)(1)-(4)'s Requirements .....................12

       B. The Settlement Class Meets Rule 23(b)(3) Requirements....................................15

V.     THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE  ...................18

VI.    PROPOSED SCHEDULE OF EVENTS .........................................................20

VII.   CONCLUSION ..............................................................................................21

CERTIFICATE OF SERVICE .....................................................................................22

1

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................16

*Booth v. Strategic Realty Tr., Inc.*,
   No. 13-CV-04921-JST, 2015 WL 3957746 (N.D. Cal. June 28, 2015) ...............................17

*Browning v. Yahoo! Inc.*,
   No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007)......................................6

*Destefano v. Zynga, Inc.*,
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................................12

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)..................................................................................................18

*Grant v. Cap. Mgmt. Servs., L.P.*,
   No. 10-CV-2471-WQH BGS, 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013).........................7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .....................................................................................7

*Howell v. JBI, Inc.*,
   298 F.R.D. 649 (D. Nev. 2014)..........................................................................12, 15, 17

*In re Celera Corp. Sec. Litig.*,
   No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ...........................18

*In re China Med. Corp. Sec. Litig.*,
   No. 8:11-1061-JST (ANX), 2013 WL 12126754 (C.D. Cal.
   May 16, 2013)...............................................................................................12, 15, 17

*In re Cooper Companies Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ................................................................................16

*In re Heritage Bond Litig.*,
   No. 02–ML–1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...................................8

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ................................................................................15, 16

*In re Juniper Networks, Inc. Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009).................................................................................13

*In re LDK Solar Sec. Litig.*,
   No. C 07-5182 WHA, 2010 WL 3001384 (N.D. Cal. July 29, 2010) ..................................10

*In re NVIDIA Corp. Derivative Litig.*,
   C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...............................9

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................................................11

*In re Portal Software, Inc. Sec. Litig.*,
   No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .................................9, 18

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .........................................................................6

*In re Syncor ERISA Litig.*,
   227 F.R.D. 338 (C.D. Cal. 2005) ....................................................................13

*In re Zynga Inc. Sec. Litig.*,
   No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)........................... *passim*

*Katz v. China Century Dragon Media, Inc.*,
   No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) .......................8

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ................................................................................18

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ....................................................................17

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ....................................................................6, 11

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .......................................................................18

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
   No. EDCV 08-482-VAP(OP), 2010 WL 2486346 (C.D. Cal. June 15, 2010) .......................18

*Santoro v. Aargon Agency, Inc.*,
   252 F.R.D. 675 (D. Nev. 2008)......................................................................16

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .....................................................................7, 12

*Szymborski v. Ormat Techs, Inc.*,
   No. 3:10-CV-132-RCJ, 2012 WL 4960098 (D. Nev. Oct. 16, 2012) ..............................7

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ........................................................................6

*Vinh Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014).........................9, 10

*Vinh Nguyen v. Radient Pharms. Corp.*,
   287 F.R.D. 563 (C.D. Cal. 2012)....................................................................12

iv

*West v. Circle K Stores, Inc.*,
  No. CIVS040438WBSGGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ....................6, 11

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

**Statutes**

15 U.S.C. § 78u-4(a)(7) ...............................................................................................20

§ 10(b) of the Securities Exchange Act of 1934 ...........................................................4

§ 20(a) of the Securities Exchange Act of 1934 ...........................................................4

§ 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995 ......................10

Private Securities Litigation Reform Act of 1995 ............................................3, 10, 18

SEC Rule 10b-5 .............................................................................................................4

**Other Authorities**

Edwards Flores & Svetlana Starykh, *Recent Trends in Securities Class Action
  Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025) ....................................11

*Manual for Complex Litigation, Fourth* § 13.14 (FJC 2004) .......................................6

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs, by and through Lead Counsel, Pomerantz, hereby move for preliminary approval of the proposed settlement of this securities class action (hereafter the "Settlement") and are authorized to report to the Court that Defendants support approval of the Settlement.

## I. INTRODUCTION

To resolve all claims of Plaintiffs and the Settlement Class[1] and in exchange for comprehensive releases, Defendants PLAYSTUDIOS, Inc. ("Playstudios" or the "Company," f/k/a Acies Acquisition Corp., or "Acies"), Andrew Pascal, Edward King, Daniel Fetters, James Murren, Zach Leonsis, Brisa Carleton, Andrew Zobler, Sam Kennedy, Christopher Grove, William J. Hornbuckle, Joe Horowitz, Jason Krikorian, and Judy K. Mencher (collectively, the "Defendants," and each Defendant, except Playstudios, referred to as "Individual Defendants,") have agreed to pay or cause to be paid $6,500,000, in cash (hereafter the "Settlement Amount"), the terms of which are set forth in the Stipulation and Agreement of Settlement dated March 5, 2025 (the "Stipulation").[2] The Settlement is in the best interest of the Settlement Class and represents a significant recovery. As such, this Court should preliminarily approve the Settlement, certify the Settlement Class for settlement purposes only, approve the proposed notice and administration program, and set a date for a final approval hearing. If approved, the Settlement

---

[1] Settlement Class" or "Settlement Class Member" means all persons and entities who: (a) purchased or otherwise acquired public shares in Playstudios (including by way of exchange of publicly-listed Acies shares) pursuant to or traceable to the Proxy/Registration Statement; (b) were solicited to approve the merger between Playstudios and Acies and who exchanged publicly-listed Acies shares for Playstudios Class A Ordinary Shares rather than redeeming the same pursuant to the Proxy/Registration Statement; or (c) purchased or otherwise acquired Playstudios common stock between August 11, 2021 and May 5, 2022, both dates inclusive; and as to any of (a)-(c) were damaged thereby. Excluded from the Settlement Class are: (a) Defendants and their immediate families; (b) current and former directors or officers of Playstudios or Acies; (c) any entity that has entered into a stockholder agreement or co-venture agreement with Playstudios, or was a Private Investment in Public Equities investor in Playstudios; and (d) any entity controlled, majority-owned or wholly owned, or affiliated with any of the above. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation, which is being filed concurrently herewith. The Stipulation is attached as Exhibit 1 to the accompanying Muehlbauer Decl.

will resolve this Action in its entirety.

The proposed Settlement is the result of arm's-length negotiations over months with an experienced mediator, Jed Melnick of JAMS, and culminating in a mediator's proposal which was accepted by the parties. Experienced counsel for Plaintiffs conducted these negotiations based on thoroughly investigating the claims, successfully overcoming Defendants' motion to dismiss, and reviewing a substantial volume of documentary discovery. The Settlement represents a fair, adequate, and reasonable result for the Settlement Class. While Plaintiffs assert that their claims are meritorious, Defendants strongly deny any wrongdoing or liability, including under the federal securities laws. Accordingly, given Defendants' potential defenses and the risks of prosecuting this litigation through class certification, summary judgment, and trial, the Settlement is in the best interests of the Settlement Class.

The Settlement Amount significantly exceeds the average recovery as a percentage of estimated damages in securities class actions, supporting preliminary approval. Upon this Court's preliminarily approving the Settlement, Plaintiffs will notify Settlement Class Members of the Settlement, mailing to each such member whom the Claims Administrator[3] identifies a Postcard Notice containing instructions on how Settlement Class Members can obtain copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Long Notice") and the Proof of Claim and Release Form (the "Claim Form").

The Long Notice and the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice")[4] that the Claims Administrator will widely disseminate online and in print advise Settlement Class Members of: (i) the essential terms of the Settlement, as memorialized in the Stipulation; (ii) the proposed plan for allocating the Settlement proceeds

---

[3] In addition to the approvals mentioned above, Plaintiffs further request that the Court approve the appointment of A.B. Data as the Claims Administrator. A.B. Data will be responsible for, among other things, disseminating Notice, reviewing claims Settlement Class Members submit, claims administration, and determining which claims to approve and a pro rata distribution of the Net Settlement Fund to Settlement Class Members.

[4] Plaintiffs refer herein to the Long Notice, Summary Notice, and Postcard Notice collectively as the "Notice."

among Settlement Class Members; (iii) Lead Counsel's application for attorneys' fees of up to twenty percent (20%) and reimbursement of expenses not to exceed $110,000; (iv) the application for an incentive award to Plaintiffs of up to $20,000 in total, or $10,000 each; (v) the procedure for completing and submitting a Claim Form; (vi) the procedure for either objecting to the proposed Settlement or for requesting exclusion from the Settlement Class; and (vi) the date, time, and place of the Settlement Hearing.

For the reasons stated herein, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and schedule a final approval hearing.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This is a federal securities class action against Playstudios and the Individual Defendants.

On April 5, 2022, Christian A. Felipe filed a Class Action Complaint for Violations of the Federal Securities Laws in the United States District Court for the Northern District of California (Dkt. No. 1), in case number 3:22-cv-02164-VC, assigned to the Honorable Vince Chhabria. The Complaint named Playstudios and Andrew Pascal as Defendants. Subsequently, on June 6, 2022, Eric Wiesler (Dkt. No. 21), Plaintiffs (Dkt. No. 24), and Felipe (Dkt. No. 25), filed competing motions for appointment of lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4, et seq. On July 12, 2022, the Court issued an Order (Dkt. No. 44) appointing Plaintiffs as Lead Plaintiffs, and approving their selection of Pomerantz as Lead Counsel. On July 15, 2022, Plaintiffs and Defendants Playstudios and Andrew Pascal filed a stipulation to transfer case number 3:22-cv-02164-VC to the United States District Court for the District of Nevada, Southern Division (Las Vegas) pursuant to 28 U.S.C. §1404(a) (Dkt. No. 47). On July 18, 2022, Judge Chhabria granted the stipulation and ordered transfer to the United States District Court for the District of Nevada.

On July 20, 2022, the case was transferred to the United States District Court for the District of Nevada, assigned case number 2:22-cv-01159-RFB-NJK, and assigned to the Honorable Richard F. Boulware, II, District Judge, and Nancy J. Koppe, Magistrate Judge. On October 4, 2022, Plaintiffs filed their Amended Class Action Complaint for Violations of the Federal

3

Securities Laws ("Complaint") (Dkt. No. 73), alleging violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), and Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5 and 14a-9 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"). These claims were brought on behalf of three different classes: a Securities Act Class, a 14(a) Class, and a 10(b) Class. The Complaint named Playstudios and Andrew Pascal as defendants, as well as the following additional defendants: Edward King, Daniel Fetters, James Murren, Zach Leonsis, Brisa Carleton, Andrew Zobler, Sam Kennedy, Christopher Grove, William J. Hornbuckle, Joe Horowitz, Jason Krikorian, and Judy K. Mencher. Not all Defendants were named in all claims.

The Securities Act Class asserts claims under Sections 11 and 15 of the Securities Act, and consists of a class of all persons who purchased or otherwise acquired public shares in Playstudios (including by way of exchange of publicly-listed Acies shares) pursuant to or traceable to the proxy/registration statement that Defendants filed with the SEC on Form S-4 on February 16, 2021, and amended on Forms S-4/A on March 26, 2021, May 10, 2021, May 18, 2021, and May 20, 2021, and the body of which was incorporated into the final prospectus on Form 424(b)(3) filed on May 25, 2021 (hereafter the "Proxy/Registration Statement").

The 14(a) Class asserts claims under Section 14(a) of the Exchange Act, and consists of all persons who were solicited to approve the merger between Playstudios and Acies and who exchanged publicly listed Acies shares for Playstudios Class A Ordinary Shares rather than redeeming the same pursuant to the Proxy/Registration Statement.

The 10(b) Class asserted claims under Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder, and consists of all persons who purchased or otherwise acquired Playstudios common stock between August 11, 2021 and May 5, 2022, both dates inclusive.

The gravamen of the Complaint is that Defendants allegedly violated the federal securities laws by making misrepresentations, and omitting material facts concerning a SPAC merger through which Playstudios went public. Specifically, Plaintiffs allege that Defendants made

misrepresentations and omitted facts concerning a new game being developed for release by Playstudios called Kingdom Boss. The Complaint pleads that known problems with the game allegedly existed at the time of the merger and continued throughout the Class Period until the Company ultimately suspended the game. Plaintiffs allege that Defendants made false statements and omissions about the game's development and launch timing, which inflated the price of Playstudios' shares, and that the share price dropped in response to adverse news released about Kingdom Boss.

On December 21, 2022, Defendants filed a motion to dismiss the Complaint (Dkt. No. 91), the briefing for which the Parties completed on April 7, 2023 (Dkt. No. 103). The Court heard oral argument on the motion to dismiss on October 20, 2023 (Dkt. No. 134). On March 31, 2024, the Court issued an Order, granting in part and denying in part Defendants' motion to dismiss (Dkt. 136). On May 15, 2024, Defendants filed their answers to the Complaint, which denied all claims in the Complaint and asserted certain defenses thereto.

Thereafter, the Parties exchanged initial disclosures, served requests for production, and engaged in extensive discovery, including production of over 57,000 pages of documents by Defendants. On December 10, 2024, the parties engaged in an in-person mediation before Mediator Jed Melnick from JAMS. The mediation was preceded by submission of extensive mediation statements and exhibits. Although the Parties did not reach agreement on December 10, Mediator Melnick's efforts to help the parties resolve the matter continued and culminated with him issuing a mediator's proposal to settle the litigation which was accepted by all Parties in January 2025.

Per the terms of the Stipulation, in return for a cash payment of $6,500,000, due to be paid within twenty (20) business days after the later of the entry of the Preliminary Approval Order or Plaintiffs providing a Form W-9 and payment instructions, the Settlement Class will release the Released Claims against Released Defendant Parties.

1

2

### III.   PRELIMINARY APPROVAL IS WARRANTED

#### A.   Both Public Policy and Judicial Policy Strongly Favor Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise of claims brought on a class-wide basis. Fed. R. Civ. P. 23(e) ("The Claims . . . of a certified class may be settled . . . only with the court's approval."). In preliminarily approving the Settlement, the Court will principally consider whether: (i) the Settlement, on its face, is fair, reasonable, and adequate; (ii) the Class should be certified for the purposes of the Settlement; (iii) the Notice to potential Settlement Class Members that Plaintiffs propose is adequate; and (iv) to appoint the Claims Administrator to transmit Notice to potential Settlement Class Members and to administer the claims process and distribution of the Net Settlement Fund. In addition, at this stage, the Court sets deadlines for (a) a final approval hearing, (b) briefing in support of final approval and Plaintiffs' request for attorneys' fees, reimbursement of out-of-pocket expenses, and awards to Plaintiffs for their service to the Settlement Class, (c) requests for exclusion from the Settlement Class, and (d) objections to the Settlement or to Plaintiffs' attorneys' fees request.

In evaluating whether to approve a proposed settlement, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution."). "[T]here is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *13 (N.D. Cal. Nov. 16, 2007) ("public and judicial policies strongly favor settlement of class action law suits"). Approval of class action settlements normally proceeds in two stages: (i) preliminary approval, followed by notice to the class; and (ii) final approval. *See, e.g.*, *West v. Circle K Stores, Inc.*, No. CIVS040438WBSGGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006); *Manual for Complex Litigation, Fourth* §13.14 at 173 (FJC 2004). By this motion, Plaintiffs request that the Court take the first step in the Fed. R. Civ.

6

P. 23(e) approval process, granting preliminary approval of the Settlement.

**B.    The Proposed Settlement is Fair, Adequate, and Reasonable**

Rule 23(e) does not require "a full settlement fairness appraisal before granting preliminary approval." *Grant v. Cap. Mgmt. Servs., L.P*., No. 10-CV-2471-WQH BGS, 2013 WL 6499698, at *5 (S.D. Cal. Dec. 11, 2013).[5] Rather, it requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). So long as the Settlement is "potentially fair," this Court should grant preliminary approval, permitting notice to the Settlement Class. *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015) ("a full fairness analysis is unnecessary at this stage"). "At this juncture, preliminary approval of a settlement and notice to the class is appropriate if": (1) "the proposed settlement appears to be the product of serious, informed, noncollusive negotiations," (2) "has no obvious deficiencies," (3) "does not improperly grant preferential treatment to class representatives or segments of the class," and (4) "falls within the range of possible approval." *Id*. Since each of these factors weighs in favor of preliminary approval of the Settlement, the Court should, in the exercise of its discretion, *see id.*, preliminarily approve the Settlement.[6]

**1.    The Settlement was the Result of Serious, Informed, Noncollusive Negotiations**

The Parties' negotiations culminating in the Settlement were "serious," "informed," and at arms-length. In addition to reviewing the publicly available information concerning Playstudios and Acies, Lead Counsel retained an investigator to conduct a thorough investigation, including interviewing former Playstudios employees who agreed to discuss their tenure at Playstudios, as

---

[5] Unless otherwise noted, all internal citations and quotation marks are omitted.
[6] At the final approval stage, the Court will be asked to review the following factors identified by the Ninth Circuit: "[T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Szymborski v. Ormat Techs, Inc*., No. 3:10-CV-132-RCJ, 2012 WL 4960098, at *2 (D. Nev. Oct. 16, 2012) (citing *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998)).

well as other individuals familiar with the facts underlying Plaintiffs' theory of the case. Through

the briefing on Defendants' motion to dismiss, Plaintiffs and Lead Counsel acquired "fulsome

understandings" of the Parties' respective positions on the legal and factual issues in the case. *See*

*In re Zynga*, 2015 WL 6471171, at *9. In addition, Defendants produced, and Plaintiffs reviewed

tens of thousands of pages of documents concerning Playstudios' development of Kingdom Boss,

the key component of Plaintiffs' claims.

On December 10, 2024, the Parties engaged in an in-person mediation in San Francisco

before Mediator Jed Melnick of JAMS. In preparation for the mediation, the Parties submitted

extensive mediation statements and exhibits. Even though the mediation did not result in an

immediate agreement to resolve the claims in this litigation, Mediator Melnick continued to engage

the Parties and ultimately issued a mediator's proposal to settle the litigation which was accepted

by the Parties in January 2025. Thereafter, the Parties executed a Memorandum of Understanding,

and the Stipulation of Settlement followed.

Further, Plaintiffs and Lead Counsel understand the substantial risks involved in

prosecuting this Action further. While Plaintiffs believe that the case is strong, achieving class

certification and succeeding at summary judgment and trial are in no way assured. Even if

Plaintiffs were to clear each of these hurdles, likely appeals and other subsequent proceedings

would inject uncertainty and delay into the Settlement Class's recovery. The Settlement enables

the Settlement Class to recover now.

Plaintiffs had the benefit of the advice of knowledgeable counsel with extensive experience

in shareholder class action litigation and securities fraud cases. Courts give considerable weight to

the opinion of experienced and informed counsel. *See, e.g.*, *In re Heritage Bond Litig.*, No. 02–

ML–1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("The recommendation of

experienced counsel carries significant weight in the court's determination of the reasonableness

of the settlement."); *Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX,

2013 WL 11237202, at *5 (C.D. Cal. Oct. 10, 2013) ("Great weight is accorded to the

recommendation of counsel, who are most closely acquainted with the facts of the underlying

litigation."); *In re NVIDIA Corp. Derivative Litig.*, C-06-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."). Lead Counsel, experienced class action securities fraud practitioners, have a thorough understanding of the merits of the Action, having developed the case from its inception. Due to their experience and knowledge of the merits, Lead Counsel's belief in the fairness and reasonableness of the Settlement warrants a presumption of reasonableness.

Moreover, when parties' arms-length negotiations result in a settlement, courts initially presume that a proposed settlement is fair and reasonable. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). The Parties conducted settlement negotiations here at arms-length with experienced and knowledgeable counsel on both sides working through an experienced mediator. The Settlement was only achieved after months of mediation and follow-on communications between the Parties, through the mediator, with each side zealously advocating for their clients and ultimately accepting the mediator's proposal to settle the claims here. This Court should find, therefore, that the Settlement resulted from arms-length negotiations, supporting preliminary approval.

### 2. The Settlement Does Not Grant Preferential Treatment to Any Settlement Class Member

The Court will also consider "whether the Settlement provides preferential treatment to any class member." *In re Zynga*, 2015 WL 6471171, at *10. "A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every [a]uthorized [c]laimant, but also sensibly makes interclass distinctions based upon, *inter alia,* the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'" *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). "[C]ourts recognize that [a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.*

9

While the Court need not approve the Plan of Allocation (hereafter the "Plan") until the final approval hearing, it provides sufficient evidence that the Settlement grants no preferential treatment to any Settlement Class Member. Like the allocation plan in the *Radient Pharms.* settlement, the proposed Plan uses a Recognized Loss value calculated for each share, with the Recognized Loss value determined by when that share was purchased and sold. The Plan provides for a calculation of the Recognized Loss based on whether Settlement Class Members: (a) sold Playstudios' common stock prior to February 25, 2022,[7] (b) sold shares during the period February 25, 2022 through May 5, 2022, both dates inclusive,[8] (c) sold shares during the period of May 6, 2022 through August 3, 2022,[9] or (d) held shares as of the close of U.S. financial markets on August 3, 2022. *See* Long Notice, Ex. A-1 to Stipulation. The Plan of Allocation also provides for a formula for Recognized Loss for Settlement Class Members who held Acies common stock at the close of business on May 14, 2021,[10] and subsequently exchanged the Acies common stock for Playstudios common stock in the merger between Acies and Playstudios rather than redeeming the shares. *See id.* Finally, the Plan of Allocation provides a calculation for the Recognized Loss for holders of Playstudios common stock traceable to the Proxy/Registration Statement. *See id.*

Because the Plan's formula is a *pro rata* allocation, the Court should find that it does not grant preferential treatment to any Settlement Class Member.[11]

---

[7] The date on which, according to the Complaint, the market assessed the impact of the first corrective disclosure.

[8] The date between when the first corrective disclosure and the second corrective disclosure occurred.

[9] The end date of the 90-day look-back period under Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

[10] Only holders of record of Acies Class A ordinary shares at the close of business on May 14, 2021, were entitled to vote on the merger between Playstudios and Acies at the Extraordinary General Meeting held on June 17, 2021.

[11] Nor does the proposed $20,000 award in total, or $10,000 each, for the named class representatives provide any basis to conclude that the Settlement grants preferential treatment to any member of the Settlement Class. Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Radient Pharms.*, 2014 WL 1802293, at *11. The proposed awards to Plaintiffs are consistent with amounts awarded by other courts in this Circuit. *See, e.g.*, *In re LDK Solar Sec. Litig.,* No. C 07-5182 WHA, 2010 WL 3001384, at *5 (N.D. Cal. July 29, 2010) ($10,000 incentive

### 3. The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval

Moreover, just as the Settlement is the product of arm's-length negotiations and prefers no Settlement Class Member over any other, the Settlement Amount is within the range of reasonableness and should be approved. *See West*, 2006 WL 1652598, at *11 (observing that "at this preliminary approval stage, the court need only determine whether the proposed settlement is within the range of possible approval."). Under this Settlement, Defendants will pay or cause to be paid $6,500,000, representing approximately 18% of the roughly $35.42 million of Plaintiffs' estimated aggregate statutory damages for the Section 11 claims, and 15% of the roughly $42.7 million of Plaintiffs' estimated aggregate damages for the Section 14 claims (which estimates reflect concurrent and not additive damages, as damages overlap and Plaintiffs do not seek double recovery). Although the Section 10(b) Class will recover from the same common fund, the Settlement is still significant given that Plaintiffs' estimated aggregate damages for the Section 10(b) claims are only $8.8 million.

As a percentage of the total of Plaintiffs' estimated damages, the Settlement Amount is well beyond the amount of a typical securities class action settlement. *See*, *e.g., In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (noting that settlement of over 9% of damages was three times the average percentage of securities class action settlements);[12] *see also* Edwards Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025 at pp. 26-27),[13] Figs. 23 & 24 (median recovery in securities class actions from 2015 to 2024 ranged from 1.5% to 2.5%; for cases with losses in the range of $20 million to $49 million, the median recovery from 2015 to 2024 was 5.2%).

---

award). Accordingly, the award to Plaintiffs will not upset the Court's determination that no Settlement Class Member receives preferential treatment under the terms of the Settlement.

[12] *See also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case.").

[13] Available at https://www.nera.com/insights/publications/2025/recent-trends-in-securities-class-action-litigation--2024-full-y.html?lang=en

11

Further, when evaluating the Settlement by examining recovery per damaged share as outlined in the Long Notice, Plaintiffs' estimated average recovery is $0.30 per allegedly damaged share of Playstudios common stock. This is also a result that well exceeds the average. *See, e.g., Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (per damaged share recovery of $0.11 "falls squarely within the settlement amounts approved in other securities class action cases."). Accordingly, this Court should conclude that the Settlement Amount weighs in favor of granting preliminary approval.

## IV.    THIS COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Parties have stipulated to certification of a class for settlement purposes only. (Stipulation ¶43). Accordingly, the Court should determine whether to certify the Settlement Class pursuant to Rule 23(a) and (b). The Settlement Class easily meets the requirements of Rule 23(a)(1)-(4) and Rule 23(b)(3).

### A.    The Settlement Class Satisfies Rules 23(a)(1)-(4)'s Requirements

Rule 23(a) establishes four prerequisites for class action litigation, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *see also Staton*, 327 F.3d at 953, 957. The Settlement Class meets each of these requirements.

**Numerosity:** The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at *2 (C.D. Cal. May 16, 2013). "As a general rule, classes of forty or more are considered sufficiently numerous." *Id.* Where it is "obvious" that the number of class members far exceeds forty, this requirement is met. And where, as in this case involving "nationally traded stocks," "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012); *Howell v. JBI, Inc.*, 298 F.R.D. 649, 654 (D. Nev. 2014) ("in securities

12

cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied"). The Court should make a similar finding here.[14]

**Commonality:** To certify a class, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs contend that this case concerns a number of common questions of fact and law, including: (1) whether the challenged statements were materially false or misleading (2) whether Defendants acted with scienter; (3) whether the alleged disclosures were corrective disclosures; (4) whether Defendants have valid defenses to any such claims of liability; (5) the amount by which the price of Playstudios securities was artificially inflated during the Class Period; and (6) the amount of alleged damages that could be recovered at trial. The commonality requirement is satisfied since even though the amount each class member is entitled will differ, the issues described above are common to the Settlement Class. *In re Zynga*, 2015 WL 6471171, at *6; *Juniper*, 264 F.R.D. at 588 ("Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2).").

**Typicality:** Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although there may be differences in damages calculations depending on when Plaintiffs and the other Settlement Class Members purchased their Acies or Playstudios common stock, the alleged injury is common to the Settlement Class and no member of the Settlement Class will be disadvantaged relative to any other member of the Settlement Class based on the Settlement. There is no indication that Plaintiffs would face any unique defenses that could make their claims atypical of the Settlement Class. Rule 23(a)(3) does not require Plaintiffs to show that their claims are identical on every issue to those of the Class, but merely that significant common questions exist. *See In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005). Given that Plaintiffs' claims are typical of the Settlement

---

[14] *See also, e.g.*, *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks.").

Class, the Court should find that the typicality requirement has been met. *See In re Zynga*, 2015 WL 6471171, at *7.

**Adequacy:** Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs purchased Acies and/or Playstudios common stock on the market at relevant times and were alleged to be injured by suffering losses in the same manner as the rest of the Class. Thus, Plaintiffs possess the same interest and suffered the same alleged injury as the rest of the Settlement Class, supporting their adequacy. *See In re Zynga*, 2015 WL 6471171, at *7. There is no indication here that Plaintiffs' interests will conflict with those of the Settlement Class. Plaintiffs, therefore, are adequate representatives of the Settlement Class.

As to the adequacy of Plaintiffs' counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Lead Counsel has been involved in this action from the beginning with a pre-filing investigation of securities claims against Defendants. Lead Counsel also retained an investigator to assist with developing Plaintiffs' claims in the Complaint in addition to Lead Counsel's review of publicly available information before the Complaint was filed, and review of thousands of documents produced by Defendants during fact discovery. Lead Counsel also retained a damages expert to evaluate the case. These expenses and efforts were undertaken on a contingency fee basis, with no guarantee of recovery. Lead Counsel are experienced securities class action attorneys (*See* Pomerantz Firm Resume, Dkt. No. 24-5) who are knowledgeable and capable of evaluating cases to determine whether a settlement, and at what stage of the litigation, would be beneficial to the class, and when to continue pursuing litigation of an action. Based on Lead Counsel's experience, and their work in the matter thus far, the Court should conclude that Lead Counsel has satisfied

the adequacy requirements under Rule 23(g). *See China Medicine,* 2013 WL 12126754, at *4.

Thus, the adequacy requirement is satisfied.

### B.    The Settlement Class Meets Rule 23(b)(3) Requirements

In addition to satisfying the elements of Rule 23(a), as discussed above, Plaintiffs must also satisfy one of the three elements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), alleging that common questions predominate over any individual issues that may exist in this case. Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3) (emphasis added). This Action meets both requirements.

The Ninth Circuit is clear that the "criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). When deciding whether to certify a settlement class, the Court's concern is the class definition. *Id.* at 556-57. Because there will be no trial, manageability at trial is not an issue. In this case, as in many securities cases, the Settlement Class definition is straightforward, and this Court should find that the Settlement Class satisfies Rule 23(b)(3)'s prescription.

**Predominance:** "Rule 23(b)(3) first requires predominance of common questions over individual ones, such that the adjudication of common issues will help achieve judicial economy." *In re Zynga*, 2015 WL 6471171, at *7. Common questions predominate surrounding Defendants' alleged conduct. Allegations arising under the federal securities laws support a finding of predominance as they arise out of common questions and issues. *Howell*, 298 F.R.D. at 656 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages."); *China Medicine*, 2013 WL 12126754, at *5 ("Plaintiff's claims under federal securities laws entail nothing but common questions and issues for the class."); *In re Zynga*, 2015 WL 6471171, at *7 (for securities action, the "same set of operative facts and a single proximate

cause applies to each proposed class member."). Whether Defendants' statements were materially false, whether Defendants acted with requisite scienter, and whether Defendants' conduct caused damages to Plaintiffs and the Settlement Class Members, are common to the Settlement Class.

That Settlement Class Members hold different amounts of Acies or Playstudios common stock does not defeat a finding of predominance. In determining whether common questions predominate, the primary inquiry is on the issue of liability, not the calculation of damages. *See Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 684 (D. Nev. 2008) (holding that "the potential need to determine individual damages does not defeat the economy that would be achieved by certifying the case as a class action, at least as to the issue of liability."). While the amount of damages may differ among members of the Settlement Class, liability and the proper measure of damages can be determined on a class-wide basis. *See In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("[T]he critical questions of what Defendants said, what they knew, what they may have withheld, and with what intent they acted, are central to all class members' claims ... Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy."). This Action, therefore, meets the predominance requirement.

**Superiority:** Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Plaintiffs' and the Settlement Class Members' claims. For certification of a settlement class, as Plaintiffs seek here, the Court is not required to analyze each superiority factor in great detail. The Supreme Court held that a court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 620, (1997). Rather, more consideration is required to evaluate the class definition to ensure that it is not "unwarranted or overbroad." *Id.* The Ninth Circuit has followed suit recognizing that "[t]he criteria for class certification are applied differently in litigation classes and settlement classes" and that certification of settlement-only classes require "heightened attention to the definition of the class." *Hyundai*, 926 F.3d at 556-57. A class definition is approvable "if the description of the class is definite enough so that it is

16

administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Although the Court must evaluate the class definition, for securities class actions settlements, however, there are rarely any definitional issues as proposed classes for these types of actions are definite and ascertainable. *See Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015) ("class definition contained in the Settlement Agreement satisfies the ascertainability requirement, as the class consists of individuals who purchased [company] stock within a discrete time period."). Here, the proposed class is clearly defined as Playstudios investors who purchased or otherwise acquired publicly traded common traceable to the Proxy/Registration Statement, were solicited to approve a merger between Playstudios and Acies and exchanged publicly listed Acies securities for Playstudios' securities rather than redeeming Acies' securities, or who purchased or otherwise acquired Playstudios common stock during a finite period. Thus, the class definition is proper for certification at settlement.

The remaining superiority factors support class action treatment of this securities action as it would be economically and judicially efficient to have similar actions heard in one court. Further, a class action avoids the duplication of efforts and inconsistent rulings. *See In re Zynga*, 2015 WL 6471171, at *7 (if shareholders "each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendants' liability. Different courts could interpret the claims different, resulting in inconsistent rulings or unfair results."); *Howell*, 298 F.R.D. at 656 (finding a class action "avoids the dangers of duplicative litigation and the unfairness of inconsistent judgments" and that "securities fraud cases fit Rule 23 like a glove"); *China Medicine*, 2013 WL 12126754, at *5 ("where the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action."). Thus, this action satisfies the superiority requirement by avoiding the possibility of repetitious, expensive litigation and efficiently resolving the claims of the entire Settlement Class at once.

Because this action meets the Rule 23(a) and (b)(3) requirements, the Court should certify the Settlement Class for purposes of this Settlement.

**V.     THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE**

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]"). Courts evaluating proposed notice documents have held that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).[15]

The content of the proposed Notice package is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The proposed methods of notice described above, specifically mailing and publication, also satisfy the requirements of Fed. R. Civ. P. 23, the PSLRA, and due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see, e.g.*, *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *7 (N.D. Cal. Mar. 31, 2015) (granting preliminary approval of class action settlement and form and content of notice package, including postcard notice as conforming to Rule 23, PSRLA, and due process); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (similar). The Notice package Plaintiffs propose, therefore, suffices under Rule 23, the PSLRA, and due process.

Here, the [Proposed] Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order" or the "Order"), attached as Exhibit A to the Stipulation, mandates that as soon as practical after receiving lists of beneficial owners from

---

[15] *See also Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *11 (C.D. Cal. June 15, 2010) ("The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment").

nominees and custodians,[16] the third-party Claims Administrator, shall mail the Postcard Notice, attached to the Preliminary Approval Order as Exhibit A-4, to all identifiable Settlement Class Members identified by records maintained by Playstudios or its transfer agent, or identified by banks, brokerage firms, or other nominees, as having purchased Playstudios common stock during the Settlement Class Period. The Postcard Notice prompts potential Settlement Class Members to view the Long Notice online or to contact the Claims Administrator to request a hard copy of the Long Notice and Claim Form. The Claims Administrator will cause the Stipulation, the Preliminary Approval Order, Claim Form, and a copy of the Long Notice to be posted on the Claims Administrator's website within sixteen (16) calendar days after entry of the Preliminary Approval Order. Additionally, no later than sixteen (16) calendar days after the entry of the Preliminary Approval Order, the Claims Administrator shall cause the Summary Notice, substantially in the form annexed as Exhibit A-3 to the Preliminary Approval Order, to be published electronically over the internet, *e.g.*, by *GlobalNewswire, PR Newswire*.

The proposed Notice provides detailed information, in plain English, concerning: (a) the rights of Settlement Class Members, including the manner in which objections may be lodged and exclusions may be requested; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a Claim Form; (e) a description of the proposed Plan of Allocation; (f) the fees and expenses to be sought by Lead Counsel, and (g) the reimbursement awards requested by Plaintiffs.

The proposed Notice also describes the proposed Settlement and sets forth, among other things: (1) the definition of the Court-certified Settlement Class and who is excluded; (2) the reasons the Parties have proposed the Settlement; (3) the amount of the Settlement Fund; (4) the estimated average distribution per damaged share; (5) the Settlement Class's claims and issues; (6) the Parties' disagreement over damages and liability; and (7) the date, time and place of the

---

[16] The Preliminary Approval Order requires the Claims Administrator, within sixteen (16) calendar days after entry of the Preliminary Approval Order, to mail the Postcard Notice to Settlement Class Members who can be reasonably identified.

1 final Settlement Hearing. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

2       Further, the proposed Notice discusses the rights Settlement Class Members have in

3 connection with the Settlement, including: (1) the right to request exclusion from the Settlement

4 Class and the manner for submitting a request for exclusion; (2) the right to object to the

5 Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) the

6 right to participate in the Settlement and instructions on how to complete and submit a Claim Form

7 to the Claims Administrator. The Notice also provides contact information for Lead Counsel and

8 counsel for Defendants, as well as the postal address for the Court.

9       In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must

10 be served on all parties and, for motions by class counsel, directed to class members in a reasonable

11 manner." The proposed Summary Notice satisfies the requirements of Rule 23(h)(1), as it notifies

12 Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees in an

13 amount not to exceed twenty percent (20%) of the total Settlement and for reimbursement of

14 reasonable litigation expenses not to exceed $110,000 to be paid from the Settlement Fund. The

15 Notice also informs Settlement Class Members of the application for an incentive award of no

16 more than $20,000 in total to Plaintiffs for the time they spent consulting with Lead Counsel

17 throughout the litigation to date.

18       In sum, the Notice program proposed in connection with the Settlement and the form and

19 content of the Notice more than satisfy all applicable requirements of both the Federal Rules of

20 Civil Procedure and the PSLRA. Accordingly, in granting preliminary approval of the Settlement,

21 Class Representatives respectfully request that the Court also approve the proposed form and

22 method of giving notice to the Class.

23 **VI.    PROPOSED SCHEDULE OF EVENTS**

24       Plaintiffs respectfully propose the following procedural schedule:

25

26

27

28

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing. | Plaintiffs suggest no fewer than one hundred (100) days after the filing of this motion or entry of the Preliminary Approval Order, whichever is later. (Order ¶6). |
| Mailing of the Postcard Notice. | No later than sixteen (16) calendar days following entry of the Preliminary Approval Order. (Order ¶11). |
| Publication of the Stipulation and its Exhibits, the Preliminary Approval Order, the Long Notice and the Claim Form, and on the Claims Administrator's website. | No later than sixteen (16) calendar days following entry of the Preliminary Approval Order. (Order ¶16). |
| Publication of the Summary Notice. | No later than sixteen (16) calendar days following entry of the Preliminary Approval Order. (Order ¶17). |
| Date for Plaintiffs to file papers in support of final approval of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses. | No later than thirty (30) calendar days prior to the Settlement Hearing. (Order ¶28). |
| Filing deadline for requests for exclusion. | No later than twenty-eight (28) calendar days prior to the Settlement Hearing. (Order ¶21). |
| Filing deadline for objections. | No later than twenty-eight (28) calendar days prior to the Settlement Hearing. (Order ¶25). |
| Filing deadline for Claim Forms. | No later than forty-four (44) calendar days prior to the Settlement Hearing (Order ¶19(a)) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation, and for application for attorneys' fees and reimbursement of expenses. | No later than seven (7) calendar days prior to the Settlement Hearing. (Order ¶29) |

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (a) preliminarily certifying the Settlement Class; (b) preliminarily approving the Settlement; (c) holding that the manner and forms of notice set forth in the Preliminary Approval Order satisfy due process and provide the best notice practicable under the circumstances; (d) setting a date for the Settlement Hearing; (e) appointing Plaintiffs as Class Representatives and Lead Counsel as Class Counsel; (f) appointing

21

A.B. Data as the Claims Administrator; (g) ordering that Notice substantially in the forms of the proposed notices be given to the proposed Settlement Class; and (h) granting such other and further relief as may be required.

Dated: March 5, 2025                                        Respectfully submitted,

**POMERANTZ LLP**

By: /s/ *Omar Jafri*

Omar Jafri (*pro hac vice*)
Diego Martinez-Krippner (*pro hac vice*)
10 S. LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: ojafri@pomlaw.com
         dmartinezk@pomlaw.com

*Lead Counsel for Plaintiffs*

**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer
Nevada Bar No. 10161
Sean P. Connell
Nevada Bar No. 7311
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
Email: andrew@mlolegal.com
         sean@mlolegal.com

*Liaison Counsel for Plaintiffs*

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on March 6, 2025, I electronically filed the foregoing **LEAD**

3

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**

4

**PROPOSED CLASS ACTION SETTLEMENT** with the Clerk of Court using the CM/ECF

5

system, which will send notification of such to all CM/ECF participants.

6

7
                                          /s/ *Andrew R. Muehlbauer*

8
                                          Andrew R. Muehlbauer

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28