**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
Email: andrew@mlolegal.com

*Liaison Counsel for Lead Plaintiffs*

**POMERANTZ LLP**
Omar Jafri
(admitted *pro hac vice*)
Diego Martinez-Krippner
(admitted *pro hac vice*)
Genc Arifi
(*pro hac vice* forthcoming)
10 S. LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:   ojafri@pomlaw.com
         dmartinezk@pomlaw.com
         garifi@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| | Case No: 2:22-CV-01159-RFB-NJK |
| CHRISTIAN A. FELIPE, | HON. RICHARD F. BOULWARE II |
| *Plaintiff,* | |
| v. | <u>CLASS ACTION</u> |
| PLAYSTUDIOS, INC., *et al.*, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |
| *Defendants.* | |

**NOTICE OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
<u>AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT</u>**

Lead Plaintiffs The Phoenix Insurance Company Ltd. and The Phoenix Provident Pension Fund Ltd. (collectively, the "Plaintiffs"), on behalf of themselves and all members of the proposed Settlement Class, hereby respectfully move this Court for an Order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (1) finally certifying the Settlement Class; (2) appointing Plaintiffs as Class Representatives and Lead Counsel as Class Counsel; (3) granting final approval of the Settlement; (4) finding that notice to the Settlement Class was provided as required and to the satisfaction of due process and the Private Securities Litigation Reform Act of 1995; (5) approving the Plan of Allocation as fair, reasonable and adequate; and (6) granting such other and further relief as may be required.

This motion is based on the following memorandum of points and authorities and accompanying declaration of Omar Jafri and the exhibits attached thereto, including the Court's file in this Action, and any additional evidence or argument that the Court may request.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...........................................................................................i

TABLE OF AUTHORITIES ................................................................................ iii

I.    PRELIMINARY STATEMENT ............................................................1

II.   ARGUMENT ..........................................................................................2

   A.   The Court Should Finally Certify the Settlement Class...............2

   B.   The Court Should Approve the Proposed Settlement as Fair, Reasonable, and
        Adequate ....................................................................................3

      1.   The Standard for Final Approval of Class Action Settlements.................3

      2.   Application of the Ninth Circuit's Criteria Supports Approval of the
           Settlement .........................................................................5

         a)   The Strength of Plaintiffs' Case and Risks Associated with
              Continued Litigation ......................................................5

            (1) Establishing Liability ................................................6

            (2) Loss Causation and Damages Defenses............................6

         b)   The Expense and Likely Duration of Further Litigation .................7

         c)   The Risk of Maintaining Class Action Status Through Trial ..........8

         d)   Amount Offered in the Settlement...................................9

         e)   The Extent of Discovery Completed and the Stage of the
              Proceedings ...............................................................10

         f)   Counsel's Experience and Views.....................................11

         g)   The Settlement is Not the Product of Collusion ...........................11

         h)   The Reaction of Class Members to the Proposed Settlement ........12

   C.   The Notice Program Satisfied Due Process and Complied with Fed. R. Civ. P.
        23(e) ........................................................................................13

      1.   The Dissemination of Notice Satisfies Due Process.............................13

i

2. Contents of the Notice Satisfy Due Process ............................................14

D. The Plan of Allocation of the Net Settlement Fund is Fair, Adequate, and Reasonable and Should be Approved ....................................................15

III. CONCLUSION............................................................................................16

CERTIFICATE OF SERVICE ........................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ansell v. Laikin,*
No. CV 10-9292 PA (AGRX), 2012 WL 13034812 (C.D. Cal. July 11, 2012) ......................6

*Barani v. Wells Fargo Bank, N.A.,*
No. 12CV2999-GPC KSC, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) .............................13

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.,*
No. 12-CV-05259-JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014) ................................2

*Brown v. China Integrated Energy Inc.,*
No. CV1102559BROPLAX, 2015 WL 12712081 (C.D. Cal. Aug. 19, 2015)......................12

*Cheng Jiangchen v. Rentech, Inc.,*
No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......................5

*Churchill Vill., L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ........................................................................................4, 5

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) .....................................................................................3, 15

*Colesberry v. Ruiz Food Prod., Inc.,*
No. CVF 04-5516 AWISMS, 2006 WL 1875444 (E.D. Cal. June 30, 2006) ......................13

*Destefano v. Zynga, Inc.,*
No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .....................................8

*Dura Pharm., Inc. v. Broudo,*
544 U.S. 336 (2005)................................................................................................................6

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974).............................................................................................................13

*Eisen v. Porsche Cars N. Am., Inc.,*
No. 2:11-CV-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014).........................10, 11

*Ellis v. Naval Air Rework Facility,*
87 F.R.D. 15 (N.D. Cal. 1980)............................................................................................11

*Ellis v. Naval Air Rework Facility,*
661 F.2d 939 (9th Cir. 1981) ..............................................................................................11

*Fishoff v. Coty Inc.*,
    No. 09 Civ. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .......................................6

*Fishoff v. Coty Inc.*,
    634 F.3d 647 (2d Cir. 2011) ..............................................................................................6

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981) ...........................................................................................13

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)...........................4

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) .............................................................................................8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................................4, 5, 12

*Hayes v. MagnaChip Semiconductor Corp.*,
    No. 14-CV-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016)................................6

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .......................................................................................13

*In re Biolase, Inc. Sec. Litig.*,
    No. SACV131300JLSFFMX, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .....................9

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .......................................................................................11, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................6

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...........................8, 9, 15

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................... *passim*

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ................................................................................15

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................10, 11, 12

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .....................................................................................7

iv

*In re Warner Commc'ns Sec. Litig.*,
    798 F.2d 735 (2d Cir. 1986)...........................................................................7

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-cv-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)............................9, 11

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)..........................................................................................8

*Lee v. Enter. Leasing Co.-W.*,
    No. 3:10-CV-00326-LRH, 2015 WL 2345540 (D. Nev. May 15, 2015) ...............................4

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ....................................................................3, 5

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ..................................................................13, 14

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05CV179-IEGJMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009)..............................9, 10

*Mendoza v. Tucson Sch. Dist. No. 1*,
    623 F.2d 1338 (9th Cir. 1980) ....................................................................13

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .....................................................7, 9, 11, 14

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .....................................................................3, 4, 5

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) ...............5, 11, 15

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .....................................................................5, 7, 13

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .....................................................................4

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ...........................7

*Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*,
    173 F.3d 713 (9th Cir. 1999) ....................................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).......................................................................9

**Statutes & Regulations**

Private Securities Litigation Reform Act of 1995 ...........................................14, 15, 16

**Rules**

Fed. R. Civ. P. 23(a) ...........................................................................................3

Fed. R. Civ. P. 23(b)(3)........................................................................................3

Fed. R. Civ. P. 23(c) ...........................................................................................8

Fed. R. Civ. P. 23(e) ...............................................................................1, 3, 13

**Additional Authorities**

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.53 ......................13

Svetlana Starykh and Edwards Flores, *Recent Trends in Securities Class Action
    Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025) .............................10

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs The Phoenix Insurance Company Ltd. and The Phoenix Provident Pension Fund Ltd. (collectively, "Plaintiffs"), respectfully submit this memorandum of points and authorities in support of their motion for: (i) final certification of the Settlement Class for purposes of this Settlement only; (ii) final approval of the proposed $6,500,000, plus interest, Settlement of the Action; (iii) final approval of the Notice[1] program; and (iv) final approval of the proposed Plan of Allocation.[2]

## I.    PRELIMINARY STATEMENT

This $6,500,000 all-cash Settlement is a fair, adequate, and reasonable result for the Settlement Class. The Settlement avoids the risks and expense of continued litigation, including the risks of recovering less than the Settlement Amount or nothing at all. As described below and in the accompanying Jafri Declaration,[3] Plaintiffs faced, and would continue to face, Defendants' vigorous opposition with respect to the legal and factual bases of Plaintiffs' claims. In particular, had the Settlement not been reached, Plaintiffs would face risks at the merits stage with no guarantee of ultimate success.

As set forth in detail in the Jafri Declaration, the Parties reached the Settlement after Lead Counsel: (i) conducted an extensive factual investigation, which included reviewing Defendants' SEC filings and other public documents, interviewing former employees of the Company, combing through message boards and game reviews, and developing leads from the investigation; (ii)

---

[1] "Notice" collectively refers to the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Long Notice"), Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"), and the Postcard Notice.

[2] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement, filed on March 6, 2025 (the "Stipulation") (ECF No. 164-2).

[3] The Declaration of Omar Jafri in Support of Plaintiffs' (1) Unopposed Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation, and the (2) Motion For Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs contains a detailed description of the allegations and claims, the Action's procedural history, and the events that led to the Settlement, among other matters.

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
2:22-CV-01159-RFB-NJK

researched, drafted and filed the operative Amended Class Action Complaint for Violations of the Securities Laws (the "Amended Complaint"); (iii) largely defeated Defendants' motion to dismiss; (iv) reviewed and analyzed tens of thousands of pages produced by Defendants; (v) prepared and served responses to Defendants' discovery requests; (vi) drafted briefs outlining the issues and evidence supporting Plaintiffs' claims in preparation of mediation; and (vii) participated in an arms' length mediation process that ultimately yielded this Settlement. Given Plaintiffs' informed assessment of the strengths and weaknesses of the claims and defenses asserted and the risks and delays of continued litigation and trial, the Settlement is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class for settlement purposes, approve Plaintiffs' implementation of the Notice program, grant final approval of the Settlement, and approve the Plan of Allocation.

## II.    ARGUMENT

### A.    The Court Should Finally Certify the Settlement Class

Nothing has changed since the Court preliminarily certified the Settlement Class. *See, e.g.*, *Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.*, No. 12-CV-05259-JST, 2014 WL 2967474, at *2 (N.D. Cal. June 30, 2014) ("For the reasons discussed in the Court's Preliminary Approval Order, the Court finds that the requirements for certification of the conditionally certified settlement class have been met, and that the appointment of . . . Class Representative and . . . Class Counsel is proper.").

When seeking preliminary approval, Plaintiffs requested that the Court preliminarily certify the Settlement Class for settlement purposes. In the Order that granted Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement ("Preliminary Approval Order") (ECF No. 170), this Court preliminarily certified the following Settlement Class:

> all persons and entities who: (a) purchased or otherwise acquired public shares in Playstudios (including by way of exchange of publicly-listed Acies shares) pursuant to or traceable to the Proxy/Registration Statement; (b) were solicited to approve the merger between Playstudios and Acies and who exchanged publicly-listed Acies shares for Playstudios Class A Ordinary Shares rather than redeeming the same pursuant to the Proxy/Registration Statement; or (c) purchased or otherwise acquired Playstudios

2

common stock between August 11, 2021, and May 5, 2022, both dates inclusive; and as to any of (a)-(c) were damaged thereby. Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b)(i) Defendants and their immediate families; (ii) current and former directors or officers of Playstudios or Acies; (iii) any entity that has entered into a stockholder agreement or co-venture agreement with Playstudios, or was a Private Investment in Public Equities ("PIPE") investor in Playstudios; and (iv) any entity controlled, majority-owned or wholly owned, or affiliated with any of the above. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court (ECF No. 170 at ¶2).

No Settlement Class Member has objected to any aspect of the Settlement, including the definition of the Settlement Class or, more generally, the Court order certifying it. *See* Declaration of Rochelle J. Teichmiller Regarding: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Teichmiller Decl.") at ¶14, attached as Exhibit 1 to the Jafri Decl.

Accordingly, and for all the reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (ECF No. 164, at 12-17), Plaintiffs' Unopposed Supplement in Support of Motion for Preliminary Approval of Proposed Class Action Settlement (ECF No. 168), and in this Court's Preliminary Approval Order (ECF No. 170), Plaintiffs now request that the Court: (i) finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (ii) appoint Plaintiffs as Class Representatives; and (iii) appoint Lead Counsel as Class Counsel.

**B.    The Court Should Approve the Proposed Settlement as Fair, Reasonable, and Adequate**

**1.    The Standard for Final Approval of Class Action Settlements**

Rule 23(e) requires court approval for any class action settlement, encouraging approval of settlements that are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit, "strong judicial policy [] favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Just. v. Civ.*

3

*Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Lee v. Enter. Leasing Co.-W.*, No. 3:10-CV-00326-LRH, 2015 WL 2345540, at *4 (D. Nev. May 15, 2015) ("The Ninth Circuit has recognized a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'") (quoting *Class Plaintiffs*, 955 F.2d at 1276).

Class action suits lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. Settlements of complex cases, such as this one, greatly contribute to the efficient utilization of judicial resources and achieve the speedy resolution of claims. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.") (citation and internal quotation marks omitted).

For a class action settlement to be finally approved, it must be "fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In making this determination, courts in the Ninth Circuit consider and balance pertinent factors, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status through the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.[4] *See Churchill Vill., L.L.C. v. Gen. Elec.*,

---

[4] With respect to the eighth factor, the Settlement Class Members have until September 17, 2025 to request exclusion from the Settlement Class, and until September 16, 2025 to object to the Settlement. If Plaintiffs receive any objections or further exclusions after this motion is filed, Plaintiffs will address them in their reply papers in support of final approval.

361 F.3d 566, 575–76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *Officers for Justice*, 688 F.2d at 625 (same). Not all of these factors will apply to every class action settlement and, under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval. *See Torrisi v. Tucson Elec. Power Co.*, 8 *F.3d 1370, 1376 (9th Cir. 1993).

Within the framework of pertinent factors and the policy favoring resolution of complex cases, the Court has discretion to determine whether a settlement is fair, reasonable, and adequate. *See Mego*, 213 F.3d at 458 ("Review of the district court's decision to approve a class action settlement is extremely limited.") (citing *Linney*, 151 F.3d at 1238). In applying the pertinent factors, the Court should not prejudge the merits of the case, in part because the Court will be called upon to decide the merits if the Action proceeds. *See Officers for Justice*, 688 F.2d at 625 ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits … [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). For the following reasons, this Court should approve the Settlement as fair, reasonable, and adequate.

## 2. Application of the Ninth Circuit's Criteria Supports Approval of the Settlement

### a) The Strength of Plaintiffs' Case and Risks Associated with Continued Litigation

To determine whether the proposed Settlement is fair, reasonable and adequate, the Court should balance the continuing risks of litigation against the benefits afforded to class members and the immediacy and certainty of recovery. *See Mego*, 213 F.3d at 458. Although Plaintiffs believe that the case against Defendants is strong, the risk in complex class actions such as this one of a reduced recovery or no recovery at all always exists. Securities class actions, such as this case, "are complex cases that are time-consuming and difficult to prove." *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'") (quoting

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010)). Had Plaintiffs failed to reach the Settlement, challenges in the litigation would remain, including at summary judgment, trial, and any subsequent appeal that Defendants could file, even assuming a successful outcome.

### (1)    Establishing Liability

As a complex securities class action, Plaintiffs would confront numerous obstacles to establishing liability. Courts "routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear." *Ansell v. Laikin*, No. CV 10-9292 PA (AGRx), 2012 WL 13034812, at *7 (C.D. Cal. July 11, 2012) (internal citations omitted). Specifically, substantial risks and uncertainties in terms of proof exist. Proving scienter in a securities case is often the most difficult element of proof and is rarely supported by direct evidence or an admission of guilt. *See, e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016); *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) (scienter is often considered "the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011). Thus, Plaintiffs would have to prove that Defendants knowingly or recklessly made materially false and misleading statements to Playstudios investors, an allegation that Defendants strenuously dispute.

### (2)    Loss Causation and Damages Defenses

Another risk in continuing the litigation is the difficulty in proving loss causation and the Settlement Class's damages, which Defendants would contest at summary judgment, in pretrial *Daubert* motions, and at trial. The United States Supreme Court has confirmed that the law requires that "a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). Defendants would also have continued to assert that the alleged corrective disclosures did not reveal any misrepresentations or omissions, but rather, any stock drops were the result of other confounding factors. Moreover, Defendants would certainly raise an affirmative defense of negative causation to Plaintiffs' Section 11 claims, and marshal evidence that any alleged losses

6

1    were not attributable to any alleged misrepresentation or omission in the Proxy/Registration

2    Statement. Jafri Decl. ¶33.

3          Resolution of these issues would require the testimony of expert witnesses, leaving the

4    Parties engaged in a "battle of experts" in which it would be difficult to predict with any certainty

5    which arguments a jury would favor. *See, e.g., Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV

6    11-00406 DOC (MLGx), 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement

7    in securities case where "[p]roving and calculating damages required a complex analysis, requiring

8    the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he

9    outcome of that analysis is inherently difficult to predict and risky") (citation omitted); *In re*

10   *Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 735 (2d

11   Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty

12   which testimony would be credited, and ultimately, which damages would be found to have been

13   caused by actionable, rather than the myriad nonactionable factors such as general market

14   conditions"). The outcome could well have depended on whose testifying expert the jury believed.

15   The Settlement eliminates the risk that the jury might award less than the Settlement Amount or

16   nothing at all to the Settlement Class.

17         In sum, because Defendants could put forth various defenses concerning causation and

18   damages, it is possible that even if a jury found that Defendants knowingly or recklessly made

19   misleading statements, the Settlement Class Members may recover no damages or damages in an

20   amount smaller than the Settlement Amount.

21              **b)    The Expense and Likely Duration of Further Litigation**

22         The expense and likely duration of the Action support final approval of the Settlement. *See*

23   *Torrisi*, 8 F.3d at 1376 ("the cost, complexity and time of fully litigating the case all suggest that

24   this settlement was fair"). "In most situations, unless the settlement is clearly inadequate, its

25   acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."

26   *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Here,

27   the expense and duration of protracted litigation, including class certification, summary judgment,

28   preparing and trying the case to a jury, and any appeals, would be significant. If litigation were to

continue, Lead Counsel would also have been required to rely upon experts in market efficiency and damages, all of which would have required the expenditure of substantial additional costs. Barring a settlement, it is certain that this case would be litigated for years, with the possibility that the end result would be no better for the Settlement Class and could even be worse. *See Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) (noting that "continuing litigation would not only be costly–representing expenses that would take away from any ultimate classwide recovery–but would also delay resolution and recovery for Settlement Class Members"); *cf Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)). This factor particularly weighs in favor here because of insurance policy limits, which would be entirely depleted were this litigation to continue.

The Settlement provides sizeable and tangible relief to the Settlement Class now, without subjecting Settlement Class Members to the risks, duration, and expense of continuing litigation.

### c)    The Risk of Maintaining Class Action Status Through Trial

Absent the Settlement, Defendants would have contested Plaintiffs' anticipated motion for class certification. The class certification process adds time and expense, as it requires fact and expert depositions, as well as expert reports on market efficiency. The outcome of class certification is not absolutely certain. Even if a class was certified, it is conditional, as Rule 23(c)(1)(C) expressly provides that a class certification order may be "altered or amended before final judgment." *See, e.g.*, *Vizcaino v. U.S. Dist. Ct. for W. Dist. of Wash.*, 173 F.3d 713, 721 (9th Cir. 1999) (certification order may be altered or amended "before the decision on the merits"). Because maintaining a class action to judgment is an expensive and risky enterprise, a fair and reasonable settlement is preferable to years of uncertainty. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

expensive litigation with uncertain results") (citing *DIRECTV, Inc.*, 221 F.R.D. at 526 (internal quotation omitted)). Accordingly, this factor weighs in favor of final approval.

### d)    Amount Offered in the Settlement

In evaluating a settlement's fairness, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay and expense. In this regard, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *See Mego*, 213 F.3d at 459 (citation omitted). Indeed, "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

The Settlement Amount is not only well within the range of reasonableness in light of the best possible recovery at trial and the risks of continued litigation, but it also represents a strong recovery for the Settlement Class. The $6,500,000 Settlement provides the Settlement Class with approximately 18% of the roughly $35.42 million of Plaintiffs' estimated aggregate statutory damages for the Section 11 claims, and roughly 15% of the $42.7 million of Plaintiffs' estimated aggregate damages for the Section 14(a) claims (which estimates reflect concurrent and not additive damages, as these damages overlap and Plaintiffs do not seek a double recovery). While the Section 10(b) Class will also recover from the same common fund, the Settlement is still significant given that the estimated aggregate damages for the Section 10(b) claims are only $8.8 million. This percentage of recovery of damages represents a strong recovery for the Settlement Class and well exceeds the average percentage recovery in securities litigation. *See Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (finding that 3.5% of the maximum damages "is within the median recovery in securities class actions settled in the last few years"); *In re Biolase, Inc. Sec. Litig.*, No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding that recovery of 8% of maximum recoverable damages was well above the average); *McPhail v. First Command Fin. Planning, Inc.*, No. 05CV179-IEGJMA, 2009 WL 839841, at *5

(S.D. Cal. Mar. 30, 2009) (settlement recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"). Moreover, as reported by NERA, the median recovery in securities class actions from 2015 to 2024 ranged from 1.5% to 2.5%; for cases with losses in the range of $20 million to $49 million, the median recovery from 2015 to 2024 was 5.2%. *See* Svetlana Starykh and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025 at pp. 26-27), Figs. 23 & 24. Thus, the Settlement here is an excellent result for the Settlement Class Members, even without taking into account the fact that the recovery could be limited because of the various risks discussed above.

### e)  The Extent of Discovery Completed and the Stage of the Proceedings

The stage of the proceedings and the amount of discovery completed are also factors courts consider in determining the fairness, reasonableness and adequacy of a settlement. *See Mego*, 213 F.3d at 459. Plaintiffs have engaged in substantial discovery. The Parties exchanged initial disclosures, served requests for production, and Plaintiffs reviewed over 57,000 pages of documents. On December 10, 2024, the Parties engaged in an in-person mediation before Mediator Jed Melnick from JAMS. The mediation was preceded by the submission of extensive mediation statements and exhibits. Although the Parties did not reach an agreement on December 10, 2024, Mediator Melnick's efforts to help the Parties resolve the matter continued and culminated with him issuing a mediator's proposal to settle the litigation, which all Parties accepted in January 2025.

As a result of these efforts, Plaintiffs, through their counsel, had a comprehensive understanding of the Action and sufficient information to make a well-informed decision regarding the fairness of the Settlement. *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement where record

established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses"); *Redwen*, 2013 WL 12303367, at *7 (settlement approved when, as here, "the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative"). Thus, this factor supports final approval of the Settlement.

### f)    Counsel's Experience and Views

Experienced counsel, negotiating at arms'-length, and endorsing the Settlement, weighs in favor of final approval. The views of the attorneys actively conducting the litigation and who are most closely acquainted with the facts of the underlying litigation are entitled to "great weight." *DIRECTV, Inc.*, 221 F.R.D. at 528; *see also Int'l Bhd. of Elec. Workers Loc. 697 Pension*, 2012 WL 5199742, at *3 (giving "considerable weight to Lead Counsel's representation that the Settlement Amount is a favorable recovery based on their understanding of the issues and challenges in this case in particular and their experience in securities litigation in general"); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

Lead Counsel, intimately familiar with the strengths and weaknesses of the case and the core facts, believes the Settlement is fair, adequate and reasonable, and particularly so in view of the risks, burdens and expense of continued litigation. Lead Counsel are skilled practitioners and have extensive and significant experience litigating securities class actions.[5] "There is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043. Accordingly, this factor strongly favors approval of the Settlement.

### g)    The Settlement is Not the Product of Collusion

Another factor to consider at final approval is whether there is any evidence that a settlement is the result of collusion. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see also Mego*, 213 F.3d at 458. The Settlement has none of the indicia of

---

[5] *See* Pomerantz LLP's firm resume previously filed at ECF No. 24-5.

collusion identified in the Ninth Circuit. *See Bluetooth Headset*, 654 F.3d at 947 ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund"). Rather, the Settlement is the product of extensive and informed arms'-length negotiations between very able and competent counsel on both sides. Defendants were zealously represented by Fenwick & West LLP and Latham & Watkins LLP, two highly respected law firms recognized as having strong securities litigation practices. Accordingly, this factor, like the others discussed above, favors final approval.

### h)    The Reaction of Class Members to the Proposed Settlement

The reaction of the Settlement Class is an important factor in evaluating whether to approve a proposed settlement. The absence of objections to a proposed settlement supports final approval. *See Omnivision*, 559 F. Supp. 2d at 1043. As detailed in Section C, *infra*, Notice was disseminated to Settlement Class Members by several methods, including mailing and publication. The deadline to object to the Settlement is September 16, 2025, and the deadline to exclude oneself from the Settlement is September 17, 2025. Teichmiller Decl. ¶¶13-14.

As of the date of this motion, no Settlement Class Member has objected to the Settlement or to the request for attorneys' fees, reimbursement of out-of-pocket expenses, or the award to Plaintiffs. *Id*. The Settlement Class's positive reaction to the Settlement supports final approval. *See Brown v. China Integrated Energy Inc.*, No. CV 11-02559 BRO (PLAx), 2015 WL 12712081, at *8 (C.D. Cal. Aug. 19, 2015) (finding the class's response to a settlement is "positive" in the "absence of any substantive objections to the terms or conditions of the proposed settlement"). "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 458. The overwhelmingly positive reaction to the Settlement supports its final approval.

In short, the pertinent factors courts consider support the Settlement being fair, reasonable and adequate. Thus, the Settlement should be finally approved.

### C. The Notice Program Satisfied Due Process and Complied with Fed. R. Civ. P. 23(e)

The Ninth Circuit requires that class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980) (citation omitted). Due process requires that class members be given notice of a proposed settlement and their right to be heard at the fairness hearing. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. Rather, to satisfy due process and comply with Rule 23(e), notice must only fairly apprise class members of the subject matter of the suit, the proposed terms of the settlement, and the members' opportunity to be heard. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977); *see also Torrisi*, 8 F.3d at 1374–75. Notice is "adequate if it may be understood by the average class member." 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.53 at 167.

#### 1. The Dissemination of Notice Satisfies Due Process

There is no statutory or due process requirement that all class members receive actual notice by mail or other means. Rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). "Rule 23(e) gives the court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Prod., Inc.*, No. CVF 04-5516 AWISMS, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (quoting *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981)). Courts routinely find that a combination of a mailed postcard directing the class to a more detailed online notice, as done here, is sufficient to satisfy due process requirements. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC (KSC), 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer class action).

Pursuant to and in compliance with the Preliminary Approval Order, the Court-appointed Claims Administrator, A.B. Data, Ltd., notified 15,380 potential Settlement Class Members, by

13

mailed Postcard Notice. Teichmiller Decl. at ¶9. On July 11, 2025, A.B. Data posted on a URL dedicated to this Settlement the Long Notice and the Proof of Claim and Release Form ("Proof of Claim"). *Id.* at ¶12. On July 11, 2025, A.B. Data further caused *PR Newswire* to disseminate the Summary Notice electronically. *Id.* at ¶10. As such, this Court should approve the Notice program as satisfying due process and the Private Securities Litigation Reform Act of 1995's ("PSLRA") mandate.

### 2.    Contents of the Notice Satisfy Due Process

Plaintiffs respectfully submit that the Notice program utilized here readily meets the due process standard. The Ninth Circuit provides that proper notice should provide: (1) the material terms of the proposed settlement; (2) disclosure of any special benefit to the class representatives; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final approval hearing and the method for objecting to the settlement; (5) an explanation regarding the procedures for allocating and distributing the settlement funds; and (6) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall*, 550 F.2d at 1178; *DIRECTV, Inc.*, 221 F.R.D. at 529 (finding notice sufficient when, as here, it described the background of the case and the terms of the proposed settlement, and provided class members with "clear instructions about how to object").

Here, the Court-approved Notice program provided all of the required information: a description of the $6,500,000 Settlement Fund and Plan of Allocation of the Settlement Fund; Lead Counsel's intent to apply for a fee award in an amount not to exceed twenty percent (20%) of the Settlement Fund and an amount not to exceed $160,000 for expense reimbursements; the request for a compensation award to Plaintiffs in the amount of $10,000 each; and the contact information for Lead Counsel and the Claims Administrator, including how to make inquiries to both. The Notice program also included the date, time, and place of the Settlement Hearing, described how to file a claim, described how to object to or request exclusion from the Settlement, and informed Settlement Class Members that any objection must be received by the Court and counsel for the Parties no later than September 16, 2025. Furthermore, the Court-approved Notice program adequately informed Settlement Class Members of the Settlement's impact, including the release

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
2:22-CV-01159-RFB-NJK

of claims against Defendants by any Settlement Class Members who do not opt out. Teichmiller Decl., Exs. A-D.

In sum, broad dissemination of the Court-approved Notice program satisfied due process and the PSLRA's requirements. Accordingly, the Settlement should be granted final approval.

### D. The Plan of Allocation of the Net Settlement Fund is Fair, Adequate, and Reasonable and Should be Approved

Plaintiffs request the Court to finally approve the Plan of Allocation, previously submitted in the preliminary approval motion, for the purpose of administering the Settlement. "Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 WL 1594403, at *11 (citing *Class Plaintiffs*, 955 F.2d at 1284 (citation omitted)). "To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs*, 955 F.2d at 1284-85). An allocation formula need only have a rational basis, particularly if recommended by experienced class counsel. *Heritage*, 2005 WL 1594403, at *11. "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen*, 2013 WL 12303367, at *8 (citation and internal quotation marks omitted).

Here, Lead Counsel prepared the Plan of Allocation with the assistance of a consulting expert on damages. Jafri Decl. ¶¶36-39. The Plan of Allocation was fully disclosed in the Long Notice available to all potential Settlement Class Members and, as of the filing of this motion, no Settlement Class Member has filed an objection to it. Teichmiller Decl. ¶14. Under the Plan of Allocation, the Net Settlement Fund will be distributed among Authorized Claimants on a *pro rata* basis based on "Recognized Loss" formulas tied to liability and damages. Section 10(b) claims, Section 11 claims, and Section 14(a) claims each have their own Recognized Loss formula, which allows for eligible Settlement Class Members to receive a *pro rata* share of the Settlement that corresponds with the damages they have experienced. These formulas consider the amount of

alleged artificial inflation in the prices of Playstudios' publicly traded common stock as quantified by Plaintiffs' expert. Plaintiffs' consulting expert on damages analyzed the movement in the prices of Playstudios securities and considered the portion of the price drops attributable to the alleged fraud. Authorized Claimants will be eligible for a payment based on when they purchased, held, or sold their Playstudios (or, where applicable, Acies) common stock.

Accordingly, for all of the reasons set forth herein and in the Jafri Declaration, the Plan of Allocation is fair, reasonable, and adequate and should be approved.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) finally certify the Settlement Class; (ii) appoint Plaintiffs as Class Representatives and Lead Counsel as Class Counsel; (iii) grant final approval of the Settlement; (iv) find that notice to the Settlement Class was provided as required and to the satisfaction of due process and the PSLRA; and (v) approve the Plan of Allocation as fair, reasonable and adequate.

*[signature page follows]*

Dated: September 15, 2025

Respectfully submitted,

**POMERANTZ LLP**

By: /s/ *Omar Jafri*

Omar Jafri (*pro hac vice*)
Diego Martinez-Krippner (*pro hac vice*)
Genc Arifi (*pro hac vice* forthcoming)
10 S. LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: ojafri@pomlaw.com
        dmartinezk@pomlaw.com
        garifi@pomlaw.com

*Lead Counsel for Plaintiffs*

**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
Email: andrew@mlolegal.com

*Liaison Counsel for Plaintiffs*

17

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 15, 2025, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Andrew R. Muehlbauer*
Andrew R. Muehlbauer

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
2:22-CV-01159-RFB-NJK