**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
Email: andrew@mlolegal.com

*Liaison Counsel for Lead Plaintiffs*

**POMERANTZ LLP**
Omar Jafri
(admitted *pro hac vice*)
Diego Martinez-Krippner
(admitted *pro hac vice*)
Genc Arifi
(*pro hac vice* forthcoming)
10 S. LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:   ojafri@pomlaw.com
         dmartinezk@pomlaw.com
         garifi@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTIAN A. FELIPE,<br><br>    *Plaintiff*,<br><br>      v.<br><br>PLAYSTUDIOS, INC., *et al*.,<br><br>    *Defendants*. | Case No: 2:22-CV-01159-RFB-NJK<br><br>HON. RICHARD F. BOULWARE II<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS** |

**NOTICE OF PLAINTIFFS' MOTION FOR
AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF
LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Lead Plaintiffs The Phoenix Insurance Company Ltd. and The Phoenix Provident Pension Fund Ltd. (collectively, the "Plaintiffs"), on behalf of themselves and all members of the proposed Settlement Class, hereby respectfully move this Court for an Order: (1) awarding attorneys' fees in the amount of twenty percent (20%) of the Settlement Fund, in cash; (2) approving reimbursement of $140,596.48 in aggregate expenses; and (3) granting an award to Plaintiffs in the amount of $10,000 each.

This motion is based on the following memorandum of points and authorities and accompanying declaration of Omar Jafri and the exhibits attached thereto, including the Court's file in this Action, and any additional evidence or argument that the Court may request.

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... iii

I.      PRELIMINARY STATEMENT ......................................................................................1

II.     ARGUMENT....................................................................................................................2

      A.  This Court Should Approve Lead Counsel's Request for Attorneys' Fees of
          Twenty Percent of the Common Fund ..................................................................2

          1.  The Common Fund Doctrine Entitles Plaintiffs' Counsel to an Award of
              Attorneys' Fees ........................................................................................2

          2.  The Court Should Apply the Percentage-of-Recovery Method................3

          3.  Attorneys' Fees of Twenty Percent of the Settlement Fund
              is Below the Allowable Benchmark ...........................................................3

          4.  Evaluation of the Ninth Circuit's Factors for Awarding Attorneys' Fees
              in Common Fund Cases Supports a Twenty Percent Fee in this Case .....4

              a)  The Result Plaintiffs' Counsel Achieved Supports a 20% Fee........4

              b)  The Risks of Litigation ....................................................................6

              c)  Experienced and Skilled Plaintiffs' Counsel Performed Quality
                  Work to Reach the Settlement ..........................................................8

               d)  The Contingent Nature of the Fee and the Financial Burden
                  Plaintiffs' Counsel Carried .............................................................8

               e)  The Reaction of the Settlement Class Supports the Requested
                  Fee...................................................................................................10

               f)  The Lodestar Cross-Check Supports the Requested Fee ...............11

      B.  The Court Should Approve Reimbursement from the Settlement Fund of
          Plaintiffs' Counsel's Out-of-Pocket Expenses.........................................................13

      C.  The Court Should Approve an Award to Plaintiffs for Their Reasonable Costs and
          Expenses Related to Their Service to the Class......................................................14

i

III.    CONCLUSION........................................................................................................15

CERTIFICATE OF SERVICE ........................................................................................17

ii

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...............................................................................................10

*ATLAS v. Accredited Home Lenders Holding Co.*,
   No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)..............................6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).................................................................................................................9

*Blum v. Stenson*,
   465 U.S. 886 (1984).................................................................................................................3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).................................................................................................................2

*Buccellato v. AT & T Operations, Inc.*,
   No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011)....................................12

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
   19 F.3d 1306 (9th Cir. 1994) ...................................................................................................3

*Craft v. Cnty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...............................................................................4, 5

*Davis v. Yelp, Inc.,*
   No. 18-CV-00400-EMC, 2023 WL 3063823 (N.D. Cal. Jan. 27, 2023)...........................14, 15

*Derr v. Ra Med. Sys., Inc.*,
   No. 19-CV-1079-LAB-AHG, 2022 WL 21306534 (S.D. Cal. Sept. 23, 2022) ........................5

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326, 336 (N.D. Cal. 2014) ..................................................................................15

*Farrar v. Workhorse Grp., Inc.,*
   No. CV2102072CJCPVCX, 2023 WL 5505981 (C.D. Cal. July 24, 2023)..............................6

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) .....................................................................................................13

*Hashem v. NMC Health PLC*,
   No. 2:20-cv-02303-CBM-MAA, 2022 WL 3573145 (C.D. Cal. Apr. 8, 2022)...................2, 4

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................................4

*Hopkins v. Stryker Sales Corp.*,
  No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ...................................12

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..................................8

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
  109 F.3d 602 (9th Cir. 1997) ............................................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..............................7

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................................15

*In re Heritage Bond Litig.*,
  No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ..........................8

*In re Ikon Office Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) .........................................................................................7

*In re Illumina, Inc. Sec. Litig.*,
  No. 3:16-CV-3044-L-MSB, 2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ..........................15

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................................11, 15

*In re ImmunityBio, Inc. Sec. Litig.*,
  No. 3:23-CV-01216-GPC-VET, 2025 WL 1686263 (S.D. Cal. June 16, 2025) ................5, 14

*In re Nuvelo, Inc. Sec. Litig.*,
  No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ......................................5

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010) ...............................................................................................9

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................... *passim*

*In re Oracle Corp. Sec. Litig.*,
  No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) .........................................9

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ..............................................................................................9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................................................3, 4, 6

*In re Stable Rd. Acquisition Corp.*,
    No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)...............5, 14

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .........................................................................................3, 12

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA'" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)..............................................................................10, 15

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)........................4

*Jenson, v. First Tr. Corp.*,
    No. CV 05-3124 ABC (CTX), 2008 WL 11338161 (C.D. Cal. June 9, 2008).................14, 15

*Katz v. China Century Dragon Media, Inc.*,
    No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ...................3, 14

*Khoja v. Orexigen Therapeutics, Inc.*,
    No. 15-CV-00540-JLS-AGS, 2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ...........................5

*Leventhal v. Chegg, Inc.*,
    No. 21-CV-09953-PCP, 2025 WL 1481382 (N.D. Cal. May 21, 2025) ...................................3

*Linney v. Cellular Alaska P'ship*,
    No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997)...................................14, 15

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ...............................................................................................14

*Luna v. Marvell Tech. Grp.*,
    No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018)...................................14

*Mauss v. NuVasive, Inc.*,
    No. 13CV2005 JM (JLB), 2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)..................................5

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274 (1989).................................................................................................................12

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) .............................7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

*Robbins v. Koger Properties, Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ..................................................................................10

*Rodman v. Safeway Inc.*,
    No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018)....................................4

*Romero v. Producers Dairy Foods, Inc.*,
    No. 1:05cv0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) .....................................5

*Rutti v. Lojack Corp.*,
    No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ........................12

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) ................................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).....................................................................................................9

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ...............................................................................5

*Vataj v. Johnson,*
    No. 19-CV-06996-HSG, 2021 WL 1550478 (N.D. Cal. Apr. 20, 2021)...................................6

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ...................................................................................2, 3

*Vincent v. Reser*,
    No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ................................2, 13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................................... *passim*

*Waldbuesser v. Northrop Grumman Corp.*,
    Case No. CV 06-6213-AB (JCx), 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) ...................4

*Ward v. Succession of Freeman*,
    854 F.2d 780 (5th Cir. 1988) ....................................................................................9, 10

*Ziegler v. GW Pharms., PLC*,
    No. 21-CV-1019-BAS-MSB, 2024 WL 1470532 (S.D. Cal. Apr. 3, 2024)............................5

**Statutes & Regulations**

Private Securities Litigation Reform Act of 1995 ............................................................3, 7, 14

15 U.S.C. §78u-4(a)(4) .........................................................................................................14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

15 U.S.C. §78u-4(a)(6) ............................................................................................3

**Additional Authorities**

Newberg and Conte, *Newberg on Class Actions* (4th ed. 2007) ...........................................5

Svetlana Starykh and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025) ...................................6

Richard Posner, *Economic Analysis of Law* (3d ed. 1986) ...............................................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

Lead Plaintiffs The Phoenix Insurance Company Ltd. and The Phoenix Provident Pension Fund Ltd. (collectively, "Plaintiffs")[1] hereby submit this memorandum of law in support of their application for: (i) an award of $1,300,000, or twenty percent (20%) of the Settlement Fund, in cash as attorneys' fees; (ii) reimbursement of expenses incurred by counsel in successfully prosecuting and resolving this Action in the amount of $140,596.48; and (iii) reimbursement awards in the amount of $10,000 for each of the Plaintiffs.

## I.    PRELIMINARY STATEMENT

As detailed in the Stipulation, Defendants have agreed to pay or cause to be paid $6,500,000 to settle the claims Plaintiffs allege in this Action. Given the relevant circumstances – most notably the Action's complex nature and the risks of pursuing the Action through summary judgment, trial, and any appeals – this recovery is a favorable result for the Settlement Class. Through the efforts of their counsel, Plaintiffs achieved the Settlement through thorough investigation, prevailing on a motion to dismiss the Amended Complaint, engaging in discovery, and successfully participating in arms-length settlement negotiations.

Plaintiffs' Counsel[2] has not received any compensation or reimbursement of out-of-pocket expenses for their prosecution of this Action. Plaintiffs' Counsel respectfully requests to be awarded attorneys' fee of twenty percent (20%) of the Settlement Fund, including any accrued interest, and that they be reimbursed out of the Settlement Fund for out-of-pocket litigation expenses in the amount of $140,596.48 plus any accrued interest. Attorneys' fees in the amount of twenty percent (20%) of the Settlement Fund are justified because of the above-average recovery of the Settlement Class's estimated damages, the contingent nature of the representation, the complexity of the case, the risks of continued litigation, and the lack of any objections from the

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement, filed on March 6, 2025 (the "Stipulation") (ECF No. 164-2).

[2] "Plaintiffs' Counsel" means Lead Counsel Pomerantz LLP ("Pomerantz") together with Liaison Counsel Muehlbauer Law Office, Ltd. ("Muehlbauer"), which worked under the direction of Lead Counsel and provided substantial assistance to Lead Counsel throughout the litigation.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

Settlement Class to the requested fee award. *See, e.g.*, *Hashem v. NMC Health PLC*, No. 2:20-cv-02303-CBM-MAA, 2022 WL 3573145, at \*2 (C.D. Cal. Apr. 8, 2022) (collecting cases). In addition, the expenses Plaintiffs' Counsel incurred in connection with the prosecution of the Action were both reasonable and necessary to prosecute, and substantially below the maximum amount approved by this Court in its Preliminary Approval Order. Plaintiffs approved Plaintiffs' Counsel's request for fees and expenses. *See* Declaration of Menachem Neeman attached as Exhibit 4 to the Jafri Declaration.[3]

Finally, Plaintiffs seek reimbursement awards for the time they spent carrying out their obligations on behalf of the Class. The requested award of $10,000 for each Plaintiff, is in line with similar awards granted in other matters for the effort Plaintiffs expended for Settlement Class Members.

Accordingly, Plaintiffs respectfully submit that the requested fees, expenses, and reimbursement to Plaintiffs should be granted.

## II.    ARGUMENT

### A.    This Court Should Approve Lead Counsel's Request for Attorneys' Fees of Twenty Percent of the Common Fund

#### 1.    The Common Fund Doctrine Entitles Plaintiffs' Counsel to an Award of Attorneys' Fees

Under the "common fund" doctrine, attorneys who achieve a benefit for a class are entitled to a reasonable fee as compensation for their services. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (establishing a common fund for persons other than the lawyer who establishes it entitles the lawyer to reasonable attorneys' fees from the fund); *see also Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at \*4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). The Ninth Circuit has also held that creating, increasing, or preserving a common

---

[3] The Declaration of Omar Jafri in Support of Plaintiffs': (1) Unopposed Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation, and (2) Motion For Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Plaintiffs ("Jafri Declaration" or "Jafri Decl.") contains a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by the Settlement Class in pursuing litigation, the negotiations that led to the Settlement, and a description of the services provided by Lead Counsel.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

fund entitles a lawyer to "the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund doctrine prevents unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part by Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

### 2.      The Court Should Apply the Percentage-of-Recovery Method

Even as district courts have the discretion in common fund cases to utilize either the percentage-of-the-fund or the lodestar method, *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), courts typically use the percentage-of-recovery method. *See Blum v. Stenson*, 465 U.S. 886, 900, n.16 (1984) (percentage-of-recovery approach is appropriate for determining attorneys' fees in common fund cases); *Leventhal v. Chegg, Inc.*, No. 21-CV-09953-PCP, 2025 WL 1481382, at *4 (N.D. Cal. May 21, 2025) (reasoning that "the Ninth Circuit permits courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.") (internal quotations omitted). Courts apply the percentage-of-recovery approach, preferring it over the lodestar/multiplier approach because "it aligns the lawyers' interests with those of the class [and] also simplifies the approval analysis." *Katz v. China Century Dragon Media, Inc.*, No. LACV11-02769 JAK (SSX), 2013 WL 11237202, at *7 (C.D. Cal. Oct. 10, 2013). Further, the plain text of the Private Securities Litigation Reform Act of 1995 ("PSLRA") recognizes that the percentage-of-recovery is the preferable approach to awarding fees. *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). Thus, the Court should use the percentage-of-recovery method to compensate Plaintiffs' Counsel.

### 3.      Attorneys' Fees of Twenty Percent of the Settlement Fund is Below the Allowable Benchmark

Recognizing the utility of the percentage-of-recovery method, the Ninth Circuit has stated

that "[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *see also Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD, 2012 WL 5199742, at *4 (D. Nev. Oct. 19, 2012) ("Twenty-five percent should be the 'bench mark' percentage, but the district court may adjust upward or downward to account for the circumstances in each case.") (citation omitted). Courts in this Circuit have consistently found that upward departures from the 25% benchmark are appropriate where, like here, counsel's efforts result in an above-average recovery for the Class, the case is complex and litigated on a contingent basis, the risks of continued litigation favor settlement, and there are minimal or no objections from the Class to the requested fee award. *See*, *e.g.*, *Hashem*, 2022 WL 3573145, at *2. Nevertheless, Plaintiffs request a percentage fee award below the 25% benchmark set by the Ninth Circuit even though Plaintiffs' Counsel also satisfies all the factors that typically inform whether an upward adjustment to the 25% benchmark is appropriate. *See Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCx), 2017 WL 9614818, at *2 (C.D. Cal. Oct. 24, 2017). As such, the fee request for 20% of the Settlement Fund is eminently reasonable.

    **4.    Evaluation of the Ninth Circuit's Factors for Awarding Attorneys' Fees in Common Fund Cases Supports a Twenty Percent Fee in this Case**

    **a)    The Result Plaintiffs' Counsel Achieved Supports a 20% Fee**

Courts consistently recognize that the result achieved is an important factor to consider in evaluating a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that "the most critical factor is the degree of success obtained"); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 23, 2018); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Plaintiffs submit that the $6,500,000 Settlement is a very favorable result for the Settlement Class, both quantitatively and when considering the risk of a lesser, or no, recovery if the case proceeded through class certification, summary judgment, and trial.

"[C]ourts frequently take into account the size of the fund" secured on behalf of the class when "awarding percentages of the class fund." *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

1113, 1127 (C.D. Cal. 2008) (noting a settlement fund of less than "$10 Million will often result in [sic] fees above 25%"); *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) (examining cases and noting that attorneys' fees ranging from 30-50% of the common fund were proper when the fund was less than $10 million). The requested percentage here (20%) is far less in this case. Courts in this Circuit routinely approve even a higher percentage of fees in comparable cases, which weighs in favor of finding the requested fee reasonable. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-00540-JLS-AGS, 2021 WL 5632673, at *11 (S.D. Cal. Nov. 30, 2021) (awarding attorneys' fees of 33% where the recovery for the class was $4.8 million); *Ziegler v. GW Pharms., PLC*, No. 21-CV-1019-BAS-MSB, 2024 WL 1470532, at *10 (S.D. Cal. Apr. 3, 2024) (finding attorneys' fees of 33.33% of a $7.75 million settlement to be reasonable); *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2018 WL 6421623, at *6–7 (S.D. Cal. Dec. 6, 2018) (awarding attorneys' fees of 30% where the settlement fund was $7.9 million); *In re Stable Rd. Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393, at *8 (C.D. Cal. Apr. 23, 2024) (awarding attorneys' fees of 25% where the settlement fund was $8.5 million); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding attorneys' fees of 30% where the settlement fund was $8.9 million); *In re ImmunityBio, Inc. Sec. Litig.*, No. 3:23-CV-01216-GPC-VET, 2025 WL 1686263, at *13 (S.D. Cal. June 16, 2025) (awarding attorneys' fees of 30% where the settlement fund was $10.5 million); *Derr v. Ra Med. Sys., Inc.*, No. 19-CV-1079-LAB-AHG, 2022 WL 21306534, at *6 (S.D. Cal. Sept. 23, 2022) (awarding attorneys' fees of 27.5% where the settlement fund was $10 million); *see also Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33%, and observing that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery") (quoting Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007)).

The Settlement also is well above the average recovery in securities class actions: it represents approximately 18% of the estimated aggregate statutory damages of $35.42 million for

5

the Section 11 claims and roughly 15% of the estimated aggregate damages of $42.7 million for the Section 14(a) claims (these estimates reflect concurrent and not additive damages as damages overlap for Section 11 and Section 14(a) claims). The percentage recovery for the Section 10(b) claims is even higher.

As reported by NERA, the median recovery in securities class actions from 2015 to 2024 ranged from 1.5% to 2.5%; for cases with losses in the range of $20 million to $49 million, the median recovery from 2015 to 2024 was 5.2%. *See* Svetlana Starykh and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025, at pp. 26-27), Figs. 23 & 24. The percentage of recovery in this case far exceeds recoveries in numerous court-approved securities class actions in this Circuit. *See, e.g.*, *Farrar v. Workhorse Grp., Inc.*, No. CV2102072CJCPVCX, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (collecting cases recognizing that 3% of maximum estimated damages is within the range of average recovery approved in securities class action litigation); *Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (finding a settlement equivalent to 2% of damages "consistent with the typical recovery in securities class action[s]"). The Settlement Amount thus strongly supports an award of attorneys' fees equal to twenty percent (20%) of the Settlement Fund.

### b)    The Risks of Litigation

The risks of further litigation are also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting that "[r]isk is a relevant circumstance" in awarding attorneys' fees); *Pac. Enters.*, 47 F.3d at 379 (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also ATLAS v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) (approving a settlement where "litigating the complex securities fraud class action to completion would have resulted in substantial delay and expense"). Substantial risks and uncertainties in this Action required the skill and focus of Lead Counsel to bring this matter to a favorable resolution. Jafri Decl. ¶¶44-49. Although the Amended Complaint survived Defendants' motion to dismiss, risks

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

existed that Plaintiffs could fail to establish liability at a later stage in the litigation. In addition, there was a significant risk that Plaintiffs would not be able to recover the full amount of damages even if liability was found.

If the litigation continued, Plaintiffs would have had to successfully move for class certification, which Defendants would surely have opposed. Plaintiffs then faced challenges in proving that Defendants' alleged misstatements regarding the development of Kingdom Boss were material, made with scienter (for the Section 10(b) claims), and were the cause of the alleged losses. Defendants surely would have contested these points and presented their own competing theory of the case. Marshalling facts to counter this position at summary judgment and trial would have required nuanced evidence and a battle of the experts, including considerably more expenses borne by the Class.

Accordingly, Plaintiffs faced the possibility that the Court could grant Defendants' anticipated motion for summary judgment. Then, if the case survived, regardless of who would ultimately be successful at trial, both sides would have had to present complex and nuanced information to a jury with no certainty as to the outcome. *See In re Omnivision*, 559 F. Supp. 2d at 1047 (noting that the risks of litigation, including the ability to prove the elements of a securities fraud claim and damages subject to a battle of the experts, support the requested fee).[4] Even a successful verdict at trial would have had to survive Defendants' appeals.

But for the resolution, Plaintiffs and the Settlement Class faced the risk of years of litigation with no guarantee of a greater recovery. Lead Counsel achieved a positive result for the Settlement Class in the face of many risks. Under these circumstances, the result of this Action

---

[4] While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially because of the burdens imposed on plaintiffs by the statute. *See Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'") (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010)); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

supports awarding the requested attorneys' fees.

### c) Experienced and Skilled Plaintiffs' Counsel Performed Quality Work to Reach the Settlement

Courts recognize that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at \*12 (C.D. Cal. June 10, 2005) (citation omitted); *see also Vizcaino*, 290 F.3d at 1048. Courts also have acknowledged the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at \*8 (S.D.N.Y. Apr. 6, 2006).

Here, Plaintiffs' Counsel (i) conducted an extensive factual investigation, which included reviewing Defendants' SEC filings and other public documents, interviewing former employees of the Company and relevant third-parties, developing leads from the investigation, and scouring message boards and forums for relevant information; (ii) researched, drafted and filed the operative Amended Class Action Complaint; (iii) successfully opposed Defendants' motion to dismiss; (iv) reviewed and analyzed tens of thousands of pages produced by Defendants; (v) prepared responses to Defendants' discovery requests; and (vi) participated in an arms'-length mediation process that ultimately yielded this Settlement based on a mediator's proposal accepted by both Parties.

Plaintiffs' Counsel are experienced securities class action litigators.[5] As described in more detail in the Pomerantz LLP firm resume, courts around the country have recognized Lead Counsel's experience and competence. The favorable Settlement is attributable in substantial part to Lead Counsel's diligence, determination, hard work, and skill as they developed, litigated, and successfully negotiated the Settlement. This factor supports a fee award in the amount of 20% of the Settlement Fund.

### d) The Contingent Nature of the Fee and the Financial Burden Plaintiffs' Counsel Carried

Plaintiffs' Counsel undertook this Action on an entirely contingent basis, taking the risk

---

[5] *See* Pomerantz's firm resume at ECF No. 24-5.

that the litigation would yield no or minimal recovery and leaving Plaintiffs' Counsel uncompensated for the time devoted to the litigation over several years, as well as out-of-pocket expenses shouldered entirely by Plaintiffs' Counsel. Courts in this Circuit recognize that the risk of receiving little or no recovery is a material factor in determining an award of attorneys' fees. *See Vizcaino*, 290 F.3d at 1048–50; *Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."). The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [an SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007) (noting that the Supreme Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and SEC enforcement actions).[6]

Indeed, in many securities class actions, plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended considerable resources, yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming grant of summary judgment in favor of defendant on loss-causation grounds after years of litigation); *In re Oracle Corp. Sec. Litig.*, No. C01-00988SI, 2009 WL 1709050, at *34 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Often, because of the discovery of previously unknown facts, changes in the law during the pendency of the case, or a judge's or jury's decision following a trial on the merits, contingency litigation yields no fee for counsel. *See,*

---

[6] Additionally, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the risks undertaken with a clear view of the economics of a securities class action.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

*e.g.*, *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). As the court in *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994. Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.

Since Plaintiffs' Counsel's fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that achieving success on behalf of Plaintiffs and the proposed Class depended upon Plaintiffs' Counsel expending significant amounts of time, effort, and expense. Unlike Defendants' counsel, who are paid hourly and reimbursed for their out-of-pocket expenses on a current basis, Plaintiffs' Counsel has received no compensation for their efforts on behalf of Plaintiffs and the Settlement Class during this Action. Absent this Settlement, a material risk existed that Settlement Class Members and Plaintiffs' Counsel would obtain no recovery. Plaintiffs' Counsel have risked non-payment of their out-of-pocket expenses and time dedicated to working on this matter, knowing that if their efforts were not successful, no fee would be paid. The contingent nature of Plaintiffs' Counsel's fee arrangement supports the requested fee award.

### e)    The Reaction of the Settlement Class Supports the Requested Fee

The reaction of the Settlement Class to date further confirms the reasonableness of the requested fee. Here, the Settlement Class was notified of the Settlement and the request for attorneys' fees and reimbursement of expenses by a combination of first-class mail, publication, and the settlement website (www.PlaystudiosSecuritiesLitigation.com, the "Settlement Website").

10

As of September 12, 2025, the Claims Administrator, A.B. Data Limited ("A.B. Data"), has disseminated the Notice[7] to approximately 15,380 potential Settlement Class Members and their nominees, informing them of Lead Counsel's intention to apply to the Court for an award of attorneys' fees of twenty percent (20%) of the Settlement Fund, reimbursement of expenses up to $160,000, and awards to Plaintiffs up to $10,000 each. *See* Jafri Decl., Exhibit 1 (Teichmiller Decl.) at ¶¶2-9. Settlement Class Members were also informed of their right to object to such an application. *Id.* at ¶¶13-14. In addition, A.B. Data caused the Notice and other case-related documents to be posted on the Settlement Website, and the Summary Notice to be published electronically on *PR Newswire*. *Id.* at ¶¶10, 12; Ex. D. While the time to object does not expire until September 16, 2025, at the time of the filing of this motion, no objections to the request for attorneys' fees and expenses have been received.[8] *Id*. at ¶14. "The lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Should Plaintiffs receive any objections after this motion is filed, Lead Counsel will address them in their reply papers. The lack of objections to the fees further supports the requested fee award.

### f) The Lodestar Cross-Check Supports the Requested Fee

Courts often compare attorneys' lodestar with a fee request made under the percentage of the fund method as a "cross-check" on the reasonableness of the requested fee. *See Vizcaino*, 290 F.3d at 1050; *see also In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness).

Plaintiffs' Counsel's combined lodestar to date is $1,257,793. The requested fee represents a multiplier of 1.1. Jafri Decl. ¶54. The Ninth Circuit recognizes that when utilizing the

---

[7] "Notice" collectively refers to the Notice of Pendency of Class Action, and Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Long Notice"), the Summary Notice of Pendency of Class Action, Proposed Settlement, Motion for Attorneys' Fees and Expenses for publication ("Summary Notice"), and the Postcard Notice.

[8] Lead Counsel will address any objections that may be received by the September 16, 2025 deadline in the reply papers to be filed with the Court by October 7, 2025.

percentage-of-fund approach in common fund cases and applying a lodestar cross-check, an award resulting in a multiplier several times the lodestar is appropriate, as this rewards attorneys "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051 (citation omitted). For example, the district court in *Vizcaino* approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id.* The Ninth Circuit affirmed, holding that the district court correctly considered the range of multiples applied in common fund cases, and noted that a range of lodestar multiples from 1.0 to 4.0 is frequently awarded. *Id.*;[9] *see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (granting 4.3 multiplier).

Plaintiffs' Counsel's lodestar of $1,257,793 represents 1,670.78 hours of work at current billing rates and amounts to a lodestar multiplier of 1.1, which is on the low end of the range of multipliers awarded in this Circuit.[10] With respect to billing rates, Plaintiffs' Counsel submit that the rates billed, for attorneys ranging from $495 to $1,375, are much lower than peer defense-side law firms litigating matters of similar magnitude. Jafri Decl. ¶¶50-54.

Plaintiffs' Counsel will also do additional work in support of the Settlement and

---

[9] Furthermore, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). "Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless [of] whether they win or lose." *In re Washington*, 19 F.3d at 1299.

[10] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989); *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC (JCx), 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

distribution of the Settlement Fund to Authorized Claimants for which they will receive no additional compensation, including: preparation for, and participation in, the final approval hearing; responding to any objections; supervising the claims administration process; moving for distribution of the Net Settlement Fund in accordance with A.B. Data's recommendation; and supervising the distribution of the Net Settlement Fund to Authorized Claimants. The lodestar cross-check, therefore, strongly supports this Court's awarding a fee of twenty percent (20%) of the Settlement Fund.

Considering these factors together, including Plaintiffs' Counsel's risk, their efforts, and the result in this case, this Court should award a fee that amounts to twenty percent (20%) of the Settlement Fund.

**B.    The Court Should Approve Reimbursement from the Settlement Fund of Plaintiffs' Counsel's Out-of-Pocket Expenses**

Plaintiffs' Counsel expenses are in an aggregate amount of $140,596.48[11] in prosecuting the Action. This request is substantially below the $160,000 limit identified in the Notice and approved by this Court's Preliminary Approval Order. These expenses are outlined in Plaintiffs' Counsel's declarations submitted to the Court concurrently herewith. *See* Jafri Decl., Exs. 2, 3.

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Reser*, 2013 WL 621865, at *5. In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("[Attorneys] may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee-paying client.") (internal citations and quotation marks omitted); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

Here, Plaintiffs' Counsel seek expenses that are of the type routinely charged to hourly

---

[11] The expense request is comprised of $139,596.48 from Pomerantz and $1,000 from Muehlbauer.

paying clients and, therefore, should be reimbursed out of the common fund. *See Katz*, 2013 WL 11237202, at *8 (granting expenses for "filing fees … private investigation fees, service of process fees, … press release and notice fees, expert consulting costs, photocopying costs, and online legal research expenses, and travel associated with pursuing the case"); *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (allowing reimbursement for experts, investigators, travel, filing costs, photocopies, and online legal and factual research because they were all reasonable and necessary). The largest expenses Plaintiffs' Counsel incurred relate to fees paid to experts, investigators, and the mediator. *See* Jafri Decl., Exs. 2, 3.

In sum, Plaintiffs' Counsel's expenses, in an aggregate amount of $140,596.48, were reasonably and necessarily incurred in the prosecution of the Action and should be approved.

**C.    The Court Should Approve an Award to Plaintiffs for Their Reasonable Costs and Expenses Related to Their Service to the Class**

In connection with Lead Counsel's request for reimbursement of litigation expenses, Plaintiffs seek reimbursement of $10,000 each in costs for their time dedicated to this litigation. The PSLRA provides that courts are empowered to approve such awards to reimburse plaintiffs for reasonable costs and expenses incurred in representing the Class. *See* 15 U.S.C. § 78u-4(a)(4). Accordingly, "[c]ourts across the country embrace incentive awards in light of the enormous benefits created by the class representatives." *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008). The Ninth Circuit has noted that "[i]ncentive fees for class representatives serve much the same function as attorneys' fees do in the class action context: they provide the economic incentive necessary to ensure that meritorious actions are prosecuted." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998).

Courts in the Ninth Circuit find that reimbursements to plaintiffs for their service to classes in the amount requested here are reasonable. *See, e.g.*, *In re ImmunityBio*, 2025 WL 1686263, at *16 (finding $10,000 incentive award to one lead plaintiff reasonable); *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *16 (granting $10,000 to lead plaintiff); *Davis v. Yelp, Inc.*, No. 18-CV-00400-EMC, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (granting $15,000 to lead

14

plaintiff); *Immune Response*, 497 F. Supp. 2d at 1173-74 (approving $40,000 in reimbursement to lead plaintiff); *In re Illumina, Inc. Sec. Litig.*, No. 3:16-CV-3044-L-MSB, 2021 WL 1017295, at *8 (S.D. Cal. Mar. 17, 2021) (awarding $25,000 in incentive award to one plaintiff and $27,000 total); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 336 (N.D. Cal. 2014) (approving $10,000 in reimbursement to lead plaintiffs); *Jenson*, 2008 WL 11338161, at *16 (approving $20,000 in reimbursement to lead plaintiff); *Linney*, 1997 WL 450064, at *7 (approving $25,000 in reimbursement to lead plaintiff); *Xcel Energy, Inc.*, 364 F. Supp. 2d at 1000 (approving a $100,000 award to lead plaintiffs, and noting that awards to lead plaintiffs are important because they further "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"); *see also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000 as an incentive and for lost time).

Both Plaintiffs fulfilled their obligations as representatives of this Action, reviewing all pleadings, discussing with counsel Defendants' motion to dismiss and the opposition thereto, and participating in and approving the Settlement amount and reviewing the Settlement papers. Plaintiffs detail their efforts on behalf of the Settlement Class in the Menachem Neeman Decl., attached as Exhibit 4 to the Jafri Decl. Accordingly, Plaintiffs respectfully request that this Court approve a payment of $10,000 to each Plaintiff.

III.   **CONCLUSION**

For all the reasons stated above, in the final approval memorandum, in any reply papers that may be filed in support of either motion, and at the Settlement Hearing, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court: (a) award attorneys' fees in the amount of 20% of the Settlement Fund, including any interest earned thereon; (b) approve reimbursement of $140,596.48 in aggregate expenses; and (c) grant an award to Plaintiffs in the amount of $10,000 each.

[*Signature page follows*]

Dated: September 15, 2025                              Respectfully submitted,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK

**POMERANTZ LLP**

By: /s/ *Omar Jafri*
Omar Jafri (*pro hac vice*)
Diego Martinez-Krippner (*pro hac vice*)
Genc Arifi (*pro hac vice* forthcoming)
10 S. LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: ojafri@pomlaw.com
　　　　dmartinezk@pomlaw.com
　　　　garifi@pomlaw.com

***Lead Counsel for Plaintiffs***

**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer, Esq.
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702-330-4505
Fax: 702-825-0141
Email: andrew@mlolegal.com

***Liaison Counsel for Plaintiffs***

16

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2025, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS** with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Andrew R. Muehlbauer*
Andrew R. Muehlbauer

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK