**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
Email: andrew@mlolegal.com

*Liaison Counsel for Lead Plaintiffs*

**POMERANTZ LLP**
Omar Jafri
(admitted *pro hac vice*)
Diego Martinez-Krippner
(admitted *pro hac vice*)
Genc Arifi
(*pro hac vice* forthcoming)
10 S. LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:   ojafri@pomlaw.com
         dmartinezk@pomlaw.com
         garifi@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

|  |  |
|---|---|
| CHRISTIAN A. FELIPE, | Case No: 2:22-CV-01159-RFB-NJK |
| *Plaintiff*, | HON. RICHARD F. BOULWARE II |
| v. | CLASS ACTION |
| PLAYSTUDIOS, INC., *et al*., | **DECLARATION OF OMAR JAFRI IN SUPPORT OF PLAINTIFFS': (1) UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS** |
| *Defendants*. | |

- 1 -

I, OMAR JAFRI, declare as follows pursuant to 28 U.S.C. §1746:

1.    I am a partner at Pomerantz LLP ("Pomerantz"), court-appointed Lead Counsel for Lead Plaintiffs The Phoenix Insurance Company Ltd. and The Phoenix Provident Pension Fund Ltd. (collectively, "Plaintiffs") and the proposed Settlement Class,[1] and am admitted to appear *pro hac vice* before this Court. I have personal knowledge of the matters I declare herein.

2.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, I submit this declaration in support of Plaintiffs' (1) Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement, and (2) Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Plaintiffs.

## I.    PRELIMINARY STATEMENT: THE REASONABLE RECOVERY ACHIEVED

3.    Plaintiffs and Lead Counsel achieved the $6,500,000 all cash Settlement after they: (a) investigated PLAYSTUDIOS, Inc. ("Playstudios" or the "Company") and the Individual Defendants (collectively with Playstudios, the "Defendants"), including reviewing Defendants' SEC filings and other public statements, as well as multiple Internet forums, discussion boards, and review sites to initiate this Action; (b) retained a private investigator and interviewed the Company's former employees and third parties with relevant knowledge; (c) drafted the operative Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (ECF No. 73); (d) successfully opposed Defendants' motion to dismiss; (e) reviewed and analyzed tens of thousands of pages produced by Defendants; (f) prepared responses to Defendants' discovery requests; (g) drafted briefs outlining the issues and evidence supporting Plaintiffs' claims in preparation of mediation; and (h) participated in an arms'-length mediation process that ultimately yielded this Settlement.

4.    The Amended Complaint asserts that Defendants violated §§10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b), 78t(a), and SEC Rules 10b-5 and 14-9a promulgated thereunder, 17 C.F.R. §§240.10b-5, 240.14a-9, as well as §§11

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement, filed on March 6, 2025 (the "Stipulation") (ECF No. 164-2).

and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77k, 77o. The Amended Complaint alleges that Defendants made materially false and misleading statements about the development and prospects of a mobile game, Kingdom Boss, in the lead-up to the Company's merger with a Special Purpose Acquisition Company ("SPAC"), and thereafter.

5. I declare that the Settlement is fair, reasonable, and adequate. Plaintiffs and Lead Counsel achieved the Settlement after thoroughly investigating the claims, drafting the Amended Complaint, successfully opposing Defendants' motion to dismiss, reviewing thousands of pages produced by Defendants, responding to Defendants' discovery requests, drafting mediation briefs, and engaging in arms'-length negotiations that resulted in a mediator's proposal acceptable to all Parties. When Settlement discussions began, Lead Counsel understood the strengths and weaknesses of Plaintiffs' case and was able to leverage this experience to reach the favorable Settlement.

6. The $6,500,000 Settlement Amount represents an impressive recovery for the Settlement Class. It is approximately 18% of Plaintiffs' estimated aggregate statutory damages of $35.42 million for the Section 11 claims, and 15% of the roughly $42.7 million of Plaintiffs' estimated aggregate damages for the Section 14(a) claims. The percentage of recovery for the Section 10(b) claims is even higher. These estimates are concurrent and not additive damages, and Plaintiffs do not seek a double recovery. While the Section 10(b) Class will also recover from the same common fund, the Settlement is still a significant recovery given that the estimated aggregate damages for the Section 10(b) claims are only $8.8 million. The recoverable amounts here significantly exceed the average recovery in comparable securities class actions. According to NERA, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, between 2015 and 2024, the median recovery as a percentage of damages for securities class actions with damages between $20 million and $49 million was 5.2%.

7. Plaintiffs and Lead Counsel support the Settlement because it provides the Settlement Class with a guaranteed recovery while avoiding the risks associated with protracted and complex litigation.

8. As discussed in detail in Section IV, *infra*, Plaintiffs faced significant risks at the merits stage. Securities class actions are complex and expensive to litigate, and certain elements of

- 3 -

the claim often turn on expert testimony on complicated subjects. Moreover, further litigation would only deplete resources as opposed to serving as an immediate recovery for the Settlement Class, given the limited amounts available under Defendants' insurance policies.

9. Considering all the circumstances and risks both sides faced if litigation continued, the Parties concluded that settlement on the terms upon which they agreed was in their respective best interests. Lead Counsel and Muehlbauer Law Office, Ltd. ("Muehlbauer," and collectively with Pomerantz, "Plaintiffs' Counsel"), which worked under the direction of Lead Counsel, prosecuted this Action on a contingent basis and advanced all litigation expenses, shouldering entirely the risk of failure.

10. The Court should grant Lead Counsel's fee application seeking twenty percent (20%) of the Settlement Fund, as it is fair and reasonable. Lead Counsel's efforts, at their financial risk, conferred a benefit on the Settlement Class. This fee request is below the range of those frequently awarded in comparable securities class actions. Additionally, Plaintiffs' Counsel, in total, expended 1,670.78 hours of attorney and other professional time and $140,596.48 in out-of-pocket expenses necessary to litigate this complex action. Thus, Plaintiffs respectfully request the Court to reimburse Plaintiffs' Counsel for these routine litigation expenses.

11. The Court should also consider awarding each Plaintiff $10,000 to compensate them for their efforts, including the time they dedicated to litigating the Action on behalf of the Settlement Class. This request aligns with similar requests in other district courts in the Ninth Circuit.

## II.    PROCEDURAL HISTORY

12. On April 5, 2022, Christian A. Felipe filed a Class Action Complaint for Violations of the Federal Securities Laws in the United States District Court for the Northern District of California (ECF No. 1), in case number 3:22-cv-02164-VC, assigned to the Honorable Vince Chhabria. The Complaint named Playstudios and Andrew Pascal as Defendants. Subsequently, on June 6, 2022, Eric Wiesler (ECF No. 21), Plaintiffs (ECF No. 24), and Felipe (ECF No. 25), filed competing motions for appointment of lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4, *et seq*.

13. On July 12, 2022, Judge Chhabria issued an Order (ECF No. 44) appointing Plaintiffs

as Lead Plaintiffs, and approving their selection of Pomerantz LLP as Lead Counsel.

14. On July 15, 2022, Plaintiffs and Defendants Playstudios and Andrew Pascal filed a stipulation to transfer case number 3:22-cv-02164-VC to the United States District Court for the District of Nevada, Southern Division (Las Vegas) pursuant to 28 U.S.C. §1404(a) (ECF No. 47). On July 18, 2022, Judge Chhabria granted the stipulation and ordered transfer to the United States District Court for the District of Nevada.

15. On July 20, 2022, the case was transferred to the United States District Court for the District of Nevada, assigned case number 2:22-cv-01159-RFB-NJK, and assigned to the Honorable Richard F. Boulware, II, District Judge, and Magistrate Judge Nancy J. Koppe.

16. On October 4, 2022, Plaintiffs filed the Amended Complaint, alleging violations of Sections 11 and 15 of the Securities Act, and Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act and Rules 10b-5 and 14a-9 promulgated thereunder. These claims were brought on behalf of three different classes: a Securities Act Class, a Section 14(a) Class, and a Section 10(b) Class. The Amended Complaint named Playstudios and Andrew Pascal as defendants, as well as the following additional defendants: Edward King, Daniel Fetters, James Murren, Zach Leonsis, Brisa Carleton, Andrew Zobler, Sam Kennedy, Christopher Grove, William J. Hornbuckle, Joe Horowitz, Jason Krikorian, and Judy K. Mencher. Not all Defendants were named in all claims.

17. On December 21, 2022, Defendants filed a motion to dismiss the Amended Complaint (ECF No. 91) and a request for judicial notice relating to the motion to dismiss (ECF No. 94). Plaintiffs timely responded to the request for judicial notice and motion to dismiss on February 21, 2023 (ECF Nos. 98, 99). Defendants filed their replies on April 7, 2023 (ECF Nos. 103, 104).

18. The Court heard oral argument on the motion to dismiss and request for judicial notice on October 20, 2023 (ECF No. 134).

19. On March 31, 2024, the Court largely denied the motion to dismiss (ECF No. 136), and the Parties proceeded to discovery. The Parties exchanged initial disclosures, served requests for production, and Plaintiffs reviewed the Defendants' production of over 57,000 pages of documents, and responded to Defendants' discovery requests.

20. On December 10, 2024, the Parties engaged in an in-person mediation before Mediator

- 5 -

Jed Melnick of JAMS. The mediation was preceded by the submission of extensive mediation statements and exhibits. Although the Parties did not reach an agreement on December 10, 2024, Mediator Melnick's efforts to help the Parties resolve the matter continued and culminated with him issuing a mediator's proposal to settle the litigation, which all Parties accepted in January 2025.

21.     On January 27, 2025, the Parties filed a stipulation to stay the case in light of settlement (ECF No. 162), and this Court entered the stipulation on January 28, 2025 (ECF No. 163).

22.     On March 6, 2025, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (ECF No. 164) (the "Preliminary Approval Motion"). On May 15, 2025, the Court held a hearing on the Preliminary Approval Motion (ECF No. 169), and ordered Plaintiffs to file a supplement that addressed any increase in estimated litigation expenses and an estimated number of potential class members (ECF No. 169). Plaintiffs filed this supplement on May 20, 2025 (ECF No. 168), and the Court entered an order granting preliminary approval of the proposed class action settlement (the "Preliminary Approval Order") on June 27, 2025 (ECF No. 170).

### III.     PLAINTIFFS' COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER AND REACTION OF THE SETTLEMENT CLASS TO DATE

23.     Pursuant to and in compliance with the Preliminary Approval Order, the Court-appointed Claims Administrator, A.B. Data Limited ("A.B. Data"), mailed the Postcard Notice to potential Settlement Class Members, published the Summary Notice of Pendency of Class Action, Proposed  Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice") in *PR Newswire*, and posted at a website it dedicated to this Settlement, the Notice of Pendency of Class Action, Proposed Settlement, and  Motion for Attorneys' Fees and Expenses ("Long Notice") and the Proof of Claim and Release Form ("Proof of Claim"). *See* Declaration of Shellie J. Teichmiller Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Teichmiller Decl."), attached hereto as **Exhibit 1**.

24.     The Notice[2] described the claims Plaintiffs asserted, providing an overview of the litigation, the Settlement's terms, the request for attorneys' fees of no more than twenty percent (20%) of the Settlement Fund, reimbursement of litigation expenses of up to $160,000, and an award to Plaintiffs of $10,000 each. The Notice further explained the rights of and the process for Settlement Class Members who file a claim, object to the Settlement, or request exclusion from the Settlement Class. The Long Notice, attached to the Teichmiller Decl. as Exhibit B, includes the comprehensive Plan of Allocation, detailing how A.B. Data, under Lead Counsel's direction, will divide and distribute the Net Settlement Fund.

25.     To ascertain the members of the Settlement Class to whom A.B. Data distributed Notice, first, Defendants' counsel provided A.B. Data with shareholder lists from their transfer agents. A.B. Data then contacted 363 banks, brokers, and nominees. Teichmiller Decl., ¶5. From the names it received, A.B. Data mailed 4,899 Postcard Notices to potential Settlement Class Members. *Id*. at ¶3. Additionally, A.B. Data has also received requests from brokers and other nominee holders for 9,517 Postcard Notices, which the brokers and nominees are required to mail to their customers. A.B. Data has responded to all such mailing requests in a timely manner. *Id*. at ¶8. In total, 15,380 potential Settlement Class Members were notified by mailed Postcard Notice. *Id.* at ¶9. In addition, A.B. Data has re-mailed 48 Postcard Notices to persons whose original mailing was returned by the U.S. Postal Service and for whom updated addresses were obtained through either the Postal Service or address research conducted through TransUnion. *Id*.

26.     On July 11, 2025, A.B. Data published the Summary Notice electronically over *PR Newswire*. *Id*. at ¶10.

27.     On July 11, 2025, A.B. Data also established a case-specific toll-free phone number, 877-307-6170, with an Interactive Voice Response system and live operators, to accommodate potential Settlement Class Members with questions about the Action and the Settlement. *Id*. at ¶11.

28.     A.B. Data also maintains and posted to a Settlement-dedicated website a summary of the Settlement, the Long Notice, Proof of Claim, the Stipulation of Settlement, and the Preliminary

---

[2] "Notice" means collectively the Long Notice, Summary Notice, and the Postcard Notice.

Approval Order. *Id*. at ¶12.

29. Pursuant to the Preliminary Approval Order, Settlement Class Members have until September 16, 2025, to submit objections to any aspect of the Settlement, including awarding of fees and expenses to Plaintiffs' Counsel, and until September 17, 2025, to request exclusion. *Id*. at ¶¶13-14. To date, A.B. Data and Lead Counsel have not received any objections or requests for exclusion. *Id*. If we receive any objections or further exclusion requests, we shall address them in Plaintiffs' reply papers in further support of Final Approval to be filed a week before the Final Approval Hearing on October 14, 2025.

### IV. PLAINTIFFS FACED RISKS IN THIS ACTION IF LITIGATION CONTINUED

30. Prior to reaching the Settlement, Plaintiffs, through Lead Counsel, reviewed publicly available documents, gathered information from their investigator, and retained consultants and experts to theorize about market efficiency, price impact, and loss causation. Despite Plaintiffs' and Lead Counsel's belief that Plaintiffs' claims were meritorious, they realize that protracted litigation does not guarantee recovery. Plaintiffs faced risks and obstacles to achieving a greater recovery if the case continued. Plaintiffs and Lead Counsel considered these challenges prior to and during settlement negotiations.

31. To prevail on their Exchange Act claims, Plaintiffs would need to prove: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Khoja v. Orexigen Therapeutics*, *Inc*., 899 F.3d 988, 1008 (9th Cir. 2018). To prevail on their Section 11 claims, Plaintiffs would need to prove: that the Proxy/Registration Statement (1) contained an untrue statement of material fact, or (2) omitted to state a material fact necessary to make the statements therein not misleading, or (3) omitted to state a material fact required to be stated therein. *See Lilien v. Olaplex Holdings, Inc.*, 765 F. Supp. 3d 993, 1005 (C.D. Cal. 2025). To prevail on their Section 14(a) claims, Plaintiffs would need to prove that (1) the Proxy/Registration Statement contained a material misrepresentation or omission which (2) caused Plaintiffs' injury and (3) that the proxy solicitation itself, rather than the particular

defect in the solicitation materials, was an essential link in the accomplishment of the transaction. *See Michel v. Sumo Logic, Inc.*, 779 F. Supp. 3d 1038, 1048 (N.D. Cal. 2025). Defendants would likely argue at summary judgment and trial that Plaintiffs cannot prove one or more of these elements.

32. Scienter is a difficult element to prove, which often turns on circumstantial evidence. Direct evidence rarely exists. Accordingly, Plaintiffs confronted difficult factual and legal challenges in connection with proving scienter for the Section 10(b) claims. How a jury would interpret and apply these facts to the law is not certain. While Plaintiffs believe they could amass evidence to prove that Defendants recklessly misled investors, if the Court or a jury were to accept Defendants' arguments, the Settlement Class would recover nothing.

33. Moreover, even though scienter is not needed to establish liability for the Section 11 claims, Defendants could establish an affirmative defense of negative causation, or put another way, that something other than the allegedly misleading statements caused the price of Playstudios shares to fall.

34. Plaintiffs also faced challenges in establishing damages at trial. A jury would need to accept Plaintiffs' expert's testimony over Defendants' expert's testimony to arrive at a damages figure. Because establishing damages would involve a "battle of experts," issues for the jury to sift through and weigh, the outcomes of summary judgment and trial are not certain.

35. Even if Plaintiffs prevailed on liability on any of their claims and the jury awarded damages, Defendants would likely appeal the verdict and award. The appeals process would likely span several years, during which time the Settlement Class would receive nothing. In addition, an appeal would carry with it the risk of reversal, in which case the Settlement Class would receive no recovery despite having prevailed at trial.

## V.    THE PLAN OF ALLOCATION

36. As provided in the Long Notice, A.B. Data will distribute the Net Settlement Fund in accordance with the Plan of Allocation that the Court preliminarily approved (Ex. B to the Teichmiller Decl. ¶¶5-9). The Plan of Allocation was designed to distribute the Net Settlement Fund equitably and rationally. Lead Counsel developed the Plan of Allocation after consulting an expert on damages. Plaintiffs and Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method

- 9 -

to distribute the Net Settlement Fund among Authorized Claimants.

37. The Plan of Allocation provides for the Net Settlement Fund's distribution among Authorized Claimants on a *pro rata* basis based on "Recognized Loss" formulas tied to liability and damages. The formula considers the amount of alleged artificial inflation in the prices of Playstudios' publicly traded common stock, and provides for a Recognized Loss formula for Section 11 damages, Section 14(a) damages, and Section 10(b) damages.

38. Pursuant to the Plan of Allocation, A.B. Data, under Lead Counsel's direction, will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Loss compared to the aggregate Recognized Losses of all Authorized Claimants. Calculation of Recognized Loss will depend upon several factors, including the dates Authorized Claimants purchased the securities, and whether the securities were sold during the Class Period, and if so, when.[3]

39. In summary, the proposed Plan of Allocation, developed with Plaintiffs' damages consultant, was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Plaintiffs and Lead Counsel respectfully submit that the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved.

## VI.    THE APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS IS REASONABLE

### A.    Consideration of Relevant Factors Justifies the Award

40. For its efforts on behalf of the Settlement Class, Lead Counsel is applying for compensation from the Settlement Fund on a percentage basis. As explained in the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Plaintiffs, courts within the Ninth Circuit recognize that the percentage-of-recovery method is the prevailing and appropriate method of

---

[3] After A.B. Data completes the claims administration process, giving rejected claimants the opportunity to contest the rejection of their claims, Plaintiffs will file a motion seeking the Court's approval of the Claims Administrator's findings and authority to distribute the Net Settlement Fund.

determining attorneys' fees.

41.     The Notice stated that Lead Counsel would seek up to twenty percent (20%) of the Settlement Fund, which is below the standard benchmark of 25% in the Ninth Circuit. Teichmiller Decl., Exs. A-D. Lead Counsel now seeks a fee award of twenty percent (20%) of the Settlement Fund. For the reasons discussed herein, this award is fair and appropriate.

### i.    The Favorable Settlement Achieved

42.     The Settlement Plaintiffs achieved on behalf of themselves and the Settlement Class is a factor that courts consider in granting a fee award. Plaintiffs' damages expert estimated that the maximum damages for the Section 11 claims were approximately $35.42 million and the maximum damages for the Section 14(a) claims were approximately $42.7 million (these estimates reflect concurrent and not additive damages). The Settlement will compensate Settlement Class Members for approximately 18% of the estimated maximum Section 11 damages and roughly 15% of the estimated maximum Section 14(a) damages. Either way, considering the substantial risks and obstacles to recovery if the Action were to continue through summary judgment, to trial, and through likely post-trial motions and appeals, the $6,500,000 Settlement represents a very strong recovery for the Class. It is fair, reasonable, and adequate. This is true even given the fact that the Section 10(b) Class will also recover from the same common fund, as the estimated aggregate Section 10(b) damages are only $8.8 million.

43.     This recovery resulted from thorough investigative efforts, motion practice, discovery, and settlement negotiations. As a result of this Settlement, Settlement Class Members will benefit and receive compensation for their losses and avoid the very substantial risk of no recovery in the absence of a settlement.

### ii.    The Risks and Complexities of Contingent Class Action Litigation

44.     From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation with no guarantee of compensation for their investment of time and money that the Action would require. In undertaking that responsibility, Lead Counsel dedicated sufficient resources to the prosecution of the Action, covering the out-of-pocket costs that this

required. With an average lag time of several years for these cases to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Plaintiffs' Counsel received no compensation during the course of the Action but have spent 1,670.78 hours for a total lodestar of $1,257,793 and have incurred $140,596.48 in out-of-pocket expenses in prosecuting the Action for the benefit of the Settlement Class.

45.    Lead Counsel also bore the risk that it would fail to recover on behalf of Plaintiffs and the Settlement Class. Even with competent efforts, success in contingent-fee litigation, such as this, is never assured, and Lead Counsel risked receiving nothing and failing to recover the monies it expended out-of-pocket.

46.    Lead Counsel knows from their experience that the commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories needed to sustain a complaint or win at trial, or to convince sophisticated defendants to engage in serious settlement negotiations at meaningful levels. Lead Counsel is cognizant of hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a judge's or jury's decision following a trial on the merits, no recovery was achieved.

47.    Proceeding to summary judgment, trial, or appeal requires counsel to outlay, bear material costs, and dedicate considerable uncompensated time. The fees that courts award in successful cases cover material overhead expenses incurred during litigation.

48.    Courts have repeatedly found that appointing experienced firms such as Pomerantz to serve as class counsel is in the public interest, enabling private enforcement of the federal securities laws and regulations. Private enforcement of the federal securities laws occurs only if investors obtain a semblance of parity in representation with that available to corporate defendants. To realize this public policy, courts award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

49.    As discussed in greater detail above, this case was fraught with significant risk factors concerning liability and damages. Plaintiffs' success was by no means assured. Were this Settlement

not achieved, and even if Plaintiffs prevailed at trial, Plaintiffs and Lead Counsel would face potentially years of costly and risky appellate litigation against Defendants, with ultimate success far from certain and the prospect of no recovery significant. It is also possible that a jury could have found no liability or no damages. Lead Counsel, therefore, respectfully submits that based upon the considerable risk factors present, this Action involved a very substantial contingency risk to Lead Counsel.

### iii.    Lead Counsel's Efforts and the Lodestar Cross-Check

50.    Throughout the pendency of the Action, Lead Counsel focused on advancing the litigation to achieve the best outcome for the Settlement Class, whether through settlement or trial, by the most efficient means necessary.

51.    I attach hereto as **Exhibits 2 - 3** declarations from Plaintiffs' Counsel, submitting them in support of the request for an award of attorneys' fees and payment of litigation expenses. *See* Declaration of Omar Jafri on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl.") and the Declaration of Andrew R. Muehlbauer on behalf of Muehlbauer Law Office, Ltd. ("Muehlbauer Fee Decl.").

52.    Included in the Pomerantz Fee Decl. and the Muehlbauer Fee Decl. are charts detailing the amount of attorney and professional support staff time spent on the litigation and the lodestar calculations, *i.e.*, their hours multiplied by their billing rates. As explained in each declaration, they were prepared from contemporaneous daily time records regularly prepared and maintained by the respective firms.

53.    The hourly billing rates of Plaintiffs' Counsel here range from $495 to $1,375 for attorneys. The hourly rates for attorneys and professional support staff included in these schedules are reasonable and in line with those of firms in the New York City, Chicago, and Las Vegas legal markets.

54.    Plaintiffs' Counsel have collectively expended 1,670.78 hours in the prosecution and investigation of the Action, comprised of 1,568.48 hours for Pomerantz and 102.30 hours for Muehlbauer. *See* Pomerantz Fee Decl. at ¶5, Muehlbauer Fee Decl. at ¶5. The resulting collective lodestar is $1,257,793, comprised of $1,170,838 for Pomerantz and $86,955 for Muehlbauer. *Id*.

Pursuant to a lodestar "cross-check," the requested fee of twenty percent (20%) of the Settlement Fund (or $1,300,000) results in a lodestar multiplier of 1.1, which is on the low end of the range approved in contingency cases, and does not include any time that will necessarily be spent from this date forward administering the Settlement, preparing for and attending the Settlement Hearing, assisting Settlement Class Members, and moving for a distribution order.

### iv.  The Skill Required and Quality of the Work

55.     Lead Counsel is an experienced and skilled securities litigation law firm. Pomerantz has been appointed in numerous securities class actions nationwide and has achieved impressive recoveries for investors. Pomerantz's notable achievements over the last few years include securing a $3 billion settlement for defrauded investors in *In re Petrobras Securities Litigation*, one of the largest U.S. securities class action settlements ever. Thus, the Settlement Class has benefited from Lead Counsel's experience and considerable time and effort in this case, which helped achieve the Settlement.

56.     Accordingly, the Settlement Class was represented by skilled and able counsel who should be reimbursed for their efforts.

### B.     Request for Litigation Expenses

57.     Plaintiffs' Counsel seeks payment from the Settlement Fund of $140,596.48 in litigation expenses Plaintiffs' Counsel reasonably and necessarily incurred in connection with commencing and prosecuting the claims against Defendants. Of this amount, Pomerantz incurred $139,596.48 in out-of-pocket expenses, and Muehlbauer incurred $1,000 in out-of-pocket expenses. These amounts are reflected in the books and records of each firm. *See generally* Pomerantz Fee Decl., Muehlbauer Fee Decl. The amount sought is lower than the $160,000 limit approved by the Court in the Preliminary Approval Order.

58.     From the beginning of the case, Plaintiffs' Counsel was aware that they might not recover any expenses. Thus, Plaintiffs' Counsel was motivated to, and did, take steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of this case.

59.     Plaintiffs' Counsel seeks reimbursement of expenses that are necessarily incurred in

- 14 -

litigation and routinely charged to clients billed by the hour. These expenses include, among others, financial expert fees, investigator fees, mediation fees, travel costs, legal and factual research, press release and notice to class member fees, postage fees, court filings, and *pro hac vice* fees.

60.     All of the litigation expenses incurred, which total $140,596.48, were necessary to prosecute this litigation.

**C.     Award to Plaintiffs**

61.     Plaintiffs seek an award for the time, effort, and oversight each dedicated to this litigation. The Private Securities Litigation Reform Act of 1995 empowers courts to approve such requests. Each seeks $10,000. I attach hereto, as **Exhibit 4,** the Declaration of Menachem Neeman, which outlines the participation of the Plaintiffs in securing this result for the Settlement Class.

**VII.     SETTLEMENT CLASS' REACTION TO THE FEE AND EXPENSE REQUESTS AND AWARD TO PLAINTIFFS**

62.     Of the 15,380 potential Settlement Class Members notified by Postcard Notice advising them of the fees, litigation expenses and awards that could be sought, as of the date of this Declaration, no member of the Settlement Class has objected. If a member of the Settlement Class objects prior to the September 16, 2025 deadline for objections, Lead Counsel will respond to any objections received in its reply brief.

**VIII.     CONCLUSION**

63.     In view of the recovery to the Settlement Class and the substantial risks of this litigation, Lead Counsel believes that the Settlement is fair, reasonable, and adequate and respectfully requests the Court to finally certify the Settlement Class, approve the Notice to the Settlement Class, approve the Settlement as fair, reasonable, and adequate, and approve the Plan of Allocation.

64.     Further, Lead Counsel believes that attorneys' fees in the amount of twenty percent (20%) of the Settlement Fund, reimbursement of $140,596.48 in out-of-pocket expenses, and awards to Plaintiffs of $10,000 each are fair and reasonable. As such, Lead Counsel respectfully requests the Court to grant final approval of the Settlement. Lead Counsel also respectfully requests the Court

- 15 -

to approve the application for attorneys' fees, reimbursement of litigation expenses, and reimbursement Awards to Plaintiffs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 15, 2025, at Chicago, IL.

/s/*Omar Jafri*
Omar Jafri

DECLARATION OF OMAR JAFRI IN SUPPORT OF PLAINTIFFS': (1) UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:22-CV-01159-RFB-NJK