**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
Email: andrew@mlolegal.com

*Liaison Counsel for Lead Plaintiffs*

**POMERANTZ LLP**
Omar Jafri
(admitted *pro hac vice*)
Diego Martinez-Krippner
(admitted *pro hac vice*)
Genc Arifi
(admitted *pro hac vice*)
10 S. LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:   ojafri@pomlaw.com
         dmartinezk@pomlaw.com
         garifi@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTIAN A. FELIPE,<br><br>          *Plaintiff*,<br><br>          v.<br><br>PLAYSTUDIOS, INC., *et al*.,<br><br>          *Defendants*. | Case No: 2:22-CV-01159-RFB-NJK<br><br>HON. RICHARD F. BOULWARE II<br><br><u>CLASS ACTION</u><br><br>**LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FOLEY BEZEK BEHLE & CURTIS, LLP'S MOTION FOR ATTORNEYS' FEES** |

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

III.  ARGUMENT...................................................................................................... 6

      A. FBBC Cannot Demonstrate Excusable Neglect For Violating Mandatory Notice
         Requirements and Court Deadlines ........................................................... 6

      B. FBBC Cannot Recover Any Fees as Non-Lead Counsel.......................... 10

         1. Legal Standard .................................................................................... 10

         2. FBBC Relied Exclusively on Publicly Available Information to Plead Claims
            That Would be Apparent to Any Lawyer .......................................... 11

         3. FBBC's Request for Additional Attorneys' Fees is Outrageous ....... 14

      C. FBBC's Request for Attorneys' Fees is Also Unreasonable ................... 14

IV.   CONCLUSION.................................................................................................. 15

CERTIFICATE OF SERVICE ....................................................................................... 17

LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FOLEY
BEZEK BEHLE & CURTIS, LLP'S MOTION FOR ATTORNEYS' FEES
2:22-CV-01159-RFB-NJK

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*,
    139 F.3d 664 (9th Cir. 1997) ..................................................................................7

*Arkin v. Pressman, Inc.*,
    38 F.4th 1001 (11th Cir. 2022) ........................................................................11, 12

*Bd. Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Collins*,
    No. 2:13-CV-00609-APG-VCF, 2014 U.S. Dist. LEXIS 140395 (D. Nev. Sep. 28, 2014) ......8

*Beauregard v. Smart Online, Inc.*,
    No. 1:07CV785, 2011 WL 13076742 (M.D.N.C. June 6, 2011)............................................13

*Felipe v. Playstudios Inc.*,
    No. 2:22-cv-01159-RFB-NJK, 2024 U.S. Dist. LEXIS 59398 (D. Nev. Mar. 31, 2024) ......4, 5

*Ferris et al. v. Wynn Resorts Limited et al.*,
    No. 2:18-cv-00479, ECF Nos. 438-1, 438-2 (D. Nev.) ..............................................................9

*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emples. Ret. Sys.*,
    814 F.3d 652 (2d Cir. 2016)...............................................................................................11, 14

*Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*,
    No. CV 13-4460-GHK (MRWx), 2016 U.S. Dist. LEXIS 191665
    (C.D. Cal. Aug. 16, 2016)..........................................................................................................9

*Habelt v. iRhythm Techs., Inc.*,
    83 F.4th 1162 (9th Cir. 2023) ....................................................................................................4

*Harrington v. Tackett*,
    No. 3:18-cv-00028-WGC, 2020 U.S. Dist. LEXIS 162780 (D. Nev. Sep. 4, 2020) .........6, 7, 8

*In re Adelphia Communs. Corp. Sec. & Derivative Litig.*,
    No. 03 MDL 1529 (LMM), 2008 U.S. Dist. LEXIS 67220 (S.D.N.Y. Sep. 3, 2008).......10, 13

*In re ArthroCare Corp. Sec. Litig.*,
    No. A-08-CA-574-SS, 2012 U.S. Dist. LEXIS 189843 (W.D. Tex. June 4, 2012) ..........10, 13

*In re BankAmerica Corp. Sec. Litig.*,
    263 F.3d 795 (8th Cir. 2001), *as amended* (Oct. 3, 2001)........................................................4

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005)...............................................................................10, 11, 13, 14

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
    109 F.3d 602 (9th Cir. 1997) ........................................................................................10

*In re Paysign Inc. Sec. Litig.*,
    No. 2:20-cv-00553, ECF Nos. 66-1, 66-3 (D. Nev.) .....................................................9

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
    No. 2:21-CV-5744-JFW(SHKx), 2024 U.S. Dist. LEXIS 237260
    (C.D. Cal. Apr. 23, 2024)............................................................................................14

*In re Stitch Fix, Inc. Sec. Litig.*,
    393 F. Supp. 3d 833 (N.D. Cal. 2019) .......................................................................3, 4

*In re Tut Sys.*,
    No. C 01-2659 CW, 2007 U.S. Dist. LEXIS 44823 (N.D. Cal. June 13, 2007).....................10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 62144 (N.D. Cal. Apr. 24, 2017) ...................10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Litig.*,
    914 F.3d 623 (9th Cir. 2019) ..........................................................................10, 11, 12

*Pappas v. Naked Juice Co of Glendora, Inc.*,
    No. LA CV11-08276 JAK (PLAx), 2014 U.S. Dist. LEXIS 200645
    (C.D. Cal. Jan. 2, 2014) ..............................................................................................13

*Roofer's Pension Fund v. Papa*,
    No. 16-2805 (RMB) (LDW), 2024 U.S. Dist. LEXIS 164194 (D.N.J. Sep. 12, 2024).............8

*Schulein v. Petroleum Dev. Corp.*,
    No. 8:11-cv-01891, ECF No. 254-2 (C.D. Cal.)..............................................................9

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
    623 F.3d 82 (2d Cir. 2010)................................................................................11, 12, 13, 14

*Yeschick v. Mineta*,
    675 F.3d 622 (6th Cir. 2012) ........................................................................................7

**Statutes & Regulations**

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

15 U.S.C. § 77z-1(a)(3)..........................................................................................................3

15 U.S.C. § 78u-4(a)(3) .........................................................................................................3

iii

15 U.S.C. §78u-4(a)(7) ...............................................................................................................6, 9

**Other Authorities**

Securities Litigation Reform, Joint Explanatory Statement of the Committee of
    Conference, H.R. CONF. REP. NO. 104-396 (1995)..............................................................2

Lead Plaintiffs The Phoenix Insurance Company Ltd. and The Phoenix Provident Pension Fund Ltd. (collectively, "Lead Plaintiffs" or the "Phoenix Entities")[1] respectfully submit this memorandum of law in opposition to Foley Bezek Behle & Curtis, LLP's ("FBBC") motion for attorneys' fees.

## I.    PRELIMINARY STATEMENT

FBBC's highly unusual motion is both procedurally improper and substantively without merit.  Lead Counsel is not aware of any securities class action where attorneys' fees were awarded to non-lead counsel over the objection of lead counsel, and FBBC has cited none.  To adopt a different rule and financially reward FBBC simply because it beat other counsel to the courthouse to file a perfunctory initial complaint would do violence to the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 (hereafter the "PSLRA"), which are intended to prevent just such a race to the courthouse.

As an initial matter, FBBC's motion should be denied as untimely because it was filed beyond the Court-ordered deadline without excusable neglect.  FBBC admits that it did not exercise diligence in monitoring the Court's docket despite being aware of the Settlement *six months* before the Court's Preliminary Approval Order was entered.  The basic duty to monitor the docket extends to all counsel who represent a member of the class, even if they do not file an appearance and do not serve as lead counsel.  There is no dispute that FBBC failed to fulfill this duty.  There is thus no persuasive basis to claim excusable neglect.

Even if the Court excused FBBC's failure to exercise diligence and considered the motion, FBBC is not entitled to any fees because it added no unique value to the Settlement Class.  FBBC admittedly relied exclusively on publicly filed information to draft an initial complaint on behalf of a client who was not appointed as lead plaintiff.  Non-lead counsel, like FBBC, are not entitled to fees in securities class actions unless they perform unique or novel tasks based on non-public information that cannot be easily replicated by lead counsel.  FBBC's motion does not even attempt to satisfy this crucial test.  Nor could it.  FBBC simply filed a cursory complaint relying entirely

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement, filed on March 6, 2025 (ECF No. 164-2).

1

on public information that would be easily apparent to and replicated by any lawyer.

FBBC's motion is also deficient because it fails to address the factors courts routinely examine to determine whether an award of attorneys' fees is reasonable and fair. Regardless, an application of those factors shows that FBBC cannot recover any attorneys' fees. Unlike Lead Counsel, FBBC conducted no independent investigation to find witnesses, never took the time to examine the gaming forums that documented unique problems here, never participated in discovery, did not shoulder the burden of litigation expenses, and did not contribute in any way whatsoever to the negotiated Settlement of this Action. FBBC is neither experienced in nor fit to serve as lead counsel in securities cases. It provided no notice to the Settlement Class of its fee request—a Settlement Class that does not know about FBBC's antagonism at the outset of the litigation because FBBC failed to provide notice of its fee request.

Accordingly, Lead Plaintiffs and Lead Counsel respectfully request the Court to defer to their decision and deny FBBC's baseless motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This is a federal securities class action governed by the PSLRA, a statute intended to avoid giving control of litigation to counsel, who win the "race to the courthouse" by being the first to file a complaint like FBBC did here. Securities Litigation Reform, Joint Explanatory Statement of the Committee of Conference, H.R. CONF. REP. NO. 104-396, at 31, 33 (1995). On behalf of Christian A. Felipe ("Felipe"), Susman Godfrey L.L.P. ("Susman Godfrey") and FBBC filed an initial complaint exclusively based on public information found in Playstudios' press releases, conference calls held with investors, and public filings required by the United States Securities and Exchange Commission ("SEC"). Felipe's complaint was originally filed in the United States District Court for the Northern District of California. Tellingly, Susman Godfrey has not joined FBBC's meritless request. Felipe's complaint was run-of-the-mill—one of dozens filed in recent years against companies that go public by merging with a Special Purpose Acquisition Company ("SPAC"). As explained in detail in Lead Plaintiffs' Amended Complaint, SPAC mergers are rife with inaccurate disclosures and conflicts of interest because going public via a merger allows

companies to sidestep traditional underwriting and regulatory scrutiny.  ¶¶38-43.[2]  It is thus unsurprising that so many companies that utilized a SPAC to go public have been sued.  Felipe's initial complaint was only one of such complaints spurred by Defendants' public announcement abandoning the development of Kingdom Boss—Playstudios' flagship role-playing video game that is at the heart of this litigation.  Felipe's Compl. at ¶¶11-13.  FBBC cannot claim any unique contribution for drafting an initial complaint that merely reflects public filings and disclosures.  *Id.*

FBBC's gamesmanship and repeated failure to follow the rules began at the inception of this lawsuit.  The PSLRA requires initial filers to publish a notice advising purported class members that an action on their behalf has been filed, and that they have 60 days to move to be appointed as lead plaintiff.  FBBC published a deficient notice with the wrong deadline provided to potential class members to move for the appointment of lead plaintiff.  ECF No. 25-2 at 3.  Nevertheless, recognizing the statute's requirement that motions must be filed within 60 days of the date notice is published, the Phoenix Entities timely moved to be appointed as lead plaintiff.  ECF No. 24.

Pursuant to the PSLRA, courts "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA creates a presumption that the most adequate plaintiff is the person or group that has the largest financial loss.  15 U.S.C. § 77z-1(a)(3)(B)(iii), § 78u-4(a)(3)(B)(iii).  After learning that the Phoenix Entities had the largest financial loss, FBBC sought to rewrite its lead plaintiff motion by cobbling together a group of plaintiffs with no pre-existing relationship to circumvent the PSLRA, and filed an untimely amended motion seeking to have its group appointed as lead plaintiff after the statutory deadline had passed.  *Compare* ECF No. 28 *with In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) (observing that "the clear consensus in our district is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status

---

[2] All citations to ¶___ and ¶¶___ are to Lead Plaintiffs' Amended Complaint filed at ECF No. 73. Felipe's initial complaint filed at ECF No. 1 is cited as Felipe's Compl. at ¶___ or Felipe's Compl. at ¶¶___.

3

were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses").

Even worse, FBBC attempted to exclude and harm the very investors in the Settlement Class who are now able to recover because of Lead Counsel's efforts. In a failed attempt to secure a position for itself to control this litigation, FBBC argued that investors of Acies Acquisition Corp. who acquired Playstudios' shares via the SPAC-merger should not recover their losses in this litigation at all. ECF No. 35 at 6 n.4. Those investors are part of the Settlement Class and can recover for their compensable losses.

Seeing right through FBBC's chicanery, the United States District Court for the Northern District of California denied Felipe's motion, and appointed the Phoenix Entities as Lead Plaintiffs, giving them control over "discovery, choice of counsel, assertion of legal theories, retention of consultants and experts, and settlement negotiations." *In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 801 (8th Cir. 2001), *as amended* (Oct. 3, 2001); *Habelt v. iRhythm Techs., Inc.*, 83 F.4th 1162, 1165 (9th Cir. 2023) (similar). The Phoenix Entities thus have "decisional muscle that other members of" the Settlement Class, like Felipe, lack. *In re BankAmerica Corp. Sec. Litig.*, 263 F.3d at 801.

On July 20, 2022, this Action was transferred to this District and assigned to this Court. ECF No. 49. On October 4, 2022, Lead Plaintiffs filed an Amended Complaint for violations of the federal securities laws, relying upon the accounts of gamers and former employees, who served as Confidential Witnesses ("CWs" or "CW"), to show that Defendants knew about the problems concerning Kingdom Boss's gameplay before Playstudios went public in the summer of 2022. ECF No. 73. Unlike Felipe's initial complaint, which was sourced entirely from Defendants' public filings and news releases, Lead Plaintiffs' allegations were based on Lead Counsel's independent investigation and were crucial to the denial of Defendants' motion to dismiss. The Court's Opinion and Order denying the motion to dismiss repeatedly referred to Lead Plaintiffs' allegations, which cannot be found in Felipe's initial complaint, as the key reasons why the Amended Complaint adequately pled violations of the federal securities laws. *See, e.g.*, *Felipe v.*

LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FOLEY BEZEK BEHLE & CURTIS, LLP'S MOTION FOR ATTORNEYS' FEES
2:22-CV-01159-RFB-NJK

*Playstudios Inc.*, No. 2:22-cv-01159-RFB-NJK, 2024 U.S. Dist. LEXIS 59398, at \*30-31 (D. Nev. Mar. 31, 2024); *id.* at \*47-51.

Counsel from FBBC vanished after they lost their battle to win control over this case.  To this day, no attorney from FBBC has ever filed an appearance in this Court for this Action.  Meanwhile, Lead Counsel vigorously prosecuted this case through motion practice and discovery, and ultimately negotiated a very favorable result for the Settlement Class.  FBBC had no role whatsoever.  It did not participate in discovery and contributed nothing to the litigation and negotiation efforts culminating in the Settlement that Lead Counsel negotiated on behalf of the Settlement Class.  Only after the Stipulation of Settlement was filed on January 27, 2025, did FBBC come out of the woodwork to demand payment.  Lead Counsel reasonably considered this request and asked FBBC for authority supporting its view that being the first to the courthouse with a rote initial complaint based solely on public filings entitled it to attorneys' fees.  FBBC provided no such authority, and Lead Counsel is aware of none.  In contrast, Lead Counsel emailed on-point authority to counsel at FBBC, explaining that FBBC had misunderstood the law and was not entitled to receive any attorneys' fees under these circumstances. *See* Plfs.' Ex. A at 1.  Notably, FBBC intentionally omitted this last piece of communication from Lead Counsel from the exhibits attached to the declaration in support of FBBC's motion for attorneys' fees. *Compare id. with* Exhibit B attached to the Declaration of Kevin Gamarnik filed at ECF No. 175, pp. 16-28 (hereafter the "Gamarnik Decl.").  Even though Lead Counsel again offered to help FBBC understand why it could not collect any attorneys' fees, Lead Counsel never heard from FBBC again until FBBC filed its delinquent fee request. *See* Plfs.' Ex. A.

On March 6, 2025, Lead Plaintiffs moved for preliminary approval of the Settlement, which the Court granted on June 27, 2025.  ECF Nos. 164, 170.  Critically, FBBC saw the docket and contacted Lead Counsel after Lead Plaintiffs had already moved for preliminary approval of the Settlement.  Plfs.' Ex. A at 10.  Pursuant to the Court's Preliminary Approval Order, notice of the Settlement was transmitted over *PR Newswire*, and over 15,000 Postcard Notices were mailed to potential Settlement Class Members.  ECF No. 173-1 at 2-3.  The PSLRA expressly requires that the Settlement Class be provided notice:

5

If any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, *a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought. Such information shall be clearly summarized on the cover page of any notice to a party of any proposed or final settlement agreement*.

15 U.S.C. §78u-4(a)(7)(C) (emphasis added).  Lead Plaintiffs' notice satisfied these requirements.  The deadline to object to the Settlement or the attorneys' fee request passed on September 16, 2025.  No Settlement Class Member has objected to Lead Counsel's motion for attorneys' fees.

FBBC, by contrast, violated the PSLRA's mandatory fee notice provision.[3]  It has also violated the deadlines set by this Court.  The Court's Preliminary Approval Order required all papers in support of the Settlement and the fee and expense application to be filed on or before September 15, 2025.  ECF No. 170 at ¶28.  FBBC failed to meet this deadline, and in its September 16, 2025 fee request, admits that counsel from FBBC neglected to monitor the docket even after learning of the Settlement, and never assigned anyone from FBBC to monitor it.

## III.    ARGUMENT

### A.    FBBC Cannot Demonstrate Excusable Neglect For Violating Mandatory Notice Requirements and Court Deadlines

Local Rule IA 6-1(a) requires a party to file a motion for extension of time and state the reasons for the extension requested.  Local Rule IA 6-1(a).  FBBC's request to file an untimely motion for attorneys' fees was not accompanied by a motion for extension of time, rendering FBBC's request "deficient."  *Harrington v. Tackett*, No. 3:18-cv-00028-WGC, 2020 U.S. Dist. LEXIS 162780, at *9 (D. Nev. Sep. 4, 2020).  Under Local Rule IA 6-1(a), a request made after the expiration of a specified period is not granted unless the attorney shows that the failure to move for an extension before the deadline was caused by excusable neglect.  FBBC's motion and accompanying declaration make it plain that FBBC cannot meet this test.  FBBC admits that it

---

[3] Felipe has not sought exclusion, and therefore is a "settling party" and FBBC is the counsel of a "settling party" bound by this provision.  *See* Plfs.' Ex. B; Preliminary Approval Order at ¶¶21-24 (specifying the mechanism by which investors must comply to exclude themselves from the Settlement).

6

"failed to task anybody at the firm with monitoring the docket in this case, and thus, FBBC was not aware of the September 15, 2025 date until the late evening of September 15, 2025." *See* Gamarnik Declaration at ¶17.

But FBBC was aware of the Settlement no later than March 10, 2025, when it first contacted Lead Counsel to demand payment. *See* Plfs.' Ex. A at 9. That was ***after*** Lead Plaintiffs had already moved for preliminary approval, proposing the form of Notice informing Settlement Class Members of the Settlement as well as the deadline to move for final approval of the Settlement and any request for attorneys' fees. ECF No. 164 at 21. FBBC's client, Felipe, received the Notice and filed two claim forms in response. *See* Plfs.' Ex. B. Yet, FBBC inexplicably failed to monitor the Court's docket despite its expressed interest in taking funds from the Settlement Class for over six (6) months. Without citation to any authority, FBBC now argues that it should be excused for its failure to exercise diligence because Lead Counsel did not advise FBBC "of the hearing date or its associated deadlines." FBBC Mot. at 7. FBBC's attempt to shift blame to Lead Counsel for its own negligence can only be driven by a perverse level of entitlement. Lead Counsel and Lead Plaintiffs do not represent FBBC's interests. They represent the Settlement Class, and were only responsible for providing Notice to Settlement Class Members, which they did. Lead Counsel has no responsibility to apprise non-lead counsel with no active role in the litigation of the Court's deadlines, let alone non-lead counsel that has no legal right to seek any attorneys' fees in the first instance.

Inadvertence, ignorance of the rules or mistakes made in construing the rules are not sufficient to demonstrate excusable neglect. *Tackett*, 2020 U.S. Dist. LEXIS 162780, at *7-8. A diligent attorney has a duty to monitor the docket and remain informed of the Court's Orders and filing deadlines. A failure to monitor the docket does not constitute excusable neglect. *See, e.g.*, *Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 666 (9th Cir. 1997) (holding that ignorance or carelessness of a litigant or its attorney cannot amount to excusable neglect); *see also Yeschick v. Mineta*, 675 F.3d 622, 629-30 (6th Cir. 2012) (refusing to excuse a failure to check the docket or receive notice of electronic filings due to an attorney's carelessness). Importantly, the duty to monitor the docket also extends to non-lead counsel who represent other class members

and may have some interest in the outcome of a class action. *See, e.g.*, *Roofer's Pension Fund v. Papa*, No. 16-2805 (RMB) (LDW), 2024 U.S. Dist. LEXIS 164194, at \*41-42 (D.N.J. Sep. 12, 2024) (collecting cases that rejected excusable neglect claims where, like here, non-lead counsel failed to monitor the docket). Moreover, FBBC could easily have filed an appearance and received automatic updates of any activity in the case, but chose not to because it had no interest in the litigation or the Settlement Class's best interests.

The Court should deny FBBC's motion for attorneys' fees as untimely because FBBC has not shown a valid reason for its delay. FBBC has also caused unnecessary expense by forcing Lead Plaintiffs and Lead Counsel to respond to its baseless request for attorneys' fees at the conclusion of this Action. *See Tackett*, 2020 U.S. Dist. LEXIS 162780, at \*15, \*19-20 (ruling that repeated failure to follow the rules and cause unnecessary expense prejudices the other party). In addition, FBBC did not bring this motion in good faith. Its claim that Lead Counsel did not provide authority supporting the denial of fees to non-lead counsel in similar circumstances is demonstrably false. FBBC Mot. at 3. Lead Counsel cited several cases where fee requests were denied when non-lead counsel, like FBBC, filed a complaint first and then claimed to be the first to "discover" claims by reviewing public information. *See* Plfs.' Ex. A at 1, 5-7. FBBC chose to hide Lead Counsel's correspondence from the Court because it was adverse and moved for attorneys' fees despite being told by Lead Counsel that the law does not support its arguments. *See*, *e.g.*, *Bd. Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Collins*, No. 2:13-CV-00609-APG-VCF, 2014 U.S. Dist. LEXIS 140395, at \*5-6 (D. Nev. Sep. 28, 2014) (finding that movant acted in bad faith when the record belied representations made to the court).

FBBC wrongly claims that ¶28 of the Preliminary Approval Order does not apply to it and only applies to Lead Counsel's motion for attorneys' fees because ¶28 refers to "the Fee and Expense Application." FBBC Mot. at 7. The full provision reads: "All papers in support ***of the Settlement, the Plan of Allocation and/or the Fee and Expense Application*** shall be filed and served no later than thirty (30) calendar days before the Settlement Hearing." ECF No. 170 at ¶28 (emphasis added). Similarly, the PSLRA requires that any counsel intending to seek a fee provide the Settlement Class notice of the intended fee request. 15 U.S.C. §78u-4(a)(7)(C). Under FBBC's

8

nonsensical reading, *the Settlement* would be between only the Lead Plaintiffs and Defendants, and *the Plan of Allocation* would determine the *pro rata* share of one Settlement Class Member, not the Settlement Class as a whole. FBBC's mischaracterization of the Preliminary Approval Order is also untenable because it implies that FBBC is free to file a motion for attorneys' fees whenever it likes, regardless of whether the Court has some other deadline in place.

Recognizing these deficiencies, FBBC urges the Court to mischaracterize its untimely motion as an "objection" to the Settlement. FBBC Mot. at 7-8. But FBBC does not object to the below-benchmark fee sought here, and it would have no plausible basis to do so since Lead Counsel are entitled to receive up to a third of the Net Settlement Fund, but request a fee award of only 20% of the Net Settlement Fund. Indeed, FBBC seeks no reduction whatsoever in the amount of fees charged to the Settlement Class. FBBC simply wants to grab a piece of Lead Counsel's properly noticed and filed fee request for itself. That is not an "objection." FBBC's reliance on ¶25 of the Preliminary Approval Order is also grossly misplaced. FBBC Mot. at 8. That provision applies to Settlement Class Members. ECF No. 170 at ¶25. FBBC is not a member of the Settlement Class. Further, FBBC inconsistently claims that it "cannot perform a reasonable review" of Lead Counsel's fee request without seeing Lead Counsel's "detailed billing statements." FBBC Mot. at 4 n.3.[4] That is irreconcilable with FBBC's assertion that it "objects" to Lead

---

[4] FBBC's suggestion that the lodestar cross-check must review Lead Counsel's "detailed billing statements," FBBC Mot. at 4 n.3, again misrepresents the law. Analysis, as here, "for the purpose of a cross-check . . . need not be as detailed as it would be were [the Court] conducting a full-blown lodestar analysis." *Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, No. CV 13-4460-GHK (MRWx), 2016 U.S. Dist. LEXIS 191665, at *17 (C.D. Cal. Aug. 16, 2016). "It is well established that the lodestar cross-check calculation need entail neither mathematical precision nor bean counting." *Id.* (internal quotation marks and citation omitted). The sole question there is to gauge whether the overall lodestar "supports the percent of the fund sought." *Id.* Sworn affidavits like the ones Lead Counsel submitted are both customary in securities class actions and sufficient. *See, e.g.*, *Ferris et al. v. Wynn Resorts Limited et al.*, No. 2:18-cv-00479, ECF Nos. 438-1, 438-2 (D. Nev.); *In re Paysign Inc. Sec. Litig.*, No. 2:20-cv-00553, ECF Nos. 66-1, 66-3 (D. Nev.). FBBC has filed a similar affidavit to support a fee request. *See Schulein v. Petroleum Dev. Corp.*, No. 8:11-cv-01891, ECF No. 254-2 (C.D. Cal.); Plfs.' Ex. C at ¶¶15-18, Exs. 1-3. No more is required here. Moreover, FBBC's demand for further analysis imposes an unnecessary burden upon the Court. *See, e.g.*, *In re ArthroCare Corp. Sec. Litig.*, No. A-08-CA-574-SS, 2012 U.S. Dist. LEXIS 189843, at *14-15 (W.D. Tex. June 4, 2012) ("Given

9

Counsel's fee request or has any reasonable basis to object.

For all these reasons, FBBC's motion should be denied as untimely.

**B.    FBBC Cannot Recover Any Fees as Non-Lead Counsel**

**1.    Legal Standard**

"[S]imply filing a securities fraud complaint rarely warrants compensation." *In re Tut Sys.*, No. C 01-2659 CW, 2007 U.S. Dist. LEXIS 44823, at *11 (N.D. Cal. June 13, 2007).  It is well-established that non-lead counsel cannot be compensated for initiating lawsuits, filing class action complaints or otherwise performing tasks in the early stages of a class action.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 62144, at *804-05 (N.D. Cal. Apr. 24, 2017).  This principle applies with even more force in securities litigation because initial filers like FBBC's client deliberately take the risk that they may not be appointed lead plaintiff under the PSLRA, and their counsel's work, including the initial complaint, may be utilized "at will" by lead counsel.  *In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2008 U.S. Dist. LEXIS 67220, at *17 (S.D.N.Y. Sep. 3, 2008).

Whether a departure from the standard practice is warranted depends upon whether non-lead counsel created, increased, protected or preserved the common fund.  *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005) (holding that only those who create, discover, increase or preserve the class's ultimate recovery should be compensated).  Three important well-settled rules further show that FBBC cannot be granted any fees in this case.  First, every Circuit to consider the issue has held that filing a complaint based on publicly available information should not be compensated.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg. Sales Practices, & Prods. Litig.*, 914 F.3d 623, 643 (9th Cir. 2019) (affirming denial of fees to non-lead counsel because "they do not appear to have discovered grounds for suit ***outside of the information***

this Court's extremely busy docket, it simply cannot afford to pore over billing records, looking for unnecessary tasks and excessive billing rates—a fact about which the Court is, admittedly, somewhat grateful.").

*contained in the widely publicized NOVs, or otherwise provided guidance or insights that were later used in securing the Settlement*.") (emphasis added); *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 87 (2d Cir. 2010) (observing that work based on "*publicly reported information or disclosures* rather than on intensive fact-finding" is not compensable) (emphasis added); *In re Cendant Corp. Sec. Litig.*, 404 F.3d at 196 (holding the same concerning work based on news reports or *press releases*) (emphasis added).

Second, non-lead counsel is not entitled to compensation where, as here, it merely advanced a theory that would be apparent to other lawyers. *Id.* at 205; *Victor*, 623 F.3d at 87. Third, non-lead counsel cannot recover fees unless it demonstrates that the work provided an "independent benefit" to the Class and aided in the recovery. *See Arkin v. Pressman, Inc.*, 38 F.4th 1001, 1009 (11th Cir. 2022). An "independent benefit" is a "*benefit class counsel did not provide the class during its representation that class counsel could not have easily duplicated*." *Id.* (emphasis added).

Courts give "*substantial deference*" to a lead plaintiff's decision regarding whether non-lead counsel should be compensated for any work performed prior to the appointment of lead plaintiff. *In re Cendant Corp. Sec. Litig.*, 404 F.3d at 195 (emphasis added). For any work performed after the lead plaintiff is appointed, a "*presumption of correctness*" attaches to lead plaintiff's decision that non-lead counsel should not be awarded any fees. *Id.* at 199; *Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Emples. Ret. Sys.*, 814 F.3d 652, 657 (2d Cir. 2016). Lead Plaintiffs here do not consent to FBBC's fee request.

### 2. FBBC Relied Exclusively on Publicly Available Information to Plead Claims That Would be Apparent to any Lawyer

FBBC labors under the misimpression that first-to-file counsel are entitled to windfall payouts unless the initial complaint is spurred by a "major news revelation." FBBC Mot. at 4. This narrow reading cannot be reconciled with controlling precedent. *See In re Volkswagen*, 914 F.3d at 643 (affirming denial of fees to non-lead counsel because the initial complaints relied on public notices of regulatory violations); *see also Victor*, 623 F.3d at 87 (holding that work based on publicly reported information and disclosures is not compensable).

11

FBBC's initial complaint merely alleged the obvious. One of dozens filed involving SPAC offerings, it followed after press releases and conference calls that announced a delay in the release of and ultimate abandonment of Kingdom Boss, Playstudios' flagship video game. Felipe's Compl. at ¶¶9-13. FBBC conducted no private investigation to find CWs, unlike Lead Counsel. It did not even spend any time finding or analyzing hundreds of reviews of Kingdom Boss on various gaming forums, like Lead Counsel. Instead, FBBC concedes that it relied on Playstudios' published SEC filings and conference calls held with analysts. FBBC Mot. at 6. Examining SEC filings and conference calls is standard practice for every securities lawyer, and is in no way unique. Moreover, that FBBC read multiple drafts of the Proxy/Registration Statement and made the obvious observation that launch dates changed, *id.*, adds nothing unique of value, and did not form the basis of the Settlement creating the common fund. Instead, it merely reiterated the broadly available text of publicly filed documents. Multiple drafts of SEC filings are frequently filed as events and information change. Any competent attorney who brought claims against a defendant for securities violations would review each draft. Even so, FBBC itself describes the change in timeline in Playstudios' SEC filings as "the 'Smoking-Gun' Evidence of Scienter." Gamarnik Decl. at ¶11(c). It is hard to see how a "smoking gun" would not be easily apparent to an average attorney. The same is true for FBBC's claim that it relied on Defendant Andrew Pascal's public admission of a six-month delay in Kingdom Boss's release to prove knowledge, and "create a cohesive and compelling narrative of fraud." FBBC Mot. at 6. FBBC's repetition of obvious, public information conferred no independent benefit upon the Settlement Class.

FBBC's motion is bereft of any explanation regarding why Lead Counsel (or any other appointed counsel) could not easily duplicate the work FBBC performed. *See Arkin*, 38 F.4th at 1009 (holding that non-lead counsel must confer an "independent benefit" that lead counsel could not duplicate to be considered for a fee award). It merely argues that the claims were not "apparent to all parties involved because [L]ead [C]ounsel would have filed their own lawsuit and not waited until FBBC provided notice of the lawsuit and the deadline to submit an application to be lead counsel." FBBC Mot. at 5. This argument has been repeatedly rejected throughout the federal bar, including by the principal authority FBBC cites. *See, e.g.*, *In re Cendant Corp. Sec. Litig.*,

12

404 F.3d at 205 (holding that simply being the first to allege facts based on a review of publicly available information cannot warrant compensation); *Beauregard v. Smart Online, Inc.*, No. 1:07CV785, 2011 WL 13076742, at *4-5 (M.D.N.C. June 6, 2011) (denying motion for attorneys' fees when non-lead counsel made the exact same arguments that FBBC makes); *In re ArthroCare Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 189843, at *22-23 (similar).[5]  Despite FBBC's repeated denial of engaging in a race to the courthouse, FBBC Mot. at 3, "the old race to the courthouse system would likely gain new life if [FBBC] [thinks] that being first with some claim or other" could result in a fee award even though FBBC was not Lead Plaintiffs' choice for lead counsel. *Victor*, 623 F.3d at 88-89 (internal citations omitted).  An award of any attorneys' fees to FBBC under these circumstances would only serve to contravene the purpose of the PSLRA and encourage the very race to the courthouse the statute was intended to prevent. *See In re Adelphia*, 2008 U.S. Dist. LEXIS 67220, at *19.

FBBC's reliance on *Pappas v. Naked Juice Co. of Glendora, Inc.* is misplaced.  No. LA CV11-08276 JAK (PLAx), 2014 U.S. Dist. LEXIS 200645, at *45-47 (C.D. Cal. Jan. 2, 2014).  In that consumer class action, non-lead counsel hired a third-party lab to test juice for Genetically Modified Organisms ("GMO") and contacted formulators and other industry participants to confirm that the juice was altered by GMO. *See Pappas v. Naked Juice Co of Glendora, Inc.*, No. LA CV11-08276 JAK (PLAx), ECF No. 175; Plfs.' Ex. D at 2-4.  FBBC conducted no such investigation.  To the contrary, it skipped that work and chose to focus only on readily apparent public documents.  Hence, *Pappas* actually demonstrates that FBBC does not deserve any attorneys' fees.

In sum, FBBC: (a) shows a willingness to game its way into this case by ignoring the rules and procedures of the PSLRA and lead plaintiff appointment process, (b) seeks to resurrect the race to the courthouse that the PSLRA was designed to prevent, (c) interferes with Lead Plaintiffs' duty to control all aspects of the litigation as required by the PSLRA since Lead Plaintiffs do not

---

[5] Lead Counsel notes that FBBC was sent citations to both *Smart Online* and *ArthroCare*, which are on-point authorities that reject FBBC's position, but FBBC chose to ignore both decisions, and has failed to bring them to the Court's attention in its motion. *See* Plfs.' Ex. A at 1.

LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FOLEY BEZEK BEHLE & CURTIS, LLP'S MOTION FOR ATTORNEYS' FEES
2:22-CV-01159-RFB-NJK

approve of FBBC's request, and most importantly (d) fails to demonstrate that it relied on non-public information to confer an independent benefit on the Settlement Class that Lead Counsel could not easily duplicate. For all of these reasons, Lead Counsel respectfully requests that the Court deny FBBC's motion. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d at 195 (holding that courts should give "substantial deference" to lead counsel's decisions regarding the allocation of fees for work done before a lead plaintiff is appointed).

### 3. FBBC's Request for Additional Attorneys' Fees is Outrageous

In addition to its procedurally improper and substantively baseless request to be paid for its cursory initial complaint, without citation to any authority, FBBC asks the Court to award over $13,000 more for preparing its current baseless motion. Because the instant motion was filed after the appointment of Lead Plaintiffs, Lead Counsel's decision to deny FBBC attorneys' fees is entitled to a "presumption of correctness." *See In re Cendant Corp. Sec. Litig.*, 404 F.3d at 195; *Flanagan, Lieberman, Hoffman & Swaim*, 814 F.3d at 657. FBBC has done nothing to rebut this "presumption of correctness." *Id.* Nor could it because FBBC cannot recover any attorneys' fees for filing a complaint based on public information alone, and because FBBC's motion itself was procedurally and substantively lacking.

### C. FBBC's Request for Attorneys' Fees is Also Unreasonable

FBBC "conflates" whether the work performed conferred a benefit to the Settlement Class, which it did not, with whether FBBC can demonstrate the reasonableness of its fee request. *Victor*, 623 F.3d at 88. To evaluate the reasonableness of fee requests, courts in the Ninth Circuit consider (1) the results achieved, (2) the risk of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden shouldered by the plaintiffs, (5) the reaction of the settlement class, and (6) awards made in similar cases. *In re Stable Rd. Acquisition Corp. Sec. Litig.*, No. 2:21-CV-5744-JFW(SHKx), 2024 U.S. Dist. LEXIS 237260, at *36 (C.D. Cal. Apr. 23, 2024). FBBC did not even bother to identify these factors in its serially deficient motion, much less explain why its request for attorneys' fees is reasonable and fair. FBBC's motion should be denied on this independent ground as well.

14

Still, a close look at the factors only highlights that awarding any fees to FBBC would be both unreasonable and unfair. *Id.* FBBC simply jumped on the bandwagon of SPAC-related litigation, filing a bare-bones complaint based on Playstudios' publicly filed documents and news Playstudios announced itself during the Class Period. FBBC attempted to then game the system to have itself appointed lead counsel and took positions antagonistic to the Settlement Class because of its own self-interest. *See* ECF No. 35 at 6 n.4. Unlike Lead Counsel, FBBC did not conduct any independent investigation to find CWs or other non-public evidence of wrongdoing. Then, FBBC vanished from the scene after Lead Plaintiffs and Lead Counsel were appointed, did not participate in discovery, and did absolutely nothing to enhance the common fund that the Settlement created for the benefit of the Settlement Class.

FBBC's minimal effort in reading well-publicized documents could easily be duplicated by an average attorney, and its repeated failures to follow the rules and meet court deadlines only underscore FBBC's unfitness to serve as lead counsel. It also has virtually no experience in securities class actions. In contrast, Pomerantz is the oldest law firm in the world dedicated to representing defrauded investors, having been appointed in hundreds of securities class actions in the last decade alone. FBBC did not contribute to the costs and expenses that Lead Counsel advanced for the benefit of the Settlement Class, including, among other things, hiring investigators and econometric experts and fronting the costs of discovery. FBBC provided no notice to the Settlement Class of its fee request, but the reaction likely would not be positive since FBBC took positions earlier in the litigation that were antagonistic to the Settlement Class's interests. *See* ECF No. 35 at 6 n.4. Finally, with respect to awards in similar cases, Lead Counsel is not aware of any securities class action where a court awarded attorneys' fees to non-lead counsel over lead counsel's objection.

## IV. CONCLUSION

For all the reasons stated above, Lead Plaintiffs respectfully request that the Court deny FBBC's motion as untimely. In the alternative, Lead Plaintiffs respectfully request that the Court defer to their decision to deny FBBC attorneys' fees, and accordingly deny FBBC's motion in full.

LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FOLEY
BEZEK BEHLE & CURTIS, LLP'S MOTION FOR ATTORNEYS' FEES
2:22-CV-01159-RFB-NJK

Dated: September 30, 2025

Respectfully submitted,

**POMERANTZ LLP**

By: /s/ *Omar Jafri*

Omar Jafri (*pro hac vice*)
Diego Martinez-Krippner (*pro hac vice*)
Genc Arifi (*pro hac vice*)
10 S. LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: ojafri@pomlaw.com
        dmartinezk@pomlaw.com
        garifi@pomlaw.com

*Lead Counsel for Plaintiffs*

**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer, Esq.
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: 702-330-4505
Fax: 702-825-0141
Email: andrew@mlolegal.com

*Liaison Counsel for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2025, I electronically filed the foregoing **LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FOLEY BEZEK BEHLE & CURTIS, LLP'S MOTION FOR ATTORNEYS' FEES** with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Andrew R. Muehlbauer*
Andrew R. Muehlbauer