# EXHIBIT A

9/29/25, 10:07 AM
RE: Felipe v. Playstudios settlement - Diego Martinez-Krippner - Outlook
Case 2:22-cv-01159-RFB-NJK   Document 181-2   Filed 09/30/25   Page 2 of 11

 **Outlook**

---

## RE: Felipe v. Playstudios settlement

---

**From** Diego Martinez-Krippner <dmartinezk@pomlaw.com>

**Date** Fri 4/4/2025 5:14 PM

**To** Kevin Gamarnik <kgamarnik@foleybezek.com>; Omar Jafri <ojafri@pomlaw.com>

Kevin,

While it looks like the Ninth Circuit would indeed look to *Cendant* for guidance, *see In re Volkswagen Clean Diesel Marketing Sales Practices & Products Liability Litig.*, 914 F.3d 623 (9th Cir. 2019), we don't agree that it would interpret the decision to allow fees for an initial complaint based on publicly available information.  For example, in *Volkswagen*, the Ninth Circuit affirmed a district court's decision to deny fee motions to several law firms who worked on an MDL before the appointment of class counsel, stating:

"Appellants may have filed complaints and conducted preliminary discovery and settlement work on behalf of their clients before consolidation of the MDL and appointment of Class Counsel, but they do not appear to have discovered grounds for suit outside of the information contained in the widely publicized NOVs, or otherwise provided guidance or insights that were later used in securing the Settlement."  *Volkswagen*, 914 F.3d at 643.

Other district courts have similarly denied fee motions for first to file securities claims based on *Cendant*.  *See, e.g.*, *Beauregard v. Smart Online, Inc.*, 2011 WL 13076742, at *5 (M.D.N.C. June 6, 2011) ("F&S has failed to show that its complaint advanced a legal theory other than one that would have been readily apparent to all of the parties involved."); *In re Arthrocare Corp. Sec. Litig.*, 2012 WL 12951371, at *6-7 (W.D. Tex. June 4, 2012) ("Here, there is no evidence that Izard Nobel's complaint contained legal theories more novel or complex than those seen in most securities suits, or that the factual allegations were unavailable in the public record by the time CHH filed its consolidated complaint.").  We continue to think this case will not be an exception to that rule.

*Beauregard* also includes a passage analyzing *Cendant* and points out that *Cendant* itself denied fees to a first to file plaintiff in a securities case for these reasons.

We remain open to discussing any potential authority you have or have discovered that go the other way, or any other concerns you have, but as stated previously, we continue to believe the case law supports our position and see no reason why Judge Boulware would deviate from it.

---

**From:** Kevin Gamarnik <kgamarnik@foleybezek.com>
**Sent:** Friday, March 28, 2025 9:32 PM
**To:** Omar Jafri <ojafri@pomlaw.com>
**Cc:** Diego Martinez-Krippner <dmartinezk@pomlaw.com>
**Subject:** Re: Felipe v. Playstudios settlement

I'd be genuinely surprised if there are cases rejecting what appears to be a well-established principle:

Attorneys whose complaints contain factual research or legal theories that lead counsel did not discover, and upon which lead counsel later rely, will have a

claim on a share of the class's recovery." (Cendant, 404 F.3d at 197)

But I've been wrong before, and I look forward to seeing the cases you believe support a contrary view.

Have a good weekend,

Kevin

On Mar 28, 2025, at 7:02 PM, Omar Jafri <ojafri@pomlaw.com> wrote:

Kevin, your interpretation of *Cendant* is incorrect.  Next week, Diego will send you cites to some cases that rejected the same arguments you make.  It appears you do not have any authority to the contrary.

Your second point will not get you very far.  Anyone who files the first complaint can say the same things, but courts have unanimously rejected the claim that merely filing the complaint first means the filer has "discovered" the claims since nobody else filed a complaint.

We are happy to jump on another call to explain further after you have had a chance to review the cases.

Thanks.

**Omar Jafri**

**POMERANTZ LLP**

10 South LaSalle Street, Suite 3505

Chicago, IL 60603

Tel: (312)-881-4850

Cell: (512)-970-4051

ojafri@pomlaw.com

---

**From:** Kevin Gamarnik <kgamarnik@foleybezek.com>
**Sent:** Friday, March 28, 2025 8:37 PM
**To:** Omar Jafri <ojafri@pomlaw.com>

**Cc:** Diego Martinez-Krippner <dmartinezk@pomlaw.com>
**Subject:** Re: Felipe v. Playstudios settlement

Omar,

Thank you for your prompt response.

As noted previously, one of the additional cases we rely on is Cendant, which is quoted extensively below.

The fact that no other firm filed a similar case underscores that this was not a situation where counsel simply reacted to a news report. It required meaningful analysis and legal work to piece together the claims that ultimately formed the basis of the litigation.

So I'll put the same question to you: What authority supports the position that we are not entitled to fees for investigating, researching, and filing a complaint that no other firm had identified — and that lead counsel ultimately built upon?

And if the case was, as you suggest, so clearly apparent from publicly available information, then where was your complaint? Where were the other firms' complaints?

Kevin

> On Mar 28, 2025, at 5:16 PM, Omar Jafri <ojafri@pomlaw.com> wrote:
>
> Kevin, you did not address a key part of Diego's email. Except for this one distinguishable case from Los Angeles that you previously sent, what other authority do you have? Please identify it.
>
> Which factual and legal theories are you referring to exactly? Facts derived from information publicly disclosed in sec filings and press releases? The exchange and securities act counts found in virtually every securities fraud complaint? Anything else?
>
> Sent from my iPhone

On Mar 28, 2025, at 6:52 PM, Kevin Gamarnik
<[kgamarnik@foleybezek.com](mailto:kgamarnik@foleybezek.com)> wrote:

Diego,

Thank you for your email and the analysis provided. As I'm sure comes as no surprise, we respectfully — but strongly — disagree with your interpretation of *Cendant*. Your analysis omits the most relevant portions of the opinion, particularly those addressing the underlying concern: compensating hundreds of attorneys for duplicative work prompted by a public report and resulting in a race to the courthouse.

The portions of Cendant you cite are not inconsistent with this concern — but they are selective. The Court's actual focus becomes clearer when considering the very language your analysis omits:

> If a hundred lawyers each perform admirable but identical work on behalf of a class before the appointment of the lead plaintiff, the court should not award fees to each of the lawyers, as this would overincentivize duplicative work. Instead, while all of lead counsel's work will likely be compensable… other attorneys who merely duplicated that work—however noble their intentions, however diligent their efforts, and however outstanding their product—will not be entitled to compensation. Only those who confer an independent benefit upon the class will merit compensation.

The concern about "redundant filings — those "spurred by news reports or press releases disclosing wrongdoing—or by reports that other firms have filed complaints—as by independent investigation" — is directed at filings that fail to independently benefit the class. As the *Cendant* made clear: "[S]imply filing a complaint that is substantially identical to other complaints will not by itself warrant compensation."

However, the Court explicitly recognized that: "**Attorneys whose complaints contain factual research or legal theories that lead counsel did not discover, and upon which lead counsel later rely, will have a claim on a share of the class's recovery.**"

We do not dispute that the amended complaint contains additional facts not pleaded in our original complaint. But that is **not the test**. The test is whether anything from the original complaint was used in the amended complaint. And here, it undoubtedly was — the entire basis of the case arose from our original complaint. This was not a "bandwagon" situation. This was not a "race to the courthouse." My team researched and investigated the matter, and filed an action that nobody else was even aware of.

9/29/25, 10:07 AM
RE: Felipe v. Playstudios settlement - Diego Martinez-Krippner - Outlook
Case 2:22-cv-01159-RFB-NJK    Document 181-2    Filed 09/30/25    Page 6 of 11

As *Cendant* itself acknowledges:

> In most cases, as in Bank One, we expect that lead plaintiffs who make use of earlier attorneys' legal or investigative work will request compensation for such attorneys. In the unlikely case that lead plaintiffs appropriate that work and attempt to deny compensation, we expect that the court will nonetheless reward the earlier attorney's work on behalf of the class.

That is precisely why we reached out to you — asking that you include a request for compensation on our behalf as part of the fee petition. If necessary, we will move independently for fees.

Lastly, I want to be clear: I have not threatened to object. I said — accurately — that my client has not yet had the opportunity to review or analyze the settlement, and that we still need to confer with him to understand his thoughts.

We remain hopeful this can be resolved professionally and cooperatively, but we stand by our position.

I look forward to your response.

Have a good weekend.

Best regards,
Kevin

---

**From:** Diego Martinez-Krippner <dmartinezk@pomlaw.com>
**Sent:** Friday, March 28, 2025 3:41 PM
**To:** Kevin Gamarnik; Omar Jafri
**Subject:** Re: Felipe v. Playstudios settlement

Kevin,

Thanks for sending.  On our call, you mentioned that *Cendant* was the leading case on the issue. We've researched the issue and believe *Cendant* (and the cases interpreting it) strongly suggest that filing an initial complaint in a case governed by the PSLRA that relies on publicly available information doesn't warrant fees from a common settlement fund.  There are several pieces of *Cendant* itself that emphasize this:

1. Given the relative ease with which plaintiffs' attorneys can learn of potential securities fraud, and the speed with which they can translate that information into a complaint, we think that attorneys will vigorously prosecute such complaints even without a guarantee of compensation. Instead, we think that the best approach is to view such complaints as entrepreneurial efforts: each firm's complaint is the price of admission to a lottery that

might result in it being named lead counsel. If a firm wins that lottery, it stands to make significant fees at multiples of its lodestar. Compensating a firm for filing a complaint and not being named lead counsel would offer free tickets to the lead-counsel lottery, and would thus create incentives for redundant filings. *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 195-196 (3d Cir. 2005).

2. There is also little reason to believe that the mere filing of complaints in a securities class action ordinarily confers much benefit on the class. Such complaints are as often spurred by news reports or press releases disclosing wrongdoing-or by reports that other firms have filed complaints-as by independent investigation. *Cendant Corp.*, 404 F.3d at 196.

3. The legislative history indicates that the PSLRA was a reaction against a race-to-the-courthouse model of securities litigation in which attorneys appointed themselves class representatives and chose their own figurehead plaintiffs who had no power to select or oversee "their" lawyers. See S. Rep. No. 104-98 (1995), at 11, reprinted in 1995 U.S.C.C.A.N. 679, 690 ("Since no deference is given to the most thoroughly researched complaint, the lawyers spend minimal time preparing complaints in securities class actions."). Allowing an attorney to generate a fee for himself simply by finding a plaintiff and filing a complaint would eviscerate the PSLRA's reforms. *Cendant Corp.*, 404 F.3d at 196.

4. In sum, we do not think that attorneys can simply manufacture fees for themselves by filing a complaint in a securities class action. On the other hand, attorneys who alone discover grounds for a suit, based on their own investigation rather than on public reports, legitimately create a benefit for the class, and comport with the purposes of the securities laws. *Cendant Corp.*, 404 F.3d at 196-97.

In this case, the initial complaint focused on publicly available documents and filings, whereas the amended complaint included information developed through rigorous investigation (including multiple confidential witnesses as well as digging deep into game board and forum discussions).  Judge Boulware's opinion and order denying in part the motion to dismiss makes it clear that the facts developed through Lead Counsel's rigorous investigation were instrumental to the Court's decision.

Further, it is not clear what non-public facts, or novel legal theories, were advanced in the initial complaint.  Even in the *Pappas* case shared below, counsel there apparently investigated and advanced a GMO-related claim that others had not explored or seemingly thought of, but there hasn't been any suggestion that the claims advanced in this case are different than those pursued in de-SPAC litigation generally.

In sum, we're not convinced that existing caselaw supports the position that non-lead counsel is entitled to fees in a case governed by the PSLRA for the filing of an initial complaint based on generally publicly available

information and standard legal theories.  If there are additional sources
or cases you think warrant consideration, we can hear them out.

Finally, we note that a threat to object to a fair, reasonable, and adequate
proposed settlement is improper and harms the class, and we'll take the
steps we need to in order to protect the interests of the class.

Best,
Diego

---

**From:** Kevin Gamarnik
**Sent:** Wednesday, March 12, 2025 2:45 PM
**To:** Diego Martinez-Krippner; Omar Jafri
**Subject:** Re: Felipe v. Playstudios settlement

Hi Gentlemen,

Here is the authority I mentioned.

i. Work Devoted to the Complaint and the GMO Claims

Sandys' Counsel seeks approximately $85,400.00 in fees for 142
hours of work prior to the filing of the initial complaint. *See* Dkt.
165 at 8; Golan Decl., Dkt. 147-2, ¶ 15.**14** Although Co-Lead
Counsel are correct that "the mere filing of a complaint [*45]
does not produce a settlement," it does not follow that the filing
of a complaint "does not merit compensation." Dkt. 158 at 10.
Indeed, there exists a "long line of common fund cases that hold
that attorneys 'whose efforts create, discover, increase, or
preserve a [common fund]'... are entitled to compensation." *In re
Cendant Corp. v. Sec. Litig.*, 404 F.3d 173, 205 (citing *In re Gen.
Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d
768, 820 (3d Cir. 1995)). "Thus, an attorney who discovers a valid
claim on behalf of a class, and makes use of his findings in a
complaint that ultimately enhances the class's recovery, will be
entitled to compensation out of that recovery." *Id.*

The work of Sandys' Counsel in investigating claims against
Defendant and preparing the initial complaint provided certain
benefits to the class. Defendant and Co-Lead Counsel point out
that Sandys' complaint contained certain claims that were
unlikely to be certified for class treatment, *e.g.* those for assault
and battery. However, they do not dispute that the complaint
that Sandys' Counsel drafted was the only one that presented the
GMO claims. These claims were included in the subsequent CAC
and CFAC and formed a basis for a portion of the settlement
agreement.

9/29/25, 10:07 AM
Case 2:22-cv-01159-RFB-NJK   Document 181-2   Filed 09/30/25   Page 9 of 11
RE: Felipe v. Playstudios settlement - Diego Martinez-Krippner - Outlook

At the hearing on Sandys' Motion, the Court requested that both Co-Lead Counsel and [*46]  Sandys' Counsel submit supplemental briefing as to the hours spent investigating the GMO claims up to the time when Co-Lead Counsel were appointed. Sandys' Counsel assert that they spent a total of 158.08 hours on the GMO claims prior to the March 5, 2012 appointment of Co-Lead Counsel. Dkt. 175 at 4-5.**15** This portion of Sandys' Counsel's work in connection with the GMO claims benefitted the class. Thus, to the extent these hours and rates were reasonable and not duplicative of the work of Co-Lead Counsel on the same claims, Sandys' Counsel may receive compensation. The reasonableness of the hours and hourly rates that are requested is discussed below. In contrast, the 236.30 hours for which Sandys' Counsel seeks compensation, because they claim that it was necessarily related to both the "all natural" and the GMO claims, is not appropriate for an award. In short, this work was not tied solely to the GMO claims and, therefore, is duplicative of that undertaken by Co-Lead counsel. This is confirmed by a review of the relevant time records. Therefore, this work did not confer a sufficient benefit to the class to warrant an award of any portion of the approximately $141,500 that has been [*47]  requested.**16**

Pappas v. Naked Juice Co of Glendora, Inc., No. LA CV11-08276 JAK (PLAx), 2014 U.S. Dist. LEXIS 200645, at *44-47 (C.D. Cal. Jan. 2, 2014)

\*\*

For the foregoing reasons, Sandys' Counsel will be compensated for time expended and costs incurred as a result of work performed on the GMO claims prior to the appointment of Co-Lead Counsel, but not for the later unauthorized, duplicative work that did not benefit the class.

Pappas v. Naked Juice Co of Glendora, Inc., No. LA CV11-08276 JAK (PLAx), 2014 U.S. Dist. LEXIS 200645, at *49 (C.D. Cal. Jan. 2, 2014)

---

**From:** Diego Martinez-Krippner <dmartinezk@pomlaw.com>
**Sent:** Wednesday, March 12, 2025 11:12 AM
**To:** Kevin Gamarnik; Omar Jafri
**Subject:** Re: Felipe v. Playstudios settlement

Apologies, Kevin. We've been in deposition — can you talk at 2:15pm CT today?  I can send around a dial-in if that time works.

---

**From:** Kevin Gamarnik <kgamarnik@foleybezek.com>
**Sent:** Wednesday, March 12, 2025 12:49 PM
**To:** Omar Jafri <ojafri@pomlaw.com>; Diego Martinez-Krippner <dmartinezk@pomlaw.com>
**Subject:** Re: Felipe v. Playstudios settlement

Hi Omar and Diego,

Following up.  Thanks.

Kevin

---

**From:** Kevin Gamarnik
**Sent:** Monday, March 10, 2025 2:35 PM
**To:** ojafri@pomlaw.com; dmartinezk@pomlaw.com
**Subject:** Felipe v. Playstudios settlement

Hi Omar and Diego,

I represent Mr. Christian Felipe, who initially filed the class action complaint.

Please advise if your are available anytime in the next few days to hop on a short call regarding the settlement.  Thanks.

Kevin

Kevin D. Gamarnik | Partner
<pastedImage.png>

T: 714.556.1700 | F: 714.546.5005
E: kgamarnik@foleybezek.com

**Note: Please add docket@foleybezek.com to service lists to assure proper routing of case matters. Thank you.**

CONFIDENTIALITY NOTE: The information contained in this email may be legally privileged and confidential. It is intended only for the eyes and use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify us immediately by telephone; call collect if necessary. Thank you for your cooperation.

Links contained in this email have been replaced. If you click on a link in the email above, the link will be analyzed for known threats. If a known threat is found, you will not be able to proceed to the

destination. If suspicious content is detected, you will see a
warning.

<pastedImage.png>