# EXHIBIT D

FRANCIS & MAILMAN P.C.
JAMES A. FRANCIS (*pro hac vice*)
DAVID A. SEARLES (*pro hac vice*)
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
Tel: (215) 735-8600; Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com

CENTER FOR SCIENCE IN THE PUBLIC INTEREST
STEPHEN GARDNER (*pro hac vice*)
5646 Milton Street Suite 211
Dallas, TX 75206
Tel: (214) 827-2774; Fax: (214) 827-2787
sgardner@cspinet.org

THE GOLAN LAW FIRM
YVETTE GOLAN (*by pro hac vice*)
1919 Decatur St.
Houston, TX 77007
Tel: (866) 298-4150; Fax: (928) 441-8250
ygolan@tgfirm.com

FLASHPOINT LAW, INC.
SHIRISH GUPTA (SBN 205584)
1900 S. Norfolk Street, Suite 350
San Mateo, CA 94403
Telephone:  (650) 539-4019
sgupta@flashpointlaw.com

*Attorneys for Plaintiff Sara Sandys*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE PAPPAS,  on behalf of herself and all others similarly situated,<br><br>                          Plaintiff,<br><br>     v.<br><br>NAKED JUICE COMPANY, a California corporation<br><br>                          Defendant. | Case No. 2:11 –cv-8276-JAK (PLAx)<br><br>**PLAINTIFF SARA SANDYS' SUPPLEMENTAL BRIEF IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES** |

As requested by the Court (Doc. 171), Sandys' Counsel respectfully submits this Supplemental Brief in Support of Her Motion for Attorneys' Fees and Expenses, (1) stating the hours worked and costs attributable to the GMO claims up to the appointment of Interim Lead Class Counsel, and (2) summarizing the total hours spent on the GMO claims, attaching data identifying specific time entries relating to the GMO claims.

## I. SUMMARY

Before the March 5, 2012 appointment of Interim Lead Class Counsel (Doc. 38), Sandys' Counsel spent a total of *158.08* hours specifically and solely on the GMO claims.  *See* Declarations of James Francis, Chris Gadoury, Yvette Golan, and David Searles, all specifying dates in attached detailed timesheets. A total of $5,665 in costs were expended solely for the GMO claims.  Decl. of C. Gadoury at ¶ 5.

Sandys' Counsel performed other work that bore on both their GMO claims and their "all natural" claims equally, including meeting its discovery obligations, motions practice, filing the complaint, and similar critical litigation tasks.  Had Sandys' Counsel not done this work, the GMO claims would never have survived. Indeed, a week before the first hearings on consolidation and appointment of interim lead class counsel, now-Interim Lead Class Counsel stated to the Court that their decision to exclude the GMO claim was not an oversight, giving the impression – if not the indication – that they would not bring the GMO claims at all. [1]  Before the appointment of Interim Lead Class Counsel, Sandys' Counsel spent 472.6 hours on matters that bore on both the GMO claims and the "all natural" claims equally.  Had Sandys brought only the GMO claims, her counsel would have had to perform all 472.6 hours of work.  However, Sandys maintains

---

[1]      Pappas Plaintiffs Reply in Support of Motion for Consolidation and Appointment of Co-Lead Counsel (Doc. 32) at 9 n.10 ("If the Court is concerned with the Pappas Group's decision to exclude a Non-GMO claim, the Pappas Group asks this Court [to] conduct an in camera hearing so as to not prejudice or waive any arguments Plaintiffs may have.").

that in fairness, at least *half* of this work, or ***236.3 hours***, is fairly attributable to her GMO claims.

After the appointment of Interim Lead Class Counsel, Sandys' Counsel performed very limited review of the consolidated complaint and amended consolidated complaint.  Their review proved instrumental in ensuring the GMO claims survived Naked Juice's Motion to Dismiss.

## II.  PRE-APPOINTMENT WORK

### A.  Investigative and Legal Work Unique to GMO Claims

To an outsider, proving the GMO claims might seem as simple as sending the products to a lab. Far from it.  Proving the GMO claims requires an understanding of food science, an investigative spirit, and an almost geeky tenacity.  This takes time.

First, Sandys' Counsel had to determine which products might contain GMOs.  This is more than just identifying products with corn or soy ingredients. While corn and soy are common GMOs, other agricultural products appearing in Naked Juice's beverages may also be genetically modified, including apples, tomatoes, beets, and plums.  Moreover, the vitamin supplements in these beverages are often produced from genetically modified materials.  For example, beta-carotene can be produced with genetically modified microorganisms (*Erwinia herbicola*).  Tocopherols are produced from agricultural products that are commonly genetically modified, such as soybeans, maize, and cotton.

Second, Sandys' Counsel had to test Naked Juice products.  In early November 2011, Sandys' Counsel had an independent third-party lab perform polymerase chain reaction ("PCR") tests on multiple lots of several flavors of Naked Juice products.  Sandys' Counsel's lab tests detected GMOs in two lots of Naked Juice's Protein Zone Mango beverages, and two lots of Naked Jucie's Protein Zone: Berry beverages.  Both products tested positive for two genetic

PLAINTIFF SANDYS' SUPLEMENTAL BRIEF IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES

markers, genes from a cauliflower mosaic virus (the CaMV promoter gene) and genes from the bacteria *Agrobacterium tumefaciens* (the NOS terminator gene), which exist only in genetically modified products.[2] Decl. of Y. Golan, attaching test results as Exhibit B.

Third, Sandys' Counsel had to understand what these lab tests meant. Were they proof of GMOs or were they mere evidence? If a qualitative PCR lab test did not detect these genetic markers, does it mean that the product does not have GMOs? (No.) If a qualitative PCR lab test detected these genetic markers, does it mean that the product has GMOs? (Yes.) Does it mean that the products' "non-GMO" representations are false? (Not necessarily.) PCR tests search for specific promoter and terminator genes that are used in only some GMOs. They will not detect the newer genetically modified strains which use different promoter and terminator genes. Additionally, many ingredients are so heavily processed that the genetic material is no longer intact, and so the PCR tests cannot adequately detect modified strains. This analysis took time to develop, but is absolutely essential to successfully proving the GMO claims and developing a cogent litigation strategy.

Fourth, Sandys Counsel thus had to go beyond lab tests. The only way to determine if these processed ingredients are genetically modified is to trace the ingredient back to its source, from the ingredient supplier all the way to the farmer. Thus, Sandys' Counsel's investigation reached beyond the lab, contacting formulators and other industry players, obtaining evidence from Naked Juice suppliers regarding the source and production methods used for ingredients used in Naked Juice products.

Fifth, Sandys' Counsel spent much time and effort gathering other evidence specific to the GMO claims. For example, they gathered evidence that industry

---

[2] Sandys is not aware of any positive test results obtained by Interim Lead Class Counsel. Naked Juice has maintained that Class Counsel's testing and analysis demonstrated that the "non-GMO" statements were correct. Naked Juice's Response to Objections, Dkt. 168 at 9:2-3. Interim Lead Counsel does not deny this claim.

standards demand being able to trace an ingredient's source before a company may claim a product is non-GMO. They gathered evidence that PepsiCo knew of the GMOs in its products, but explicitly and repeatedly refused to adopt a GMO monitoring policy. Sandys' Counsel gathered evidence regarding acceptable levels of GMO contamination, industry practices of spot-tests, and similar issues.

Finally, to Sandys knowledge, her complaint is the first to challenge false "non-GMO" allegations. Thus, in addition to their factual investigative work, Sandys' Counsel also had to perform legal analyses of the novel issues her claim raised, such as matters of preemption and state law labeling requirements.

Before the March 5, 2012 appointment of interim lead class counsel, Sandys' Counsel spent a total of *158.08* hours specifically on the GMO claims:

- Berg & Androphy: 51 hours post-filing investigative and legal work. Decl. of C. Gadoury at ¶¶ 3-4, attaching timesheets (identifying 44.5 hours by Chris Gadoury, and 6.5 hours by David Berg).

- Francis & Mailman: 18 hours legal work. Decl. of J. Francis at ¶ 3, attaching timesheets; Decl. of D. Searles at ¶ 5, attaching timesheets.

- Yvette Golan: 89.08 hours. Decl. of Y. Golan at ¶ 6 (identifying 49.83 hours investigating and drafting the complaint's GMO allegations, and 39.25 hours post-filing investigative and legal work).

A total of $5,665 in costs were expended solely for the GMO claims. Decl. of C. Gadoury at ¶ 5, attaching expense statements identifying costs of lab tests and expert retainer fees.

**B. Litigation Work Necessary to Ensure GMO Claims Asserted, but that Concerned Both the GMO Claims and the All Natural Claims**

Before the appointment of interim lead, there was much Sandys counsel had to do to ensure that her GMO claims would remain at play. Put another way: had Sandys' Counsel not done this work, the Class would not have brought the GMO

claims. Indeed, a week before the first hearings on consolidation and appointment of interim lead class counsel, now-Interim Lead Class Counsel stated to the Court that their decision to exclude the GMO claim was not an oversight, giving the impression – if not the indication – that they would not bring the GMO claims at all.[3] Had Sandys' Counsel not litigated the appointment of interim lead counsel, had stayed home instead of traveling to the hearings, or had shrugged off its discovery obligations, the GMO claims would very likely have been cast aside.

As identified above, some of this work bore uniquely on the GMO claims. However, much of the other litigation work served both the GMO claims and the "all natural" claims equally. What work is attributable to the GMO claims, and what is attributable to the "all natural" claims? Both are the but-for cause of the time spent. For example, Naked Juice's *ex parte* motion to extend time to answer Sandys' complaint affected both the non-GMO claims and the all-natural claims equally. (Case No. 11-08007, Dkt. 16). Sandys Counsel spent a total of 6 hours responding to this motion, ultimately prevailing in part. (Case No. 11-08007, Dkts. 18, 19). Had Sandys brought *only* the GMO claims, Sandys Counsel would still have had to spend six hours to respond to Naked Juice's *ex parte* motion. Arguably, all six hours are attributable to her GMO claims.

Sandys Counsel does not go so far. Instead, Sandys Counsel believes that a fair calculation of the time they spent on the GMO claims should include at least *half* the time spent on matters that bore equally on both the GMO claims and the all-natural claims. For example, of the 142.33 hours Sandys' Counsel spent in investigating and drafting the complaint, 64 hours were spent on the investigative and drafting work necessary for both claims.[4] Decl. of Y. Golan at ¶ 6. Arguably,

---

[3] Pappas Plaintiffs Reply in Support of Motion for Consolidation and Appointment of Co-Lead Counsel (Doc. 32) at 9 n.10 ("If the Court is concerned with the Pappas Group's decision to exclude a Non-GMO claim, the Pappas Group asks this Court [to] conduct an in camera hearing so as to not prejudice or waive any arguments Plaintiffs may have.").

[4] Of the 142.33 hours, Sandys Counsel also spent 28.5 hours specifically on the all-natural
(cont'd)

PLAINTIFF SANDYS' SUPLEMENTAL BRIEF IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES

the full 64 hours is fairly attributable to the GMO claims because, had Sandys brought *only* the GMO claims, Sandys Counsel would still have labored these 64 hours. However, Sandys Counsel takes the position that at least **half** of this time – 32 hours – is attributable to the GMO claims.

Before the March 5, 2012 appointment of interim lead counsel, Sandys' Counsel spent 472.6 hours on matters that bore on both the GMO claims and the "all natural" claims equally.[5]

- Yvette Golan: 330.5 hours. Decl. of Y. Golan at ¶¶ 6-7 (identifying 64 hours on investigating and drafting the complaint, and 266.5 hours on post-filing investigative and legal work).

- Berg & Androphy: 44 hours of post-filing investigative and legal work. Decl. of C. Gadoury at ¶¶ 3-4, attaching timesheets.

- Francis & Mailman: 98.1 hours of legal work. Decl. of J. Francis at ¶ 3, attaching timesheets; Decl. of D. Searles at ¶ 5, attaching timesheets.

At least half of this, or **236.3 hours**, is fairly attributable to the GMO claims.

## III. POST-APPOINTMENT WORK, AS ALLOWED BY COURT ORDER[6]

After the Court's appointment of Interim Lead Class Counsel, Sandys' Counsel limited their work to only reviewing the consolidated complaints and reporting on the coordination of counsel, as authorized by the Court's orders. (Docs. 35, 38, 52.) Sandys Counsel believed their review would be necessary for

claims. Decl. of Y. Golan at ¶ 6. This work is clearly not attributable to the GMO claims, and so is excluded from this brief.

[5] This number excludes the hours worked specifically on the GMO claims, and excludes the hours worked specifically on the "all natural" claims. *See* Decl. of C. Gadoury at ¶¶ 3-4 *and* Decl. of Y. Golan at ¶¶ 6-7 (together identifying 43.25 hours spent solely on the "all natural" claims).

[6] While the Court ordered Sandys' Counsel to identify the hours worked and costs attributable to the GMO claims "up to the time of appointment of class counsel," the Court also ordered that "both briefs should summarize the total hours spent on the GMO claims." Civil Minutes (Dec. 2, 2013), Doc. 171. Thus, out of an abundance of caution, Sandys Counsel summarizes here the work they performed related to the GMO issue after the appointment of Interim Lead Class Counsel.

PLAINTIFF SANDYS' SUPLEMENTAL BRIEF IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES

the GMO claims to survive, especially given Interim Lead Class Counsel's statement that they believed the GMO claims should not be brought. Doc. 32 at 9 n.10. In fact, their work proved instrumental in ensuring the GMO claims succeeded Naked Juice's Motion to Dismiss.

**A. March 5, 2012 – March 19, 2012: Review of First Consolidated Complaint**

After this Court's March 5, 2012 appointment of Interim Lead Class Counsel, Sandys Counsel devoted a very small amount of time – 8 hours in total – attempting to confer with Interim Lead Class Counsel regarding the consolidated complaint. Of these, *4.9 hours* were devoted to the GMO claims alone. Decl. of J. Francis at ¶ 4, attaching timesheets; Decl. of Y. Golan at ¶ 8, attaching timesheets; Decl. of D. Searles at ¶ 6, attaching timesheets. Specifically, Sandys Counsel tried to add concrete factual allegations to the GMO claims, offering to provide Interim Lead Class Counsel with lab test results and the opinions of several experts who had offered their assistance. Decl. of Y. Golan at ¶¶ 11-12. The remaining 3.1 hours were spent on matters that applied to both the GMO and the all-natural claims equally, such as issues of subclasses and choice of law. Decl. of J. Francis at ¶ 4; Decl. of Y. Golan at ¶ 8; Decl. of D. Searles at ¶ 6. No time was spent specifically on the all-natural claims.

Despite Sandys' Counsel's efforts to confer, Interim Lead Class Counsel refused these offers and drafted the GMO claims without Sandys counsel's assistance. Decl. of Y. Golan at ¶¶ 11-12. The resulting Consolidated Complaint presented the GMO claims with the barest allegations. Consolidated Complaint (Doc. 40). Not surprisingly, Naked Juice moved to dismiss these claims. (Doc. 43.)

**B. March 19, 2012 – May 14, 2012: Conference Regarding Cooperation of Counsel, Assistance with GMO Claims in Hearing on Motion to Dismiss**

Concerned that the Court might dismiss the GMO claims with prejudice,

PLAINTIFF SANDYS' SUPLEMENTAL BRIEF IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES

Sandys' Counsel continued to attempt to confer with Interim Lead Class Counsel regarding the GMO claims.  Sandys Counsel also prepared its Report on the Cooperation of Counsel, ready if necessary to show the Court a series of e-mails regarding Sandys' concerns with the GMO allegations.  Doc. 48;  Decl. of Y. Golan at ¶¶ 11-12.  At the hearing on the motion to dismiss, to help Interim Lead Class Counsel's oral argument, Sandys' Counsel also provided Ms. Wolfson with a hardcopy of lab tests showing that certain Naked Juice products contained GMOs. *See* Sandys Reply in Support of Attorneys Fees, Decl. of Y. Golan at ¶ 17 (Doc. 147-2). In total, Sandys' Counsel spent 62.73 hours on these activities, ***27.8*** of which were devoted specifically to the GMO claims.  Decl. of J. Francis at ¶ 5, attaching timesheets; Decl. of Y. Golan at ¶ 9, attaching timesheets; Decl. of D. Searles at ¶ 7, attaching timesheets. The remaining hours were spent on matters that applied to both the GMO and the all-natural claims equally, such as issues of subclasses and choice of law. No time was spent specifically on the all-natural claims.

As expected, this Court dismissed the First Consolidated Complaint's GMO claims.  When the Court asked Interim Lead Class Counsel if they would be able to plead facts supporting the GMO claims, they stated that they could and that they had positive lab results.[7]  The Court granted plaintiffs leave to amend.  (Doc. 52.) In the same order, this Court instructed Interim Lead Class Counsel to provide Sandys' Counsel with a copy of the amended complaint for their review (Doc. 52). Hopeful that Interim Lead Class Counsel would be more cooperative regarding the amended consolidated complaint given the Court's instruction and its ruling on the GMO claim, Sandys Counsel dropped their request for an in camera hearing on their cooperation.

**C.  May 14, 2012 – June 5, 2012:  Review of Amended Consolidated**

[7]      Sandys does not know if Interim Lead Class Counsel was referring to the lab tests Sandys' Counsel provided them at the hearing, or some other lab tests.

PLAINTIFF SANDYS' SUPLEMENTAL BRIEF IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES

Case 2:22-cv-01759-RFB-NJK   Document 181-5   Filed 09/30/25   Page 11 of 11
Case 2:11-cv-08276-JAK-PLA   Document 175   Filed 12/09/13   Page 10 of 10   Page ID
#:2850

**Complaint**

Sandys Counsel spent 14.33 hours reviewing the amended consolidated complaint and conferring with Interim Lead Class Counsel.  Of these, ***8.5 hours*** were devoted to the GMO claims.  *See, e.g.,* Declaration of David Searles, Doc. 131-1, attaching email correspondence stating Sandys' Counsel's comments as Exhibit A.  Decl. of J. Francis at ¶ 6, attaching timesheets; Decl. of Y. Golan at ¶ 10, attaching timesheets; Decl. of D. Searles at ¶ 8, attaching timesheets.

Dated: December 9, 2013                Respectfully Submitted,
                                       THE GOLAN FIRM


                                       By: /s/ Yvette Golan
                                              Yvette Golan

                                       FRANCIS & MAILMAN P.C.
                                       James A. Francis
                                       David A. Searles

                                       CENTER FOR SCIENCE IN THE
                                       PUBLIC INTEREST
                                       Stephen Gardner

                                       *Attorneys for Plaintiff SARA SANDYS*

PLAINTIFF SANDYS' SUPLEMENTAL BRIEF IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES